Clement S. Roberts (SBN 209203)
croberts@orrick.com
ORRICK HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Tel: 415-773-5700/Fax: 415-773-5759

Alyssa M. Caridis (SBN 260103)
acaridis@orrick.com
ORRICK HERRINGTON & SUTCLIFFE LLP
355 S. Grand Avenue, Suite 2700
Los Angeles, CA 90071
Tel: 213-629-2020/Fax: 213-612-2499

George I. Lee (Admitted *Pro Hac Vice*)
lee@ls3ip.com
Sean M. Sullivan (Admitted *Pro Hac Vice*)
sullivan@ls3ip.com
Rory P. Shea (Admitted *Pro Hac Vice*)
shea@ls3ip.com
J. Dan Smith (Admitted *Pro Hac Vice*)
smith@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W. Randolph Street, Floor 5W
Chicago, IL 60661
Tel: 312-754-0002/Fax: 312-754-0003

Attorneys for Plaintiff, Sonos, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>　　　　　*Plaintiff*,<br>　v.<br>GOOGLE LLC,<br>　　　　　*Defendant*. | Case No. 2:20-cv-00169-JAK (DFMx)<br><br>**SONOS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO PARTIALLY LIFT STAY**<br><br>Date:　　　Sept. 30, 2024<br>Time:　　　8:30 a.m.<br>Courtroom: 10C<br>Judge:　　　Hon. John A. Kronstadt |

**TABLE OF CONTENTS**

Page(s)

I.  GOOGLE ARGUES ONLY FOR A DISCRETIONARY STAY AND HAS FAILED TO SHOW THAT ONE IS WARRANTED ............... 1

    A.  Sonos's Motion Complies with the Court's Order ............................ 1

    B.  All Three Stay Factors Favor Partially Lifting the Stay .................... 2

        1.  This Case Is at an Advanced Stage ........................................... 2

        2.  A Partial Lift of the Stay Will Simplify the Case, Not Complicate It ................................................................. 5

        3.  Continuing the Stay Will Unduly Prejudice Sonos ................. 7

II. CONCLUSION ........................................................................................ 9

# TABLE OF AUTHORITIES

Page(s)
**Cases**

*ADA Sols., Inc. v. Engineered Plastics, Inc.*,
   826 F.Supp.2d 348 (D. Mass. 2011) .................................................................. 9

*Forgent Networks, Inc. v. Echostar Techs. Corp.*,
   No. 6:06-CV-208 LED, 2006 WL 6922224 (E.D. Tex. Nov. 20, 2006) .................................................................. 3

*Google L.L.C. v. Sonos, Inc.*,
   Case No. 20-cv-6754, Dkt. 1 (N.D. Cal. Sept. 28, 2020) .................................................................. 3

*IMAX Corp. v. In-Three, Inc.*,
   385 F.Supp.2d 1030 (C.D. Cal. 2005) .................................................................. 3

*Masimo Corp. et al. v. Apple Inc.*,
   No. SA CV 20-00048 JVS, 2024 WL 751008 (C.D. Cal. Feb. 26, 2024) .................................................................. 3, 4, 5

*Pers. Audio LLC v. Google, Inc.*,
   230 F.Supp.3d 623 (E.D. Tex. 2017) .................................................................. 2

*Soverain Software L.L.C. v. Amazon.com, Inc.*,
   356 F.Supp.2d 660 (E.D. Tex. 2005) .................................................................. 3

*Wirtgen Am., Inc. v. Caterpillar Inc.*,
   No. 17-770-RGA, 2021 WL 7209780 (D. Del. May 27, 2021) .................................................................. 6

1    Google says that "Sonos knew" that "the International Trade Commission case
2    would go forward – and that this case would not – until the ITC case was no longer
3    subject to judicial review." Dkt. 57 at p.1. True, but irrelevant. The premise of
4    Sonos's motion is that the ITC case is no longer subject to judicial review as to the
5    expired patents. And Google does not argue otherwise. The only question before
6    this Court, then, is whether maintaining the stay as to the expired patents is a sound
7    exercise of this Court's discretion. The answer is no.

