Clement S. Roberts (SBN 209203)
croberts@orrick.com
ORRICK HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Tel: 415-773-5700
Fax: 415-773-5759

Alyssa M. Caridis (SBN 260103)
acaridis@orrick.com
ORRICK HERRINGTON & SUTCLIFFE LLP
355 S. Grand Avenue, Suite 2700
Los Angeles, CA 90071
Tel: 213-629-2020
Fax: 213-612-2499

Attorneys for Plaintiff, Sonos, Inc.

George I. Lee (*Pro Hac Vice*)
lee@ls3ip.com
Sean M. Sullivan (*Pro Hac Vice*)
sullivan@ls3ip.com
Rory P. Shea (*Pro Hac Vice*)
shea@ls3ip.com
J. Dan Smith (*Pro Hac Vice*)
smith@ls3ip.com
Michael P. Boyea (*Pro Hac Vice*)
*boyea@ls3ip.com*
Cole B. Richter (*Pro Hac Vice*)
*richter@ls3ip.com*
LEE SULLIVAN SHEA & SMITH LLP
656 W. Randolph Street, Floor 5W
Chicago, IL 60661
Tel: 312-754-0002
Fax: 312-754-0003

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>       *Plaintiff,*<br><br>    v.<br><br>GOOGLE LLC,<br><br>       *Defendant.* | Case No. 2:20-cv-00169-JAK (DFMx)<br><br>**SONOS, INC.'S OPPOSITION TO GOOGLE LLC'S SECOND MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**<br><br>Judge: Hon. John A. Kronstadt<br>Date: November 10, 2025<br>Time: 8:30 a.m.<br>Location: Courtroom 10C<br><br>Complaint Filed: Jan. 7, 2020 |

1

## TABLE OF CONTENTS

2  TABLE OF AUTHORITIES ..................................................................... ii

3  MEMORANDUM OF POINTS AND AUTHORITIES ...........................................1

4  I.    INTRODUCTION ...........................................................................1

5  II.   FACTUAL BACKGROUND...............................................................1

6        A.    Initial Case Activity and the ITC Investigation ....................1

7        B.    Google Has Known These Theories and Materials for Years ..............2

8        C.    The Parties' Initial Pleadings and Cross-Use Agreements ..................3

9        D.    Google's First Amended Pleading .........................................5

10       E.    Google's Untimely Second Motion for Leave ...................................6

11 III.  LEGAL STANDARD ......................................................................6

12 IV.   GOOGLE FAILS TO ESTABLISH GOOD CAUSE UNDER RULE 16 .....8

13       A.    Google had Knowledge of the ITC Materials, Access to the ITC

14             Materials, and the Ability to Rely on the ITC Materials Prior to the

15             Court's Deadline...................................................................9

16       B.    Google at Least had Knowledge of the ITC Investigation Materials

17             Prior to the Court's Scheduling Order Deadline. ...............................13

18       C.    Google had the Implicit IPR Materials prior to the Scheduling

19             Order's Deadline. ...............................................................15

20 V.    AMENDMENT IS NOT PROPER UNDER RULE 15 ...............................18

21       A.    Sonos Will Be Prejudiced by Google's Amendment..........................19

22       B.    Google's Motion is Brought in Bad-Faith. ......................................20

23       C.    Google's Motion was Brought with Undue Delay............................21

24       D.    Google Previously Amended its Pleading...........................................22

25 VI.   Conclusion ...............................................................................22

26

27

28

# TABLE OF AUTHORITIES

**CASES**

*AmerisourceBergen Corp., v. Dialysist West, Inc.*,
    465 F.3d 946 (9th Cir. 2006) .................................................................7, 18

*Ammons v. Diversified Adjustment Services, Inc.*,
    No. 18-cv-06489, 2019 WL 2303831 (C.D.Cal. May 30, 2019) .................15

*Ascon Properties, Inc. v. Mobil Oil Co.*,
    866 F.2d 1149 (9th Cir. 1989) ...............................................................20

*Chronic Tacos Enters,, Inc. v. Chronic Tacos Huntington Beach, Inc.*,
    No. 10-cv-1414, 2011 WL 13225128 (C.D.Cal. Dec. 21, 2011) .................16

*Eminense Cap., LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir 2003) ...................................................................8

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009) ...............................................................15

*Fresno Unified Sch. Dist. V. K. U. ex rel. A.D.U.*,
    980 F.Supp.2d 1160 (E.D.Ca. 2013) .......................................................21

*In re Rosen*,
    No. 16-bk-24731-ER, 2018 WL 3197699 (Bankr. C.D. Cal.
    June 26, 2018)...........................................................................................7

*J.P. Stevens & Co. v. Lex Tex Ltd., Inc.*,
    747 F.2d 1553 (Fed. Cir. 1984) .................................................................4

*Jackson v. Bank of Hawaii*,
    902 F.2d 1385 (9th Cir. 1990) .................................................................21

*Johnson v. Mammoth Recreations, Inc.*
    975 F.2d 604 (9th Cir. 1992) .....................................................................7

*Juno Therapeutics, Inc. v. Kite Pharma*,
    No. 17-cv-7639, 2018 WL 1470594 (C.D. Cal. Mar. 8, 2018)....................15

*Nunes v. Ashcroft*,
    375 805, 908 (9th Cir. 2004) ...............................................................8, 18

SONOS'S OPP. TO GOOGLE'S MTN FOR
LEAVE TO FILE SEC AMEND COMPL.
CASE NO. 2:20-cv-00169-JAK

*Panlilo v. Han*,
    No. 23-cv-689, 2023 WL 9689130 (C.D.Cal. Nov. 9, 2023)............. 7, 14, 15

*Pensmore Reinforcement Technologies, LCL v. Cornerstone*
    *Manufacturing*,
    609 F.Supp.3d 1092 (C.D.Cal 2022)............................................................14

