QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Melissa J. Baily (SBN 237649)
melissabaily@quinnemanuel.com
James D. Judah (SBN 257112)
jamesjudah@quinnemanuel.com
Ognjen Zivojnovic (SBN 307801)
ogizivojnovic@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875–6600
Fax: (415) 875–6700

Lance Yang (SBN 260705)
lanceyang@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443–3000
Fax: (213) 443–3100

*Attorneys for Defendant Google LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| SONOS, INC., <br><br> *Plaintiff–Counterclaim Defendant*, <br><br> vs. <br><br> GOOGLE LLC, <br><br> *Defendant–Counterclaimant*. | CASE NO. 2:20–cv–00169–JAK (DFM) <br><br> **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ITS ANSWER AND COUNTERCLAIMS** <br><br> Judge:       Hon. John A. Kronstadt <br> Hearing Date:  November 10, 2025 <br> Hearing Time:  8:30 a.m. <br> Courtroom:    10C <br><br> Complaint Filed: Jan. 7, 2020 <br> Trial Date: None Set |

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................................ 1

II. GOOGLE SATISFIES THE RULE 16 GOOD CAUSE STANDARD ........... 2

   A. Google Was Required To Wait For The SPO Before Adding Its Inequitable Conduct Defense .................................................................. 2

      1. The Joint Discovery Stipulation Did Not Allow Google's Use Of ITC Materials Until The SPO Was Entered ..................... 2

      2. Google Repeatedly Informed Sonos Of Google's Intent To Plead Inequitable Conduct When The SPO Was Entered, And Sonos Did Not Object Until Now ........................................... 4

   B. Google's Timing After The SPO Entry Demonstrates Diligence .......... 6

III. GOOGLE'S AMENDMENT IS PROPER UNDER RULE 15 ....................... 7

   A. Sonos Faces No Undue Prejudice ........................................................ 7

      1. Sonos Knew About These Theories For Months Or Years .......... 7

      2. Most Discovery Was Already Taken In The ITC Investigation ................................................................................ 7

      3. Sonos's "Multiplying Proceedings" Argument Is Baseless ......... 8

   B. Google Has Not Acted In Bad Faith ..................................................... 8

      1. Timing Was Driven by the SPO, Not Tactics .............................. 8

      2. Google's Defense Is Substantive, Not Dilatory ........................... 9

   C. There Is No Undue Delay ..................................................................... 9

   D. The Amendment Is Not Futile ............................................................ 10

   E. Google Has Not Amended This Defense ........................................... 10

IV. CONCLUSION ....................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

### Cases

*Ascon Properties, Inc. v. Mobil Oil Co.*,
  866 F.2d 1149 (9th Cir. 1989) ............................................................................. 9

### Statutes

28 USC § 1659 ........................................................................................................ 3

### Other Authorities

Fed. R. Civ. P. 9(b) ................................................................................................. 9

## I. INTRODUCTION

Google's inequitable conduct pleadings are based on confidential Sonos documents that were subject to the Protective Order in the ITC Investigation, and, as a result, Google could not use that information in this case until entry of the SPO on August 15, 2025.[1]  As soon as the SPO was entered, Google prepared its amended pleading and served it on Sonos approximately a month later.  Google's quick action and diligence satisfies both the good cause requirements of Rule 16 and the Rule 15 factors.

In its opposition, Sonos contends that Google was permitted to use confidential materials from the ITC Investigation as early as April 28, with the entry of the parties' Joint Discovery Stipulation.  *See* ECF No. 133 ("Opp.") at 10.  But this argument is belied by the plain language of the Joint Discovery Stipulation, which only allowed cross-use of confidential material from the ITC Investigation "pursuant to the terms of the Parties' forthcoming Stipulated Protective Order."  ECF No. 78 at 9.  Both parties also understood the necessity of the SPO, given that Sonos never complained about Google's explanation of this situation in its invalidity contentions, and Sonos itself did not serve any supplemental infringement contentions containing confidential materials from the ITC Investigation.

