Clement S. Roberts (SBN 209203)
croberts@orrick.com
Orrick Herrington & Sutcliffe LLP
405 Howard Street
San Francisco, CA 94105
Tel: 415-773-5700 / Fax: 415-773-5759

Alyssa M. Caridis (SBN 260103)
acaridis@orrick.com
Orrick Herrington & Sutcliffe LLP
355 South Grand Ave., Suite 2700
Los Angeles, CA 90071
Tel: 213-629-2020 / Fax: 213-612-2499

George I. Lee (Pro Hac Vice)
lee@ls3ip.com
Sean M. Sullivan (Pro Hac Vice)
sullivan@ls3ip.com
Rory P. Shea (Pro Hac Vice)
shea@ls3ip.com
J. Dan Smith (Pro Hac Vice)
smith@ls3ip.com
Lee Sullivan Shea & Smith LLP
656 W. Randolph Street, Floor 5W
Chicago, IL 60661
Tel: 312-754-0002 / Fax: 312-754-0003

*Attorneys for Plaintiff Sonos, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>       *Plaintiff*,<br><br>  v.<br><br>GOOGLE LLC,<br><br>       *Defendant*. | Case No. 2:20-cv-00169-JAK (DFMx)<br><br>**SUPPLEMENTAL MEMORANDUM OF SONOS, INC. PURSUANT TO LOCAL RULE 37-2**<br><br>DISCOVERY MATTER<br><br>Date: April 14, 2026<br>Time: 10:00 a.m.<br>Location: Courtroom 6B<br>Judge: Hon. Douglas F. McCormick |

In patent cases, a patentee is "generally entitled to a reasonable royalty on sales by a party who infringes the patent" and therefore, "information reasonably calculated to lead to evidence support[ing] such a royalty will meet the standards of Rule 26(b)(1)." *Intex Recreation Corp. v. Bestway USA Inc.*, No. 13-cv-660, 2021 WL 6618494 (C.D.Cal. Nov. 10, 2021). To facilitate presenting its damages case, Sonos seeks the revenue that Google makes through the accused products.

Google does not dispute that it receives revenue through the accused products, either through ad and subscription revenue for the accused apps or from third parties in connection with promotions and other revenue sharing (or that it would be unduly burdensome to produce such information). Instead, Google argues that it need not disclose this revenue because the revenue is not collected using a mechanism accused of infringement or otherwise directly tied to the patented features. But these are not requirements. *Symantec Corp. v. Zscaler, Inc.*, No. 17-cv-4426, 2019 WL 2288278, at *2 (N.D.Cal. May 29, 2019) ("valuation of an accused product…includes the value of the non-infringing aspects . . . it's not a straight shot from product to patent infringement damages.").

For the accused apps, Google does not charge money directly for the use of the accused features. If it did, disclosure of that revenue would be sufficient. Rather, Google provides the app and its accused features for free while making money by collecting ad revenue and by charging a subscription fee for using the app. Because there isn't revenue specifically tied to providing the app or the accused features themselves, Sonos simply seeks to follow the well-accepted approach of starting with the total revenue earned from the accused products and then apportioning it down to the value of the patented features. Indeed, the case law *requires* apportionment precisely because it assumes that the patentee starts with the overall revenue for the accused product. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018) ("patentee 'must in every case give evidence tending to separate or apportion the defendant's

profits and the patentee's damages between the patented feature and the unpatented features.'") (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884).

Likewise, for the accused speakers, Sonos seeks to discover the revenue attributable to these accused speakers, including revenue collected from third parties in connection with promotions, advertisements, or e-commerce transactions by or for the accused speakers.  These are relevant to establish the revenue and profitability of the products made under the patents pursuant to *Georgia-Pacific*. *See Globeride, Inc. v. Pure Fishing, Inc*., CV 15-3000-R, 2017 WL 11682642, at *2 (C.D.Cal. March 30, 2017) (ordering the production of (per *id.* at Dkt. 62-1) "revenues, profits, margins…*attributable* to the Accused Products.").

**A. Category 1: Ad and Subscription Revenue for the Accused Apps**

Google is incorrect that "neither of these premium services is accused of infringement."  There is not a separate "YouTube Music Premium" app or "Google Play Music Premium" app.  There is only a "YouTube Music" app and a "Google Play Music" app.  A user's subscription status for these apps may be "free," meaning that ads will be served, or "premium," meaning no ads will be served. Sonos's infringement contentions have clearly accused the app of providing the accused functionality and did not distinguish between subscription statuses because subscription statuses are not relevant to infringement; the accused functionality is available via the app for both types of subscription statuses.  No more is required.[1]

Google musters no reason why it disclosed ad and subscription revenue in the prior Sonos case yet refuses here.  In the prior case, the accused functionality was also available to both subscription statuses, and Sonos's infringement contentions in the prior case similarly did not distinguish between such statuses.

