## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 20-00169-JAK (DFMx) | Date: | April 21, 2026 |
| --- | --- | --- | --- |
| Title | Sonos, Inc. v. Google, Inc. et al. | | |

| Present: The Honorable | Douglas F. McCormick, United States Magistrate Judge | |
| --- | --- | --- |
| Nancy Boehme | | Not Present |
| Deputy Clerk | | Court Reporter |
| Attorney(s) for Plaintiff(s): | | Attorney(s) for Defendant(s): |
| Not Present | | Not Present |

| Proceedings: | (IN CHAMBERS) Order re: Plaintiff's Motion to Compel Discovery (Dkt. 168) |
| --- | --- |

Plaintiff Sonos, Inc. moves to compel Defendant Google, Inc. to provide further discovery responsive to Sonos's RFP Nos. 50 and 52 and Interrogatory No. 10. See Dkt. 168. The parties' joint filing (Dkt. 168-1) describes their dispute as involving three categories of information, which I will discuss in turn.

The Federal Rules establish that discovery must be "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Importantly, "[i]nformation within the scope of discovery need not be admissible in evidence to be discoverable." Id.

Here, the three categories implicate Sonos's entitlement to a reasonably royalty on Google's sales as a measure of damages. Specifically, one type of evidence that can establish a reasonable royalty is set forth in the sixth "Georgia-Pacific" factor, which is "the effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales." Intex Recreation Corp. v. Bestway USA Inc., Case No. 16-3300, 2021 WL 6618494, at *3 (C.D. Cal. Nov. 21, 2021).

Those "derivative" or "convoyed" sales must be "functionally related" to the patented product and losses must be reasonably foreseeable. See id. If the convoyed sale has a use independent of the patented device, then that suggests a non-functional relationship. See id. Sales of non-infringing items are relevant where the patentee is able to: (a) identify specific products that were relevant to the royalty analysis; (b) articulate a theory as to how

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

the sales of the particular products were connected to the sales of the infringing products; and (c) provide a narrowly tailored discovery request in connection with the accused infringing sales. See id. at *3. But where a patentee cannot show an interrelated or functional relationship between the products, the patentee may not seek damages on such collateral sales. See id.

Here, the first disputed category is "**advertising and subscription revenue for the accused apps.**" Sonos seeks Google's advertising and subscription revenues for the users of its YouTube Music, Google Play Music, and Google Home apps. Sonos seeks a description of and documents sufficient to show the subscription revenue received from the apps from December 2015 to the present and revenue received because of advertising on the apps from December 2015 to the present.

Google argues that its advertising and subscription sales are not functionally related to the accused products, because those sales have nothing to do with the accused features of the apps, namely, the ability to use a single volume "slider" to control multiple speakers that have been "grouped" within the app. Critically, Google argues, those subscriptions and those advertisements do not "unlock" that ability. Separately, Google also argues, its advertising sales are not tied to the accused apps, much less the accused features of the apps.

Dealing with the first argument, I disagree that Google's subscription sales are not functionally related under the standard set forth in Intex. The customer in Intex did not enjoy additional access to the spa that was the alleged patented device because she bought a drink holder or an umbrella. Put differently, had the parties negotiated a price for using Sonos's group volume slider in Google's apps, it seems reasonable that the parties would have considered the subscription sales those apps would have generated, even if those sales did nothing to "unlock" or otherwise access the group volume slider. See Positive Technologies, Inc. v. Sony Electronics, Inc., No. 11-2226, 2013 WL 707914, at *4 (N.D. Cal. Feb. 26, 2013) (concluding that defendants' sales of content and accessories for patented device were discoverable even though those sales did not give buyers access to patented features).

Once one accepts that the subscription sales are functionally related to the accused apps, there is little difficulty at the second step, as the subscription and ad sales would not be made without the app. And while RFP No. 50 may not be incredibly well-tailored, what Sonos seeks in its papers is. I will order Google to produce what Sonos seeks as to subscription revenues. However, given that there has been no showing that Google's advertising revenues are related to the accused apps, I agree with Google that Sonos is not entitled to discovery about those advertising revenues, as there is no functional relationship between those sales and the accused products.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

The second category is "**revenue associated with promotions and third-party products and services**." Sonos points out that Google "promotes and advertises" third-party services like Spotify, Apple Music, Sirius XM, and others in connection with its accused speakers. For example, the logos of those third-party services are displayed on the packaging for the speakers. Sonos also points out that Google sometimes partners with these third-party services to offer free trial periods with the purchase of the speakers. And, finally, Sonos points out that the speakers can be used to make purchase from retailers.

What's of primary concern here is Google's assertion that there are no documents responsive in at least some of these areas, i.e., no revenue sharing agreements with any third parties identified by Sonos other than one that Google has already produced. I will order Google to clarify its discovery response to make clear that it is not withholding anything from production in this category. The parties should meet-and-confer about the precise language of Google's response. And they are directed to bring any further dispute about that response to my attention via the informal discovery conference procedure set forth on the my page of the Court's website.

The third category is "**incremental revenue from active users of the accused products.**" Sonos argues that the accused speakers also facilitate the collection of revnues from Google's "main" businesses, namely, search and advertising.

Without identifying redacted material, I'll just say that what Sonos seeks is frustratingly vague. Sonos's theory appears to be that the accused speakers must contribute in some way to customers becoming better Google customers, that is, using Google products across the board. But going back to the framework identified in Intex, and the flaws in that theory become clear. It's probably good for Google to have a speaker that has all the bell and whistles that consumers expect in a wireless speaker in 2026. But unlike those spa accessories that you wouldn't buy without the spa, it's certainly plausible (in fact more than just plausible) that many people would use Google for search or Chrome as their browser regardless of the features in Google's accused speakers. That suggests that the relationship fails the functional test. Moreover, as Google points out, Sonos ends up asking for exactly what it asked for in category two: "each Google revenue service connected to and/or promoted by the Accused Products."

The Court thus ORDERS as follows:

1.      Sonos's motion to compel is **GRANTED** in part and Google is **ORDERED** to produce a description of and documents sufficient to show the subscription revenue received from the accused apps from December 2015 to the present within twenty-one (21) days of the date of this order.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

2.     Sonos's motion to compel is **DENIED** in part as to Google's advertising revenue received from the accused apps.

3.     Sonos's motion to compel is **GRANTED** in part and **DENIED** in part as to Google's revenue associated with promotions and third-party products and services. The parties are ordered to meet-and-confer about the language of a supplemental response to RFP No. 52 that makes clear that Google is not withholding any responsive documents on the basis of its objections. To the extent the parties are unable to agree on the language for such a supplemental response, they are **ORDERED** to present any remaining dispute to the Court through its informal discovery conference procedure.

4.     Sonos's motion to compel is **DENIED** as to incremental revenue from active users of the accused products.