QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Melissa J. Baily (SBN 237649)
melissabaily@quinnemanuel.com
James D. Judah (SBN 257112)
jamesjudah@quinnemanuel.com
Ognjen Zivojnovic (SBN 307801)
ogizivojnovic@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

Lance Yang (Bar No. 260705)
lanceyang@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

*Attorneys for Defendant-Counterclaimant Google LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SONOS, INC., | CASE NO. 2:20-cv-00169-JAK (DFMx) |
| *Plaintiff-Counterclaim Defendant,* | **GOOGLE LLC'S REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTER ROGATORY) WITH RESPECT TO BARIX AG** |
| vs. | |
| GOOGLE LLC, | |
| *Defendant-Counterclaimant*. | Judge:          Hon. John A. Kronstadt |
| | Complaint Filed:  Jan. 7, 2020 <br> Trial Date:  None Set |

TO THE APPROPRIATE JUDICIAL AUTHORITY OF SWITZERLAND:

The United States District Court for the Central District of California respectfully requests international assistance to obtain evidence to be used in a civil proceeding before this Court in the above-captioned matter.

The Court requests the assistance described herein in the interests of justice.

## I.    REQUEST

The Court requests that the Appropriate Judicial Authority of Switzerland compel production of documents and information from the following corporate entity:

**Barix AG**
Untermueli 9
6300 Zug
Switzerland

Specifically, the Court requests that Barix AG ("Barix") produce the documents and information set out in **Exhibit A** to this Request and testify on the deposition topics identified in **Exhibit B**.  As detailed below, the evidence collected will be used in the above-captioned civil proceeding before this Court.  In the proper exercise of its authority, this Court has determined that evidence from Barix is necessary to develop the factual record needed to resolve the issues in this proceeding. The Court therefore requests the assistance described herein in the interests of justice.

The Court understands that the documents and information requested may be of a confidential nature.  As such, the Court understands that such documents may be designated confidential and will be treated as so pursuant to the protective order to be entered in this matter.  Expert reports related to the requested documents and information are due August 21, 2026.  The Court respectfully requests that the Appropriate Judicial Authority of Switzerland compel production of documents and information before the due date of the related expert report; however such documents and information are still requested even if such a deadline cannot be met.

REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTER ROGATORY)
WITH RESPECT TO BARIX AG

If any portion of this Request is deemed to be unacceptable under the laws of Switzerland, please disregard that portion and continue to comply with as much of the Request as is legally permissible.

**A.     Sender and Requesting Judicial Authority**

Honorable John A. Kronstadt

First Street Courthouse
350 W. First Street, Courtroom 10C,
Los Angeles, CA 90012
Telephone: (669) 254-5252

**B.     Names and Addresses of the Parties and Their Representatives**

*Plaintiff-Counterclaim Defendant,*

Sonos, Inc.
301 Coromar Drive,
Goleta, CA 93117

*Sonos, Inc.'s Representatives*

Alyssa M. Caridis
Orrick Herrington and Sutcliffe LLP
777 South Figueroa Street Suite 3200
Los Angeles, CA 90017
213-612-2020
Fax: 213-612-2499
Email: acaridis@orrick.com

Clement S. Roberts
Orrick Herrington and Sutcliffe LLP
405 Howard Street
San Francisco, CA 94105-2669
415-773-5700
Fax: 415-773-5759
Email: croberts@orrick.com

George I. Lee
Lee Sullivan Shea and Smith LLP
656 West Randolph Street Suite 5W
Chicago, IL 60661

REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTER ROGATORY)
WITH RESPECT TO BARIX AG

312-754-9606
Fax: 312-754-9603
Email: lee@ls3ip.com

John D. Smith, III
Lee Sullivan Shea and Smith LLP
656 West Randolph Street Suite 5W
Chicago, IL 60661
312-754-9602
Fax: 312-754-9603
Email: smith@ls3ip.com

Rory P. Shea
Lee Sullivan Shea and Smith LLP
656 West Randolph Street Suite 5W
Chicago, IL 60661
312-754-9602
Fax: 312-754-9603
Email: shea@ls3ip.com

Sean M. Sullivan
Lee Sullivan Shea and Smith LLP
656 West Randolph Street, Suite 5W
Chicago, IL 60661
312-754-9602
Fax: 312-754-9603
Email: sullivan@ls3ip.com


*Defendant-Counterclaimant.*

Google LLC
1600 Amphitheatre Parkway
Mountain View, CA 94043

*Google LLC's Representatives*

Sean S. Pak
seanpak@quinnemanuel.com
Melissa J. Baily
melissabaily@quinnemanuel.com

-4-
REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTER ROGATORY)
WITH RESPECT TO BARIX AG

James D. Judah
jamesjudah@quinnemanuel.com
Ognjen Zivojnovic
ogizivojnovic@quinnemanuel.com
**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

Lance Yang
lanceyang@quinnemanuel.com
**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Tel:    (213) 443-3000
Facsimile:    (213) 443-3100

**C.    Person to Whom the Executed Request is to be Returned**

Ognjen Zivojnovic
ogizivojnovic@quinnemanuel.com
**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

## II.    NATURE AND PURPOSE OF THE PROCEEDING

Plaintiff and Counterclaim Defendant Sonos, Inc. ("Sonos") has asserted United States Patent Nos. 7,571,014; 8,588,949; 9,195,258; 9,219,959; 10,031,715; 10,209,953; 10,439,896; 11,080,001; 10,966,025; and 10,541,883 (collectively, "Sonos's Asserted Patents") against Defendant-Counterclaimant Google LLC ("Google") in an action for patent infringement. *See* Dkts. 1, 64, 68. The accused products, collectively referred to as the "Google Wireless Audio System," include

-5-

Chromecast devices, Google/Nest Home speakers and displays (Home Mini, Nest Mini, Home, Home Max, Home Hub, Nest Hub, Nest Hub Max, Nest Audio), Nest Wifi Point, Pixel Tablet with Charging Speaker Dock, controlling applications (Google Home app, YouTube Music app, Google Play Music app), and Pixel phones, tablets, and laptops.

Sonos alleges that Google's products infringe patents covering certain aspects of wireless multi-room audio technology, including: how to set up playback devices on wireless networks, how to control volume of playback devices, and how to synchronize audio playback within groups.  Google denies these allegations and further contends that Sonos's patents are invalid over the prior art, including prior art systems developed and sold by Barix AG ("Barix").  Specifically, prior to the earliest priority date of Sonos's Asserted Patents, Barix developed, manufactured, and/or sold a family of IP-based networked audio products that implemented multi-room audio distribution, synchronized playback, and network-based configuration and control, including but not limited to the Barix Exstreamer, the Barix Exstreamer Wireless, the Barix Exstreamer Digital Professional, the Barix Exstreamer Gold, the Barix Instreamer, and the Barix Instreamer Digital Input Professional.  Together, these products enabled users to encode audio from analog or digital sources, stream that audio over IP networks to multiple playback devices, synchronize playback across those devices using a master/slave architecture, and configure and control those devices, over a network.  These products were sold in the United States through Barix's U.S. distributors, including Grid Connect and Barix Technology, Inc., and were publicly demonstrated at U.S. trade shows, including CEDIA 2003.

