**REDACTED VERSION OF DOCUMENT PROPOSED**
**TO BE FILED UNDER SEAL**

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Melissa J. Baily (SBN 237649)
melissabaily@quinnemanuel.com
James D. Judah (SBN 257112)
jamesjudah@quinnemanuel.com
Ognjen Zivojnovic (SBN 307801)
ogizivojnovic@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

Lance Yang (Bar No. 260705)
lanceyang@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Tel: (213) 443-3000
Fax: (213) 443-3100

*Attorneys for Defendant-*
*Counterclaimant Google LLC*

ORRICK HERRINGTON & SUTCLIFFE LLP
Clement S. Roberts (SBN 209203)
croberts@orrick.com
405 Howard Street
San Francisco, CA 94105
Tel: (415) 773-5700
Fax: (415) 773-5759

Alyssa Caridis (SBN 260103)
acaridis@orrick.com
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel: (213) 629-2020
Fax: (213) 612-2499

LEE SULLIVAN SHEA & SMITH LLP
George I. Lee (*pro hac vice*)
lee@ls3ip.com
Sean M. Sullivan (*pro hac vice*)
sullivan@ls3ip.com
Rory P. Shea (*pro hac vice*)
shea@ls3ip.com
J. Dan Smith (*pro hac vice*)
smith@ls3ip.com
656 W. Randolph St., Floor 5W
Chicago, IL 60661
Tel: (312) 754-0002

*Attorneys for Plaintiff-Counterclaim*
*Defendant Sonos. Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| SONOS, INC.,<br><br>*Plaintiff-Counterclaim Defendant,*<br><br>vs.<br><br>GOOGLE LLC,<br><br>*Defendant-Counterclaimant.* | CASE NO. 2:20-cv-00169-JAK (DFMx)<br><br>**JOINT FILING REGARDING DISCOVERY DISPUTE**<br><br>Initial Complaint Filed: January 7, 2020<br>Discovery Cutoff: July 2, 2026<br>Final Pretrial Conference: TBD<br>Trial Date: TBD<br><br>Date: July 7, 2026<br>Time: 10:00 AM<br>Location: Courtroom 6B<br>Judge: Hon. Douglas F. McCormick |

████████████████████████

# **TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................ 1

   A.  Google's Position ................................................................................. 1

   B.  Sonos's Position .................................................................................. 2

II.    DISCOVERY AT ISSUE ............................................................................. 3

   A.  Request For Production Nos. 114 & 115 ......................................... 3

      1.     Google's Position ................................................................... 5

      2.     Sonos's Position .................................................................. 13

   B.  Interrogatory No. 5 ........................................................................... 17

      1.     Google's Position ................................................................. 19

      2.     Sonos's Position .................................................................. 25

   C.  Interrogatory No. 7 ........................................................................... 34

      1.     Google's Position ................................................................. 36

      2.     Sonos's Position .................................................................. 43

██████████████████████████

Pursuant to Civil L.R. 37-2, Defendant Google LLC ("Google") and Plaintiff Sonos, Inc. ("Sonos") hereby submit this joint discovery dispute filing regarding Sonos's Responses and Objections to Google's Requests for Production Nos. 114 and 115 and Interrogatory Nos. 5 and 7. As set forth in the Declaration of James D. Judah, filed concurrently herewith, the parties met and conferred regarding the issues raised herein pursuant to Civil L.R. 37-1 but were unable to resolve their disputes. Pursuant to Local Rule 37-2.1, the Court's Scheduling Order is attached hereto as **Exhibit 1**.

## I.    INTRODUCTION

### A.    Google's Position

Sonos has chosen to assert patents in this litigation that it contends are entitled to priority dates going back 20+ years, based on earlier filed applications and allegations of even earlier conception of the claimed inventions. Such ancient patents come with long and complex histories. Under the applicable patent and discovery rules, Sonos was obligated to take concrete positions and produce relevant documents early in litigation; otherwise, Google is left guessing at what Sonos contends is the relevant "priority date" for each patent, what earlier applications Sonos contends are relevant, and to what extent Sonos publicly practiced its patent before the relevant priority date. But even after more than a year of fact discovery, Sonos still has not complied with its obligations, leaving Google in the dark on critical aspects of the case.

***First***, Sonos is refusing to search for and produce documents relevant to Sonos's own public disclosure for one of the patent families that predates the filing of the earliest applications for those patents by more than a year, rendering Sonos's own conduct invalidating prior art. Only Sonos knows the full extent of its earlier public disclosure and scope of evidence substantiating the same. Google is entitled to that evidence to support its invalidity defense. Sonos cannot simply refuse to produce relevant evidence in its possession simply because it is damaging to its case.

***Second***, Sonos has served interrogatory responses on when it allegedly

-1-

███████████████████████████████████████

conceived its claimed invention that are at odds with Sonos's controlling disclosure of their priority dates, as required by this Court's patent rules. The patent rules require the patentee to specify its contentions on key issues, including "priority date," early in litigation so that the defendant may prepare its invalidity defense accordingly. Sonos should not be allowed to keep Google in the dark, or at least on shifting grounds, by taking inconsistent and changing positions. Sonos's inconsistent interrogatory responses should be struck.

*Third*, Sonos has refused to answer a basic interrogatory to substantiate Sonos's claims that its patents are entitled to the filing dates of earlier applications. To the extent Sonos complains about the burden of making that showing, that is a problem of Sonos's own making. Sonos chose to assert 10 patents that claim priority to dozens of applications, and it is now incumbent on Sonos to substantiate its allegation that each of those patents is entitled to its earliest claimed filing date. Sonos should be ordered to comply with its obligations under governing patent and discovery rules. Sonos's attempts to muddle the "priority date" of its asserted patents should be resolved by striking Sonos's inconsistent interrogatory responses, Sonos should be required to disclose its basis for alleging the asserted patents are entitled to the filing dates or earlier patent applications, and Sonos should produce evidence relevant to Google's invalidity defense.

## B. Sonos's Position

At no point in this case has Google had to guess at any of Sonos's contentions or positions.

*First*, Sonos never refused to search for and produce documents related to Google's alleged invalidity defense. As explained below, the information Google seeks is over 16 years old. Sonos produced what it was able to find after a reasonable search. This production includes the production of documents, several distinct snapshots of the source code, and an interrogatory response.

*Second*, Sonos disclosed its positions on priority date and prior invention

-2-

████████████████████████████████

(which are distinct legal concepts) from the very outset of this case. Google has had this information for well over a year now (and indeed even earlier, as Sonos disclosed the same positions in the 2020 ITC case). Google feigns ignorance by misreading this Court's requirement to disclose the patents' priority dates as containing a silent requirement to also disclose prior invention dates and hopes this Court orders the draconian remedy of precluding Sonos from relying on earlier invention dates. For some reason, Google has failed to inform the Court that Sonos disclosed its prior invention dates at nearly the same time it disclosed its priority dates (April 2025) and disclosed them in its initial response to Google's interrogatory asking for them. Google can hardly claim prejudice or surprise when it received an answer to a question it asked. Instead, Google hopes this Court takes the same tortured reading of the Court's rules that Google takes and then faults Sonos for not conceding to the same reading

*Third*, Sonos has mapped each Asserted Patent to its parent and/or provisional applications – establishing each Asserted Patent's priority date. Sonos provided the *evidence* of this on December 19, 2025, but Google has been aware of Sonos's priority dates of the Asserted Patents since February 24, 2025 and Sonos's priority dates of the Asserted Claims since April 21, 2025. The information Google now seeks is the evidence related to the written description and enablement support for each Asserted Claims.

## II.     DISCOVERY AT ISSUE

### A.     Request For Production Nos. 114 & 115

**Request For Production No. 114:**

All documents and things (including software, instructions, brochures, manuals, diagrams, workbooks, published articles, publications, patents, patent applications, user guides, literature, tutorials, public demonstrations, photographs, videos, advertisements, and publicity of any kind) that show the design, structure, and operation of each version of the Stereo Claim Features of any Sonos ZonePlayer S5 System before April 8, 2010.

-3-

01980-00237/18145797.14

████████████████████████████████████

**Sonos's Response to Request for Production No. 114:**

Sonos objects that the Request is overbroad, unduly burdensome, and not proportional to the needs of the case, particularly to the extent that the Request is not limited as to time and purports to require "All documents and things . . . that show the design, structure, and operation of each version of the Stereo Claim Features of any Sonos ZonePlayer S5 System before April 8, 2010."

Sonos objects that the Request is vague and ambiguous, particularly as to what is meant by "documents and things . . . including public demonstrations . . . and publicity of any kind," or "structure . . . of each version."

Sonos also objects to the Request to the extent that it calls for material protected from discovery by attorney-client privilege, the work product doctrine, or any other applicable privilege.

Subject to these Specific Objections and the foregoing General Objections, and insofar as this Request is understood, Sonos has produced or will produce relevant, non-privileged, and responsive documents sufficient to show the design and operation of the Stereo Claim Features of the Sonos S5 player before April 8, 2010 to the extent that any exist, are in the possession, custody or control of Sonos, and can be located following a reasonable search.

Sonos reserves the right to revise, correct, add to, supplement, or clarify its response to this Request for Production as additional information is discovered and/or becomes available.

**Request For Production No. 115:**

Documents sufficient to show the sale, offer for sale, or use of each Sonos Zone S5 System before April 8, 2010.

**Sonos's Response to Request for Production No. 115:**

Sonos objects that the Request is overbroad, unduly burdensome, and not proportional to the needs of the case, particularly to the extent that the Request calls for documents that show "use of each" Sonos S5 player.

Sonos objects to the request to the extent that it calls for material protected from discovery by attorney-client privilege, the work product doctrine, or any other applicable privilege.

Subject to these Specific Objections and the foregoing General Objections, and insofar as this Request is understood, Sonos has produced or will produce relevant, non-privileged, and responsive documents sufficient to show sales and offers for sale of the Sonos S5

-4-

███████████████████████████████

Player before April 8, 2010 to the extent that any exist, are in the possession, custody or control of Sonos, and can be located following a reasonable search.

Sonos reserves the right to revise, correct, add to, supplement, or clarify its response to this Request for Production as additional information is discovered and/or becomes available.

1.    Google's Position

Google has identified and has asserted that Sonos's ZonePlayer S5 System ("S5") is invalidating prior art to U.S. Patent Nos. 9,219,959 (the "'959 patent") and 10,966,025 (the "'025 patent") under Pre-AIA 35 U.S.C. § 102(b),[1] which expressly includes "public use" or "public sale" as a basis for invalidation.  Google's RFP Nos. 114 and 115 seek documents and things relating to technical information and public availability (e.g., use, sale, or offer for sale) of the S5 product, which are directly relevant to Google's § 102(b) defense.  Despite the facial relevance these Requests to Google's 102(b) defense, Sonos has refused to produce numerous types of responsive documents and things based on its improper objections and limitations to the scope of the Requests.