8    There is simply no good reason to keep this action in stasis as to patents that
9    are no longer tied up in the ITC case filed almost five years ago. Instead, this action
10   should move forward to address Google's rampant infringement of patents that the
11   ITC already held are valid and infringed, but which are not relevant to, and cannot
12   be affected by, further developments in the ITC case. Moreover, lifting the stay at
13   least partially so that Sonos can add new, unexpired patents will help stem the tide of
14   Google's continued willful infringement.

## I. GOOGLE ARGUES ONLY FOR A DISCRETIONARY STAY AND HAS FAILED TO SHOW THAT ONE IS WARRANTED

17   It is undisputed the expired patents are not subject to a mandatory stay. Google
18   contends merely that this Court should, in its discretion, maintain a stay as to those
19   patents. Google offers two arguments for this discretionary result. First, Google
20   insists that Sonos's motion "ignores the plain language" of the Court's stay order.
21   Dkt. 57 at pp. 1, 4-5. Second, Google urges that the traditional stay factors favor a
22   stay. *Id*. at pp. 5-13. Both arguments are incorrect.

### A. Sonos's Motion Complies with the Court's Order

24   Sonos's request to partially lift the stay obeys the Court's recent stay order.
25   The Court continued the stay "without prejudice to the filing of an application by
26   either or both parties to lift the stay prior to the completion of the proceedings before
27   the Federal Circuit, based on a material change to the present circumstances that is
28   independent of those proceedings." Dkt. 55. Sonos's motion is based on just such a

- 1 -

change—namely, a change in Sonos's position with regard to how broadly to lift the stay.

Initially, Sonos requested that the Court lift the stay for all the patents in suit. The Court denied that request without prejudice. *Id*. Now, Sonos only asks the Court to lift the stay as to the expired patents, a materially different and narrower request. This change in position is independent of the Federal Circuit proceedings because it is based on patent expiration, an event driven by the passage of time rather than any litigation development, and the denial of Sonos's original request, which did not occur within the Federal Circuit proceedings.

Not only is Sonos's changed position a material change to the present circumstances, but it is not even the same request that the Court previously denied without prejudice. By seeking relief limited to the expired patents, Sonos has raised a new and specific issue that warrants revisiting the stay.

**B.  All Three Stay Factors Favor Partially Lifting the Stay**

**1.  This Case Is at an Advanced Stage**

Contrary to Google's assertion, this case is not "at the earliest possible stage" (Dkt. 57 at p. 5), as evidenced by the substantial amount of discovery that has been completed. As explained in Sonos's opening brief, the parties have already taken dozens of depositions, responded to hundreds of discovery requests, produced thousands of documents, briefed and argued claim construction, served multiple expert reports, and provided several days of trial testimony at the ITC, all related to the patents in suit. Dkt. 56 at p. 10. Thus, this litigation is at quite an advanced stage. *See Pers. Audio LLC v. Google, Inc.*, 230 F.Supp.3d 623, 628 (E.D. Tex. 2017) ("Though at first blush the stage of litigation appears early (indeed, Google has not yet responded to the Complaint and no trial date has been set), the court previously concluded that, because there was significant overlap between this relatively new case and prior related litigations, this factor actually weighed against granting a stay. . . . The court's reasoning before and the conclusion reached there has not

changed."); *see also, e.g., IMAX Corp. v. In-Three, Inc.*, 385 F.Supp.2d 1030, 1033 (C.D. Cal. 2005) (denying motion to stay where "much discovery has been conducted" including "experts reports concerning the prior art cited in [the parallel reexamination proceeding]"); *Forgent Networks, Inc. v. Echostar Techs. Corp.*, No. 6:06-CV-208 LED, 2006 WL 6922224, at *2 (E.D. Tex. Nov. 20, 2006) (denying motion to stay where "[t]he parties have already produced over five million pages of documents" and "have also fully briefed and argued the claim construction issues"); *Soverain Software LLC v. Amazon.com, Inc.*, 356 F.Supp.2d 660, 663 (E.D. Tex. 2005) (denying motion to stay where "[t]he parties have already produced hundreds of thousands of pages of documents and millions of lines of source code" and "have also fully briefed and argued the claim construction issues").