*Reed v. Universal City Studios LLC*,
    No. 24-cv-00119, 2024 WL 4867237 (C.D.Cal. Sept. 10, 2024) ..................8

*Stearns v. Select Comfort Retail Corp.*,
    763 F.Supp.2d 1128 (N.D.Cal.2010)...................................................... 20, 21

*Toutov v. Curative Labs, Inc.*,
    No. 20-cv-11284, 2022 WL 17477125  (C.D.Cal. Dec. 6, 2022) ..................7

*Unsworth v. Air Methods Corporation*,
    No. 20-cv-01967, 2022 WL 3013200 (C.D.Cal. April 12, 2022). ..................7

**RULES**

Fed. R. Civ. P. 16(b)(4)................................................................................7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Sonos opposes and respectfully requests that this Court deny Google's motion for leave to file a Second Amended Answer and Counterclaims ("Motion"). Google seeks to amend its pleading again, now *five months* after the Court's Scheduling Order deadline. *See* D.I. 126. Google's Second Amended Answer and Counterclaims seeks to add a defense for inequitable conduct based entirely on information that Google has known for years. None of Google's excuses set forth in its Motion demonstrate the diligence required by the "good cause" standard of Rule 16. Further, Google's undue delay and bad-faith in bringing this Motion will lead to prejudice to Sonos if granted.

## II.    FACTUAL BACKGROUND

### A.    Initial Case Activity and the ITC Investigation

Sonos filed its original complaint in this case in January 2020 wherein it asserted five patents (U.S. Patent Nos. 9,195,258 ("the '258 Patent); 10,209,953 ("the '953 Patent); 8,588,949 ("the '949 Patent); 9,219,959 ("the '959 Patent); and 10,439,896 ("the '896 Patent)) against Google. D.I. 1.  On the same day, Sonos also filed a complaint at the U.S. International Trade Commission alleging infringement of the same five patents. Inv. No. 337-TA-1191, Complaint ("ITC Investigation"). Pursuant to 28 U.S.C. § 1659, this Court stayed this case pending disposition of the ITC Investigation.  D.I. 30.  During the ITC Investigation and while this case was stayed, the parties engaged in extensive discovery. Though this discovery, Google developed its inequitable conduct defense and pursued it part way through the ITC case.   In particular, Google presented a theory of inequitable conduct for the '896 Patent in its final invalidity contentions and in its pre-hearing brief.  Richter Decl. ¶¶ 2-3, Exs. A-B (Google's ITC Final Invalidity Contentions; Google's ITC Pre-Hearing Brief).  However, Google abandoned this theory after the hearing by failing to include it in its post-hearing brief.  Google confirmed that

SONOS'S OPP. TO GOOGLE'S MTN FOR LEAVE TO FILE SEC AMEND COMPL. CASE NO. 2:20-cv-00169-JAK

the inequitable conduct section of its ITC contentions did not contain Google or third-party confidential information.  Richter Decl. ¶ 6, Ex. E (Chu Email to Richter 9/7/20). It did not contain Sonos confidential information either.  Google now seeks to present the same inequitable conduct theory in this case that it presented in the ITC case.

### B.    Google Has Known These Theories and Materials for Years

Google's inequitable conduct defenses rely on theories and materials that Google has known since 2020.  According to Google, these theories fall into three categories: (i) theories that were presented in the ITC case, (ii) theories that are based on material produced by Sonos in the ITC case, and (iii) theories based on material from IPRs that Sonos filed in 2018 against unrelated patents owned by an unrelated party.

For the first two categories, Google was undisputedly aware of the materials on which these theories are based since at least the time these materials were produced by Sonos during the ITC Investigation in 2020.  In fact, Google raised essentially the same inequitable conduct theory against the '896 Patent in the ITC investigation that it seeks to raise in this case.  Richter Decl. ¶¶ 2-3, Exs. A-B (Google's ITC Final Invalidity Contentions; Google's ITC Pre-Hearing Brief). Although Google now expands on these theories and seeks to assert them against a wider set of patents in this case, these theories are based on the same discovery that Sonos produced during the ITC investigation in 2020.

For the third category, Google relies on evidence produced by a third party named Implicit, LLC ("Implicit") in IPRs that Sonos filed against Implicit in 2018. These IPRs were filed by Sonos in response to Implicit asserting two patents against Sonos in a lawsuit filed in March 2017. *See Implicit, LLC v. Sonos, Inc.*, 1-17-cv-00259 (D. Del. March 10, 2017).

In these IPRs, Sonos asserted that a prior art reference referred to as Janevski, either alone or in combination with other art, invalidated the Implicit

SONOS'S OPP. TO GOOGLE'S MTN FOR LEAVE TO FILE SEC AMEND COMPL. CASE NO. 2:20-cv-00169-JAK

patents.  In response, Implicit presented evidence and arguments that it conceived of the Implicit patents before the prior art date of Janevski.  Sonos argued that the evidence did not demonstrate conception or evidence reduction to practice because the evidence did not practice the claims of the Implicit patents.  The PTAB agreed with Sonos that the evidence did not demonstrate prior conception and invalidated the Implicit patents over the Janevski reference and the other prior art.  Google now seeks to rely on this evidence and argument concerning the conception of the Implicit patents in some of its inequitable conduct theories concerning the Sonos patents.