There is also no prejudice to Sonos because it is already familiar with the substance and evidence of Google's claims.  Indeed, Sonos's Opposition to Google's Motion for Leave to Amend concedes: "There is nothing 'new'" here.  Opp. at 13.  Further, Sonos has been on notice of Google's intent to assert an inequitable conduct defense since April, when Google served its invalidity contentions stating that it will

---

[1] In order to narrow and streamline the disputes between the parties, Google withdraws the portion of its motion and proposed amendment related to the Implicit litigation IPR materials. Specifically, Google no longer seeks to add the section titled "BeComm Strings, Balassanian Patents, and Alleged Prior Art to the Balassanian Patents" on pages 117-123 of Google's proposed amendment.

"raise all invalidity and unenforceability arguments based on those raised in Inv. No. 337-TA-1191 also in this litigation." ECF No. 132-1 ("Zivojnovic Decl."), Ex. 2 at 11.

## II. GOOGLE SATISFIES THE RULE 16 GOOD CAUSE STANDARD

### A. Google Was Required To Wait For The SPO Before Adding Its Inequitable Conduct Defense

#### 1. The Joint Discovery Stipulation Did Not Allow Google's Use Of ITC Materials Until The SPO Was Entered

The Protective Order in the ITC Investigation prohibited Google from using confidential materials from the Investigation to support Google's inequitable conduct claim here. Per the ITC Investigation Protective Order, "[c]onfidential business information … shall not be made available to any person … unless he or she shall have first read this order and shall have agreed … to be bound by the terms thereof" and "to utilize such confidential business information *solely for purposes of this investigation*." Zivojnovic Decl. Ex. 5 ¶ 4 (emphasis added). Sonos does not dispute this in its Opposition. Instead, Sonos contends that the parties' Joint Discovery Stipulation allowed Google to use the ITC materials as of April 28, 2025. *See* Opp. at 10. But Sonos ignores the Joint Discovery Stipulation's express language and faults Google for playing it safe and not risking violating the ITC Protective Order to meet this Court's original amendment deadline of May 5. The language of the Joint Discovery Stipulation speaks for itself. The Joint Stipulation states that confidential ITC materials "*shall be used* and treated with the same level of confidentiality for purposes of this action (e.g., a document designated by a party to the ITC Investigation as 'Confidential Business Information' *shall be* treated as 'HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY' *pursuant to* the terms of the Parties' *forthcoming* Stipulated Protective Order)." ECF No. 78 at 9 (emphasis added). Thus, the "forthcoming Stipulated Protective Order"—which did not issue

until August 15, 2025—was required to use in this litigation the confidential ITC documents that form the basis of Google's amended answer.

Sonos argues that the "pursuant to" language in the Joint Stipulation is just giving "an example tier under which an ITC document could be treated." Opp. at 11 (emphasis omitted). That is incorrect. The "e.g." in the Joint Discovery Stipulation specifies that the parenthetical addresses an exemplary "document designated by a party to the ITC Investigation as 'Confidential Business Information'" and does not apply, for example, to public documents. ECF No. 78 at 9. But many documents cited and relied on in Google's proposed Second Amended Answer were designated by Sonos as containing "Confidential Business Information" and thus fall in this category addressed by the Joint Discovery Stipulation's parenthetical. *See generally* Zivojnovic Decl., Ex. 1-1 at 63-123.

Further, contrary to Sonos' argument (Opp. at 12), the existence of the Court's default protective order is immaterial, as the parties stipulated that default protective order was not enough and that specifically the "***forthcoming*** Stipulated Protective Order" was required. *See* ECF No. 78 at 9. This is further confirmed in the next paragraph, which says "[a]ny confidential portions of the Record from the ITC Investigation transferred to the District Court pursuant to 28 USC § 1659 ***shall be used*** and ***treated*** by the Parties in this action as 'HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY' ***pursuant to the terms of the Stipulated Protective Order***." *Id.* at 9-10.

Tellingly, Sonos never contended that the default order would have provided sufficient protections after receiving Google's invalidity contentions raising PO concerns, including after entry of the Joint Discovery Stipulation, nor did Sonos raise the argument in July when Google proposed supplementing contentions once the SPO was entered. Thus, to make the ITC Investigation materials available for use here,

the parties through their conduct acknowledged the SPO was needed, not just the Court's default order.