Google argues that ad or subscription revenue is discoverable only when such revenue is collected using a patented feature, citing *SoundView*.  This is an

---

[1] Google argues that many users do not use the accused functionality.  But use is not required for infringement here.  Regardless, there is no requirement that before accused-product revenue is disclosed a threshold use amount be established.

overly narrow (and incorrect) view of the law; *SoundView* does not stand for the proposition that revenue is only discoverable to the extent it is literally collected using a patented feature. To be sure, in *SoundView*, the patentee argued that the infringer served ads on its Hulu streaming service using the accused functionality. *Sound View*, 2018 WL 6164271 at *4. But the Court ordered production of both ad *and subscription* revenue, including subscription revenue for the service level that did not serve ads. *Id.* at *5 (ordering subscription revenue for, *inter alia*, Hulu's "'No Commercials' product[]"). No one argued that Hulu collected **subscription** revenue using a patented feature; rather, the Court ordered production of the ad and subscription revenue because it was revenue received for the accused product. *Id.*

Even accepting Google's irrationally-narrow view of the law, the accused functionality *can be* used during ad service – users can, with the accused apps, control the group and individual volume of accused speakers while ads are playing on those speakers. Regardless, there is no requirement that Sonos accuse the revenue collection mechanism itself, or that the revenue for an accused product be collected through or specifically and only for the accused features, to unlock basic damages discovery. If this were true, then there would never be a need for black-letter law apportionment. Again, apportionment presumes that the starting revenue broadly applies to patented and non-patented features alike.

## B. Category 2: Revenue From Promotions and Third-Parties

Google argues that Sonos does not accuse third parties of infringement and therefore Google need not disclose revenue received from such third parties for the accused products. This too is legally untenable. All revenue is received from a third party, by definition. Sonos need not accuse a third party of infringement *liability* in order to unlock discovery on revenue received by Google for the accused products. Google is the party that programmed the accused speakers with functionality rendering them capable of carrying out the patented features. And Google is the party that makes and sells the accused speakers. Therefore, Google

is the party that is liable for infringement. Sonos is simply seeking the revenue Google makes for these accused speakers, regardless of source.

Google argues that Sonos hasn't shown a connection between the accused features and third-party services. Despite not being a requirement, this argument is disingenuous. Google knows full well that the accused functionality can be used with any streaming media service, including third party services. Indeed, although actual use is not required to establish liability, users can, using Google's programmed capability, group or pair multiple accused speakers together for synchronized playback and then play back media using third party streaming services (or using Google's own streaming services). The infringing software instructions are the same regardless of the source of the media to be played back. That Google permits third parties to take advantage of this infringing functionality, and then collects revenue from these third parties for the privilege of doing so, counsels in favor of permitting this discovery, not against it.

Google also argues that these are convoyed sales and therefore Sonos must articulate some causal theory tying the revenue to the accused features. Google misunderstands. A convoyed sale is the sale of a non-accused product that occurs with the sale of an accused product. Sonos is seeking revenue for the accused products themselves, not revenue for some non-accused product, like headphones or charging cables. Revenue received for the accused products is not a convoyed sale. That's why Google already disclosed revenue collected on the sales of the accused speakers even though these accused speakers have other non-infringing functionality. But sales revenue alone isn't a full picture of the total revenue Google collects for these products. Google cannot unilaterally decide what accused-product revenue is relevant and what isn't.

Google also argues that Sonos's request is speculative. But Google has so far refused to answer interrogatories or produce documents regarding this revenue. And Sonos does not have access to Google's internal documents and therefore

SONOS'S SUPPLEMENTAL MEMORANDUM.
CASE NO. 2:20-CV-00169-JAK (DFMX)

cannot confirm whether Google has such documents. Rather, consistent with the Federal Rules, Sonos can only make categorical requests for relevant discovery, which Google must produce, if it exists. Sonos need not establish in fact that discovery exists before requesting it. Otherwise, discovery would grind to a halt. Tellingly, Google stops short of denying that this revenue exists.

Google calls this a "fishing expedition." It is anything but. Indeed, a "fishing expedition" is seeking discovery into irrelevant matters with the hopes of finding something relevant or actionable – the classic example being discovery of unaccused products with the hope of discovering that such products are infringing. By contrast, Sonos is just seeking relevant discovery from relevant products – i.e., discovery of the revenue Google makes on the accused products themselves.

### C. Category 3: Incremental Revenue from Active Users

Google argues that the discovery sought herein should be denied because Sonos did not use the same language it used in its discovery requests. But Sonos was simply narrowing and clarifying what information it was seeking and providing a basis to refute Google's representations that such information does not exist. Sonos's requests clearly call for the information sought herein because they request revenue that is connected to or caused by the accused products.

Google musters only an argument that Sonos's request is based on speculation and that there is "no basis to conclude" that Google tracked the requested information. But here too, Google stops short of denying its existence (to the contrary, the cited document suggests this information does exist), arguing only that it doesn't "rely on this analysis for its financial reporting." But reliance on information for financial reporting is not a requirement under Rule 26. And it is not surprising that Google's production is sparse because Google has so far refused to produce responsive information. It is circular indeed for Google to simultaneously refuse to produce the information and then argue that the lack of responsive information in its productions justifies denying a motion to compel.

SONOS'S SUPPLEMENTAL MEMORANDUM.
CASE NO. 2:20-CV-00169-JAK (DFMX)

Dated: March 31, 2026

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP

By: */s/ Alyssa Caridis*

   Alyssa Caridis

   *Attorneys for Sonos, Inc.*