Specifically, through its investigation based on public material, Google has determined that Barix likely retains information related to: (1) prior art systems to Sonos's Asserted Patents, including the Barix Exstreamer, the Barix Exstreamer Wireless, the Barix Exstreamer Digital Professional, the Barix Exstreamer Gold, the Barix Instreamer, and the Barix Instreamer Digital Input Professional, and all

-6-

associated firmware, software, and documentation for the foregoing products (collectively, "the Barix System"); (2) the extent to which the Barix System discloses the claims of Sonos's Asserted Patents; (3) the extent to which the Barix System practices or embodies patents and patent applications filed by and/or assigned to Barix related to the Barix System, including U.S. Patent No. 7,710,941 ("Rietschel"); and (4) the public use, public demonstration, and on sale dates of the Barix System in the United States and elsewhere, including sale through Barix's U.S. distributors and demonstrations at U.S. trade shows.  Google does not have possession of this information, as this information is confidential to Barix.  Although Barix sold its products in the United States, through its distributors, Grid Connect and Barix Technology, Inc., Google's investigation has determined that Barix's U.S. distributors do not retain the technical design documentation, engineering specifications, source code, firmware development records, internal testing and synchronization performance data, or product development history necessary to establish the Barix System as prior art to Sonos's Asserted Patents.  Such information originated with and was maintained by Barix at its headquarters in Zug, Switzerland, where the Barix System was designed, developed, and engineered.  Google has diligently sought the discovery at issue from Barix Technology, Inc., the last known U.S.-based distributor of Barix, and Barix Technology, Inc. has represented that it does not possess, maintain, or have access to information sought related to the Barix System, necessitating resort to the Hague Convention to obtain the discovery directly from Barix. Accordingly, Barix is the proper entity from which to obtain the requested information.

## III.    EVIDENCE

The documents and information requested to be produced are identified in **Exhibit A** attached hereto.  The topics for a requested deposition are identified in **Exhibit B** attached hereto.  The Court respectfully requests that the judicial authorities of Switzerland provide a transcription of the deposition on the identified

topics.  The requested documents and testimony are not otherwise obtainable by this Court through its own compulsory process.  The requested documents are relevant to issues in the proceeding.  The requested documents are exclusively in the possession, custody, or control of Barix.

### A.    Documents and Information Requested

Defendant-Counterclaimant respectfully requests that two copies of the requested documents be produced: one copy to be provided for use of the judicial authority in Switzerland, and the second copy to be provided to Defendant-Counterclaimant, who shall make copies of these documents to share with Plaintiff-Counterclaim Defendant.  Further, Defendant-Counterclaimant respectfully requests that the documents produced for this Court's use be produced in either hard copy or electronically.  The documents can be shipped by Federal Express (or comparable means) to Ognjen Zivojnovic, whose contact information is detailed in Section I.C., *supra*.  To the extent any of these documents cannot be produced, this Court respectfully requests that the documents be delivered for inspection at a time and place of your choosing so that the parties to this proceeding may inspect and copy the documents.

### B.    Identity and Address of Person to be Examined

**Barix AG**
Untermueli 9
6300 Zug
Switzerland

### C.    Request For Notification Of The Time And Place Of The Execution Of This Request And Identity And Address Of Any Person To Be Notified

This Court respectfully requests that advance notification of the time and place for execution of the Letter Rogatory be sent to the following representatives of the Court and to the requesting party:

Honorable John A. Kronstadt

First Street Courthouse
350 W. First Street, Courtroom 10C,

-8-

Los Angeles, CA 90012
Tel: (669) 254-5252

*Defendant-Counterclaimant Google LLC,*

Ognjen Zivojnovic
ogizivojnovic@quinnemanuel.com
**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

## IV.   PROTECTIVE ORDER

In this matter, a Protective Order that governs the production of documents requested from Barix was entered on August 18, 2025.  Because this matter involves confidential and proprietary business information, the Protective Order will protect such information from public disclosure.  Accordingly, the United States District Court for the Central District of California will request that any documents, testimony, and/or records of testimony obtained in response to this Letter Rogatory designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" be treated in accordance with the provisions of the Protective Order to protect that confidential and proprietary information.  All disclosed information will be treated with the utmost confidence.  The entered Protective Order is provided as **Exhibit C** attached hereto.

## V.   OFFER OF RECIPROCAL ASSISTANCE

The United States District Court for the Central District of California is willing to provide similar assistance to the Appropriate Judicial Authority of Switzerland. *See* 28 U.S.C. § 1782.

-9-

## VI.     REIMBURSEMENT FOR COSTS

Counsel for Google is willing to reimburse the Appropriate Judicial Authority of Switzerland for costs and expenses incurred in executing this Letter Rogatory up to US $5,000.  Please inform counsel for Google before the costs exceed this amount. Please direct requests for reimbursement to:

Ognjen Zivojnovic
ogizivojnovic@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

DATED:

_____
**Honorable John A. Kronstadt**
Judge for the United States District Court for the Central District of California
First Street Courthouse
350 W. First Street, Courtroom 10C,
Los Angeles, CA 90012
Telephone: (669) 254-5252


_____

 Kiry K. Gray, Clerk of Court

_____        _____

Deputy Clerk's Printed Name        By: Deputy Clerk's Signature

-10-

# EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

<u>Definitions</u>

1.     "Barix," "You," "Your," or "Yours" means Barix AG, its predecessors and successors, past and present parents, divisions, and all past and present directors, officers, employees, agents, consultants, attorneys and others purporting to act on its behalf.

2.     The term "Source Code" means computer code that specifies software that executes on processors (including but not limited to CPUs, embedded processors, DSPs, microcontrollers, FPGAs), including but not limited to code written in the C, C++, C#, Objective C, Visual Basic, Java, JavaScript, PHP programming languages, in assembly language, in mark-up languages such as HTML or XML, or in data object formats such as JSON, or hardware definition/design language code that specifies the structure or functionality of hardware logic, including but not limited to code written in the Verilog or VHDL languages.

3.     The term "Document" is used in the broadest possible sense as interpreted under the Federal Rules of Civil Procedure and includes, without limitation, all originals and copies, duplicates, drafts, and recordings of any written, printed, graphic, or otherwise recorded matter, however produced or reproduced, and all "writings," as defined in Federal Rule of Evidence 1001, of any nature, whether on paper, magnetic tape, electronically recorded, or any other information storage means, including film and computer memory devices; and where any such items contain any marking not appearing on the original or are altered from the original, then such items shall be considered to be separate original documents.   The definition of "Document" encompasses "Source Code."

4.     The "Relevant Sonos Patents," refers to the following patents identified in Sonos's Complaint and any amendments thereto: United States Patent Nos. 9,195,258 ("the '258 Patent"); 10,031,715 ("the '715 Patent"); 10,209,953 ("the '953

Patent"); 10,439,896 ("the '896 Patent"); 11,080,001 ("the '001 Patent"); 10,541,883 ("the '883 Patent"); 7,571,014 ("the '014 Patent"); and 8,588,949 ("the '949 Patent").

5.    The "Barix Patents" refers to patents and patent applications filed by and/or assigned to Barix, including but not limited U.S. Patent No. 7,710,941 ("Rietschel").

6.    The "Barix System" refers to the family of IP-based networked audio products developed, manufactured, and sold by Barix, including the Barix Exstreamer (available in the U.S. by at least January 2003), the Barix Exstreamer Wireless (available in the U.S. by at least February 2003), the Barix Exstreamer Digital Professional (publicly demonstrated at CEDIA 2003 in Indianapolis, Indiana in September 2003), the Barix Exstreamer Gold, the Barix Instreamer, and the Barix Instreamer Digital Input Professional (publicly demonstrated at CEDIA 2003), together with all associated firmware, software, prototypes, and documentation relating to the foregoing products.

Instructions

The Court respectfully asks that the following instructions are applied to these Requests:

1.    Please allow these Requests to continue to the extent permitted under the Federal Rules of Civil Procedure such that You will promptly produce for inspection and copying any Documents or things that may be acquired, obtained, located or identified consistent with Fed. R. Civ. P. 26(e)(1).

2.    Please separately answer each Request and list the responsive Documents by: (i) organizing and designating them to correspond to the categories in these Requests, or if not, (ii) producing them as they are maintained in the normal course of business, and in either case please: (a) produce all associated file labels, file headings, and file folders together with the responsive Documents and each file is identified as to its owner or custodian; (b) produce all Documents that cannot be legibly copied in their original form; otherwise, please produce photocopies and

-2-

provide the right to inspect the originals; and (c) give each page a discrete production number and produce them in Bates-numbered form.