**First**, Sonos improperly limits the scope of its response to Request Nos. 114 and 115 to one, unspecified version of the S5 System: "Stereo Claim Features of **the S5 player** before April 8, 2010."  *See supra* Section II.A (emphasis added).  However, Google's definition of the term "Sonos ZonePlayer S5 System," which is commensurate with its invalidity contentions, is not so limited.  Indeed, Google explained in its invalidity contentions that documents and things relating to **each** internally or externally released version of the S5 before April 8, 2010, are relevant to invalidity.  *See* Ex. 2 (Google's Second Supplemental Invalidity Contentions) at

---

[1]  *See, e.g.*, Ex. 2 (Google's Second Supplemental Invalidity Contentions) at Exs. 2-1 (959-06) and 2-2 (025-06) (stating that Sonos's application/software to operate the S5, including all prior alpha 1, alpha 3, beta, beta external, and other test versions of "Lonestar," and all other versions before the relevant priority date, are relevant to invalidity).

-5-

959-06 and 025-06.  Google also made clear in its definition of "Sonos ZonePlayer S5 System"[2] and in the specific Requests that—consistent with its invalidity contentions—it is seeking discovery on *each version* of the S5 released before April 8, 2010.  Sonos should not be permitted to pick and choose which versions of the S5 for which it will and will not produce responsive information—especially to the extent Sonos contends the S5 is not prior art.  Instead, Sonos's production should encompass documents and things relating to each version of the S5 (whether internal or external, whether alpha, beta, or commercial, etc.) that existed in any form prior to April 8, 2010,[3] including, without limitation:

- S5 beta that included "stereo imaging" on or before September 2009:



Ex. 3 (SONOS-ITC-00942646 at -646 & -647) (excerpt).

- S5[s] that included "stereo pair" feature provided to a CNET author as

---

[2]   Google defines "Sonos ZonePlayer S5 System" in its Second Set of Requests for Production as "each physical software, and application version of the Sonos ZonePlayer S5 or Sonos Play:5 developed before April 2010 including, but not limited to, each prototype software or application version (e.g., Lonestar Alpha 1, Lonestar Alpha 3, Lonestar Beta 1, Lonestar External Beta) provided to individuals not employed by Sonos, each software or application version provided to members of the press (e.g., the version reviewed in https://www.cnet.com/reviews/sonos-zoneplayer-s5-review/), each software or application version provided to the public through 'Open "Twitter" Beta' (e.g., SONOS-ITC-00400675 at -693), and each software or application version that was used for a demo (e.g., SONOS-ITC-00340238)."

[3]   April 8, 2010 is the critical date—i.e., the date one year before Sonos's claimed priority date of April 8, 2011 (for the '959 patent), and is therefore also relevant for prior art based on Sonos's claimed priority date of January 25, 2011 for the '025 patent.

-6-

01980-00237/18145797.14

■■■■■■■■■■■■■■■■■■

described in the below article, dated November 2009, including any updated S5 that may have been used as a basis to update the article:



Ex. 4 (GOOG-SONOSCDCA-PA-00001269 at -269 & -275) (excerpt).

- S5 used for "demo of stereo pair" by Steven Beckhardt on or before December 23, 2009:



Ex. 5 (SONOS-ITC-00340238) (excerpt).

- S5 "Lonestar Alpha 1" that included the stereo pair feature released on January 22, 2010:

-7-

Ex. 6 (SONOS-ITC-00249122 at -122) (excerpts).

- S5 "Open 'Twitter' Beta" that started on or before February 1, 2010:

Ex. 7 (SONOS-ITC-00400675 at -693) (excerpt).

- S5 "Lonestar Alpha 3" that included the stereo pair feature released on February 5, 2010:

-8-

Case No. 2:20-cv-00169-JAK
JOINT FILING REGARDING DISCOVERY DISPUTE

Ex. 8 (SONOS-ITC-00340985 at -985) (excerpt).

- S5 "Lonestar Beta 1" that included the stereo pair feature released in March 2010:

Ex. 21 (SONOS-ITC-00380661) (excerpt).

- S5 "External Beta" that included the stereo pair feature that started in March 2010 (SONOS-ITC-01125994):

Ex. 9 (SONOS-ITC-01125994) (excerpt).

**Second**, Sonos improperly refuses to produce "things"—such as S5 physical samples—responsive to Request No. 114, instead limiting its production to "***documents*** sufficient to show" the subject information. *See supra* Section II.A (emphasis added). These requested "things," however, are relevant to demonstrating that the S5 practiced the asserted claims of the '959 and '025 patents before the

-9-

01980-00237/18145797.14

████████████████████████████████

relevant bar date and are properly discoverable. *See, e.g.*, *Intex Recreation Corp. v. Bestway USA, Inc.*, No. 2:10-cv-08596 JAK (Ex), 2025 WL 2633100, at *11-12 (C.D. Cal. July 14, 2025) (Kronstadt, J.) (finding magistrate judge's order compelling production of product samples was not clearly erroneous and noting "[t]o the extent Defendants intend to assert [certain] products or samples as prior art in this case, these products or samples are relevant").

**Third**, Sonos improperly limits the scope of its response to Request No. 114 to "documents **sufficient to show** the **design and operation**" of the S5. *See supra* Section II.A (emphasis added). However, Google's Request also seeks other materials relating to the design, structure, and operation of the Stereo Claim Features for each version of the S5 before April 8, 2010. The full scope of responsive documents and things is relevant to Google's on-sale bar defense, such as showing when each version of the S5 practiced the asserted claims of the '959 and '025 patents, who worked on these versions, and with whom they were shared and in what form.

Moreover, and contrary to Sonos's objections, this Request is not overbroad, unduly burdensome, or disproportionate to the needs of the case. Sonos is the party who has asserted the '959 and '025 patents against Google, and Google has properly identified and asserted Sonos's S5 product as invalidating prior art to those two patents at least under Pre-AIA 35 U.S.C. § 102(b). Google's Request is demonstrably narrow and targeted to the specific information needed to support this defense: it is directed to a particular feature ("Stereo Claim Features") of the specific product Google asserts as invalidating prior art ("Sonos ZonePlayer S5 System") within the relevant time frame based on the alleged priority date (i.e., more than one year before the claimed priority date for the '959 patent of "before April 8, 2011"). Resultantly, Google's request for "All documents and things" is not overbroad, unduly burdensome, or disproportional to the needs of the case in context. *See, e.g.*, *RG Abrams Ins. v. Law Offices of C.R. Abrams*, 2021 WL 10312432, at *7 (C.D. Cal. Nov. 5, 2021) (although "document requests that seek 'any and all documents' in

-10-

support of factual contentions can be found to run afoul to Rule 26(g) … document requests that seek a specific type of information related to a specific event, such as the specific allegations [at issue] … are permissible"); *see also, e.g.*, *Application of Stephen Shefsky for Order to Take Discovery for Use in Foreign Proceedings Under 28 U.S.C. § 1782*, No. 2:23-cv-00633-JCM-BNW, 2024 WL 2275215, at *11 (D. Nev. May 20, 2024) ("where the description of the requests is sufficiently tailored to allow a party to ascertain responsive documents, the use of the language "All Documents" is not overbroad").

Nonetheless, in an attempt to promote efficiency and avoid unnecessary Court intervention, Google further narrowed the Request and asked Sonos to agree to produce, for each version of the S5 released before April 8, 2010, specific categories of documents.  *See* Ex. 10 (Nov. 24, 2025 Letter) at 3.  Despite Google's narrowing, Sonos still has not produced that discovery.

**Fourth**, Sonos has improperly limited the scope in its response to Request No. 115 to exclude documents and things relating to public use and sale of each version of the S5.  As described above, these documents are relevant to Google's 102(b) defense because Google has identified and asserted that the S5 is invalidating prior art at least under Pre-AIA 35 U.S.C. § 102(b), which expressly includes "public use" or "public sale" as a basis for invalidation.  *See* Ex. 2 (Google's Second Supplemental Invalidity Contentions) at Ex. 2-1 (959-06) & Ex. 2-2 (025-06).  Further, Sonos stated in its response to Google's Interrogatory No. 18 that it has conducted "alpha and beta testing of prototype software for its S5 product" with third parties and alleges that each third-party person had "an express or implied understanding of confidentiality." *See* Ex. 11 (Sonos's Responses and Objections to Google's Fourth Set of Interrogatories) at 3.

Thus, Google respectfully requests an order compelling Sonos to produce documents on the design, structure, and operation of the Stereo Claim Features before April 8, 2010 (RFP 114) and sale, offer for sale, or use of the same prior to April 8,

-11-

█████████████████████████████████████

2010 (RFP 115).  That production should include, at minimum, the following:

- RFP 114:  Documents and things relating to the design, structure, and operation of each version of the Stereo Claim Features of any Sonos ZonePlayer S5 System prior to April 8, 2010, including:
  - Software released prior to April 8, 2010 that related to the Stereo Claim features for each S5 version described above;
  - Copies of the software for the Stereo Claim Features that Sonos provided to third parties (e.g., third parties identified on SONOS-SVG1-0122278 (Ex. 12); SONOS-SVG1-0122274 (Ex. 13); SONOS-SVG1-0121302 (Ex. 14); and SONOS-SVG1-0122598 (Ex. 15) prior to April 8, 2010;
  - Documents sufficient to show how S5 communicates (e.g., network protocol) with other devices (e.g., CR200, cell phone); and
  - Physical samples (e.g., S5, CR200).
- RFP 115:  Documents showing the use of the Stereo Claim Features prior to April 8, 2010 by third parties, including:
  - The "instruction on Stereo Pair feature" received by each tester from Sonos as referenced in SONOS-SVG1-0122274 (Ex. 13);
  - The "welcome email" and "other instructions on how to obtain the prototype software and submit feedback" provided by Sonos to each third party regarding the Stereo Claim Features as referenced on SONOS-SVG1-0122278 (Ex. 12) and Sonos's response to Google's Interrogatory No. 18 (Ex. 11);
  - Documents sufficient to show how and when each third party downloaded and used "alpha and beta testing of prototype software for its S5 product" prior to April 8, 2010 (as referenced in Sonos's response to Google's Interrogatory No. 18 (*id.*));

-12-

o Documents sufficient to show "an express [] understanding of confidentiality" (e.g., fully executed non-disclosure agreement) between each third-party tester and Sonos, as alleged by Sonos (*id.*);

o Documents sufficient to show "an [] implied understanding of confidentiality" between each third-party tester and Sonos, as alleged by Sonos (*id.*);

o Communications with each beta tester prior to April 8, 2010;

o Feedback provided by third parties regarding the Stereo Claim Features prior to April 8, 2010; and

o Usage Data of the S5 (generally or specific to the Stereo Claim Features) by third parties prior to April 8, 2010.