Google is also incorrect that Sonos adding patents to this case "would necessarily entail entirely new discovery and claim construction issues that the parties and Court will need to navigate." Dkt. 57 at p. 6. The three unexpired patents that Sonos plans to add are from the same patent families as the three expired patents and cover the same sync and group volume features in the same accused Google products. As such, much of the discovery and claim-construction issues from the ITC will be applicable to the new patents.[1]

Moreover, the lead case that Google cites in support of this factor is far removed from this case and, if anything, supports lifting the stay here. In *Masimo Corp. et al. v. Apple Inc.*, the court "stayed Plaintiffs' patent infringement-related claims" early in the case "to promote efficiency pending the outcome of IPR proceedings." No. SA CV 20-00048 JVS, 2024 WL 751008, at *1 (C.D. Cal. Feb. 26, 2024). The court also "determined that the patent claims would [continue to] be stayed pending the resolution of the parties' respective appeals of the IPR

---

[1] Sonos has not yet identified the patents that it intends to add because, the last time Sonos gave Google advance warning of the patents Sonos planned to assert, Google promptly filed a declaratory-judgment action to forum shop the proceedings. *Google LLC v. Sonos, Inc.*, Case No. 20-cv-6754, Dkt. 1 (N.D. Cal. Sept. 28, 2020).

1    proceedings." *Id*. The *Masimo* court ultimately determined that the patent claims
2    should continue to be stayed until the petitions for rehearing before the Federal
3    Circuit were resolved because those petitions involved substantive patent issues that
4    would impact the district court's proceedings. *Id*. at 2-3.

5         By contrast, here, the stay was not issued because of IPRs, where discovery is
6    virtually non-existent and only validity issues are examined, but rather, because of
7    an ITC proceeding that produced years of discovery and substantively tackled both
8    infringement and validity. And unlike *Masimo*, here, Google's petition for rehearing
9    in the ITC proceeding does not involve any issue that will be before this Court. *See*
10   Dkt. 56 at pp. 3-7.

11        Google incorrectly asserts that *Masimo* stands for the proposition that "prior
12   discovery regarding 'the same accused product and [the] same field of technology'
13   [does] not warrant lifting the stay." Dkt. 57 at p. 6. In *Masimo*, the "Plaintiffs
14   argue[d] that the parties have engaged in extensive discovery, which they contend
15   overlaps with the subject matter of their patent claims and relates to the same accused
16   product." 2024 WL 751008, at *2. The court clarified, however, that "this discovery
17   pertained to Plaintiffs' trade secret and inventorship claims" and that the "parties
18   would still be starting from a much earlier point when it comes to their patent claims."
19   *Id*. That is the opposite of what has occurred in this case—the parties have already
20   conducted full-blown discovery, a trial, and an appeal on the very same patent claims
21   for which Sonos is asking the court to lift the stay.

22        Another distinction is that the plaintiff in *Masimo* was seeking a single trial for
23   all of its claims. 2024 WL 751008, at *3 ("Plaintiffs argue that failing to lift the stay
24   would prevent an efficient single trial on all remaining claims."). In response, the
25   court stated that "[a]t present, the Court has not determined whether a single trial
26   would be appropriate." Here, Sonos is asking for the stay to be partially lifted so that

- 4 -

separate trials on the sync/group volume patents and the setup/stereo pair patents can be conducted. This is precisely in line with the court's thinking in *Masimo*.

Furthermore, the court in *Masimo* allowed some of the plaintiffs' claims to proceed while other claims were stayed even though "all causes of action relate to the same accused product and same field of technology." 2024 WL 751008, at *2. The Court should do the same here and allow the sync/group volume patents to proceed while the setup/stereo pair patents remain stayed.

Finally, although the court in *Masimo* declined to lift the stay on all the claims, it concluded with the following sentiment that underscores the need to partially lift the stay here:

> Nevertheless, the Court has substantial concerns about the delay. If the Federal Circuit has not ruled on the outstanding petitions within 60 days, Plaintiffs may renew this Motion with ten days' notice. While the Court's analysis of the relevant factors comes to clear conclusions, it would take very little for the Court to decide otherwise.