However, Google was keenly aware of these Implicit IPRs, including the evidence cited therein, at least as early as 2020.  In fact, Google discovered the Janevski reference based on its knowledge of these Implicit IPRs, relying on Janevski as its chief invalidity reference in the ITC against Sonos's '258 and '953 Patents.  Moreover, in the ITC, Google's expert referenced the Implicit IPRs no fewer than a dozen times in his expert report.  Richter Decl. ¶ 4, Ex. C (Schonfeld's Opening Expert Report).  Google even made certain filings from the Implicit IPR into exhibits for the ITC hearing.  *Id.*, Exs. F-G (ITC Exhibits RX-0733 (IPR Petition), RX-0735 (Sonos's IPR Reply brief)).  All the evidence, arguments, and briefing from these IPRs were filed publicly and thus publicly-available as of their filing dates throughout 2018 and 2019.  Given Google's extensive citation to, and reliance on, these IPR materials in the ITC case, Google has been undisputedly aware of these IPRs, and the evidence cited therein, since at least 2020.

### C.    The Parties' Initial Pleadings and Cross-Use Agreements

Throughout this case, Sonos's position has consistently been that the parties are able to cross-use the discovery taken in the ITC for purposes of this case.  As an example, as early as July 3, 2024, the parties filed a joint report updating the Court on the status of the ITC appeal.  D.I. 54.  In this report, Sonos proposed that

SONOS'S OPP. TO GOOGLE'S MTN FOR LEAVE TO FILE SEC AMEND COMPL. CASE NO. 2:20-cv-00169-JAK

1   the Court lift the stay and the "entire record from, and discovery taken in, the ITC

2   should become part of the record and be otherwise available for use in this

3   case…." *Id.* at 10.

4          Although the Court did not lift the stay at this time, the Court did partially

5   lift the stay on September 20, 2024 (D.I. 63) and then fully lifted the stay in

6   December 2024 (D.I. 70).  During this time, Sonos filed its Second Amended

7   Complaint (D.I. 68) and Google filed its Answer (D.I. 69).  In its Answer, Google

8   did not raise an inequitable conduct defense.  At best, Google raised a one-sentence

9   "unenforceability" defense in which it concluded that "the asserted patents are

10  unenforceable," without any articulation of which patents are unenforceable and on

11  which grounds (possible grounds for unenforceability include patent misuse,

12  unclean hands, inequitable conduct, laches, and estoppel, with each requiring

13  different elements and different pleading standards).  *See J.P. Stevens & Co. v. Lex*

14  *Tex Ltd., Inc.*, 747 F.2d 1553, 1561 (Fed. Cir. 1984) (discussing "unenforceability"

15  defenses generally under 35 U.S.C. 281(b)(1)).

16

17  

18          **THIRD DEFENSE – UNENFORCEABILITY**

19          On information and belief, Sonos is not entitled to any relief against Google in

    this action because the asserted patents are unenforceable.

20

21  D.I. 69 at 63.

22          Following this, the parties submitted a proposed schedule and began

23  negotiating discovery stipulations.  For instance, on March 11, 2025, the Court

24  entered a schedule pursuant to Federal Rule of Civil Procedure 16.  D.I. 77.

25  Relevant to this dispute, the Court set a deadline to amend pleadings for May 5,

26  2025.  *Id.*  On April 4, 2025, Google sent Sonos a proposed discovery stipulation,

27  including the following language:

28

SONOS'S OPP. TO GOOGLE'S MTN FOR
LEAVE TO FILE SEC AMEND COMPL.
CASE NO. 2:20-cv-00169-JAK

Each party may use any discovery, including any document, interrogatory response, response to request for admission, privilege log, or deposition transcript that was produced or offered by the other party in USITC Investigation No. 337-TA-1191 ("ITC Investigation") as if the discovery had been provided in this lawsuit.

Any document or information used in this action that was previously produced in the ITC Investigation shall be used and treated with the same level of confidentiality for purposes of this action (e.g., a document designated by a party to the ITC Investigation as "Confidential Business Information" shall be treated as "HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY" pursuant to the terms of the Parties' forthcoming Stipulated Protective Order) as an initial matter, but may be re-designated pursuant to the terms of the Stipulated Protective Order.

This stipulation shall constitute written permission of the Parties under the protective order entered in the ITC Investigation to allow the other party to this stipulation to retain, solely for potential use in this lawsuit, the Confidential Business Information supplied by each of the parties in the ITC Investigation, subject to treatment of such information as "HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY" as provided in the preceding paragraph.

Any confidential portions of the Record from the ITC Investigation transferred to the District Court pursuant to 28 USC § 1659 shall be used and treated by the Parties in this action as "HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY" pursuant to the terms of the Stipulated Protective Order.

Richter Decl. ¶ 5, Ex. D. Sonos agreed with this, and after negotiating the language in other sections, this discovery stipulation was filed on April 28, 2025. D.I. 78.

### D.    Google's First Amended Pleading

On the Court-ordered deadline to amend pleadings, which was May 5, 2025,

SONOS'S OPP. TO GOOGLE'S MTN FOR LEAVE TO FILE SEC AMEND COMPL. CASE NO. 2:20-cv-00169-JAK

Google moved for leave to amend its pleading to bring counterclaims asserting infringement of two Google patents. D.I. 79. Despite that Google knew that it had not raised any inequitable conduct defense in its prior pleading, it was aware of all the theories and material underpinning such a defense, and the parties had just agreed that all ITC discovery could be used in this case, Google made no effort to include an inequitable conduct defense in its May 5 amendment or otherwise extend the May 5 deadline to allow Google time to evaluate material that it contends it was only recently allowed to evaluate. Rather, Google's May 5 amendment proceeded to request leave only to allow Google to assert its own patents against Sonos.

The Court permitted Google's amended pleading on July 15, 2025. D.I. 97. In response to this amended pleading, Sonos prepared and filed its answer and counterclaims asserting a defense of inequitable conduct based on a demonstrable pattern of behavior over 10 years by Google's in-counsel repeatedly failing to cite material prior art and information to the patent office in an effort to obtain patents on technology that Sonos had accused Google of infringing. D.I. 124.