### 2. Google Repeatedly Informed Sonos Of Google's Intent To Plead Inequitable Conduct When The SPO Was Entered, And Sonos Did Not Object Until Now

Google's April 24 and April 28 Invalidity Contentions expressly stated that Google intended to pursue inequitable conduct claims based on the confidential ITC materials, but noted that such materials were, at the time, unavailable for Google's use in this matter: "Documents that formed the basis for Google's invalidity and unenforceability arguments in Inv. 337-TA-1191 have not yet been produced in this litigation, and thus Google cannot rely on those documents in this litigation at this time." Zivojnovic Decl., Ex. 3 at 10-11. Google further explained that "while some members of Google's legal team have historically had access to documents containing Confidential Business Information … produced by Sonos and third parties in the ITC Investigation, the protective order in the ITC Investigation *precludes those members of Google's legal team from sharing any knowledge gained from those documents with others or using that knowledge in this litigation*." *Id.* at 11.

Sonos did not raise any disagreement. Nor did Sonos complain that Google's Invalidity Contentions were insufficient because they did not include confidential materials from the ITC Investigation. Sonos, like Google, thus understood that Google could not use confidential business information at that time, or else Sonos would have challenged Google's position. Further, while Sonos ultimately withdrew any claim of confidentiality over Google's amended pleading, the voluminous exhibits cited therein by Google remain designated as confidential from the ITC proceeding. *See generally* Zivojnovic Decl., Ex. 1-1 at 63-123.

Despite this background, Sonos now claims Google "use[d]" ITC materials in its April Invalidity Contentions (Opp. at 9-10), and thus should have "use[d]" those

materials to supplement Google's pleading months ago. Sonos has no basis for this allegation and ignores Google's express statements in its contentions that "the protective order in the ITC investigation precludes" such use. Zivojnovic Decl., Ex. 3 at 11. Google's contentions did not quote, attach, or otherwise include any confidential information from the ITC Investigation. *See generally* Zivojnovic Decl., Ex. 3. Instead, by virtue of Google and its attorneys having participated in the ITC Investigation, those attorneys were aware of Google's ITC inequitable conduct theories and that ITC Investigation materials supported them. So did Sonos. *See id.* at 11 ("members of Sonos' legal team who participated in the ITC investigation are already aware of all those arguments" related to inequitable conduct). But that is not the same as saying Google was already "using" the confidential material for purposes of this litigation.

Similarly, Google's July 29 email to Sonos—months after entry of the Joint Stipulation—proposed mutual supplementation "***once a protective order has been entered***," demonstrating Google's consistent position that, absent the SPO, supplementation was impossible. Zivojnovic Decl., Ex. 6 at 3. Sonos did ***not*** object on the grounds that the SPO was not necessary. Rather, Sonos acknowledged that the parties could not use each other's confidential information absent the SPO, saying, "we plan to begin inspecting Google's source code ***once the protective order is entered***." *Id.* at 1. Thus, contrary to Sonos's assertion, the July 29 email also does not evidence any "use" of confidential ITC material before entry of the SPO.

Further, Sonos's own conduct confirms that ITC materials could not be used before the SPO was entered. Sonos has not supplemented its Infringement Contentions based on Google confidential business information from the ITC Investigation. But Sonos, according to its own argument, should have been able to supplement its Infringement Contentions with this material ***before*** the SPO. *See* Opp. at 9. Google noted this inconsistency in its Motion. ECF No. 132 at 16. Sonos gave

no explanation in its Opposition. If Sonos believed it could use Google confidential business information from the ITC Investigation starting April 28, Sonos should have—and would have—supplemented its Infringement Contentions, but it did not.

### B. Google's Timing After The SPO Entry Demonstrates Diligence

After the SPO was entered, Google quickly prepared its 60+ page amended pleading and served it on Sonos approximately a month later. Sonos's characterization of Google waiting "eight weeks" to amend (Opp. at 6) is misleading and ignores the actual timeline. The SPO was entered on August 15, 2025. ECF No. 126. Third-party cross-use was not agreed to until September 12, 2025. Zivojnovic Decl., Ex. 7 at 1. Google sent Sonos its draft pleading on September 22—roughly a month after entry of the SPO. Zivojnovic Decl., Ex. 8 at 2. Sonos then waited a week before indicating it would oppose the motion, and the parties met and conferred on October 1, 2025. Zivojnovic Decl. ¶ 12. After that, Sonos again took nearly a week to determine its confidentiality positions and did not inform Google until the day of filing (October 13) that Google's proposed filing did not include Sonos confidential material.[2] Zivojnovic Decl. ¶ 13. This timeline demonstrates Google's diligence, not delay.