3.    Please store documents electronically and produce them in the form or forms in which they are ordinarily maintained.  To the extent possible, please do not print electronic Documents and scan them into PDF format.

4.    Please note that these Requests ask for Documents that are known or available to You, or in Your possession, custody, or control, including Documents known or available to attorneys, agents, representatives, or any other person acting on Your behalf or under Your direction or control, its attorneys, agents, or representatives.

5.    Possession, custody, and control does not require that You have actual physical possession; instead, if You have physical control or a superior right to compel production from another, then please obtain such Document for production.

6.    In the event that multiple copies of a Document exist, please produce each copy on which any notations or markings of any sort not appearing on any other copies exist.

7.    If no Documents or things are responsive to a particular request, please state that no responsive materials exist.

8.    Please produce each requested Document or thing in its entirety, including attachments, without deletions or excisions. If any Document or thing cannot be produced in full, please produce it to the fullest extent possible and please specify the reasons for the inability to produce the remainder.

9.    If You or Your attorneys know of the existence, past or present, of any Document described in any of these Requests, but such Document is not presently in Your possession, custody, or control or in the possession, custody, or control of Your agents, representatives, or attorneys, please state so in response to the Request.  For any such Documents, please provide the disposition of each such Document, including the date of, method of, and reasons for such disposition, and the address, if

-3-

known, of any Person who has seen the Document or who now has custody, control, or possession thereof. If such document no longer exists, please state when, how, and why such Document ceased to exist.

10. If You object to any Request or part thereof, please (1) state the objection, and (2) produce the relevant Documents to which Your objection does not apply.

11. If any Documents are withheld from production under a claim of privilege or work product, please produce the relevant Documents to which Your privilege objection does not apply, and then please state the nature of the privilege claimed and provide information sufficient to support such claim of privilege. For allegedly privileged Documents, please include: (i) any privilege or immunity from discovery asserted; (ii) the nature of the Document (letter, memorandum, notes, etc.); (iii) the author; (iv) the addressee, including recipients of copies; (v) the date; (vi) each and every Person who has seen such Document or a portion of such Document; (vii) the subject matter and general nature of the information; and (viii) any other facts which are alleged to support the assertion of privilege or immunity.

12. Unless otherwise stated, these Requests should be interpreted to include the production of Documents or things that were prepared, created, written, sent, dated or received at any time.

13. The geographic scope of these Requests is worldwide, to the extent that there is a reasonable basis to believe that locations outside of the United States may contain responsive Documents that cannot be found inside the United States.

14. Defendant-Counterclaimant reserves the right to propose additional Requests.

-4-

## **REQUESTS FOR PRODUCTION**

REQUEST FOR PRODUCTION NO. 1:

Documents and Source Code in Your possession, custody, or control, sufficient to show the extent to which the Barix System practices or embodies the Barix Patents.

REQUEST FOR PRODUCTION NO. 2:

Documents and Source Code in Your possession, custody, or control, sufficient to show the structure and operation of the Barix System, including: (a) how the Barix System encodes, streams, and decodes audio over IP networks between Instreamer and Exstreamer devices; (b) how the Barix System synchronizes audio playback across multiple Exstreamer devices, including the master/slave synchronization architecture, playback timing mechanisms, and buffer synchronization; (c) how the Barix System discovers, configures, and sets up networked playback devices, including through web browser-based interfaces and controller devices; (d) how the Barix System controls volume and audio output settings on individual or multiple playback devices over the network; (e) how the Barix System supports multicast, broadcast, and unicast streaming via RTP, UDP, TCP, or any other protocols; (f) how the Barix System implements wireless audio distribution over IP-based networks in the Exstreamer Wireless; and (g) all firmware source code, hardware schematics, design specifications, and technical documentation relating to the foregoing functionality for each product comprising the Barix System.

REQUEST FOR PRODUCTION NO. 3:

Documents and Source Code in Your possession, custody, or control, sufficient to show the implementation of protocols and APIs in the Barix System, including: (a) the Real-time Transport Protocol (RTP) and associated streaming protocols used for audio distribution between Instreamer and Exstreamer devices; (b) UDP, TCP, and HTTP-based streaming protocols; (c) the Barix Real-time Transport Protocol (BRTP) used for  streaming connections between Instreamer and Exstreamer devices; (d) the web-based configuration and control interface, including all APIs used to configure,

-5-

monitor, and control Exstreamer and Instreamer devices; (e) the Ethernet and serial control APIs used for integration with external automation and control systems; (f) the SNMP remote monitoring interface; (g) any device discovery and network configuration protocols; (h) the synchronization protocol used to coordinate playback timing between master and slave source and/or playback devices; and (i) any custom applications developed thereon for the Barix System.

REQUEST FOR PRODUCTION NO. 4:

Documents in Your possession, custody, or control, sufficient to show Your marking of the Barix System with the Barix Patents, including physical, online, and digital marking.

REQUEST FOR PRODUCTION NO. 5:

Documents in Your possession, custody, or control, sufficient to show dates when the Barix System and each version thereof was first used, known, sold, offered for sale, or available for update in the United States, including, but not limited to: (a) sales, distribution, and shipping records reflecting the sale or delivery of any product comprising the Barix System to customers, distributors, or resellers in the United States, including sales through Barix's U.S. distributors Grid Connect and Barix Technology, Inc.; (b) documents relating to the public demonstration of the Barix System at CEDIA 2003 in Indianapolis, Indiana in September 2003, and at any other U.S. trade shows, industry conferences, or exhibitions; (c) purchase orders, invoices, and commercial correspondence with U.S. customers and distributors; (d) marketing materials, product announcements, press releases, advertisements, product catalogs, and promotional materials distributed in or directed to the United States; (e) firmware release dates and version histories for each product comprising the Barix System, including records reflecting when firmware updates were made publicly available for download; (f) records reflecting when each product comprising the Barix System was first made available for purchase or order in the United States and in Europe; and (g) any agreements, distribution contracts, or reseller arrangements between Barix and

REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTER ROGATORY) WITH RESPECT TO BARIX AG

Grid Connect, Barix Technology, Inc., or any other U.S.-based entity relating to the sale, distribution, or demonstration of the Barix System.

-7-

# EXHIBIT B

## DEFINITIONS AND INSTRUCTIONS

Definitions

1.    "Barix," "You," "Your," or "Yours" means Barix AG, its predecessors and successors, past and present parents, divisions, and all past and present directors, officers, employees, agents, consultants, attorneys and others purporting to act on its behalf.

2.    The term "Source Code" means computer code that specifies software that executes on processors (including but not limited to CPUs, embedded processors, DSPs, microcontrollers, FPGAs), including but not limited to code written in the C, C++, C#, Objective C, Visual Basic, Java, JavaScript, PHP programming languages, in assembly language, in mark-up languages such as HTML or XML, or in data object formats such as JSON, or hardware definition/design language code that specifies the structure or functionality of hardware logic, including but not limited to code written in the Verilog or VHDL languages.

3.    The term "Document" is used in the broadest possible sense as interpreted under the Federal Rules of Civil Procedure and includes, without limitation, all originals and copies, duplicates, drafts, and recordings of any written, printed, graphic, or otherwise recorded matter, however produced or reproduced, and all "writings," as defined in Federal Rule of Evidence 1001, of any nature, whether on paper, magnetic tape, electronically recorded, or any other information storage means, including film and computer memory devices; and where any such items contain any marking not appearing on the original or are altered from the original, then such items shall be considered to be separate original documents.  The definition of "Document" encompasses "Source Code."

4.    The "Relevant Sonos Patents," refers to the following patents identified in Sonos's Complaint and any amendments thereto: United States Patent Nos. 9,195,258 ("the '258 Patent"); 10,031,715 ("the '715 Patent"); 10,209,953 ("the '953

Patent"); 10,439,896 ("the '896 Patent"); 11,080,001 ("the '001 Patent"); 10,541,883 ("the '883 Patent"); 7,571,014 ("the '014 Patent"); and 8,588,949 ("the '949 Patent").