- RFP 115: Documents showing the sale or offer for sale of each Sonos Zone S5 System before April 8, 2010, including:

o Documents sufficient to show any advertising or marketing of the Stereo Claim Features prior to April 8, 2010; and

o Documents sufficient to show sales (e.g., invoices) or offers for sale to each third party with the "alpha and beta testing of prototype software for its S5 product" prior to April 8, 2010 (as referenced in Sonos's response to Google's Interrogatory No. 18 (Ex. 11)).

2.    Sonos's Position

Sonos is not withholding relevant information responsive to Google's Request Nos. 114 and 115. Sonos has conducted a reasonable search for responsive and relevant information and produced what it has been able to locate. The fact of the matter is that the information Google is asking for is over 16 years old. Sonos conducted a reasonable search for the information Google is seeking and has been unable to locate it, short of what it has already produced. In particular, Sonos has

-13-

Case No. 2:20-cv-00169-JAK
JOINT FILING REGARDING DISCOVERY DISPUTE

████████████████████████████████████████████

already produced documents that it was able to locate after a reasonable search – including the documents identified in its response to Google's Interrogatory No. 18 and 7 snapshots of related source code that it produced January 13, 2026. *See* Ex. 11 and Ex. B. Additionally, Sonos has agreed to produce a witness to testify on Google's 30(b)(6) Topics No. 31 and No. 55, which are both directed towards the S5 prior to April 8, 2010. Ex. A.  It is unclear what more Google would like Sonos to do.

(a)    Source Code for Each "Version"

Google first complains that Sonos has overly narrowed its responses to this discovery requests by limiting its response to only one "version" of the S5 system, but that is not true. Sonos has produced seven snapshots of the source code for the S5 system corresponding to various points in time between November 3, 2009 to May 18, 2010. Sonos informed Google that it would work with Google to produce additional snapshots of the code for other dates provided that Google could articulate the relevance of this code for such other dates.  However, Google has not made any such supplemental request.

Sonos also explained to Google that it conducted a reasonable search for each "version" and investigated the supposedly existence of each "version" as summarized below. *See* Ex B.

- S5 beta that included "stereo imaging" on or before September 2009
  - Sonos explained the "stereo imagining" referenced in SONOSITC-00942646 is "a feature designed to widen the 'sound stage' of a single player." This is not related nor does it refer to the stereo pair feature. In addition, the individual in the email no longer works for Sonos and as such Sonos is unable to ascertain what version or snapshot of the code this individual was referring to.

-14-

█████████████████████████████████████████

- In any event, Sonos produced a snapshot of the v3.1 code from November 3, 2009, which is not alleged to contain or practice the stereo pair features.
- S5[s] that included "stereo pair" described in the CNET article
  - Sonos explained that this article was published in 2011, not in 2009 as Google suggests. This is evidenced by the article's editor note which references products Sonos did not release until 2010 and 2011. The 2009 version of the article does not reference the stereo pair feature. *See* SONOS-SVG1-0118597.
  - Moreover, Sonos has investigated and concluded that there were no S5 products provided to any members of the press and thus was unable to locate anything responsive to this aspect of the request.
  - In any event, Sonos produced a snapshot of the v3.1 code from November 3, 2009 and a snapshot of the code from January 6, 2010.
- S5 used for "demo of stereo pair" by Steven Beckhardt on or before December 23, 2009
  - The individual in this email no longer works for Sonos and as such, Sonos is unable to ascertain what version or snapshot of the code this individual was referring to.
  - In any event, Sonos produced a snapshot of the v3.1 code from November 3, 2009 and a snapshot of code from January 6, 2010.
- S5 "Lonestar Alpha 1" identified on identified on January 22, 2010
  - Sonos has produced a snapshot of the code from January 22, 2010. Thus it is unclear what more Google is requesting.
- S5 "Open 'Twitter' Beta" identified on February 1, 2010
  - Sonos explained that this document was referring to the initial launch of the S5 product, which did not include the stereo pair feature. *See id*. Moreover, Sonos explained that the "Twitter" feature referred to a

-15-

███████████████████████████████

feature whereby a user could link a Twitter account to their Sonos system and thereby post updates to Twitter, which would include what music the user was listening to.  This feature is not accused of infringement and as such has no relevance to this case.

- o   In any event, Sonos produced a snapshot of the v3.1 code which was released on November 3, 2009 with the initial launch of the S5 product.
- o   Sonos also produced snapshots of code from January 29, 2010 and February 4, 2010.

- S5 "Lonestar Alpha 3" released on February 1, 2010
  - o   Sonos produced snapshots of code from January 29, 2010 and February 4, 2010.
- S5 "Lonestar Beta 1" released on March 5, 2010
  - o   Sonos produced snapshots of code from March 5, 2010.
- S5 External Beta released on March 5, 2010
  - o   Sonos produced snapshots of code from March 5, 2010.

(b)    Physical Samples

Sonos does not have within its possession, custody, or control any S5 product from the dates Google requests, which is now over 16 years ago.

(c)    Information provided to/from Beta Testers

Sonos has conducted a reasonable search for these materials (such as executed NDAs, feedback provided by beta testers, and usage data) and has produced what it has been able to locate.

(d)    Sale or offer for sale of each Sonos Zone S5 System

Google requests the Court compel Sonos to produce two categories of documents related to its RFP No 115. Specifically, Google seeks (1) documents sufficient to show any advertising or marketing of the Stereo Claim Features prior to April 8, 2010, and (2) documents sufficient to show sales or offers for sale of the alpha and beta testing of prototype software for its S5 product prior to April 8, 2010.

-16-

████████████████████████

As an initial matter, Sonos has produced historical sales records dating back to 2005. These records document sales of the S5 system in 2009 and 2010. Moreover, Sonos has conducted a reasonable search for documents sufficient to show advertising or marketing of the Stereo Claim Features prior to April 8, 2010, and documents sufficient to show sales or offers for sale of the alpha and beta testing of prototype software for its S5 product prior to April 8, 2010 and has been unable to locate any documents beyond that which Sonos has already produced.

**B.    Interrogatory No. 5**

**Interrogatory No. 5:**

For each Asserted Claim, on an element-by-element basis, provide and identify your contentions regarding conception and reduction to practice, Including (a) the date on which you contend such claim was conceived and was first reduced to practice, (b) an identification of all documents corroborating such conception and reduction to practice, (c) the name, present or last known address, and the last known title and place of employment of each person with knowledge of such conception and reduction to practice and all information each person has relating to such conception and reduction to practice and identify all documents by Bates Numbers relating to such conception and reduction to practice, (d) all facts and evidence that you contend show diligence, if any, exercised in reducing to practice the claimed invention, (e) your efforts to locate documents and contact the named inventor in order to support your contention, and (f) the full factual basis for each specific apparatus, product, device, and service you contend embodies the reduction to practice, Including identification of where each claim element or limitation is practiced and identify all documents by Bates Numbers relating to such reduction to practice.

**Sonos's Corrected Response to Interrogatory No. 5 (2/13/2026):**

(*With additions indicated by underline and deletions by strikethrough.*)

Sonos objects to this interrogatory as overbroad, unduly burdensome, and not reasonably proportional to the burden insofar as it purports to require "an identification of *all* documents corroborating such conception and reduction to practice … the name, present or last known address, and the last known title and place of employment of *each person* with knowledge of such conception and reduction to practice and *all* information each person has relating to such conception and reduction

-17-

01980-00237/18145797.14

███████████████████████████████████████████

to practice … *all* facts evidence that you contend show diligence . . . the *full* factual basis for each specific apparatus, product, device, and service you contend embodies the reduction to practice, Including identification of where each claim element or limitation is practiced and identify *all* documents … relating to such reduction to practice."

Sonos also objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrines. For example, invention disclosures are protected by the attorney-client privilege. *See, e.g., In re Spalding Sports Worldwide, Inc.*, 203 F. 3d 800, 805-06 (Fed. Cir. 2000).

Sonos further objects to this Interrogatory as premature to the extent it seeks expert discovery in advance of the date set forth in the Federal Rules of Civil Procedures and/or the Court's Scheduling Order.

In light of the foregoing objections, Sonos states that:

**'258, '953, '001 Patents**

The respective subject matter claimed in the Asserted Claims of the '258, '953, and '001 Patents was conceived at least as early as April 25, 2003. … After it was conceived, the respective subject matter claimed in the Asserted Claims of the '258 and '001 Patents was diligently reduced to practice at least as early as May 13, 2003 and the subject matter claimed in the Asserted Claims of the '953 Patent was diligently reduced to practice at least as early as July 28, 2003. …

**'715 Patent**

The subject matter claimed in the Asserted Claims of the '715 Patent was conceived and reduced to practice at least as early as April 1, 2004.

**'949 and '014 Patents**

The respective subject matter claimed in the Asserted Claims of the '949 and '014 Patents was conceived at least as early as July 11, 2003. … After it was conceived, the respective subject matter claimed in the Asserted Claims of the '949 and '014 Patents was diligently reduced to practice at least as early as October 24, 2003. …

**'959 and '025 Patents**

The respective subject matter claimed in the Asserted Claims of the '959 and '025 Patents was conceived at least as early as July 2009. … After it was conceived, the respective subject matter claimed in the Asserted Claims of the '959 and '025 Patents was diligently reduced to practice at least as early as January 22, 2010 <u>and January 29, 2010</u>. …

-18-

██████████████████████████████████

**'896 and '883 Patents**

The subject matter claimed in the Asserted Claims of the '896 and '883 Patents was conceived at least as early as March 11, 2004. … After it was conceived, the subject matter claimed in the Asserted Claims of the '896 and '883 Patents was diligently reduced to practice at least as early as March 17, 2004.

Sonos's complete Response to Interrogatory No. 5 is attached hereto as Exhibit 16 (Sonos's Third Supplemental Objections and Responses to Google's First Set of Interrogatories) at 141-149 (Corrected Response), 149-150 (Corrected First Supplemental Response), and 150-329 (Second Supplemental Response).[4]

1.      Google's Position

Google's Interrogatory No. 5 seeks information concerning Sonos's contentions regarding conception and reduction to practice of the claimed inventions. The purpose of this Interrogatory is to understand the details, on an element-by-element basis, of the high-level contentions disclosed in Sonos's Standing Patent Rule ("S.P.R.") 2.1 Disclosures. *See* Dkt. 13 at Ex. B (Standing Patent Rules). Instead, Sonos has improperly sought to use the Interrogatory as a "do-over" of those disclosures—without actually amending its infringement contentions, as required under the Standing Patent Rules. Google therefore asks the Court to strike Sonos's inconsistent Interrogatory responses, and to compel a complete response that is consistent with its S.P.R. 2.1 disclosures.