2024 WL 751008, at *3.

The present case has been pending long enough, and Google's pending petition for rehearing is not pertinent to this matter. The Court should exercise its discretion to partially lift the stay and end the delay for the sync and group volume patents.[2]

### 2. A Partial Lift of the Stay Will Simplify the Case, Not Complicate It

Google asserts that Sonos would need to "drop" the unexpired setup/stereo pair patents to simplify this case. Dkt. 57 at pp. 1, 8. Google's argument exalts form over

---

[2] The other cases cited by Google fare no better. Indeed, none of these cases address the merits of a district-court stay after a fully litigated ITC proceeding like the one here, where the ITC has already found validity and infringement of the same patents by the same accused products based on an extensive evidentiary record developed by the parties. Instead, Google's cases merely address stays of early-stage district-court cases pending post-grant proceedings that challenge only patent validity.

1   substance.  As Sonos indicated in its opening brief, the Court can either bifurcate or
2   sever the case, and then lift the stay for the expired sync/group volume patents and
3   continue the stay for the unexpired setup/stereo pair patents.  Dkt. 56 at p. 12 n.3.
4   Bifurcating or severing the two groups of patents from each other would simplify the
5   case.  Forcing Sonos to dismiss the unexpired patents and re-file them in a new action
6   to accomplish the same result would be a waste of the parties' and the Court's
7   resources.

8   　　　Google also ignores the fact that Sonos intends on adding new patents related
9   to both the expired sync/group volume patents and the unexpired setup/stereo pair
10  patents currently asserted in this case.  Thus, discovery and claim construction on the
11  new patents (to the extent necessary) will take place regardless of whether the stay is
12  partially lifted.  But partially lifting the stay now will allow discovery and claim
13  construction on these new patents to be conducted in phases – first on the sync and
14  group volume patents and then second on the setup and stereo pair patents.  Such
15  phasing will undeniably simplify the case.

16  　　　Google argues that "split[ing] the case into two tracks" and "partially lift[ing]
17  the stay as Sonos proposes" would "complicate, rather than simplify, the issues in the
18  case." Dkt. 57 at pp. 7-9.  This is the opposite of what would happen with bifurcation.
19  Bifurcating Sonos's sync and group volume patents from Sonos's setup and stereo
20  pair patents simplifies the discovery, claim construction, and damages issues in the
21  case.  Having half the number of different patent families and features is obviously
22  less complicated for the Court and the jury.  *See Wirtgen Am., Inc. v. Caterpillar Inc.*,
23  No. 17-770-RGA, 2021 WL 7209780, *2 (D. Del. May 27, 2021) ("[O]ne less patent
24  from a different patent family provides less complications.").

25  　　　Google further argues that "bifurcating discovery, claim construction, and/or
26  damages issues by partially lifting the stay will lead to needless duplication and
27  expenditure of resources by both the Court and parties." Dkt. 57 at p. 9.  But Google's
28  argument regarding the alleged overlap between Sonos's sync/group volume patents

- 6 -

1  and setup/stereo pair patents is a red herring. For example, Google complains that
2  bifurcating these patents will result in duplicate discovery from Sonos's inventors,
3  Nick Millington and Rob Lambourne. *Id*. Google fails to note that it has already
4  deposed and cross-examined Messrs. Millington and Lambourne numerous times on
5  their inventions. At minimum, it is unclear what additional information Google could
6  seek from these individuals. Even if further depositions were necessary, they would
7  be focused on incremental issues related to the new patents Sonos adds and would
8  certainly not impose a significant burden on either party or the Court.

### 3. Continuing the Stay Will Unduly Prejudice Sonos

10  Google contends that continuing the stay in full would not unduly prejudice
11  Sonos because the patents Sonos seeks to move forward on are expired. Dkt. 57 at
12  p. 10. However, this argument overlooks the broader purpose of partially lifting the
13  stay. While Sonos indeed aims to recover damages for Google's past infringement
14  of the expired sync/group volume patents, it also seeks to address Google's ongoing
15  infringement by adding new, unexpired sync/group volume patents to the case. These
16  new patents cover Google's insubstantial redesigns. Sonos cannot permit Google to
17  continue its willful infringement merely because it implemented minor redesigns to
18  circumvent the ITC's exclusion order, especially given the protracted nature of the
19  legal proceedings caused by the COVID-19 pandemic and related Federal Circuit
20  appeal. Therefore, Sonos will seek an injunction against Google's continued
21  infringement of these new patents. Google's attempt to avoid such an injunction by
22  maintaining the stay should not be permitted.