### E.    Google's Untimely Second Motion for Leave

Nearly three months after Google's first motion for leave to amend, on July 29, 2025, Google informed Sonos that it had "confidential information relevant to . . . inequitable conduct" that it wished to supplement its contentions with. Zivojnovic Decl., Ex. 6. Sonos informed Google that merely supplementing contentions would not be sufficient to raise new defenses in the case that are not adequately preserved in the pleadings, such as inequitable conduct. *Id.* Google then waited another eight weeks before it filed the present motion for leave to amend its pleading to the inequitable conduct theories it had identified in July.

### III.    LEGAL STANDARD

A "scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson v. Mammoth*

*Recreations, Inc.* 975 F.2d 604, 610 (9th Cir. 1992) (citation omitted). Federal Rule 16 was drafted to prevent parties from disregarding the scheduling order, as disregard of the scheduling order "would undermine the court's ability to control its docket, disrupt the agreed-upon course of litigation, and reward the indolent and the cavalier." *Id.* Accordingly, the party requesting to amend the schedule must satisfy "the more stringent 'good cause' showing required under Rule 16." *AmerisourceBergen Corp., v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006); *see also Toutov v. Curative Labs, Inc.*, No. 20-cv-11284, 2022 WL 17477125, at * 1 (C.D.Cal. Dec. 6, 2022) (citing Fed. R. Civ. P. 16(b)(4)); *Johnson*, 975 F.2d at 608 (recognizing where a party moves to amend a pleading beyond the deadline set in the scheduling order, it must first show "good cause" for relief from that deadline).

The "primary consideration when determining good cause is the diligence of the party seeking leave to amend." *In re Rosen*, No. 16-bk-24731-ER, 2018 WL 3197699, at *2 (Bankr. C.D. Cal. June 26, 2018). In deciding whether a party was diligent, the Court should "inquire 'whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *AmerisourceBergen Corp.*, 465 F.3d at 953; *see also Panlilo v. Han*, No. 23-cv-689-JFW, 2023 WL 9689130, at *2 (C.D.Cal. Nov. 9, 2023) (denying motion for leave where the party "waited nearly five months after the deadline" to amend "despite the fact that the majority of the allegedly newly discovered evidence was known to him prior to his filing of th[e] action.")

If the Court finds that Google was "not diligent, the inquiry should end" and the Court should deny the Motion. *Id.* Only if the Court determines that Google has established "good cause" under Rule 16, should the "Court consider whether the amendment is proper under Rule 15." *Unsworth v. Air Methods Corporation*, No. 20-cv-01967, 2022 WL 3013200, at * 1 (C.D.Cal. April 12, 2022). Courts within the Ninth Circuit consider five factors to determine whether to grant leave to

amend under Rule 15(a): "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of the amendment; and (5) whether the [party] had previously amended his [or her] complaint." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). While "prejudice is the touchstone of the inquiry under rule 15(a)", the Court may still deny the amendment if there is "a 'strong showing' under the other factors." *Reed v. Universal City Studios LLC*, No. 24-cv-00119, 2024 WL 4867237, at *2 (C.D.Cal. Sept. 10, 2024); *see also Eminense Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir 2003).

## IV.    GOOGLE FAILS TO ESTABLISH GOOD CAUSE UNDER RULE 16

If Google desired to raise an inequitable conduct defense to Sonos's November 2024 Complaint, it was incumbent on Google to either include this defense in its Answer or amend its Answer before the Court-ordered deadline to amend pleadings.  Having done neither, Google now seeks leave to amend its pleading to assert this defense over five months after the deadline to amend pleadings.  Why did Google wait so long?  According to Google, it was not permitted to use the materials on which its inequitable conduct theories are based until only recently when the protective rder in this case was entered and when Sonos confirmed that third-party confidential information could be used as well.

However, as Sonos demonstrates below, this was not the case and Google was permitted to use the materials at least as early as the parties' cross-use stipulation was filed on April 28, 2025. As such, Google could have and should have complied with the Court-ordered May 5 deadline for amending pleadings. Alternatively, if Google needed a short extension on the May 5 deadline to refresh itself on the material, it could have and should have sought that contemporaneous with its prior motion for leave (D.I. 79).  Instead, Google sat on its hands for five months.  Its manufactured reasons for waiting so long fail to hold water and do not demonstrate the diligence required by Rule 16's "good cause."

SONOS'S OPP. TO GOOGLE'S MTN FOR
LEAVE TO FILE SEC AMEND COMPL.
CASE NO. 2:20-cv-00169-JAK

**A.    Google had Knowledge of the ITC Materials, Access to the ITC Materials, and the Ability to Rely on the ITC Materials Prior to the Court's Deadline**

Google was not diligent in seeking to amend its pleading to assert its inequitable conduct theories based on ITC materials. As set forth above, these theories rely on information that was produced to Google in the ITC Investigation in 2020. In fact, Google seeks leave to present the same theories it presented during the ITC (even though Google ultimately abandoned those theories right after the ITC hearing), as well as new theories it purportedly just came up with based on the same set of 2020-produced information.

Google has been able to use the ITC materials it seeks to now rely upon since at least April 28, 2025. As set forth above, on this day the parties filed a Joint Discovery Stipulation which permitted the cross-use of the ITC Investigation Materials as if they had been produced in this matter. *See* D.I. 78. As the stipulation set forth, this constituted express permission under the ITC protective order to use the ITC discovery as if it had been produced in this lawsuit. D.I. 78 ("Each party may use any discovery, including any document . . . or deposition transcript that was produced or offered by the other party [the ITC Investigation] as if the discovery had been provided in this lawsuit.").

Google claims that, despite this agreement, it was not able to actually use the ITC material until after the Court entered the parties' stipulated protective order on August 15, 2025. However, this is not true and is belied by Google's own conduct.