In opposition, Sonos contends that, even if entry of the SPO was necessary for Google's amendment, Google should have sought an extension before expiration of the original May 5 amendment deadline. Opp. at 12. Filing such a request would have served no purpose because Google still would have needed to wait for issuance of the SPO. For example, had Google asked for the 30-day extension that Sonos suggests (Opp. at 12), Google could not have met that extended deadline because the

---

[2] As noted above, although Sonos withdrew its claim of confidentiality as to the pleading itself, Google's amendment is supported by numerous confidential exhibits from the ITC Investigation.

SPO did not issue until August.  Instead, Google acted promptly once the SPO was in place and the issue was ripe.

## III. GOOGLE'S AMENDMENT IS PROPER UNDER RULE 15

### A. Sonos Faces No Undue Prejudice

#### 1. Sonos Knew About These Theories For Months Or Years

Sonos concedes it has been familiar with the details of Google's inequitable conduct defense for years, which defeats any claim of prejudice.  The inequitable conduct defense was litigated in the ITC Investigation in 2020-2021.  *See* Zivojnovic Decl., Ex. 4 at 36.  Indeed, Sonos admits that Google's theories are "the same theories it presented during the ITC."  Opp. at 9.  Sonos can hardly be prejudiced by a claim of which it admits it is fully knowledgeable.

Nor is there any dispute that Sonos was on notice of Google's intent to assert these claims here for months.  Google pled unenforceability in its December 2024 Answer.  ECF No. 69 at 63.  Google disclosed its inequitable conduct defense in its April 24 and April 28 Invalidity Contentions.  Zivojnovic Decl., Exs. 2 & 3 § VIII.A.  Google notified Sonos again on July 29 that it would supplement for inequitable conduct once the SPO was entered.  Zivojnovic Decl., Ex. 6 at 3.  As such, there is no "surprise" or prejudice to Sonos.

#### 2. Most Discovery Was Already Taken In The ITC Investigation

Sonos complains that granting Google's motion will somehow "greatly increase the scope of discovery."  Opp. at 20.  In reality, the proposed defense does not substantially expand the scope of discovery, as Google's inequitable conduct defense is mostly based on discovery already taken in the ITC Investigation, or that Google identified in Sonos's prior litigation.  *See generally* Zivojnovic Decl. Ex. 1-1 at 63-123.  In particular, given the cross-use agreement, most of the discovery has already been taken or produced.  Indeed, Sonos itself admits that "Google now seeks to present ***the same*** inequitable conduct theory in this case that it presented in the ITC

case." Opp. at 2 (emphasis added). To the extent any new discovery is required, it will substantially, if not fully, overlap with discovery that is already necessary in this case, such as depositions of Sonos's inventors, whose testimony will be relevant to both issues that will be litigated anyways (e.g., non-infringement and invalidity) and Google's inequitable conduct defense.

Finally, even if Google's amendment requires additional discovery, there is ample time to take that discovery. As this Court recognized in its July 15, 2025 Order, "this litigation is still in its early stages, with discovery open for several more months and no trial date set." ECF No. 97 at 7. The multi-year stay for the ITC Investigation means that fact discovery only recently opened on December 27, 2024. *See* ECF No. 70. Moreover, fact discovery will remain open for several more months, until May 11, 2026, and no trial date has been set. *See* ECF No. 128 at 2.

### 3. Sonos's "Multiplying Proceedings" Argument Is Baseless

Sonos accuses Google of pursuing a "maximizing-litigation-cost strategy" (Opp. at 19-20), but this argument is meritless. Google is simply responding to Sonos's infringement allegations with a meritorious defense based on evidence of Sonos's prosecution misconduct. Sonos argues, in essence, that Google should be prohibited from vigorously defending itself, which cannot be a basis for denying leave to amend. Moreover, as explained above, Google informed Sonos of Google's intent to assert inequitable conduct when Google served its invalidity contentions on Sonos in April 2025. Thus, there is no "multiplying" at all—Google is simply providing the confidential supporting details to a defense that Google has asserted from the outset of this case.