5.  The "Barix Patents" refers to patents and patent applications filed by and/or assigned to Barix, including but not limited U.S. Patent No. 7,710,941 ("Rietschel").

6.  The "Barix System" refers to the family of IP-based networked audio products developed, manufactured, and sold by Barix, including the Barix Exstreamer (available in the U.S. by at least January 2003), the Barix Exstreamer Wireless (available in the U.S. by at least February 2003), the Barix Exstreamer Digital Professional (publicly demonstrated at CEDIA 2003 in Indianapolis, Indiana in September 2003), the Barix Exstreamer Gold, the Barix Instreamer, and the Barix Instreamer Digital Input Professional (publicly demonstrated at CEDIA 2003), together with all associated firmware, software, prototypes, and documentation relating to the foregoing products.

Instructions

1.  One or more representatives may be produced at deposition for one or more topics.

2.  If in responding to these topics you claim any ambiguity in either a topic or a definition or instruction applicable thereto, please identify in advance of the deposition the language you consider ambiguous and state the interpretation You are using in preparing your witness(es) to testify.

-2-
REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTER ROGATORY)
WITH RESPECT TO BARIX AG

## **TOPICS FOR THE DEPOSITION OF BARIX AG**

TOPIC NO. 1:

The extent to which the Barix System practices or embodies the Barix Patents.

TOPIC NO. 2:

The structure and operation of the Barix System, including: (a) how the Barix System encodes, streams, and decodes audio over IP networks between Instreamer and Exstreamer devices; (b) how the Barix System synchronizes audio playback across multiple Exstreamer devices, including the master/slave synchronization architecture, playback timing mechanisms, and buffer synchronization; (c) how the Barix System discovers, configures, and sets up networked playback devices, including through web browser-based interfaces and controller devices; (d) how the Barix System controls volume and audio output settings on individual or multiple playback devices over the network; (e) how the Barix System supports multicast, broadcast, and unicast streaming via RTP, UDP, TCP, or any other protocols; (f) how the Barix System implements wireless audio distribution over IP-based networks in the Exstreamer Wireless; and (g) all firmware source code, hardware schematics, design specifications, and technical documentation relating to the foregoing functionality for each product comprising the Barix System.

TOPIC NO. 3:

The implementation of protocols and APIs in the Barix System, including: (a) the Real-time Transport Protocol (RTP) and associated streaming protocols used for audio distribution between Instreamer and Exstreamer devices; (b) UDP, TCP, and HTTP-based streaming protocols; (c) the Barix Real-time Transport Protocol (BRTP) used for streaming connections between Instreamer and Exstreamer devices; (d) the web-based configuration and control interface, including all APIs used to configure, monitor, and control Exstreamer and Instreamer devices; (e) the Ethernet and serial control APIs used for integration with external automation and control systems; (f) the SNMP remote monitoring interface; (g) any device discovery and network

-3-

configuration protocols; (h) the synchronization protocol used to coordinate playback timing between master and slave source and/or playback devices; and (i) any custom applications developed thereon for the Barix System.

TOPIC NO. 4:

Your marking of the Barix System with the Barix Patents, including physical, online, and digital marking.

TOPIC NO. 5:

The dates when the Barix System and each version thereof was first used, known, sold, offered for sale, or available for update in the United States, including, but not limited to: (a) sales, distribution, and shipping records reflecting the sale or delivery of any product comprising the Barix System to customers, distributors, or resellers in the United States, including sales through Barix's U.S. distributors Grid Connect and Barix Technology, Inc.; (b) documents relating to the public demonstration of the Barix System at CEDIA 2003 in Indianapolis, Indiana in September 2003, and at any other U.S. trade shows, industry conferences, or exhibitions; (c) purchase orders, invoices, and commercial correspondence with U.S. customers and distributors; (d) marketing materials, product announcements, press releases, advertisements, product catalogs, and promotional materials distributed in or directed to the United States; (e) firmware release dates and version histories for each product comprising the Barix System, including records reflecting when firmware updates were made publicly available for download; (f) records reflecting when each product comprising the Barix System was first made available for purchase or order in the United States and in Europe; and (g) any agreements, distribution contracts, or reseller arrangements between Barix and Grid Connect, Barix Technology, Inc., or any other U.S.-based entity relating to the sale, distribution, or demonstration of the Barix System.

-4-

TOPIC NO. 6:

The business record and/or authenticity foundation for the Documents and Source Code produced by You in response to this Letter Rogatory.

REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTER ROGATORY) WITH RESPECT TO BARIX AG

**EXHIBIT C**

REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTER ROGATORY)
WITH RESPECT TO BARIX AG

Clement S. Roberts (SBN 209203)
croberts@orrick.com
ORRICK HERRINGTON &
SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Tel: 415-773-5700 / Fax: 415-773-5759

Alyssa M. Caridis (SBN 260103)
acaridis@orrick.com
ORRICK HERRINGTON &
SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel: 213-629-2020 / Fax: 213-612-2499

George I. Lee (Admitted *Pro Hac Vice*)
lee@ls3ip.com
Sean M. Sullivan (Admitted *Pro Hac Vice*)
sullivan@ls3ip.com
Rory P. Shea (Admitted *Pro Hac Vice*)
shea@ls3ip.com
J. Dan Smith (Admitted *Pro Hac Vice*)
smith@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W. Randolph Street, Floor 5W
Chicago, IL 60661
Tel: 312-754-0002 / Fax: 312-754-0003

*Attorneys for Plaintiff,*
*SONOS, INC.*

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Melissa J. Baily (SBN 237649)
melissabaily@quinnemanuel.com
James D. Judah (SBN 257112)
jamesjudah@quinnemanuel.com
Ognjen Zivojnovic (SBN 307801)
ogizivojnovic@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

Lance Yang (Bar No. 260705)
lanceyang@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

*Attorney for Defendant,*
*Google LLC*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SONOS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> GOOGLE LLC, <br><br> Defendant. | CASE NO. 2:20-cv-00169-JAK (DFMx) <br><br> **PROTECTIVE ORDER** <br><br> Judge:     Hon. John A. Kronstadt <br><br> Magistrate: Hon. Douglas F. McCormick |

[PROPOSED] PROTECTIVE ORDER

## I.    PURPOSES AND LIMITATIONS

Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted.  Consistent with the Court's Order re: Motion for Protective Order (Dkt. 113), the Parties submit the following Protective Order (the "Order").  The Parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.  The Parties further acknowledge, as set forth in Section 14.5, below, that this Order does not entitle them to file confidential information under seal; Local Civil Rule 79-5.2 sets forth the procedures that must be followed and the standards that will be applied when a Party seeks permission from the Court to file material under seal.

## II.    DEFINITIONS

2.1    Challenging Party:  a Party or Non-Party that challenges the designation of information or items under this Order.

2.2    "CONFIDENTIAL" Information or Items:  information (regardless of how it is generated, stored, or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).

2.3    Counsel (without qualifier):  Outside Counsel of Record and House Counsel (as well as their support staff).

2.4    Designating Party:  a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SOURCE CODE" or

"CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION."

2.5   Disclosure or Discovery Material:  all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.6   Expert:  a person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its Counsel to serve as an expert witness or as a consultant in this action, (2) is not a past or current employee of a Party or of a Party's competitor, and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

2.7   "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER" Information or Items:  extremely sensitive "Confidential Information or Items," disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

2.8   "HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" Information or Items:  extremely sensitive "Confidential Information or Items" representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

2.9   Non-Party:  any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.10   Outside Counsel of Record:  attorneys who are not employees of a Party to this action but are retained to represent or advise a Party and have appeared in this

-2-                    Case No. 2:20-cv-00169-JAK (DFMx)
                                PROTECTIVE ORDER

action on behalf of that Party or are affiliated with a law firm which has appeared on behalf of that Party.