(a)      Sonos's S.P.R. 2.1.4 Conception Dates

The Court's Standing Patent Rules "were drafted to respond to the needs of [the patent practitioner] community and to reduce transaction costs and increase procedural predictability." Dkt. 13 at 23 (S.P.R. Introduction). They set forth a

---

[4]  Sonos's complete response, including supplementations, to Interrogatory No. 5 spans approximately 175 pages. At this time, Google does not contest the sufficiency of the remaining portions of Sonos's response and, for purposes of efficiency and ease of review, has thus limited the excerpt of Sonos's response to the portions at issue.

-19-

sequenced and logical disclosure schedule, at the outset of the case, starting with key early disclosures from the patentee (S.P.R. 2.1, "Disclosure of Asserted Claims and Infringement Contentions"), followed roughly sixty days later by key early disclosures from the accused infringer (S.P.R. 2.5, "Invalidity Contentions"). *Id.* at 25, 27.

S.P.R. 2.1 includes S.P.R. 2.1.4, which requires the patentee to set forth its contentions regarding the dates relevant to patent invalidity—which necessarily informs the accused infringer's research, preparation, and disclosure of S.P.R. 2.5 invalidity contentions. Dkt. 13 at 26.[5]  Specifically, S.P.R. 2.1.4 requires the patentee to disclose, "[f]or any patent that claims priority to an earlier application, the ***priority date*** allegedly applicable to each asserted claim." *Id.* (S.P.R. 2.1.4) (emphasis added). "Priority date," as used in S.P.R. 2.1.4, refers to the earliest date that the patentee contends is relevant to invalidity—which, if the patentee is relying on a conception date that pre-dates the earliest effective filing date, requires disclosure of the alleged conception date. *Cf. Neev v. Alcon Labs., Inc.*, 2017 WL 11629333, at *3-4 (C.D. Cal. May 16, 2017); *see also West v, Ultimate Metals Co.*, 2014 WL 466795, at *1 (N.D. Cal. Feb. 3, 2014) ("In patent cases, the conception and reduction to practice dates are relevant to a party's defenses because they are related to the priority date, which the defendant must beat to show that the claims are invalid over the prior art." (citations and quotations omitted)); *OpenTV, Inc. v. Apple Inc.*, 2016 WL 3196643, at *2 (N.D. Cal. June 9, 2016) ("a patent holder's asserted priority and conception date is pivotal to the accused infringer's assessment of relevant prior art.") (citing *Taurus IP, LLC v. Daimler Chrysler Corp.*, 726 F.3d 1306, 1323 (Fed. Cir. 2013)).

---

[5]  *See Power Integrations, Inc. v. ON Semiconductor Corp.*, 2018 WL 3972278, at *9 n.5 (N.D. Cal. Aug. 20, 2018) ("[A] patentee's contentions about the relevant conception or priority date are among the disclosures that should occur before the accused infringer is required to research, prepare, and disclose invalidity contentions").

-20-

Sonos's operative S.P.R. 2.1.4 disclosures, served on February 10, 2025, and supplemented with individual corrections on April 30, 2025, set forth the following priority dates for each patent:

> Sonos contends that: (a) each Asserted Claim of the '014 Patent is entitled to a priority date no later than June 5, 2004; (b) each Asserted Claim of the '949 Patent is entitled to a priority date no later than June 5, 2004; (c) each Asserted Claim of the '258 Patent is entitled to a priority date no later than April 1, 2004; (d) each Asserted Claim of the '959 Patent is entitled to a priority date no later than April 8, 2011; (e) each Asserted Claim of the '715 Patent is entitled to a priority date no later than April 1, 2004; (f) each Asserted Claim of the '953 Patent is entitled to a priority date no later than July 28, 2003; (g) each Asserted Claim of the '896 Patent is entitled to a priority date no later than June 5, 2004; (h) each Asserted Claim of the '883 Patent is entitled to a priority date no later than June 5, 2004; (i) each Asserted Claim of the '025 Patent is entitled to a priority date no later than January 25, 2011; and (j) each Asserted Claim of the '001 Patent is entitled to a priority date no later than April 1, 2004.

Ex. 17 (Sonos's Corrected Disclosure of Asserted Claims and Infringement Contentions) at 60. Sonos has since supplemented other aspects of its Invalidity Contentions but left its S.P.R. 2.1.4 disclosures unchanged. *See* Ex. 18 (Sonos's First Amended Disclosure of Asserted Claims and Infringement Contentions) at 60-61.

Based on Sonos's S.P.R. 2.1.4 disclosures and its alleged priority dates, Google researched, prepared, and served its S.P.R. 2.5 Invalidity Contentions on April 24, 2025, supplemented those contentions multiple times, and filed multiple Patent Office post-grant challenges to the asserted patents.

(b)    Interrogatory No. 5

On March 21, 2025, Google served its First Set of Interrogatories, including Interrogatory No. 5 which sought the bases for the high-level contentions that Sonos had disclosed in its S.P.R. 2.1 disclosures (including the S.P.R. 2.1.4 disclosure). However, instead of explaining the basis for priority dates it disclosed on the February 10, 2025 S.P.R. deadline, Sonos used the interrogatory response as a "do over" by

-21-

████████████████████████████████████

asserting *different* and *earlier* conception dates (that were not identified in Sonos's S.P.R. 2.1.4 disclosure).  As shown in the below table, the discrepancy is substantial, with Sonos's claimed conception (i.e., priority) dates preceding its S.P.R. 2.1.4 priority dates by months and even more than a year:

| Asserted Patent | Asserted Priority Date per S.P.R. 2.1.4 Disclosures[6] | Asserted Conception Date per Response to Interrogatory No. 5[7] |
|---|---|---|
| 7,571,014 | "no later than June 5, 2004" | "at least as early as July 11, 2003" |
| 8,588,949 | "no later than June 5, 2004" | "at least as early as July 11, 2003" |
| 9,195,258 | "no later than April 1, 2004" | "at least as early as April 25, 2003" |
| 9,219,959 | "no later than April 8, 2011" | "at least as early as July 2009" |
| 10,031,715 | "no later than April 1, 2004" | "at least as early as April 1, 2004" |
| 10,209,953 | "no later than July 28, 2003" | "at least as early as April 25, 2003" |
| 10,439,896 | "no later than June 5, 2004" | "at least as early as March 11, 2004" |
| 10,541,883 | "no later than June 5, 2004" | "at least as early as March 11, 2004" |
| 10,966,025 | "no later than January 25, 2011" | "at least as early as July 2009" |
| 11,080,001 | "no later than April 1, 2004" | "at least as early as April 25, 2003" |

Google met and conferred with Sonos over an extended period to remedy these and other deficiencies in Sonos's response to Interrogatory No. 5.  Although Sonos's Second Supplemental Response, for example, included additional conception and reduction to practice dates for the specific asserted claims (*see generally* Ex. 16 at 150-329), this does not cure the fundamental problem: Sonos refuses to comply with the Standing Patent Rules by either amending its S.P.R. 2.1.4 disclosure or amending

---

[6]   *See* Ex. 18 (Sonos's First Amended Disclosure of Asserted Claims and Infringement Contentions) at 60-61.

[7]   *See* Ex. 16 (Sonos's Third Supplemental Objections and Responses to Google's First Set of Interrogatories) at 141-149.

-22-

████████████████████████████

its response to Interrogatory No. 5 to conform to its disclosure.[8]

### (c)   Sonos Must Conform Its Response to Interrogatory No. 5 to Its S.P.R. Disclosures

Sonos should be held to its S.P.R. 2.1.4 disclosures, and should not be permitted to game the system by injecting new, earlier dates in interrogatory responses. While Sonos purports to be confused about the meaning of the term "priority date," courts interpreting patent rules with the same or similar language as S.P.R. 2.1.4 have repeatedly—and logically—held that it means the earliest date to which the patentee contends the patent claim is entitled for purposes of invalidity (including conception date, if the patentee is relying on a conception date that precedes the earliest filing date).

For example, in *Neev v. Alcon Labs., Inc.*, 2017 WL 11629333 (C.D. Cal. May 16, 2017), the Court evaluated a nearly identical patent local rule, which required the patentee in its infringement contentions to identify "[f]or any patent that claims priority to an earlier application, the priority date to which each asserted claim allegedly is entitled." *Id.* at *3 (quotation and citation omitted). Like other courts in the Ninth Circuit, the *Neev* Court found that, under this rule, the patentee was required "to disclose a specific date of conception" in its disclosures, and that "to the extent that [patentee] altered its conception date and evidence based on discovery, it had to amend it[s] Rule 3 disclosures to include those changes." *Id.* at *4-6; *see id.* at *5 (noting "every Northern District court to address the issue has held that Patent Local Rule 3-1(f) requires a party to identify a specific conception date") (citing and discussing *Harvatek Corp. v. Cree, Inc.*, No. 14-cv-05353-WHA, 2015 WL 4396379 (N.D. Cal. July 17, 2015); *Thought, Inc. v. Oracle, Corp.*, No. 12-cv-05601-WHO,

---

[8] Sonos served a "Corrected" S.P.R. 2.1 disclosure on April 30, 2025, and five supplemental and/or amended S.P.R. 2.1 disclosures since then, but—presumably because it knows it lacks good cause for any late amendment of the S.P.R. 2.1.4 dates—has refused to address this issue.

-23-

█████████████████████████████████████████████████

2015 WL 5834064 (N.D. Cal. Oct. 7, 2015)).  Because the patentee had not amended its disclosures, however, the Court held that the patentee "cannot argue an earlier conception date … with respect to [defendant's] prior art" and struck patentee's interrogatory response with different, earlier alleged conception dates. *Id.* at 6.

Here, Sonos's refusal to conform its Interrogatory response to the priority dates in its S.P.R. 2.1.4 disclosures is unfairly prejudicial to Google, who relied on the date set forth in those disclosures in preparing its S.P.R. 2.5 Invalidity Contentions, supplementing those contentions multiple times, and filing multiple patent office post-grant challenges to the asserted patents.  The "rules are in place to require patent holders to crystalize their theories of the case early in the litigation, which heads off the possibility of abuse in the form of theories contrived to get behind later-disclosed prior art." *Harvatek*, 2015 WL 4396379, at *2-3 (quotation and citation omitted); *see Neev*, 2017 WL 11629333, at *4 (same) (quoting *id.*).  *See also, e.g.*, *Power Integrations*, 2018 WL 3972278, at *9 n.5 ("a patentee's contentions about the relevant conception or priority date are among the disclosures that should occur before the accused infringer is required to research, prepare, and disclose invalidity contentions").