23  Finally, Google's arguments that Sonos would not be prejudiced because
24  "Sonos waited years after Google's allegedly infringing products were released in
25  2016 to sue" and "the parties are not direct competitors" are not credible. Dkt. 57 at
26  pp. 11-12. Sonos promptly provided notice of infringement to Google prior to the
27  release of Google's infringing products in 2016 and repeatedly tried to get Google to
28  stop its infringement without having to take legal action. In fact, Sonos raised

1  Google's infringement with Google on at least eight different occasions between
2  2016 and the filing of this lawsuit on January 6, 2020.  Google cannot use its willful
3  infringement to negate the prejudice that Sonos faces.
4      Similarly, despite Google's repeated protests to the contrary, Sonos and
5  Google are obviously direct competitors.  Not only is such competition readily
6  apparent from a basic "Google" search (*see, e.g.*, Dkts. 56-6, 56-7, 56-8, 56-9, and
7  56-10), but Google's own internal documents acknowledge the direct competition
8  between Sonos and Google:

[Image: "Current State" chart showing Google Home Mini, Google Home, Google Home Max, Amazon Echo Dot, Amazon Echo, Amazon Echo Studio, and Sonos One SKUs]

17  *See, e.g.*, Exhibit M (TX0158) at 5.³
18      That Google has discontinued some of its infringing products, including the
19  Google Home shown in the image above, does not change the fact that Google's
20  current infringing products continue to compete with Sonos.  For example, Google
21  acknowledges that it replaced the infringing Google Home with the "successor" Nest
22  Audio.  Dkt. 57 at p. 12 n.7.  But the Nest Audio is just another infringing product
23  that competes with Sonos's products.  *See, e.g.,* Dkt. 56-9 ("Sonos One vs. Google
24  Nest Audio: which is the best smart speaker?"); Exhibit N
25  (https://www.wired.com/story/best-smart-speakers/) (comparing smart speakers
26  including the Sonos Era 100 and Google Nest Audio) at 9-10, 13-14.  As one district

---

³ All exhibits cited herein are attached to the Declaration of Alyssa Caridis filed concurrently herewith.

court has explained, the prejudice to a patentee from not being able to vindicate its patent rights for an extended period "is heightened when parties to litigation are direct competitors; in such cases, courts presume that a stay will prejudice the non-movant. While money damages may adequately compensate for a patent-holder's stay-period infringement losses in some cases, the possibility remains that the patent holder could lose market share or drop out of the market entirely during that period." *ADA Sols., Inc. v. Engineered Plastics, Inc.*, 826 F.Supp.2d 348, 350-51 (D. Mass. 2011) (denying motion to stay).

Google further argues that Sonos is not prejudiced because Google and Sonos are not the "sole competitors in the relevant markets," and Google's infringing products are cheaper than Sonos's competing products. Dkt. 57 at pp. 12-13. These arguments are unfounded. The prejudice caused by Google's continued infringement is not mitigated by the presence of other infringers in the market, particularly given Google's immense size and ability to significantly erode Sonos's market share. Moreover, the fact that Google sells its infringing products at prices below cost does not lessen the prejudice; rather, as explained in Sonos's opening brief, Google's "loss leader" strategy underscores the extent of the harm to Sonos. Dkt. 56 at pp. 13-14.

The reality is that Sonos will suffer undue prejudice from Google's infringing competition unless the stay is at least partially lifted.

## II. CONCLUSION

For the foregoing reasons, as well as the reasons set forth in Sonos' opening brief, Sonos respectfully requests the Court lift the stay with respect to the expired '949, '258, '953 patents.

Dated: September 5, 2024

ORRICK, HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP

By: */s/ Alyssa Caridis*
Alyssa Caridis
Attorneys for Plaintiff, Sonos, Inc.