As one example, Google was already using the ITC material prior to the deadline to amend pleadings, when on April 24, 2025 (and again on April 28, 2025) it served initial invalidity contentions (and amended invalidity contentions), which specifically referenced its inequitable conduct arguments from the ITC case. Zivojnovic Decl., Exs. 2-3. Indeed, in its contentions, Google asserted the following:

SONOS'S OPP. TO GOOGLE'S MTN FOR
LEAVE TO FILE SEC AMEND COMPL.
CASE NO. 2:20-cv-00169-JAK

> ### A.    Inequitable Conduct
>
> The Asserted Patents are unenforceable due to inequitable conduct committed by the inventors, attorneys, and/or applicants during prosecution. *See* Initial Determination (public version) in 337-TA-1191 ITC investigation (noting allegations of same).

Google could only have known about the inequitable conduct arguments from the ITC case for its invalidity contentions in this case based on its review of the ITC material, which it argues now that it was not able to do. To be sure, Google's invalidity contentions cite the public version of the ITC's Initial Determination in an effort to make it seem like it was not reviewing the underlying ITC material. *See e.g.* Zivojnovic Decl., Ex. 2 at 248. However, the ITC's Initial Determination did not reference inequitable conduct because Google had already abandoned this defense by the time the Initial Determination came out. As such, Google must have reviewed the ITC material.

As another example, Google's counsel wrote to Sonos on July 29, 2025 indicating that it had "confidential information relevant to . . . inequitable conduct" that it wished to supplement its contentions with. Zivojnovic Decl., Ex. 6. Here too, Google could only have known this based on its review of the ITC material, which meant that Google was using this material prior to entry of the August 15, 2025 protective order despite arguing to the Court now that it was not permitted to do so.

But the salient point remains that the parties agreed by April 28 that they could each use all discovery from the ITC as if it had been produced in this case. There was no caveat – as Google now contends (Motion at 12) – that the parties could only use the ITC material once the parties' stipulated protective order for this case was entered.

Google quotes the following paragraph from the cross-use stipulation in an

SONOS'S OPP. TO GOOGLE'S MTN FOR
LEAVE TO FILE SEC AMEND COMPL.
CASE NO. 2:20-cv-00169-JAK

attempt to argue that its understanding was that it could not use ITC material until the parties' protective order was entered in this case -- but Google's quotation omits the highlighted language:

> Any document or information used in this action that was previously produced in the ITC Investigation shall be used and treated with the same level of confidentiality for purposes of this action (e.g., a document designated by a party to the ITC Investigation as "Confidential Business Information" shall be treated as "HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY" pursuant to the terms of the Parties' forthcoming Stipulated Protective Order) as an initial matter, but may be re-designated pursuant to the terms of the Stipulated Protective Order.

D.I. 78 (highlighting added).

More specifically, Google relies on the "*pursuant to the terms of the Parties' forthcoming Stipulated Protective Order*" language and argues that its understanding was that this sentence meant that any previously produced ITC document could only be protected under the parties' forthcoming protective order. But that is an overly strained reading of that sentence and the paragraph. This paragraph clearly states that the ITC documents shall have the same level of confidentiality in this case as they did in the ITC case and then used the "HIGHLY CONFIDENTIAL" (HC-AEO) tier of the parties' forthcoming protective order as an ***example*** tier under which an ITC document could be treated. The "*pursuant to the terms of the Parties' forthcoming Stipulated Protective Order*" language appears in an "e.g." parenthetical denoting that the parties would agree to treat an ITC document previously designated with a given level of confidentiality with the same level of confidentiality in this case, ***e.g.,*** the HC-AEO tier under the parties' forthcoming protective order. This language does not state that the parties may not use any ITC material until the parties' forthcoming protective order is entered.

Nor would this have made sense. The other paragraphs of the cross-use

stipulation clearly state that the parties "may use" any discovery from the ITC case as if it had been produced in this case.  This was the entire purpose of this section of the cross-use stipulation.  And the Court's Initial Patent Order (D.I. 13) applies a default protective order in the interim before any supplemental protective order negotiated by the parties, stating:

> Absent a Court order, discovery cannot be withheld on the basis of confidentiality. The Court's Standing Protective Order shall govern discovery unless the Court enters a different protective order…

D.I. 13 at 24.  This same document sets forth this default protective order, which applies CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, and HIGHLY CONFIDENTIAL - SOURCE CODE tiers.  *Id.* at 65-75.

Given the applicability of this default protective order and the otherwise clear provision in the cross-use stipulation that all ITC discovery could be used in this case and treated with the same level of confidentiality, Google has no basis to have concluded that it was not able to use the ITC material for purposes of complying with the May 5 deadline.  But even if this were Google's honest assessment of the cross-use stipulation and not just revisionist history for purposes of this motion, Google was still not diligent in seeking leave to amend.  Because Google knew of its inequitable conduct theories back in 2020, it knew about them while the parties were participating in the Rule 26 conference in February 2025 and knew about them at the time the Court entered the schedule under Rule 16 in March 2025.  There was no reason Google could not have brought this matter to the Court at that time to request, for instance, a 30-day extension on the May 5 deadline because (in Google's view) the cross-use stipulation did not allow use of ITC material until entry of the protective order.  That would have evidenced diligence.  Waiting until five months after the deadline passes and then arguing it knew it couldn't have met the deadline all along does not evidence diligence.

Finally, Google claims that Sonos did not consent to use of "third-party confidential material until September 2025" and this prevented Google from using such third-party material sooner. But this is a red herring because Google does not rely on any material protected by the confidentiality interests of third parties (or even Sonos). To be sure, Google relies on a deposition transcript of a third party witness (who is an ex-Sonos employee). But this third party did not exercise his own confidentiality. Sonos designated the transcript confidential. But in any event, Sonos confirmed to Google that the portions it relied on for purposes of its proposed amended complaint did not contain Sonos (or third party) confidential information.