### B. Google Has Not Acted In Bad Faith

#### 1. Timing Was Driven by the SPO, Not Tactics

Sonos claims "tit–for–tat" retaliation because Sonos asserted inequitable conduct first (Opp. at 21), but the timeline disproves this accusation. Google

disclosed its inequitable conduct theories in its April 24 contentions. Zivojnovic Decl., Ex. 2. And on July 29, Google then emailed Sonos about amending its contentions to further address inequitable conduct once the SPO was entered. Zivojnovic Decl., Ex. 6 at 3. Both of those dates are before Sonos filed its Counterclaim Answer with an inequitable conduct defense on August 15. ECF No. 124. Thus, the timeline makes clear Google's motion was driven by the August 15 SPO entry (ECF No. 126), not by Sonos's Counterclaim Answer (ECF No. 124).

### 2. Google's Defense Is Substantive, Not Dilatory

Google seeks to assert a legitimate defense based on evidence of Sonos's prosecution misconduct. Google's proposed amendment contains over 60 pages of detailed allegations with specific who/what/when/where/how information satisfying Rule 9(b)'s particularity requirements. Fed. R. Civ. P. 9(b). Sonos misconstrues Google's position as arguing that inequitable conduct was "pending this entire time." Opp. at 20. Sonos cites an inapposite case, *Ascon Properties, Inc. v. Mobil Oil Co.*, where the plaintiff switched its story about its pleadings. *Id.* (citing 866 F.2d 1149, 1161 (9th Cir. 1989)). Here Google has been telling the same story from day one: Google thinks Sonos's patents are unenforceable, and Google can and will assert its inequitable conduct defense as soon as permitted by the SPO.

### C. There Is No Undue Delay

As shown above in connection with Google's good cause showing, the timeline of this case establishes textbook diligence: the SPO was entered August 15. ECF No. 126. Third-party cross-use was agreed September 12. Zivojnovic Decl., Ex. 7 at 1. Google served its draft amendment September 22 (10 days later). Zivojnovic Decl., Ex. 8 at 2. The parties met and conferred October 1. Zivojnovic Decl. ¶ 12. Google filed this Motion on October 13 (ECF No. 132) after resolving sealing issues with

Sonos. Zivojnovic Decl. ¶ 13. This sequence shows Google acted promptly upon being authorized to use the necessary confidential materials.

### D. The Amendment Is Not Futile

Sonos does not advance any argument of futility. *See generally* Opp. at 18-22. Nor can it. Google's 60+ pages of allegations identify specific individuals, specific withheld prior art, and when the prior art was known and when the patents were prosecuted, and states a legally cognizable defense.

### E. Google Has Not Amended This Defense

This is Google's first request to amend its affirmative defenses to add inequitable conduct allegations. Google's prior amendment added Google's patent counterclaims—a different issue. This factor favors amendment.

## IV. CONCLUSION

For all these reasons, there is good cause to allow Google to amend its pleadings to assert an affirmative defense based on Sonos's inequitable conduct, and all the Rule 15 factors favor the same. Google therefore requests that the Court grant its Motion for Leave to file its Second Amended Answer and Counterclaims.

DATED: October 27, 2025

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   */s/ Ognjen Zivojnovic*

Ognjen Zivojnovic (SBN 307801)

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Melissa J. Baily (SBN 237649)
melissabaily@quinnemanuel.com
James D. Judah (SBN 257112)
jamesjudah@quinnemanuel.com
Ognjen Zivojnovic (SBN 307801)
ogizivojnovic@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875–6600
Fax: (415) 875–6700

Lance Yang (SBN 260705)
lanceyang@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443–3000
Fax: (213) 443–3100

*Counsel for Defendant Google LLC*

# CERTIFICATE OF SERVICE

I, Ognjen Zivojnovic, certify that pursuant to Local Rule 5–3, counsel of record who have consented to electronic service are being served on October 27, 2025 with copies of the attached document(s) via the Court's CM/ECF system, which will send notification of such filing to counsel of record.

DATED: October 27, 2025            Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Ognjen Zivojnovic*
    Ognjen Zivojnovic (SBN 307801)

# CERTIFICATE OF COMPLIANCE

I, Ognjen Zivojnovic, counsel of record for Google, certify that this brief contains 2,985 words, which complies with the word limit of L.R. 11-6.1.

DATED: October 27, 2025            Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Ognjen Zivojnovic*
    Ognjen Zivojnovic (SBN 307801)