2.11 Party: any party to this action.

2.12 Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.13 Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium, and professional jury or trial consultants) and their employees and subcontractors, who (1) have been retained by a Party or its Counsel to provide litigation support services with respect to this action, (2) are (including any employees and subcontractors) not a past or current employee of a Party or of a Party's competitor, and (3) at the time of retention, are not anticipated to become an employee of a Party or of a Party's competitor.

2.14 Protected Material: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION."

2.15 Receiving Party: a Party that receives Disclosure or Discovery Material.

**III.    SCOPE**

The protections conferred by this Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Order do not cover the following information: (a) any information that is in the public domain

at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party.  Any use of Protected Material at trial shall be governed by a separate agreement or order.

## IV.  DURATION

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a Court order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with or without prejudice; or (2) entry of a final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

## V.  DESIGNATING PROTECTED MATERIALS

5.1    Exercise of Restraint and Care in Designating Material for Protection. Each party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards.  Mass, indiscriminate, or routinized designations are prohibited.  Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other Parties) expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection at all or do not qualify for the

level of protection initially asserted, that Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

5.2    Manner and Timing of Designations.  Except as otherwise provided in this Order (*see, e.g.*, second paragraph of Section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a)    for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" to each page that contains protected material.

A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced.  During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."  After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents qualify for protection under this Order.  Then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE") to each page that contains Protected Material.

(b)    for testimony given in deposition or in other pretrial or trial

-5-

proceedings, that the Designating Party when practical identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and specify the level of protection being asserted. When it is impractical to identify separately each portion of testimony that is entitled to protection and it appears that substantial portions of the testimony may qualify for protection, the Designating Party may invoke on the record (before the deposition, hearing, or other proceeding is concluded) a right to have up to 21 days to identify the specific portions of the testimony as to which protection is sought and to specify the level of protection being asserted. Only those portions of the testimony that are appropriately designated for protection within the 21 days shall be covered by the provisions of this Order. Alternatively, a Designating Party may specify, at the deposition or up to 21 days afterwards if that period is properly invoked, that the entire transcript shall be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE."

Parties shall give the other Parties reasonable notice (a minimum of two business days) if they reasonably expect a deposition, hearing or other proceeding to include Protected Material so that the other Parties can ensure that only authorized individuals who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) are present at those proceedings. The use of a document as an exhibit at a deposition shall not in any way affect its designation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION."

Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material, and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been

designated as Protected Material and the level of protection being asserted by the Designating Party. The Designating Party shall inform the court reporter of these requirements. Any transcript that is prepared before the expiration of a 21-day period for designation shall be treated during that period as if it had been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in its entirety unless otherwise agreed. After the expiration of that period, the transcript shall be treated only as actually designated.

(c)    for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION."

5.3    Inadvertent Failure to Designate. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

## VI.    CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1    Timing of Challenges. Any Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing

-7-

not to mount a challenge promptly after the original designation is disclosed.

6.2    Meet and Confer.  The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge.  To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of this Order.  The Parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) within 14 days of the date of service of notice.  In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation.  A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3    Judicial Intervention.  If the Parties cannot resolve a challenge without Court intervention, the Challenging Party shall file and serve a motion to re-designate or de-designate under Local Civil Rule 7 (and in compliance with Local Civil Rule 79-5, if applicable) within 21 days of the initial notice of challenge or within 14 days of the Parties agreeing that the meet and confer process will not resolve their dispute, whichever is earlier.  Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed in the preceding paragraph.

The burden of persuasion in any such challenge proceeding shall be on the Designating Party.  Frivolous challenges and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other Parties) may expose the Challenging Party to sanctions.  All Parties shall continue to afford the

material in question the level of protection to which it is entitled under the Designating Party's designation until the Court rules on the challenge.

## VII.  ACCESS TO AND USE OF PROTECTED MATERIAL

7.1    Basic Principles.  A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation, and such Protected Material shall not be used for any business purpose, in connection with any other legal proceeding, or directly or indirectly for any other purpose whatsoever. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order.[1]  When the litigation has been terminated, a Receiving Party must comply with the provisions of Section 15 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.  Protected Material shall not be copied or otherwise reproduced by a Receiving party, except for transmission to qualified recipients, without the written permission of the Producing Party or by further order of the Court.

7.2    Disclosure of "CONFIDENTIAL" Information or Items.  Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a)    the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably

---

[1] In the event a Non-Party witness is authorized to receive Protected Material that is to be used during his/her deposition but is represented by an attorney not authorized under this Order to receive such Protected Material, the attorney must provide prior to commencement of the deposition an executed "Acknowledgment and Agreement to Be Bound" in the form attached hereto as Exhibit A.  In the event such attorney declines to sign the "Acknowledgement and Agreement to Be Bound" prior to the examination, the Parties, by their attorneys, shall jointly seek a protective order from the Court prohibiting the attorney from disclosing Protected Material in order for the deposition to proceed.

-9-

Case No. 2:20-cv-00169-JAK (DFMx)

PROTECTIVE ORDER

necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

(b)     Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgement and Agreement to Be Bound" (Exhibit A);

(c)     the Court and its personnel;

(d)     stenographic reporters, videographers and/or their staff, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgement and Agreement to Be Bound" (Exhibit A);

(e)     during their deposition, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgement and Agreement to Be Bound" (Exhibit A), unless the Designating Party objects to such disclosure or except as otherwise ordered by the Court.  Before making such a disclosure, the Receiving Party must provide notice sufficient to allow the Designating Party to object. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order;

(f)     the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or personally knows the information; and

(g)     professional jury or trial consultants, provided they sign onto the Order and agree to be bound by its terms.

7.3     Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER" Information or Items.  Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL –

ATTORNEYS' EYES ONLY" or "CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER" only to:

(a)     the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

(b)     Experts of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgement and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in Section 7.5(a), below, have been followed;

(c)     the Court and its personnel;

(d)     stenographic reporters, videographers and their respective staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgement and Agreement to Be Bound" (Exhibit A); and

(e)     the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or personally knows the information, unless the Designating Party objects to the disclosure.

7.4     Disclosure of "HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" Information or Items.  Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL -SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" only to:

(a)     the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the

"Acknowledgement and Agreement to Be Bound" that is attached hereto as Exhibit A;

(b)     up to seven Experts of the Receiving Party (up to four of whom are Experts that the Receiving Party intends in good faith to offer as testifying Experts at trial on infringement issues ("Source Code Testifying Experts") and up to three of whom will be consulting Experts) (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in paragraph 7.5(a), below and specifically identified as eligible to access "HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" Information or Items, have been followed, with the total number of Experts to be no more than the number of Source Code Testifying Experts plus three[2];

(c)     the Court and its personnel;

(d)     stenographic reporters, videographers and their respective staff who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) and are transcribing or videotaping a deposition wherein "HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" Information or Items are being discussed, provided that such reporters and videographers shall not retain or be given copies of any portions of the source code, which if used during a deposition, will not be attached as an exhibit to the transcript but instead shall be identified only by its

---

[2]  *I.e.*, if the Receiving Party determines that it will only offer two Source Code Testifying Experts, then the total number of Experts permitted to access HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" Information or Items would be reduced from seven to five, and the Experts that will no longer be Source Code Testifying Experts will no longer have access.

production numbers;

(e) while testifying at deposition or trial in this action only: any person who authored, previously received (other than in connection with this litigation), or was directly involved in creating, modifying, or editing the "HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" Information or Items, as evident from its face or reasonably certain in view of other testimony or evidence. Persons authorized to view "HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" Information or Items pursuant to this sub-paragraph shall not retain or be given copies of the "HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" Information or Items except while so testifying. Only printed copies of the Source Code will be provided to testifying witnesses during their testimony.