Moreover, it is now too late for Sonos to amend its S.P.R. 2.1.4 disclosures.  At the outset of litigation, Sonos may have been able to feign ignorance as to what the applicable patent rules require.  But Google first identified Sonos's inconsistent positions back on October 21, 2025, including the relevant case law identified above regarding how patent rules that require disclosure of "priority date" demand that the patentee crystallize its alleged early conception date from the outset.  Ex. 19 (quoting relevant holdings from *Neev*) at 4.  On January 9, 2026, Google again asked Sonos in a letter to either "supplement its [interrogatory] response to conform to its S.P.R. 2.1.4 disclosures *or* [to] formally amend its infringement contentions if it seeks to assert new, different priority date." Ex. 20 at 4.  Sonos has steadfastly refused to do either.  After knowing about this deficiency for many months, Sonos cannot now claim "good

-24-

████████████████████████████████████

cause" as required under S.P.R. 2.1.4 to amend its "priority date[s]" contentions. Sonos's refusal to comply with the rules should not be rewarded by allowing Sonos to amend its contentions with close of fact discovery just a month away, and after the parties have litigated this entire case based on the "priority date[s]" found in Sonos's operative S.P.R. 2.1.4 disclosures. Indeed, Google has consistently relied on those "priority date[s]" in developing its own invalidity case. Thus, Sonos should be held to the "priority date[s]" it has alleged in its controlling infringement contentions from the outset.

Google thus respectfully requests that the Court strike the portions of Sonos's response to Interrogatory No. 5 that assert conception and reduction to practice dates that do not conform to Sonos's S.P.R. 2.1.4 disclosures. In the alternative, Google requests that the Court order Sonos to amend its response to Interrogatory No. 5 to conform with its S.P.R. 2.1.4 disclosures.

2.     Sonos's Position

Sonos has complied with the local rules' requirement to disclose "priority date[s]" and has complied with the Federal Rules in responding to Google's interrogatory separately requesting "conception and reduction to practice" dates and evidence. Sonos's positions on these dates have been consistent from its very first response to Google's interrogatory in April 2025. Despite Sonos answering the interrogatory that Google propounded, Google now seeks to strike Sonos's answer because Sonos didn't also include the information in Sonos's S.P.R. 2.1.4 disclosure. This is nonsensical because S.P.R. 2.1.4 does not require disclosure of conception or reduction to practice dates, rather it requires a disclosure of "priority date[s]." This was why Google served a separate interrogatory requesting "conception and reduction practice" dates.

Indeed, Google is a sophisticated company represented by sophisticated counsel. Google clearly understands that a patent's "priority date" and an invention's "conception and reduction to practice" dates are distinct legal concepts

-25-

████████████████████████████████

that have distinct dates.  Google cannot credibly claim that it understood that "priority" was some catch-all term that could simultaneously mean either or both of "the date of any prior patent application to which an asserted patent claims priority," and "the date an invention was conceived and reduced to practice."

Aside from the fact that these are distinct legal concepts, Google clearly understood this to be the case as it served separate interrogatories asking for "priority dates" and "conception and reduction to practice dates."  Indeed, Google's Interrogatory No. 6 requests:

> INTERROGATORY NO. 6
>
> *For any Asserted Patent that claims priority to an earlier application, Identify **the priority date** to which each Asserted Claim is allegedly entitled, and your basis for asserting such earlier priority date . . .*

Ex. 16 (emphasis added).  While Google's Interrogatory No. 5 requests:

> INTERROGATORY NO. 5
>
> *For each Asserted Claim, on an element-by-element basis, provide and identify your contentions regarding **conception and reduction to practice**, Including (a) the date on which you contend such claim was conceived and was first reduced to practice…*

*Id*. (emphasis added).  Google did not use "priority date" interchangeably with "conception and reduction to practice" or "invention date." And Google's Interrogatory No. 5 doesn't use "priority date" at all.  There would have been no need to serve two separate interrogatories if "priority date" simultaneously meant both "priority date" and "conception and reduction to practice date."

As such, at no point did Sonos seek a "do-over" of anything.  Sonos's positions on its priority dates and its conception and reduction to practice dates have been consistent from the outset of this case.  Sonos provided these conception and reduction to practice dates in response to Google's Interrogatory No. 5 requesting them and within 30 days of Google serving the interrogatory.

Google has not been prejudiced in the slightest.  Google claims that it

-26-

01980-00237/18145797.14

████████████████████████████████

prepared its initial invalidity contentions and IPR petitions by relying on Sonos's S.P.R. disclosures and did not have the benefit of Sonos's conception and reduction to practice dates. This is not true.

*First*, Google does not explain why it ignored its own interrogatory (and Sonos's response) concerning conception and reduction to practice.

*Second*, Google's amended its initial invalidity contentions several times throughout the case. There was no reason Google couldn't have accounted for the conception and reduction to practice dates in any one of these amendments or at any other time during the case.

*Third*, final invalidity contentions were due just last week on June 12, 2026. This is over 14 months after Sonos initially responded to Google's interrogatory asking for the conception and reduction to practice dates. There was no reason Google couldn't have accounted for Sonos's conception and reduction to practice dates in its final contentions.

*Fourth*, nearly all the references Google relies on in its initial and final invalidity contentions are before Sonos's conception and reduction to practice dates. This suggests that Google was indeed aware of Sonos's conception and reduction to practice dates and prepared its invalidity case accordingly. This is consistent with the fact that Sonos disclosed nearly identical conception and reduction to practice dates for the ITC patents during ITC discovery in 2020.

*Fifth*, Google's IPR petitions and reexam requests were prepared and filed many months after Sonos's response to Google's interrogatory providing the conception and reduction to practice dates. As such, Google was well aware of these dates and had ample time to prepare these challenges in view thereof. Moreover, each IPR petition and reexam request relies on references that are earlier than Sonos's earliest conception dates. As such, it is clear that Google was able to consider and account for Sonos's April 2025 interrogatory response disclosing these conception dates.

-27-

██████████████████████████████

When Google first raised this issue with Sonos over eight months ago, Sonos explained that the S.P.R. requires a disclosure of "priority dates," not "conception and reduction to practice" dates and explained the legal distinction between these two phrases. Google's position was that Sonos was required to delete its response to Google's interrogatory requesting conception dates because these conception dates were not also in Sonos's S.P.R 2.1.4 document. Sonos explained that these dates were disclosed in its initial response to Google's interrogatory and thus Google has known about them since the outset of the case. Sonos further explained that although disclosing them in the S.P.R. 2.1.4 document would have been redundant and unnecessary, Sonos offered to serve an amended S.P.R. 2.1.4 document to disclose the same dates that its interrogatory response disclosed. Google responded that this would not be proper and that it would move to strike Sonos's amended S.P.R. 2.1.4 document for not timely disclosing the conception dates.

From this history, it is clear that Google is purposefully taking an absurd interpretation of the S.P.R. in this District in order to catch Sonos on a technicality in a situation where it has not been prejudiced in the slightest. This is gamesmanship in its truest form and should not be credited. As explained further below, Google's interpretation of the S.P.R. is wrong and, in any event, on the facts of this case does not warrant precluding Sonos from relying on earlier invention dates that it disclosed at the outset of this case.

        (a)     A patent's priority to an earlier application is not the same as an invention's conception date.

S.P.R. 2.1.4 requires identification of the priority date of each asserted claim – which is the effective filing date of any earlier patent application to which an asserted patent claims priority. Indeed, this interpretation is clear based on the full text of the rule:

S.P.R. 2.1.4 requires a party to disclose: "For any patent that claims priority *to an earlier application*, the *priority date* allegedly applicable to each asserted claim." (emphasis added)

-28-

████████████████████████████████████

The rule is focused on patents that (1) claim priority (2) to earlier applications and thus contemplates providing the "priority date," which is the date of the earlier patent application to which the asserted patent or asserted claim is allegedly entitled. To receive the benefit of the filing date of an earlier application, a patent application must make a claim for priority to that earlier application. 35 U.S.C. §§ 119(e) and 120 are the statutes providing for the ability to claim priority to earlier filed applications; these statutes require that the application contain or be amended to contain a reference to the earlier filed application. 35 U.S.C. §§ 119(e), 120. This is known as "claiming priority," and it is what the S.P.R. refers to when it references "any patent that claims priority to an earlier application."

The basis of Google's motion is that Sonos disclosed ***priority*** dates in its S.P.R. 2.1.4 Disclosures that are different from the ***conception*** dates disclosed in its response to Google's interrogatory. This is true. Sonos's Asserted Patents' priority dates are different than the inventions' conception dates. But a patent's ***priority*** date and an invention's ***conception*** date are separable and legally distinct concepts. As explained, "[a] patent's priority date refers to the date of the earlier filed patent application." *OpenTV v. Apple, Inc.*, No. 15-cv-02008-EJD (NC), 2016 WL 3196643, at *2 (N.D.Cal. June 9, 2016) (citing 35 U.S.C. § 119). An invention's conception date is the date where the inventor has formed "a definite and permanent idea of the complete and operable invention to establish conception." MPEP § 2138. Both of these terms have a well-established legal meanings, and there is no indication that the Standing Patent Rules sought to define the term priority date differently.

Other Courts agree and have expressly declined to find that "priority date" also means a disclosure of an invention's conception date. *See e.g.*, *Fortinet, Inc. v. Forescout Techs., Inc.*, No. 20CV03343EMCJSC, 2021 WL 1749902, at *4 (N.D. Cal. May 4, 2021) ("Nothing in Rule 3-1(f) requires the disclosure of conception date."); *see also AbCellera Biologics Inc. v. Bruker Cellular Analysis, Inc.*, No. 20-

-29-

CV-08624-JST (VKD), 2024 WL 1182929, at *4 (N.D. Cal. Mar. 18, 2024) ("This disclosure does not depend on any issue conception or reduction to practice, but is concerned only with identify[ing] the date of the patent application to which there is a claim of priority.").

Construing the rule, as Google does, would lead to absurd results. For instance, the rule clearly states that a party must disclose a "priority date" for any patent "that claims priority *to an earlier application*."  Under Google's interpretation, this means that a party must disclose its conception dates for any patents that claim priority to an earlier application.  But, a patent may not claim priority to any earlier application (i.e., it may be the very first application a patentee files) yet it may have been conceived earlier than the filing date of the application.  In such a situation, under the Rule, a party would not be required to disclose its conception date because the patent didn't claim priority to any earlier application.  Of course, this is an absurd result, and serves to illustrate that this Rule could not possibly have intend to encompass both priority dates and conception dates.

Moreover, as illustrated above, Google understood the distinction between priority dates and conception dates throughout this entire case as it served two different interrogatories asking for these two different dates.  Google asked for an identification of the "priority date[s]" in interrogatory no. 6 and asked for "conception and reduction to practice" dates in interrogatory no. 5.  Google does not use "priority date" at all in interrogatory no. 5, instead confining it to interrogatory no. 6.  Google has not conflated these two terms in its own discovery requests and is only now conflating them for purposes of this motion.