## B.    Google at Least had Knowledge of the ITC Investigation Materials Prior to the Court's Scheduling Order Deadline.

Even assuming Google is correct (it is not) that it could not _**file**_ its Second Amended Answer until the parties' protective order was entered, Google does not provide any reasonable basis for why it did not seek leave to _**modify**_ the Court's scheduling order earlier. Notwithstanding the ITC Protective Order, the parties' cross-use stipulation, and the protective order, the fact remains that Google had actual knowledge of the facts underlying its inequitable conduct theories based on the ITC materials since at least 2020. There is nothing "new" about this information. Google admits as much. *See* Motion at 1 ("Much of [Google's] inequitable conduct defense was already litigated in the prior ITC Investigation."); *see also* Richter Decl. ¶ 2., Ex. A ("Google's ITC Final Invalidity Contentions.").

Google's only argument in response is that: (1) only some of its team members were privy to the ITC Investigation Materials and (2) the ITC Investigation's Protective order precluded those team members from sharing knowledge gained in those documents.[1] But Google fails to explain why those

---

[1] As stated above, this is not true. *See supra* § IV.A.

SONOS'S OPP. TO GOOGLE'S MTN FOR LEAVE TO FILE SEC AMEND COMPL. CASE NO. 2:20-cv-00169-JAK

team members privy to that information failed to request the Court modify the scheduling order when it ***became apparent*** that Google was going to be unable to amend its Answer by the deadline. *See Panlilo*, 2023 WL 9689130, at *2 (noting to demonstrate diligence "the moving party is required to show:… that it was ***diligent in seeking amendment of the scheduling order once it became apparent it could not comply with the order***.")

Instead of seeking to extend the Scheduling Order's deadline for amendments, Google forged ahead with different tactics. Google served Invalidity Contentions on Sonos wherein it stated that "[d]ocuments that formed the basis for Google's invalidity and unenforceability arguments in [the ITC investigation] have not yet been produced in this litigation, and thus Google cannot rely on those documents in this litigation at this time." Zivojnovic Decl., Ex. 3. Google even states, prior to the Court's deadline to amend the scheduling order, that it anticipated raising "all invalidity and unenforceability arguments based on those raised in [the ITC Investigation] also in this litigation." *Id*. According to Google these references purport to include Google's unpled theory of inequitable conduct. Motion at 11-12. Accordingly, as of April 28, 2025, a week before the scheduling order's deadline to amend, Google's entire team was aware or should have been aware that it needed to amend its affirmative defenses to include inequitable conduct.[2]

It is well-known that a defense of inequitable conduct cannot be inferred by a party's general defense of unenforceability and instead must be plead with particularity under Rule 9(b). *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575

---

[2] Inequitable Conduct must be pled. Under Rule 9(b), the party seeking to assert inequitable conduct is required to "allege with specificity the following: (1) knowledge of the uncited reference; knowledge of the reference's materiality; and (3) the specific intent to deceive the PTO by withholding that reference." *Pensmore Reinforcement Technologies, LLC v. Cornerstone Mfg. & Distrib., Inc.* , 609 F.Supp.3d 1092, 1102 (C.D.Cal 2022).

SONOS'S OPP. TO GOOGLE'S MTN FOR LEAVE TO FILE SEC AMEND COMPL. CASE NO. 2:20-cv-00169-JAK

F.3d 1312, 1325-27 (Fed. Cir. 2009). Moreover, a party's contentions are not a substitute for the pleading requirements of the Federal Rules. *Juno Therapeutics, Inc. v. Kite Pharma*, No. 17-cv-7639, 2018 WL 1470594, at *4 (C.D. Cal. Mar. 8, 2018) ("[T]his Court sides with those finding that parties cannot simply provide a barebones pleading in reliance on the more detailed invalidity contentions that are forthcoming. To do so would only serve to undermine Rule 8 and its fair notice requirement.").

It was Google's responsibility to plead its alleged affirmative defense of inequitable conduct in its Answer if it desired to raise one in this case. Google's own carelessness concerning the deadline to amend and its ability (real or perceived) to use the material on which the defense is based is no excuse under Rule 16. *Johnson*, 975 F.2d at 609 ("Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.").

At the very least, Google could have (and should have) filed its motion to amend the scheduling order prior to the deadline. *See Ammons v. Diversified Adjustment Services, Inc.*, No. 18-cv-06489, 2019 WL 2303831, at * 2 (C.D.Cal. May 30, 2019) (party's excuse for delay, "did not explain [the party's] failure to seek relief from the Scheduling Order before the deadline expired…."). That motion would not have required the disclosure of confidential ITC materials – just as Google's Motion here does not disclose any confidential ITC materials. Instead, Google could have (and should have) alerted the Court that it was "apparent that [it] could not comply with the order" at that time. *Panlilo*, 2023 WL 9689130, at *2.

### C.    Google had the Implicit IPR Materials prior to the Scheduling Order's Deadline.

The other inequitable conduct theories Google wishes to present are based on publicly-available IPR material. As such, these theories do not implicate the ITC protective order, the parties cross-use stipulation, or Google's understanding

of when it was able to use ITC material. Accordingly, Google must establish good cause explaining why it was diligent in moving for leave to amend its answer five months after the Court-ordered deadline for these theories as well. Google has utterly failed to demonstrate this good cause because Google was anything but diligent.