7.5 <u>Procedures for Approving or Objecting to Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" Information or Items to Experts.</u>

(a) Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert (as defined in this Order) any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" pursuant to paragraphs 7.3(b) or

-13-

Case No. 2:20-cv-00169-JAK (DFMx)

PROTECTIVE ORDER

7.4(b) first must make a written request to the Designating Party[3] that (1) identifies the general categories of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" information that the Receiving Party seeks permission to disclose to the Expert, (2) sets forth the full name of the Expert and the city and state of his or her primary residence, (3) attaches a copy of the Expert's current resume, (4) identifies the Expert's current employer(s), (5) identifies each person or entity from whom the Expert has received compensation or funding for work in his or her areas of expertise or to whom the expert has provided professional services, including in connection with a litigation, at any time during the preceding five years,[4] and (6) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years[5];

> (b) A Party that makes a request and provides the information

---

[3] For a Designating Party that is a Non-Party, experts previously disclosed and approved prior to the Non-Party's production of any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" need not be disclosed to said Non-Party unless such Non-Party requests such information prior to the production of any Protected Material. Moreover, unless otherwise requested by the Non-Party, subsequently disclosed experts need not be disclosed to the Non-Party before that Non-Party's Protected Material may be disclosed thereto.

[4] If the Expert believes any of this information is subject to a confidentiality obligation to a third-party, then the Expert should provide whatever information the Expert believes can be disclosed without violating any confidentiality agreements, and the Party seeking to disclose to the Expert shall be available to meet and confer with the Designating Party regarding any such engagement.

[5] It may be appropriate in certain circumstances to restrict the Expert from undertaking certain limited work prior to the termination of the litigation that could foreseeably result in an improper use of the Designating Party's "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER" information.

-14-

specified in the preceding respective paragraphs may disclose the subject Protected Material to the identified Expert unless, within 14 days of delivering the request (for experts not previously disclosed in USITC Investigation No. 337-TA-1191, and who have agreed to bound by the Protective Orders in that Investigation), the Party receives a written objection from the Designating Party.  For experts previously disclosed in USITC Investigation No. 337-TA-1191, and who have agreed to be bound by the Protective Orders in that Investigation, the deadline for written objections from the Designating Party is 7 days.  Any such objection must set forth in detail the grounds on which it is based.

(c)    A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice to voice dialogue) to try to resolve the matter by agreement within seven days of the written objection.  If no agreement is reached, the Party seeking to make the disclosure to the Expert may file a motion as provided in Local Civil Rule 7 (and in compliance with Local Civil Rule 79-5, if applicable) seeking permission from the court to do so.  Any such motion must describe the circumstances with specificity, set forth in detail the reasons why the disclosure to the Expert is reasonably necessary, assess the risk of harm that the disclosure would entail, and suggest any additional means that could be used to reduce that risk.  In addition, any such motion must be accompanied by a competent declaration describing the parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions) and setting forth the reasons advanced by the Designating Party for its refusal to approve the disclosure.

(d)    In any such proceeding, the Party opposing disclosure to the Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Expert;

(e)    A party who has not previously objected to disclosure of Protected Material to an Expert or whose objection has been resolved with respect to previously

-15-

Case No. 2:20-cv-00169-JAK (DFMx)
PROTECTIVE ORDER

produced Protected Material shall not be precluded from raising an objection to an Expert at a later time with respect to Protected Material that is produced after the time for objecting to such Expert has expired or if new information about that Expert is disclosed or discovered.  Any such objection shall be handled in accordance with the provisions set forth above.

## VIII. PROSECUTION AND ACQUISITION BAR

(a)     Absent written consent from the Producing Party, any individual who receives access to "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" information designated by the Producing Party shall not engage in the prosecution of patents or patent applications relating to (a) networked media playback devices or technologies for controlling such devices, or (b) the particular information disclosed in a Producing Party's confidential business materials, including without limitation the patents asserted in this action and any patent or application claiming priority to or otherwise related to the patents asserted in this action, before any foreign or domestic agency, including the United States Patent and Trademark Office (the "Patent Office") (collectively, the "Field of Invention").  For purposes of this paragraph, "prosecution" includes any activity related to (i) the preparation or prosecution (for any person or entity) of patent applications, including among others reexamination and reissue applications or (ii) directly or indirectly participating, drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims.[6]  To avoid any doubt, "prosecution" as used in this paragraph does not include representing a party challenging or defending a patent before a domestic or foreign agency (including, but not limited to, a reissue protest,

---

[6] Prosecution includes, for example, original prosecution, reissue, *inter partes* review, post grant review, covered business method review and reexamination proceedings.

*ex parte* reexamination, *inter partes* reexamination, *inter partes* review, post grant review or covered business method review), provided that there is no participation or assistance with any claim drafting or amendment of claims in such proceedings. This Prosecution Bar shall begin when access to "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" information is first received by the affected individual and shall end three (3) years after final termination of this action. Nothing in this provision shall prohibit any attorney of record in this action from discussing any aspect of this case that is reasonably necessary for the prosecution or defense of any claim or counterclaim in this action with his/her client. Nothing in this paragraph shall prevent any attorney from sending non-confidential prior art to an attorney involved in patent prosecution for purposes of ensuring that such prior art is submitted to the U.S. Patent and Trademark Office (or any similar agency of a foreign government) to assist a patent applicant in complying with its duty of candor. The parties expressly agree that the Prosecution Bar set forth herein shall be personal to any attorney, expert, or other individual who reviews materials subject to the Prosecution Bar under this section and shall not be imputed to any other persons at that person's firm or organization. To ensure compliance with the purpose of this provision, each party shall create an "Ethical Wall" between those persons with access to materials subject to the Prosecution Bar and any individuals who, on behalf of the Party or its acquirer, successor, predecessor, or other affiliate, prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to the Field of Invention.

(b)     Absent written consent from the Producing Party, any individual who receives access to "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL BUSINESS INFORMATION,

SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" information designated by the Producing Party shall not be involved in activity related to: (i) the acquisition of patents or patent applications (for any person or entity) relating to (a) networked media playback devices or technologies for controlling such devices, or (b) the particular information disclosed in a Producing Party's confidential business materials; or (ii) advising or counseling clients regarding the same.  This Acquisition Bar shall begin when access to "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" information is first received by the affected individual and shall end three (3) years after final disposition of this action as provided herein.

## IX.   SOURCE CODE

(a)   To the extent production of source code becomes necessary in this case, a Producing Party may designate material as "HIGHLY CONFIDENTIAL - SOURCE CODE" or "CONFIDENTIAL SOURCE CODE, SUBJECT TO PROTECTIVE ORDER" if it comprises, includes, or substantially discloses confidential, proprietary or trade secret source code or algorithms.  This material may include, among things, technical design documentation that comprises, includes, or substantially discloses source code or algorithms.

(b)   Protected Material designated as "HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE, SUBJECT TO PROTECTIVE ORDER" shall be subject to all of the protections afforded to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER" information including the Prosecution Bar and Acquisition Bar set forth in

Section 8, and may be disclosed only as set forth in Section 7.4.

(c)     Any source code produced in discovery shall only be made available for inspection, not produced except as set forth below, in a format allowing it to be reasonably reviewed and searched, during normal business hours or at other mutually agreeable times, at (1) an office of the Producing Party or the Producing Party's primary outside counsel of record or (2) another mutually agreed upon location. Any location under (1) or (2) shall be within the United States.  The source code shall be made available for inspection on two secured computers at two locations (Google's source code made available for inspection shall initially be on two secured computers located at the Los Angeles office of Quinn Emanuel Urquhart & Sullivan, LLP and on two secured computers located at the Chicago office of Quinn Emanuel Urquhart & Sullivan, LLP) (each, a "Source Code Computer") in a secured, locked room without Internet access or network access to other computers, and the Receiving Party shall not copy, remove, or otherwise transfer any portion of the source code onto any recordable media or recordable device.  Each Source Code Computer shall have disk encryption and be password protected.  Use or possession of any input/output device (e.g., USB memory stick, mobile phone or tablet, camera or any camera-enabled device, CD, floppy disk, portable hard drive, laptop, or any device that can access the Internet or any other network or external system, etc.) is prohibited while accessing a Source Code Computer.  All persons entering the locked room containing the source code must agree to submit to reasonable security measures to ensure they are not carrying any prohibited items before they will be given access to the locked room. The Source Code Computers will be made available for inspection during regular business hours, upon reasonable notice to the producing party, which shall not be less than 3 business days in advance of the requested inspection.  The Producing Party may visually monitor the activities of the Receiving Party's representatives during any source code review, but only to ensure that there is no unauthorized recording,

-19-

copying, or transmission of the source code.