(b)    The authorities Google cite are all dependent on a different set of Patent Rules which *also* require the disclosure of an invention's conception date.

The authorities that Google relies upon are not binding or even persuasive here.

-30-

*First*, each case that Google cites in support of its arguments - *Neev*, *Harvatek,* and *Thought* – deals with a different set of Local Patent Rules which notably required the disclosure of "all documents evidencing the conception reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the patent in suit or the priority date identified pursuant to Patent L.R. 3-1(f), which is earlier." *Neev v. Alcon Lab'ys, Inc.*, No. SACV1500336JVSJCGX, 2017 WL 11629333, at *3 (C.D. Cal. May 16, 2017) (citing NDCA Patent L.R. 3-2(b)); *Harvatek Corp. v. Cree, Inc.*, No. C 14-05353 WHA, 2015 WL 4396379, at *1 (N.D. Cal. July 17, 2015) (citing NDCA Patent L.R. 3-2); *Thought, Inc. v. Oracle Corp.*, No. 12-CV-05601-WHO, 2015 WL 5834064, at *2 (N.D. Cal. Oct. 7, 2015) (citing NDCA Patent L.R. 3-2). This additional disclosure requirement had a significant, ***if not determining***, impact on each Courts' analysis on what a party was to disclose. The S.P.R. governing this case does not have an equivalent requirement.

*Second*, each case Google cites dealt with a situation where the plaintiff failed to comply with NDCA Patent L.R. 3-2 by failing to disclose documents evidencing a conception date, and then later tried to rely upon a new conception date. *See gen.*, *Neev*, 2017 WL 11629333, at *4 (defendant moved to strike and preclude plaintiff's reliance on previously undisclosed documents evidencing conception); *Harvatek Corp.*, 2015 WL 4396379, at *2 (defendant moved to strike plaintiff's supplementation production of the conception date and to preclude plaintiff from asserting a conception date prior to filing the application for the patents-in-suit); *Thought, Inc.*, 2015 WL 5834064, at *4 (defendant moved to strike plaintiff's late production of its invention date and amened invention date). These Courts each ultimately found that the plaintiff was required to disclose a conception date with its initial disclosures, but they did not do so by just looking at the language of S.P.R. 2.1.4 (or NDCA Patent L.R. 3-1). The analysis of what was required under NDCA Patent L.R. 3-1 and Patent L.R. 3-2 was based upon the additional requirement of

-31-

Case No. 2:20-cv-00169-JAK
JOINT FILING REGARDING DISCOVERY DISPUTE

the NDCA rules that earlier invention documents be produced with the Rule 3-1 disclosures. *See Thought, Inc.*, 2015 WL 5834064, at *5 ("The purpose of the local rules…would be frustrated if Patent Local Rule 3-1 **and** 3-2 were read to allow a plaintiff to avoid specifying a conception date or provide any documents that support this date.") (emphasis added); *Neev*, 2017 WL 11629333, at *4 ("Patent Local Rule 3-2(b) required [the party] to disclose a conception date and relevant conception documents, the Court does noes address whether the priority date and conception date are identical for purposes of Patent Local Rule 3."); *see gen.*, *Harvatek Corp.*, 2015 WL 4396379 (conjunctively referring to Patent L.R. 3-1 and Patent L.R. 3-2 throughout).

The cases that have dealt with a situation where the plaintiff timely produced documents pursuant to NDCA Patent L.R. 3-2(b) but failed to identify a conception date in its disclosures permitted the plaintiff to advance an earlier conception date even where its disclosure under Patent L.R. 3-1(f) did not identify a specific conception date. *See Gamevice, Inc. v. Nintendo Co.*, No. 18-CV-01942-RS, 2019 WL 3533078, at *3 (N.D. Cal. Aug. 2, 2019) (allowing plaintiff to assert conception and reduction to practice dates derived from L.R. 3-2(d) disclosure due to the ambiguity in the local rules); *see also Mitsubishi Tanabe Pharma Corp. v. Sandoz Inc.*, No. CV175319FLWDEA, 2020 WL 3169372, at *7 (D.N.J. June 15, 2020) (allowing plaintiff to assert an invention date that could be derived from its timely Patent L.R. 3.2(b) disclosure).

*Third*, no case cited by Google found that a patent's priority date also means an invention's conception date. In fact, in *Neev*, the Court explicitly declined to "address whether the priority date and conception date are identical for purposes of Patent Local Rule 3." *Neev*, 2017 WL 11629333, at *4. Instead, the Court found "that Patent Local 3-2(b) required [plaintiff] to disclose a conception date and relevant conception documents." In *Thought*, the Court noted that "other courts in this district have declined to address" whether the disclosure of a priority date

-32-

01980-00237/18145797.14

"operate[s] as an admission that date of invention of the [patent] was the filing date." *Thought, Inc.*, 2015 WL 5834064, at *4; *cf with Fortinet, Inc.*, 2021 WL 1749902, at *4 and *AbCellera Biologics Inc.*, 2024 WL 1182929, at *4

        (c)     Google knew about Sonos's conception dates prior to serving its Invalidity Contentions and it has not been prejudiced by Sonos's interrogatory response.

As also explained above, Sonos provided Google with its conception and reduction to practice dates on April 21, 2025, which was Sonos's initial response to Google's interrogatory asking for these dates. Google served its initial invalidity contentions on April 24, 2025 and amended them on April 28, 2025, August 11, 2025, October 10, 2025, February 25, 2026, February 26, 2026, May 12, 2026 and served final invalidity contentions on June 12, 2026. Thus, Google cannot claim to have been surprised or otherwise unable to account for Sonos's conception dates in any respect. Indeed, as explained above, Google's invalidity contentions already account for these dates by asserting art that predates Sonos's earliest conception dates. And all of Google's post-grant challenges similarly relied on references that predated Sonos's earliest conception dates. As such, Google has plainly accounted for Sonos's conception dates since it became aware of them over a year ago.

Moreover, Google has been aware of Sonos's conception and reduction to practice dates for at least five of the Asserted Patents ('258 Patent, '953 Patent, '949 Patent, '896 Patent, and '959 Patent) since May 23, 2020 when Sonos responded to Google's interrogatory requesting this information in the 37-TA-1191 investigation.

| Asserted Patent No. | Sonos's ITC Interrogatory Resp. May 23, 2020 | Sonos's Interrogatory Resp. April 21, 2025 |
|---|---|---|
| '258 Patent | April 25, 2003 | April 25, 2003 |
| '953 Patent | April 25, 2003 | April 25, 2003 |
| '001 Patent | Not Asserted | April 25, 2003 |
| '715 Patent | Not Asserted | April 1, 2004 |
| '949 Patent | July 11, 2003 | July 11, 2003 |

-33-

01980-00237/18145797.14

████████████████████████████████████

| '014 Patent | Not Asserted | July 11, 2003 |
| '896 Patent | March 11, 2004 | March 11, 2004 |
| '883 Patent | Not Asserted | March 11, 2003 |
| '959 Patent | July 2009 | July 2009 |
| '025 Patent | Not Asserted | July 2009 |

Google cannot credibly claim that it ignored Sonos's response to Google's interrogatory. Nor can Google claim in good faith that it believed "priority date" simultaneously meant "priority date" and "conception and reduction to practice" dates. In either case, Google had all the relevant information prior to serving its initial invalidity contentions, prior to serving each amendment to its initial invalidity contentions, prior to preparing and filing its post-grant challenges to a few of the asserted patents, and over 14 months prior to Google's service of its final invalidity contentions.

For the avoidance of doubt, Sonos has not changed its conception dates in response to Google's invalidity contentions. The Northern District of California interpreted its local patent rules, in part, to "head[] off the possibility of abuse in the form of theories contrived to get behind later-disclosed prior art." *Harvatek Corp.*, 2015 WL 4396379, at *2-3 (quotation and citation omitted). Sonos did not do this as shown by its consistent assertion of its conception dates from before Google even served its Invalidity Contentions.

Accordingly, Sonos respectfully requests the Court deny Google's motion to strike Sonos's response to Interrogatory No. 5.

### C.    Interrogatory No. 7

**Interrogatory No. 7:**

For each limitation of each Asserted Claim of the Asserted Patents, Identify in claim chart form, all evidence, Including portions of the specification, that You contend provide Written Description support and an Enabling Disclosure.

**Sonos's Response To Interrogatory No. 7:**

-34-

Sonos objects to this Interrogatory as overbroad, unduly burdensome, and not reasonably proportional to the needs of the case insofar as it purports to require Sonos to "Identify, in claim chart form, all evidence, Including portions of the specification, that You contend provide Written Description support and an Enabling Disclosure."

Sonos also objects to this Interrogatory as premature to the extent it seeks expert discovery in advance of the date set forth in the Federal Rules of Civil Procedure and/or the Court's Scheduling Order.

Sonos objects to this Interrogatory on the ground that it is a premature contention Interrogatory that has been filed before a substantial amount of discovery has been conducted in this lawsuit. See Fed. R. Civ. P. 33(a)(2) ("[T]he court may order that [a contention] Interrogatory need not be answered until after designated discovery is complete . . . .").

Sonos objects to this Interrogatory as premature to the extent it seeks expert discovery in advance of the date(s) set forth in the Federal Rules of Civil Procedure and/or the Court's Scheduling Order.

Sonos also objects to this Interrogatory as premature to the extent it seeks information concerning the scope of any asserted claim that will be the subject of claim construction proceedings before the Court.

Sonos further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrines.

Sonos also objects to Google's attempt to use this Interrogatory to shift its burden regarding proof of invalidity. Google has the burden of proving that the patents-in-suit are invalid. This never shifts. See SFA Systems, LLC v. Amazon.com, Inc. et al, LLC, No. 6:11-cv-052-LED (E.D. Tex. April 11, 2013) ("It is premature to compel SFA to provide a substantive response to Interrogatory No. 6. Defendant bears the burden of proving that the patents-in-suit are invalid for failure to meet the written description requirement. Therefore, after Amazon has met its initial burden through its expert report, Plaintiff may rebut Amazon's position, but not vice versa.") (cleaned up); Tech Licensing Corp. v. Videotek Inc., 545 F.3d 1316, 1327 (Fed. Cir. 2008); Microsoft Corp. v. i4i Ltd. Partnership, 131 S. Ct. 2238, 2243 (2011) ("[T]he burden of proving invalidity [is] on the attacker. That burden is constant and never changes.").