As to its theories based on the IPR materials, Google contends (at 9) that it "could not have identified this inequitable conduct earlier" because the "allegations are distilled from large public records" and "required extensive analysis." Tellingly, however, Google fails to identify when it first became aware of this material, how long such "extensive analysis" took, and why it was otherwise diligent in seeking to amend its pleading to assert this theory. *See Chronic Tacos Enters,, Inc. v. Chronic Tacos Huntington Beach, Inc.*, No. 10-cv-1414, 2011 WL 13225128, at *2 (C.D.Cal. Dec. 21, 2011) (denying motion for leave because movant did not disclose when it learned of the information). Google is silent here because the facts bear out that Google has, like the other ITC materials, been aware of the IPR materials since at least 2020. As set forth above, Google has been aware of these IPRs since at least as early as the ITC case in 2020. *See supra* § II.B. There, its expert cited to these IPRs no fewer than a dozen times throughout his expert report. *See* Richter Decl. ¶ 4, Ex. C. And Google relied on the same prior art reference Sonos used in these IPRs for purposes of Google's ITC invalidity defenses. Moreover, Google had in its possession several filings from this IPR and in 2020 designated them as exhibits for the ITC hearing. *Id.*, Exs. F-G. Thus, Google was undisputedly aware of this IPR and nothing stood in the way of Google developing and presenting inequitable conduct theories based on this material in its initial pleadings in this case or even by the May 5, 2025 deadline.

Google distracts from its own knowledge of the IPR materials by attempting to shift the blame to Sonos, arguing (Motion at 9) that Sonos never produced them. But Google never asked for them. And it had no need to ask for them because it

was already aware of them.  Google claims that the IPR materials were responsive to two out of 91 requests for production (so far).  They are not.

Request No. 13 requests:

> *All Prior Art or potential Prior Art provided to, received from, or identified to or by prosecution counsel for or during the preparation and prosecution of the Asserted Patents.*

Zivojnovic Decl., Ex. 9 at 20. This request does not call for evidence from IPRs unrelated to Sonos's patents.  The IPR materials are not prior art to the Sonos patents and no one has ever claimed that they are (prior to Google's proposed inequitable conduct theory now).  Instead, they are purported evidence of prior invention of unrelated patents that are owned by an unrelated party (though Sonos disputes that this evidence amounts to even that, as Sonos was successful in invalidating the third-party patents despite this evidence).

Moreover, based on Sonos's objections to this request, Sonos did not agree to produce any documents in response to this request, further stating that "after a reasonable Investigation, all persons with the obligation to disclose information material to patentability under 37 CFR 1.56(c) did so – thus, any such information which was considered material to patentability is disclosed on the faces of the Asserted Patents – all of which is in the public record and already has been provided…." *Id*. at 21. Google never took issue with or otherwise raised or disputed Sonos's objections or response.

Request No. 53 requests:

> *The Documents and Communications Regarding any Prior Art, Including Your awareness of Prior Art, the date and circumstances pursuant to which You first learned of such Prior Art, and any effort by or on behalf of You to locate Prior Art.*

*Id*. at 61. Again, this request does not call for evidence from IPRs unrelated to

SONOS'S OPP. TO GOOGLE'S MTN FOR
LEAVE TO FILE SEC AMEND COMPL.
CASE NO. 2:20-cv-00169-JAK

Sonos's patents. And based on Sonos's objections, Sonos stated only that it "has produced or will produce the file histories of the Asserted Patents to the extent that any exist, are in the possession, custody or control of Sonos, and can be located following a reasonable search." *Id*. Here too, Google never took issue with or otherwise raised or disputed Sonos's objections or response.

Notwithstanding that the IPR materials were not responsive and Sonos made no agreement to produce any scope of documents that would have covered these IPR materials, Google was already aware of the IPR materials since at least 2020 when its expert referred to them *ad nauseum* and Google relied on filings from these IPRs for purposes of raising prior art against Sonos and for its ITC exhibits. Accordingly, given that Google has known about these IPR materials for 5+ years, nothing (except its own lack of diligence) prevented Google from evaluating these materials prior to the pleading-amendment deadline and amending its pleading at that time to assert these theories. Google has not established good cause for its lack of compliance with the Court's scheduling order for its theories based on the IPR materials.

## V.  AMENDMENT IS NOT PROPER UNDER RULE 15

If this Court has determined that Google was not diligent, its inquiry should end and the motion should be denied. S*ee AmerisourceBergen Corp.*, 465 F.3d at 946. If this Court has not reached that conclusion, it should next consider: (1) the impact and prejudice Google's late Motion has on Sonos; (2) how Google's conduct demonstrates its bad-faith and undue delay; (3) how the Second Amended Answer advances a futile argument; and (4) how Google failed to previously alleges these theories in its First Amended Answer and Counterclaims. *See Nunes*, 375 F.3d at 808.  For sake of brevity of this opposition, Sonos does not advance any argument that the amendment is futile, but reserves such argument for later in the case.

### A.    Sonos Will Be Prejudiced by Google's Amendment

Since the litigation between the parties began in January 2020, Google's strategy has included multiplying the proceedings to maximize the amount of money Sonos must spend to enforce its patent rights.  Indeed, as laid out in Sonos's answer to Google's counterclaims (D.I. 124, ¶1), in response to Sonos asserting its patents against Google, Google initiated a multitude of baseless retaliatory suits against Sonos around the world.  Google filed suits against Sonos in San Francisco, California, at the International Trade Commission, in Germany, in the Netherlands, and in Canada.  *Id*. Each one of these suits has failed either because Google's patents were held invalid, ineligible, or not infringed (or some combination of these).  But they've achieved their goal of causing Sonos to expend valuable resources, all for the sin of attempting to hold a much bigger company accountable for its infringement.

In the ITC, Sonos prevailed on establishing infringement (and no invalidity) on each one of the five patents it asserted at the ITC, which are also asserted here. When this case returned, the parties should have had a streamlined route to a trial given that they already litigated a big piece of the case and Google had, to no avail, scoured the Earth in search of prior art and unenforceability theories.  Instead, Google has made every effort to continue its strategy to multiply these proceedings by indicating it will relitigate all the positions it previously lost.  But, not being satisfied with this, it also expanded this case by asserting its own patents from a family that it already asserted – and lost – against Sonos.  It now seeks to expand this case again with inequitable conduct theories that it could have but didn't bring earlier.