(d)     No person shall copy, e-mail, transmit, upload, download, print, photograph or otherwise duplicate any portion of the designated "HIGHLY CONFIDENTIAL - SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" material, except that the Receiving Party may request paper copies of limited portions of source code, but only if and to the extent reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial.  In no event may the Receiving Party print more than 25 consecutive pages[7] or an aggregate total of more than 750 pages, of source code during the duration of the case without prior written approval by the Producing Party.  If a request for printing reasonable portions of the Source Code exceed these limits, the Producing Party shall not unreasonably withhold approval to exceed these limits, and the Parties shall meet and confer in good faith to resolve any disputes.  The source code may only be transported by the Receiving Party via hand carry.  The Receiving Party shall not request paper copies for the purposes of reviewing the source code other than electronically as set forth in paragraph (c) in the first instance.  Within 5 business days or such additional time as necessary due to volume requested, the Producing Party will provide the requested material on watermarked or colored paper bearing Bates numbers and the legend "HIGHLY CONFIDENTIAL - SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" unless objected to as discussed below. At the inspecting Party's request, up to four additional sets (or subsets) of printed source code may be requested and provided by the Producing Party in a timely fashion, with the total number of sets (or subsets) of printed source code to be no more

---

[7]   The Producing Party shall print source code using default printer settings (i.e., consistent with how the parties printed source code in USITC Investigation No. 337-TA-1191).

than the number of Source Code Testifying Experts plus one.[8]  Even if within the limits described, the Producing Party may challenge the amount of source code requested in hard copy form or whether the source code requested in hard copy form is reasonably necessary to any case preparation activity pursuant to the dispute resolution procedure and timeframes set forth in Paragraph 6 whereby the Producing Party is the "Challenging Party" and the Receiving Party is the "Designating Party" for purposes of dispute resolution. Contested printouts do not need to be produced to the Receiving Party until the matter is resolved by the Court.

(e)	The Receiving Party shall maintain a record of any individual who has inspected any portion of the source code in electronic or paper form.  The Receiving Party shall maintain all printed portions of the source code in a secured, locked area under the direct control of counsel responsible for maintaining the security and confidentiality of the designated materials or individuals authorized to receive "HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" pursuant to this Order. Any paper copies designated "HIGHLY CONFIDENTIAL - SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" shall be stored or viewed only at (i) the offices of outside counsel for the Receiving Party, (ii) the offices of outside experts or consultants who have been approved to access source code; (iii) the site where any deposition is taken; (iv) the Court; or (v) any intermediate location necessary to transport the information to a hearing, trial, or deposition.  Except as provided in subsection (i) of this section, the Receiving Party shall not create any electronic or other images of the paper copies and shall not convert any of the information contained in the paper copies into any electronic format.  Any printed pages of source code, and any other documents or

---

[8]  *I.e.*, if the inspecting Party determines that it will only offer two Source Code Testifying Experts, then the total number of sets (or subsets) of printed source code would be reduced from five to three, and the inspecting Party will return to the Producing Party the other two sets (or subsets) of printed source code.

things reflecting source code that have been designated by the producing party as "HIGHLY CONFIDENTIAL - SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" may not be copied, digitally imaged or otherwise duplicated, except in limited excerpts necessary to attach as exhibits to depositions, expert reports, or court filings as discussed below. Any paper copies used during a deposition shall be retrieved by the Receiving Party at the end of each day and must not be given to or left with a court reporter or any other unauthorized individual.

(f)     The Receiving Party's outside counsel and/or expert shall be entitled to take notes relating to the source code but may not copy any portion of the source code into the notes. No copies of all or any portion of the source code may leave the room in which the source code is inspected except as otherwise provided herein. Further, no other written or electronic record of the source code is permitted except as otherwise provided herein.

(g)     A list of names of persons who will view the source code will be provided to the producing party in conjunction with any written (including email) notice requesting inspection. The Receiving Party shall maintain a daily log of the names of persons who enter the locked room to view the source code and when they enter and depart. The Producing Party shall be entitled to a copy of the log.

(h)     The Receiving Party's outside counsel shall maintain a log of all copies of the source code (received from a Producing Party) that are delivered by the Receiving Party to any person. The log shall include the names of the recipients and reviewers of copies and locations where the copies are stored. Upon request by the Producing Party, the Receiving Party shall provide reasonable assurances and/or descriptions of the security measures employed by the Receiving Party and/or person that receives a copy of any portion of the source code.

(i)     Except as provided in this paragraph, the Receiving Party may not create electronic images, or any other images, of the source code from the paper copy for

use on a computer (e.g., may not scan the source code to a PDF, or photograph the code). The Receiving Party may create an electronic copy or image of limited excerpts of source code only to the extent necessary in a pleading, exhibit, expert report, discovery document, deposition transcript, other Court document, or any drafts of these documents[9] ("SOURCE CODE DOCUMENTS"). The Receiving Party shall only include such excerpts as are reasonably necessary for the purposes for which such part of the Source Code is used. Images or copies of Source Code shall not be included in correspondence between the parties (references to production numbers shall be used instead) and shall be omitted from pleadings and other papers except to the extent permitted herein. The Receiving Party may create an electronic image of a selected portion of the Source Code only when the electronic file containing such image has been encrypted using commercially reasonable encryption software including password protection. The communication and/or disclosure of electronic files containing any portion of source code shall at all times be limited to individuals who are authorized to see source code under the provisions of this Protective Order. Additionally, all electronic copies must be labeled "HIGHLY CONFIDENTIAL - SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION."

(j) To the extent portions of source code are quoted in a SOURCE CODE DOCUMENT, either (1) the entire document will be stamped and treated as HIGHLY CONFIDENTIAL - SOURCE CODE or CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION or (2) those pages containing quoted Source Code will be separately bound, and stamped and treated as HIGHLY CONFIDENTIAL - SOURCE CODE or CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION.

(k) The Receiving Party shall maintain a log of all electronic images and paper copies of Source Code Material in its possession or in the possession of its

---

[9] Drafts shall only include those excerpts the Receiving Party believes will be included in the final version.

-23-                                    Case No. 2:20-cv-00169-JAK (DFMx)
                                        PROTECTIVE ORDER

retained consultants, including the names of the recipients and reviewers of any electronic or paper copies and the locations where the copies are stored.

## X. PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a Party is served with a subpoena issued by a court, arbitral, administrative, or legislative body, or with a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" that Party must:

(a)    promptly notify in writing the Designating Party.  Such notification shall include a copy of the subpoena or court order;

(b)    promptly notify in writing the person who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Order.  Such notification shall include a copy of this Order; and

(c)    cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.[10]

If the Designating Party timely[11] seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO

---

[10] The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to afford the Designating Party in this case an opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued.

[11] The Designating Party shall have at least 14 days from the service of the notification pursuant to Section 10(a) to seek a protective order.

Case No. 2:20-cv-00169-JAK (DFMx)
PROTECTIVE ORDER

PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

## XI.    A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

(a)    The terms of this Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SOURCE CODE" or "CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b)    In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

1.    promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

2.    promptly provide the Non-Party with a copy of the Protective Order in this litigation, the relevant discovery request(s), and a reasonably

specific description of the information requested; and

3. make the information requested available for inspection by the Non-Party.