Indeed, Sonos objects that this Interrogatory is a plain attempt to require Sonos to prove validity. Google bears the burden of proving, by clear and convincing evidence, that the patents-in-suit are invalid. At this point, Google has yet to provide any invalidity contentions at all – let

-35-

alone set forth any contention that a particular limitation in a particular patent is invalid under § 112. Unless and until Google introduces sufficient evidence to meet its burden to point to a specific claim term in any of the patents-in-suit that allegedly renders any of the patents-in- suit invalid, requiring Sonos to "identify, on a limitation-by-limitation basis," written description and enablement for each asserted claim is inappropriate, unduly burdensome, and not reasonably proportional to the needs of the case, particularly as it would require Sonos to respond to many grounds that ultimately will not be relevant to this lawsuit.

Subject to, and without waiving, the foregoing Specific and General Objections, and to the extent that Google timely introduces evidence sufficient to put the written description and/or enablement of an asserted claim at issue, Sonos will respond to this Interrogatory during the expert phase of the case.

Sonos reserves the right to revise, correct, add to, supplement, or clarify its response to this Interrogatory as additional information is discovered and/or becomes available.

### 1.    Google's Position

Google's Interrogatory No. 7 seeks information regarding Sonos's priority claims to earlier filed applications and written description and enablement support for the same. This information is especially critical in this case because Sonos is relying on serial continuations to justify its claimed priority dates for nearly every patent-in-suit—going back a decade or more—and thus must justify its purported basis for doing so.

### (a)    Sonos's Asserted Priority Dates

"For claims set forth in a continuation application, [a] second application is entitled to the priority date of the first filed application, but only as to *common subject matter* disclosed in the parent patent." *DevTech Mktg., Inc. v. Westfalia-Surge, Inc.*, 2005 WL 6287929, at *11 (C.D. Cal. Apr. 19, 2005) (citation omitted). "The determination of a common subject matter is made under the guidelines of 35 U.S.C. § 112," which provides:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear,

-36-

> concise, and exact terms as to enable any person skilled in the art to which it pertains, … to make and use the same, and shall set forth the best mode contemplated by the invention of carrying out his invention.

*Id.* (citation omitted). "This determination focuses on the individual claims of the continuation-in-part application and whether those claims are supported by the disclosures in the earlier application and, thus, are entitled to the filing date of the parent patent." *Id.* Further, "if the later filed application claims priority through the heredity of a chain of applications, ***each application in the chain must satisfy § 112***." *In re NTP, Inc.*, 654 F.3d 1268, 1276 (Fed. Cir. 2011) (emphasis added) (citing *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1571 (Fed. Cir. 1997)).

Under the default standard, each of Sonos's asserted patents are entitled to a priority date no earlier than the filing of the application for the subject patent. However, Sonos has asserted an earlier priority date for nine out of ten asserted patents by claiming priority to earlier-filed applications. For example, Sonos's '025 patent was filed on October 31, 2019, and is thus entitled to a priority date of October 31, 2019, under the default standard. However, Sonos has asserted a priority date of January 25, 2011—predating the filing of the '025 patent and the default priority date by ***more than 8 years***—by claiming priority back to the earlier-filed U.S. Patent Application No. 13/013,740. *See* Ex. 18 (Sonos's First Amended Disclosures of Asserted Claims and Infringement Contentions) at 60-61.[9]

As shown below, for all but one of Sonos's asserted patents (the '014 patent), Sonos has claimed priority dates that far predate the default standard—in some cases, by more than a ***decade***—based on the following earlier-filed applications:

---

[9] As explained above with respect to Interrogatory No. 5, Sonos is also trying to assert even earlier priority dates by claiming conception and reduction to practice before the first-filed applications, but that issue is not directly relevant to Interrogatory No. 7, which is focused on the written description and enablement support in the applications themselves.

-37-

| Patent No. | Filing Date | App. to which Sonos Claims Priority | Claimed Priority Date |
|---|---|---|---|
| 8,588,949 | Sep. 14, 2012 | 10/861,653 | June 5, 2004 |
| 9,195,258 | Feb. 20, 2014 | 10/816,217 | Apr. 1, 2004 |
| 10,209,953 | Aug. 31, 2018 | 60/490,768 | July 28, 2003 |
| 10,439,896 | Mar. 11, 2019 | 60/577,284 | June 5, 2004 |
| 9,219,959 | June 9, 2014 | 13/083,499 | Apr. 8, 2011 |
| 10,966,025 | Oct. 31, 2019 | 13/013,740 | Jan. 25, 2011 |
| 10,541,883 | Mar. 11, 2019 | 60/577,284 | June 5, 2004 |
| 10,031,715 | Apr. 17, 2013 | 10/816,217 | Apr. 1, 2004 |
| 11,080,001 | Apr. 17, 2013 | 10/816,217 | Apr. 1, 2004 |

However, Sonos is only able to claim priority to the above-referenced applications by tracing back through a "daisy chain" of serial continuations. For example, for the '025 patent discussed *supra*, there are *five* continuations and *one* continuation-in-part between the asserted '025 patent (filed October 31, 2019) and the earlier filed 13/013,740 application to which Sonos claims priority. Specifically:

- the '025 patent issued from application no. 13/013,740 (filed January 25, 2011),

  - which is a continuation of application no. 16/128,443 (filed Sept. 11, 2018),

    - which is a continuation of application no. 14/629,937 (filed February 24, 2015),

      - which is a continuation of application no. 14/299,874 (filed June 9, 2014),

        - which is a continuation of application no. 13/083,499 (filed April 8, 2011),

-38-

01980-00237/18145797.14

- which is a continuation-in-part of application no. 13/013,740 (filed January 25, 2011), to which Sonos claims priority.

Sonos similarly claims priority dates through chains of continuations for its other asserted patents, as shown below:

| Patent | Application No.[10] | App. Filing Date |
|---|---|---|
| 8,588,949 | 13/619,237 | Sep. 14, 2012 |
| | 12/035,112* | Feb. 21, 2008 |
| | 10/861,653 | **Jun. 5, 2004** |
| 9,195,258 | 14/184,935 | Feb. 20, 2014 |
| | 13/864,251* | Apr. 17, 2013 |
| | 13/297,000* | Nov. 15, 2011 |
| | 10/816,217 | **Apr. 1, 2004** |
| 10,209,953 | 16/119,638 | Aug. 31, 2018 |
| | 13/864,249 | Apr. 17, 2013 |
| | 13/297,000 | Nov. 15, 2011 |
| | 10/816,217 | Apr. 1, 2004 |
| | 60/490,768 | **Jul. 28, 2003** |
| 10,439,896 | 16/298,542 | Mar. 11, 2019 |
| | 15/091,113 | Apr. 5, 2016 |
| | 14/486,667 | Sep. 15, 2014 |
| | 13/618,829 | Sep. 14, 2012 |

---

[10]   Applications marked with an asterisk (*) are continuations-in-part of the prior application.

-39-

█████████████████████████████████████

| | 11/147,116 | Jun. 6, 2005 |
|---|---|---|
| | 60/577,284 | **Jun. 5, 2004** |
| 9,219,959 | 14/299,847 | Jun. 9, 2014 |
| | 13/083,499 | **Apr. 8, 2011** |
| 10,966,025 | 16/670,109 | Oct. 31, 2019 |
| | 16/128,443 | Sep. 11, 2018 |
| | 14/629,937 | Feb. 24, 2015 |
| | 14/299,874 | Jun. 9, 2014 |
| | 13/083,499* | Apr. 8, 2011 |
| | 13/013,740 | **Jan. 25, 2011** |
| 10,541,883 | 16/298,515 | Mar. 11, 2019 |
| | 15/091,113 | Apr. 5, 2016 |
| | 14/486,667 | Sep. 15, 2014 |
| | 13/618,829 | Sep. 14, 2012 |
| | 11/147,116 | Jun. 6, 2005 |
| | 60/577,284 | **Jun. 5, 2004** |
| 10,031,715 | 13/864,248 | Apr. 17, 2013 |
| | 13/297,000 | Nov. 15, 2011 |
| | 10/816,217 | **Apr. 1, 2004** |
| 11,080,001 | 13/864,249 | Apr. 17, 2013 |
| | 13/297,000 | Nov. 15, 2011 |
| | 10,816,217 | **Apr. 1, 2004** |

Sonos's "daisy chain" patent prosecution tactics were previously criticized by

-40-

01980-00237/18145797.14

███████████████████████████████████

Judge Alsup in the parties' Northern District of California litigation, resulting in an order finding two of Sonos's patents (related to speaker grouping) unenforceable and lacking written description based on Sonos's "clear abuse of the PTO's patent examination system." *Sonos, Inc. v. Google LLC*, No. C 20-06754 WHA, 2023 WL 6542320, at \*26 (N.D. Cal. Oct. 6, 2023) (quotation and citation omitted), *aff'd in part, rev'd in part*, No. 2024-1097, 2025 WL 2473258 (Fed. Cir. Aug. 28, 2025). While that order was reversed based on the specific facts of that case, Sonos's aggressive prosecution strategies raise similar issues in this litigation that make the sufficiency of Sonos's written description and enablement support a central part of Google's invalidity and unenforceability defenses.

(b)    Sonos must provide written description and enablement support for its claimed priority dates

The relevance of this Interrogatory is apparent:  Sonos has claimed priority dates of earlier applications and thus must justify its entitlement to the same by showing that the earlier application provides adequate written description for, and enables, the asserted claims. *In re NTP, Inc.*, 654 F.3d 1268, 1277 (Fed. Cir. 2011) ("if the later filed application claims priority through the heredity of a chain of applications, each application in the chain must satisfy § 112") (citation omitted); s*ee Bradford Co. v. Conteyor N. Am.*, 603 F.3d 1262, 1269 (Fed. Cir. 2010) (claims are entitled to priority date of earlier application only if it provides adequate written description); *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1253-54 (Fed. Cir. 2004) (earlier application must enable later claims that claim priority to earlier filing date).  Google has also asserted defenses based on lack of written description and enablement, and has specifically identified in its invalidity contentions the limitations that it contends render the claims invalid under § 112, further underscoring the relevance and proportionality of the information sought by this Interrogatory. *See* Ex. 2 (Google's Second Supplemental Invalidity Contentions) at 198-218.  Nonetheless, Sonos has refused to provide any substantive response to Google's Interrogatory No.

-41-

7.