The prejudice to Sonos stems from the ever-growing expansion of this case. In March 2025, this court set an aggressive schedule, with contentions exchanged in April, amendment to pleadings occurring no later than May, *Markman* taking place in July, and fact discovery cut-off in January 2026.  D.I. 78.  Google has

SONOS'S OPP. TO GOOGLE'S MTN FOR
LEAVE TO FILE SEC AMEND COMPL.
CASE NO. 2:20-cv-00169-JAK

already sought once to blow up this schedule by waiting until the last day to seek amendment and then requesting leave to add its own patents in the case.  D.I. 79. As a result, the case has expanded, the parties have increased discovery limits, and the schedule was pushed back.  D.I. 128. Five months after this, and in the middle of the case, Google *again* requests leave of court to further expand the case to raise a defense that it has known about since 2020.  Aside from a complete lack of diligence and a weak post-hoc revision of the cross-use stipulation, this defense would also greatly increase the scope of discovery and disruption to Sonos. Google suggests that some discovery has already been taken in 2020, but Google hasn't committed to solely relying on this discovery and ITC theories it previously raised.  Instead, it has raised new theories, which will undoubtedly require Google to re-depose the party and third-party witnesses as well as multiply written discovery.  This Court should not permit Google to continue with its maximizing-litigation-cost strategy and should limit this case to scope of the pleadings that have complied with the scheduling order.

### B.    Google's Motion is Brought in Bad-Faith.

Google's bad faith in bringing this Motion is demonstrated not only by its unexplained and lengthy delay in seeking to add its inequitable conduct theories, but also by its hollow suggestion that its inequitable conduct has been pending this entire time. *See Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989) (The Court found that party's assertion that its claim was "proceeding all the time" sounded "hollow" and came "close to bad faith."); *see also Stearns v. Select Comfort Retail Corp.,* 763 F.Supp.2d 1128, 1159 (N.D.Cal.2010) ("Examples of bad faith have included – but are not limited to – instances in which a party makes a claim without alleging any newly discovered facts…" ). Google relies on a bare bone recitation of "unenforceability" and its short reference to inequitable conduct theories in its Invalidity Contentions to suggest that these theories have been present all along.  But they demonstrably have not.

SONOS'S OPP. TO GOOGLE'S MTN FOR LEAVE TO FILE SEC AMEND COMPL. CASE NO. 2:20-cv-00169-JAK

Google's First Amended Answer and Counterclaims only alleged "unenforceability," but Google failed to plead any facts in support – let alone facts that would support a finding of inequitable conduct or even an identification of a viable theory. D.I. 101. Google's Invalidity Contentions are not a substitute for its pleading requirements under Rule 9(b).  In any event, the Invalidity Contentions provided woefully insufficient allegations related to inequitable conduct – despite acknowledging that Google had such theories. *See* Zivojnovic Decl., Exs. 2-3. Notably, Google's contentions were silent as to the IPR Materials, which it could have relied upon at any time, given they did not implicate confidentiality.

Moreover, the timing of Google's amendment smacks of tit-for-tat tactics. Google's premise that it was unable to use the ITC material prior to entry of the parties' protective order falls down upon closer examination of the facts.  And once this premise is wiped away, it is clear that Google is raising this defense as retaliation for Sonos raising its defense.  Sonos timely raised an inequitable conduct defense against the new patents that Google injected into the case.  D.I. 124.  Apparently, Google was not satisfied that Sonos alleged an inequitable conduct defense for Google's patents but Google had already chosen not to allege this defense for Sonos's patents.  Thus, Google untimely seeks to inject this defense into the case to distract from the defense that Sonos timely raised.  This tactic evinces bad faith and should not be rewarded.

## C.    Google's Motion was Brought with Undue Delay

Google's lack of diligence – set forth above – demonstrates its undue delay. And while "delay alone does not justify denial of leave to amend, 'late amendments to assert new theories are not reviewed favorably when the facts and theory have been known to the party seeking amendment since the inception of the cause of action.'" *Stearns*, 763 F.Supp.2d at 1159 (*citations omitted*); *See also Fresno Unified Sch. Dist. V. K. U. ex rel. A.D.U.*, 980 F.Supp.2d 1160, 1176 (E.D.Cal. 2013) (applying the same to when the "party knew or should have

SONOS'S OPP. TO GOOGLE'S MTN FOR LEAVE TO FILE SEC AMEND COMPL. CASE NO. 2:20-cv-00169-JAK

known facts and theories raised in the proposed amendment at the time it filed.") (citing *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990)).

As detailed above, Google has known, or should have known, about the facts and theory that it now seeks to add in its Second Amended Answer since at least 2020. Google therefore knew about these theories before it filed its Answer and its First Amended Answer and Counterclaims. D.I. 76.

### D.    Google Previously Amended its Pleading

Google has previously filed a motion to amend its Answer and Counterclaims. D.I. 76. It did so on the Court's May 5 deadline, whereupon Google added counterclaims of patent infringement against Sonos. D.I. 79. As explained, Google was aware of the underlying facts that it now seeks to add to its Second Amended Answer at that time.  But it chose not to raise them. Instead, Goole now seeks to add these claims after Sonos asserted the claims of inequitable conduct of its prosecution of the Google's patents in response to its amendment.

### VI.    Conclusion

For the foregoing reasons, this Court should deny Google's motion for leave to file a Second Amended Answer and Counterclaims.


Dated:  October 20, 2025             ORRICK HERRINGTON & SUTCLIFFE LLP
                                     *and*
                                     LEE SULLIVAN SHEA & SMITH LLP

                                     By: */s/ Alyssa Caridis*
                                         Alyssa Cardis

                                     *Attorneys for Sonos, Inc.*