(c) If the Non-Party fails to object or seek a protective order from this Court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely objects or seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the Court.[12] Absent a Court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

## XII.   UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

If a Receiving Party or person authorized to access Protected Material ("Authorized Recipient") discovers any loss of Protected Material or a breach of security, including any actual or suspected unauthorized access, relating to another party's Protected Material, the Receiving Party or Authorized Recipient shall: (1) promptly stop the unauthorized breach; (2) promptly (within 72 hours) provide written notice to the Designating Party of such breach, including information

---

[12] The purpose of this provision is to alert the interested parties to the existence of confidentiality rights of a Non-Party and to afford the Non-Party an opportunity to protect its confidentiality interests in this court.

regarding the size and scope of the breach; and (3) investigate and make reasonable efforts to remediate the effects of the breach.  In any event, the Receiving Party or Authorized Recipient shall promptly take all necessary and appropriate corrective action to terminate any unauthorized access.

## XIII. PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

When a Producing Party gives notice to Receiving Parties that certain produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review.  If information is produced in discovery that is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return or destroy the specified information and any copies it has and may not sequester, use or disclose the information until the claim is resolved.  This includes a restriction against presenting the information to the court for a determination of the claim.  In addition, information that contains privileged matter or attorney work product shall be immediately returned if such information appears on its face to have been inadvertently produced.

Any disclosure of communications, information, or documents covered by the attorney-client privilege or work product protection is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding.

This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).  Accordingly, the provisions of Federal Rule of Evidence 502(b) do not apply, and the disclosing party is not required to satisfy the elements of Rule 502(b) to properly assert the attorney-client privilege or work product protection over disclosed communications, information, and documents.

Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of communications, information, or documents for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

## XIV.  MISCELLANEOUS

14.1    Right to Further Relief.  Nothing in this Order abridges the right of any person to seek its modification by agreement with other Parties or by applying to the Court if such agreement cannot be reached.  Furthermore, without application to the Court, any party that is a beneficiary of the protections of this Order may enter a written agreement releasing any other party hereto from one or more requirements of this Order even if the conduct subject to the release would otherwise violate the terms herein.

14.2    Right to Assert Other Objections.  By stipulating to the entry of this Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Order.  Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Order.

14.3    No Agreement Concerning Discoverability.  The identification or agreed upon treatment of certain types of Disclosure and Discovery Material does not reflect agreement by the Parties that the disclosure of such categories of Disclosure and Discovery Material is required or appropriate in this action.  The Parties reserve the right to argue that any particular category of Disclosure and Discovery Material should not be produced.

14.4    Export Control.  Disclosure of Protected Material shall be subject to all applicable laws and regulations relating to the export of technical data contained in such Protected Material, including the release of such technical data to foreign persons or nationals in the United States or elsewhere.  Each party receiving Protected Information shall comply with all applicable export control statutes and regulations.

*See, e.g.*, 15 CFR 734.  No Protected Information may leave the territorial boundaries of the United States of America or be made available to any foreign national who is not (i) lawfully admitted for permanent residence in the United States or (ii) identified as a protected individual under the Immigration and Naturalization Act (8 U.S.C. 1324b(a)(3)).  Without limitation, this prohibition extends to Protected Information (including copies) in physical and electronic form.  The viewing of Protected Information through electronic means outside the territorial limits of the United States of America is similarly prohibited.  Notwithstanding this prohibition, Protected Information, exclusive of material designated HIGHLY CONFIDENTIAL – SOURCE CODE or CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY INFORMATION, and to the extent otherwise permitted by law, may be taken outside the territorial limits of the United States if it is reasonably necessary for a deposition taken in a foreign country.  The restrictions contained within this paragraph may be amended through the consent of the producing Party to the extent that such agreed to procedures conform with applicable export control laws and regulations.

14.5  <u>Filing Protected Material</u>.  Without written permission from the Designating Party or a Court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Material. A Party that seeks to file under seal any Protected Material must comply with Local Civil Rule 79-5.  Protected Material may only be filed under seal pursuant to a Court order authorizing the sealing of the specific Protected Material at issue.  Pursuant to Local Civil Rule 79-5, a sealing order will issue only upon a declaration establishing good cause or demonstrating compelling reasons why the strong presumption of public access in civil cases should be overcome, with citations to the applicable legal standard.  If a Receiving Party's request to file Protected Material under seal pursuant to Local Civil Rule 79-5.2 is denied by the Court, then the Receiving Party may file the Protected Material in the public record pursuant to Local Civil Rule 79-5.2.2(a) unless otherwise instructed by the Court.

14.6    Use of Protected Material at Hearing or Trial.  A Party shall provide a minimum of two business days' notice to the Producing Party in the event that a Party intends to use any Protected Information during any hearing or trial.  Subject to any challenges under Section 6, the Parties will not oppose any reasonable request by the Producing Party that the courtroom be sealed, if allowed by the Court, during the presentation of any testimony, evidence, or argument relating to or involving the use of any Protected Material.

14.7    No Limitation on Legal Representation.  Nothing in this Order shall preclude or impede Outside Counsel of Record's ability to communicate with or advise their client in connection with this litigation based on such counsel's review and evaluation of Protected Material, provided however that such communications or advice shall not disclose or reveal the substance or content of any Protected Material other than as permitted under this Order.

14.8    Violations.  If any Party violates the limitations on the use of Protected Material as described above, the Party violating this Order shall be subject to sanctions, or any other remedies as appropriate, as ordered by the Court.  In the event motion practice is required to enforce the terms of this Order, the prevailing party on such a motion shall be awarded costs, expenses, and fees, including attorney or other professional fees, incurred in connection with the discovery of the violation and the preparation, filing, and arguing of the motion or any other proceedings resulting from the violation.

14.9    Agreement Upon Execution.  Each of the Parties agrees to be bound by the terms of this Order as of the date counsel for such party executes this Order, even if prior to entry of this Order by the Court.

## XV.    FINAL DISPOSITION

Within 60 days after the final disposition of this action, as defined in paragraph 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material.  As used in this subdivision, "all Protected Material" includes

all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60-day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motions and trial briefs (including all supporting and opposing papers and exhibits thereto), written discovery requests and responses (and exhibits thereto), deposition transcripts (and exhibits thereto), hearing transcripts, legal memoranda, correspondence, trial transcripts, and exhibits offered or introduced into evidence at any hearing or trial, and their attorney work product which refers or is related to any CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER information for archival purposes only. Any such archival copies that contain or constitute Protected Material remain subject to this Order as set forth in Section 4 (DURATION).

## XVI. INTERPRETATION, ENFORCEMENT, AND CONTINUING JURISDICTION

The United States District Court for the Central District of California is responsible for the interpretation and enforcement of this Order. After final disposition of this litigation, the provisions of this Order shall continue to be binding except with respect to that Disclosure or Discovery Material that become a matter of public record. This Court retains and shall have continuing jurisdiction over the Parties and recipients of the Protected Material for enforcement of the provision of this Order following final disposition of this litigation. All disputes concerning

Protected Material produced under the protection of this Order shall be resolved by the United States District Court for the Central District of California.

**IT IS SO ORDERED.**

**DATED: August 15, 2025**

**HON. DOUGLAS F. MCCORMICK**

**United States Magistrate Judge**

Case No. 2:20-cv-00169-JAK (DFMx)
PROTECTIVE ORDER

# EXHIBIT A

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Protective Order that was issued by the United States District Court for the Central District of California on _____ [date] in the case of *Sonos, Inc., v. Google LLC*, Case No. 2:20-cv-00169-JAK-DFM.  I agree to comply with and to be bound by all the terms of this Protective Order, and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt.  I solemnly promise that I will not disclose in any manner any information or item that is subject to this Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing the terms of this Protective Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____ [print or type full name] of _____ [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Protective Order.

Date:_____

City and State where sworn and signed:_____

Printed name:_____

[printed name]

Signature:_____

[signature]

Case No. 2:20-cv-00169-JAK (DFMx)

PROTECTIVE ORDER