Courts in this District and others in the Ninth Circuit have compelled patentees to provide comparable discovery. *See, e.g.*, *Joao Control & Monitoring Sys. of Cal. v. ACTI Corp.*, No. 8:10-cv-01909-DOC-RNB, Dkt. 247 at 1 (C.D. Cal. Mar. 6, 2012) (granting motion to compel plaintiff to respond to interrogatory by "specifically identify[ing], by page and line number, where U.S. Patent Application No. 08/073,755 provides written description support for each of the elements of claim 1 of U.S. Patent No. 5,917,405 enumerated in the interrogatory"); *Finjan v. Blue Coast Sys.*, No. 5:13-cv-03999-BLF, Dkt. 121 (Minute Entry) (N.D. Cal. Oct. 29, 2014) (granting motion to compel plaintiff to "identify where in the parent applications priority is justified"). And, in doing so, they have also rejected the same objections Sonos asserts here. *Blast Motion, Inc. v. Zepp Labs, Inc.*, 2016 WL 5107677 (S.D. Cal. Mar. 2, 2016), is instructive. There, defendant moved to compel a fulsome interrogatory response from plaintiff regarding what disclosures in earlier patent applications supported plaintiff's claimed priority date. *Id.* at *2. The court first found the interrogatory was "***relevant*** to [defendant's] [invalidity] defense and its assessment of prior art," emphasizing that "[i]nformation about whether [plaintiff] is entitled to the claimed priority date is an important threshold issue because it will determine which references qualify as prior art." *Id.* (emphasis added). The court also rejected plaintiff's attempt to limit the scope of discovery based on the ultimate burdens of proof, finding that the interrogatory was "proportional to the needs of the case" because "the Federal Rules do not restrict the scope of discovery based on which party bears the burden of establishing an issue." *Id.* Finally, the court found the interrogatory was "neither premature nor unduly burdensome" because, as the court reasoned in *Odyssey Wireless v. Apple*, the plaintiff would "need[] to provide the facts to support its claim to priority" anyway and "it is fair for the defendants to know how the plaintiff claims priority." *Id.* at *3 (discussing and citing *Odyssey Wireless v. Apple*, No. 15-cv-1735-H-RBB, Dkt. 140 (S.D. Cal. Dec. 11, 2015)). Likewise,

-42-

requiring "up front" disclosure of this information is "helpful so the parties are not pushing off responses to these interrogatories, which would be useful for all parties to properly evaluate the case, until the expert reports at nearly the end of discovery." *Id.* The same reasoning applies to Sonos's objections here.

Moreover, although Google disagrees this Interrogatory is unduly burdensome, any burden to Sonos is one of its own creation. Beyond the self-imposed burdens from asserting 10 patents, as explained above, Sonos has claimed priority dates tracing back through numerous continuation applications. Although under current PTO rules Sonos is entitled to file these "daisy chain" continuations to keep the asserted patents open and reap the benefits of doing so, it must accept the accompanying obligations if it elects to use the patent system in this way: it must show that the claims have written support in both the four corners of the asserted patent's specification ***and*** each of the earlier filed applications to which it claims priority.

Google thus respectfully requests that the Court order Sonos to provide a complete response to Interrogatory No. 7, including an identification of written description and enablement support for each limitation of each Asserted Claim challenged in Google's Invalidity Contentions.

### 2. Sonos's Position

Google's argument proceeds on the premise that that Sonos must identify the basis for its claimed priority dates. But for any asserted patents that claim priority to a provisional application or a different specification (e.g., claiming priority through a continuation-in-part), Sonos has responded (to Google's Interrogatory No. 6) to provide its contentions on why those priority documents provide written description support for the asserted claim elements. *Cf.* Interrogatory No. 6 *with* Interrogatory No. 7.

Google's Interrogatory No. 7 goes a step further and requests "[f]or each limitation of each ***Asserted Claim*** of the Asserted Patents, Identify in claim chart

-43-

████████████████████

form, all evidence, including portions of the specification, that [Sonos] contend[s] provide Written Description support and an Enabling Disclosure" Interrogatory No. 7 (emphasis added).  Thus, even for patents that claim priority to the same specification through a series of straight continuations, Google is requesting that Sonos establish that each element of each claim has written description support to its own specification.  Sonos objected on the grounds that this interrogatory is premature, unduly burdensome, and overbroad. In essence, this interrogatory requires Sonos to prove the validity of its own claims, which black letter law rejects. *See* 35 U.S.C. § 282 ("A patent is presumed valid.").

It's a long-recognized principle that the one challenging the validity of a patent has the burden to "show invalidity for lack of description of the invention, enablement, or best mode." *Friskit, Inc. v. Real Networks, Inc.*, No. C 03-5085 WWS (MEJ), 2006 WL 1305218, at *1 (N.D. Cal. May 11, 2006) (denying defendant's motion to compel interrogatories requesting, in claim chart form, the written description, enablement, and best mode support for each asserted claim). While Google is "not required to establish a prima facia case of invalidity before it is entitled to obtain discovery on the validity of the patents" that is not the ultimate inquiry here. *Apple Inc. v. Wi-LAN Inc.*, No. 14CV2235-DMS (BLM), 2018 WL 733740, at *4 (S.D. Cal. Feb. 6, 2018). "The Court must [also] consider whether this interrogatory is proportional to the needs of this case." *Finjan, Inc. v. ESET, LLC*, No. 17CV183 CAB (BGS), 2018 WL 5263243, at *1 (S.D. Cal. Oct. 23, 2018); *see also id.* at *2 ("[R]elevance alone is not sufficient, the discovery sought must also be proportional to the needs of the case.")

Google's request, as written, would require Sonos to go first and affirmatively establish that each specification provides written description and/or enablement support to each claim element, before Google has set forth any non-conclusory contention otherwise.  This is backwards.  Sonos should not be compelled to establish in the first instance that each element has written description support.  Patents are

-44-

████████████████████████████████

presumed valid, including under § 112. *See* 35 U.S.C. § 282 ("A patent is presumed valid.)  This is the exact type of discovery that the Court in *Finjan, Inc.*, held is "the type of 'scorched earth,' 'no stone unturned'… approach to discovery the changes to Rule 26 were intended to curb." *Id*. at *5.

The cases Google cites compelled responses to much narrower, proportional requests or in the situation where a priority claim was made to a different specification – not a blanket request to affirmatively establish that an original specification provides written description support for every element. *See e.g., Joao Control & Monitoring Sys. of Cal. v. ACTI Corp.*, No. 8:10-cv-01909-DOC-RNB, Dkt. 247 at 1 (C.D. Cal. Mar. 6, 2012) (compelling the Plaintiff to identify the written description support for a **single claim**); *Finjan v. Blue Coast Sys.*, No. 5:13-cv-03999-BLF, Dkt. 121 (Minute Entry) (N.D. Cal. Oct. 29, 2014) (compelled the Defendant to first identify the specific limitations at issue, and then the Plaintiff was to identify where in the parent applications priority was justified); *Blast Motion, Inc. v. Zepp Labs, Inc.*, 2016 WL 5107677 (S.D. Cal. Mar. 2, 2016) (compelled the Plaintiff to identify priority for the patents-in-suit **not** the asserted claims); *Odyssey Wireless v. Apple*, No. 15-cv-1735-H-RBB, Dkt. 140 (S.D. Cal. Dec. 11, 2015) (ordering supplemental responses in the context of a priority date analysis in view of the specifications in the priority chain having added subject matter over time).

Google has purportedly narrowed its request and now seeks an identification of the written description and enablement support for only those elements that Google contends lack written description support or enablement in its invalidity contentions. But this doesn't make Google's Interrogatory any less objectionable.  Google's contentions aren't really contentions – they are a laundry list of dozens if not hundreds of elements that Google summarily concludes, with no explanation, lack written description support or enablement.  Ex. 2, pp. 200-218.  There is zero analysis of any portion of the specifications and why it does or does not provide written description or an enabling disclosure, zero analysis of what a POSITA would or would not have

-45-

01980-00237/18145797.14

████████████████████████████████

understood from the teachings of the specifications, zero analysis of the state of the art and what a POSITA would have understood and been able to carry out, and zero analysis of how much or how little experimentation a POSITA would have had to engage in to make and use the disclosed inventions. *See id.*

Instead, Google has just set forth a bulleted list of claim elements and wants Sonos to go first to identify the written description and enablement support for each of these elements. Again, this is backwards. Google bears the burden on invalidity and needs to set forth non-conclusory contentions concerning written description, at which point Sonos can respond to rebut these contentions. But it hardly makes sense to require a patentee, in the first instance, to affirmatively establish that nearly every claim element of every claim has written description support, particularly for elements that Google will almost certainly not carry through to trial or even its expert reports.

As an example, Google contends that the specification of the '258 Patent "fails to provide an adequate written description or enablement" for the following claim element (among others): "a network interface configured to interface the first zone player with at least a local area network (LAN)." *Id.* As another example, for the '001 Patent, Google lists 19 claim elements and summarily concludes that all of them "are not described in such a way that a person having ordinary skill in the art at the time of the alleged invention would have understood that the individuals named as the inventors on the face of the '001 patent were in possession of the claimed subject matter." *Id.* Google doesn't seriously contend that Sonos's patent specifications fail to enable or provide written description support for a "network interface" or that 19 claim elements of one patent lack written description or enablement support. If it does, then Google can and should explain the basis of its contention as opposed to summarily concluding that the legal requirements for § 112 support are absent. But until then, Google's contentions and this Interrogatory are objectionable at least on grounds of overbreadth, burden, and proportionality, because Google seeks initial

-46-

███████████████████████████████████

responses on numerous undeveloped issues on which Google bears the burden and almost certainly won't ultimately pursue.

Rather than explaining why such a detailed mapping is required, why the information has to be in the format requested, or why the information it has already obtained is insufficient, *Finjan, Inc.*, 2018 WL 5263243, at *5; *see also Impact Engine, Inc. v. Google LLC*, No. 19-CV-01301-CAB-BGS, 2020 WL 2745230, at *4 (S.D. Cal. May 26, 2020) ("The Court agrees that a detailed chart as requested by Google is unduly burdensome."), Google attempts to put the onus back Sonos and argues that Sonos created this burden by asserting 10 patents in the first place. But again, the burden to prove invalidity is on Google and never shifts to Sonos. As such, asserting one patent or 10 patents should not carry some inherent requirement that Sonos affirmatively establish the validity of these patents before Google has set forth any non-conclusory contentions.[11]

---

[11] To the extent Google is trying to imply that claiming priority back some number of years through a series of continuation applications is somehow improper and therefore operates as a kind of justification to require the patentee to affirmatively establish written description support, this is not the case, and Google cites no law in support of this type of approach. Indeed, Google's own asserted patent in this case claims priority back over 9 years through a series of six continuation applications.

-47-

███████████████████████████████

DATED: June 16, 2026          QUINN EMANUEL URQUHART & SULLIVAN, LLP

/s/ James D. Judah
James D. Judah

*Attorneys for Defendant-Counterclaimant Google LLC*

DATED: June 16, 2026          ORRICK, HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP

/s/ Sydney Hecimovich
Sydney Hecimovich

*Attorneys for Plaintiff-Counterclaim Defendant Sonos, Inc.*

-48-

███████████████████████████████

## FILER'S ATTESTATION

I, James D. Judah, pursuant to Civil Local Rule 5-4.3.4(2)(i), attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED: June 16, 2026

/s/ James D. Judah
James D. Judah

-49-

01980-00237/18145797.14