QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Melissa J. Baily (SBN 237649)
melissabaily@quinnemanuel.com
James D. Judah (SBN 257112)
jamesjudah@quinnemanuel.com
Ognjen Zivojnovic (SBN 307801)
ogizivojnovic@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

Lance Yang (Bar No. 260705)
lanceyang@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Tel: (213) 443-3000
Fax: (213) 443-3100

*Attorneys for Defendant-Counterclaimant Google LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>    *Plaintiff-Counterclaim Defendant,*<br><br>vs.<br><br>GOOGLE LLC,<br><br>    *Defendant-Counterclaimant.* | CASE NO. 2:20-cv-00169-JAK (DFMx)<br><br>**SUPPLEMENTAL MEMORANDUM OF GOOGLE LLC PURSUANT TO LOCAL RULE 37-2**<br><br>Initial Complaint Filed: January 7, 2020<br>Discovery Cutoff: July 2, 2026<br>Final Pretrial Conference: TBD<br>Trial Date: TBD<br><br>Date:  July 7, 2026<br>Time:  10:00 AM<br>Location:  Courtroom 6B<br>Judge:  Hon. Douglas F. McCormick |

i

## I.    RFP NOS. 114 AND 115

Sonos does not dispute materials relating to the S5 prior art system are relevant. Instead, Sonos argues it should not be ordered to produce this discovery because it has already conducted a reasonable search for certain sub-categories of documents. Dkt. 211-1 (Joint Filing re Discovery Dispute) ("JF") at 13.  Sonos's responses and searches are incomplete and an order compelling RFP Nos. 114 and 115 is necessary.

Communications with Beta Testers.  Sonos argues it has "conducted a reasonable search for [information provided to/from Beta Testers] (such as executed NDAs, feedback provided by beta testers, and usage data) and has produced what it has been able to locate." JF at 16.  That assertion lacks credibility.  Tellingly, Sonos does not address whether it searched for and produced "the Communications with each beta tester prior to April 8, 2010" (JF at 13), including specific documents identified in Google's motion.[1]  In fact, Sonos has not even produced the documents necessary to substantiate its response to Interrogatory No. 18, such as "[d]ocuments sufficient to show 'an [] implied understanding of confidentiality' between each third-party tester and Sonos, as alleged by Sonos" and "[d]ocuments sufficient to show 'an express [] understanding of confidentiality' (e.g., fully executed non-disclosure agreement) between each third-party tester and Sonos, as alleged by Sonos." *Id.*  Sonos must have had **some** documents to justify making those arguments in its interrogatory response.  If Sonos has no evidence to substantiate its allegations of an implied or express confidentiality obligation, then Sonos should be required to amend its response to Interrogatory No. 18 to withdraw those allegations.

---

[1]  For example: (1) "The 'instruction on Stereo Pair feature' received by each tester from Sonos"; (2) "Documents sufficient to show how and when each third party downloaded and used 'alpha and beta testing of prototype software for its S5 product' prior to April 8, 2010"; and (3) "The 'welcome email' and 'other instructions on how to obtain the prototypes software and submit feedback' provided by Sonos to each third party regarding the Stereo Claim Features[.]"  JF at 12-13.

Software.  Google requested that Sonos produce not just source code, but also executable code for the software that Sonos shared with its alpha and beta testers (e.g., Android or iOS apps for smartphones and/or CR200).  Sonos has refused to produce the requested ***executable software***, and instead improperly narrows the scope of the request to "source code" for each version of the S5 system.  *See* JF at 14-16.  But source code alone does not allow Google to test and demonstrate the stereo pairing feature of these prior art systems on samples of the S5 (or CR200) hardware.

Hardware.  Google requested physical samples of the S5.  In response, Sonos argues it does not have "any S5 product from the dates Google requests" (JF at 16)—which is presumably April 8, 2010 and earlier.  However, Google seeks hardware ***sufficient to show*** the design and operation of the S5 prior art system, which is not limited to a product pre-dating April 8, 2010.  If Sonos has S5 physical samples from any time period, then Sonos should produce those.  Sonos has also ignored Google's request for "Physical samples" of the accompanying "CR200" controller (JF at 12), which is necessary to control the S5 product.

## II.   INTERROGATORY NO. 5

Sonos has now served its final infringement contentions, affirming that it is only asserting "priority date[s]" based on an earlier filed application but not any earlier conception or reduction to practice dates.[2]  This confirms Sonos is bound by priority dates staked out in its infringement contentions and that the Court should strike its inconsistent response to Google's Interrogatory No. 7.

The dispute turns on interpreting this Court's S.P.R. 2.1.4 requiring disclosure of "the priority date allegedly applicable to each asserted claim."  The only C.D. Cal. case cited by either party, *Neev v. Alcon Labs., Inc.*, held the language of S.P.R. 2.1.4 (found verbatim in Patent L.R. 3-1(f), at issue in *Neev*) "requires a party to identify a specific conception date."   2017 WL 11629333, at *5 (C.D. Cal. May 16,

---

[2]   Judah Decl., Ex. 22 (Final Infringement Contentions) at 5.

-2-

01980-00237/18357669.1

2017).  Sonos attempts to distinguish *Neev* because the applicable rules included Patent L.R. 3-2(b), but that is a separate rule (imposing an **additional** obligation to also produce all documents supporting that conception date).  JF at 31-32.  Sonos does not explain why the presence or absence of Patent L.R. 3-2(b) should dictate how Patent L.R. 3-1(f) is interpreted.  Moreover, in *Neev*, the plaintiff made the same argument that Sonos advances here, attempting to distinguish *Harvatek* and *Thought* "because the plaintiffs in those cases withheld conception documents."  *Neev*, 2017 WL 11629333, at *5.  The court rejected that argument—as the Court should do here—finding "the court did not base its holding on any discovery delays, but on the plaintiff's failure to identify a conception date."  *Id.*[3]

Sonos's remaining arguments focus on whether Google should have known Sonos's claimed priority dates (including conception dates) based on the prior ITC litigation or other discovery responses.  However, pursuant to this Court's patent rules, infringement contentions are intended to be the ultimate source of truth on this issue.  Thus, the problem is that Sonos's disclosures of its allegations in non-authoritative discovery responses conflicted with its infringement contentions and thereby created confusion as to what dates are operative.  This is contrary to the local rules' requirement that patentees "crystallize their theories of the case early in the litigation."  *Neev*, 2017 WL 11629333, at *5 (quotations omitted).  Sonos thus should have included its earliest priority dates in its infringement contentions from the start,

---

[3]  Sonos's cited cases are inapposite.  In *Gamevice, Inc. v. Nintendo Co.*, the court allowed Gamevice to rely on its undisclosed, earlier conception date due to "the ambiguity in the [N.D. Cal.] local rules" related to the inclusion of Patent L.R. 3-2(d) (which is not part of this Court's S.P.R.).  2019 WL 3533078, at *3 (N.D. Cal. Aug. 2, 2019).  In *Mitsubishi Tanabe Pharma Corp. v. Sandoz Inc.*, the court afforded the plaintiff leeway because "the New Jersey Local Patent Rules present similar ambiguity."  2020 WL 3169372, at *6 (D.N.J. June 15, 2020).  In any event, Sonos does not have that excuse: Google informed Sonos of the *Neev* case and the lack of ambiguity in October 2025, yet Sonos has steadfastly refused to fix its responses.

-3-

Case No. 2:20-cv-00169-JAK
SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO COMPEL

or sought to amend those contentions immediately after Google identified this deficiency. Sonos chose neither. It must now live with the consequences of its tactic.

## III.   INTERROGATORY NO. 7

Sonos does not dispute its written description and enablement positions are relevant. Instead, Sonos argues Interrogatory No. 7 is "premature, unduly burdensome, and overbroad." JF 44. It is none of these.

The Interrogatory Is Not Premature. Google disclosed its invalidity contentions in April 2025, and supplemented in October 2025 with an itemized list of the limitations it contends render the asserted claims invalid under § 112 for lack of written description and enablement. Dkt. 213-2 (Judah Decl., Ex. 2). Sonos has never challenged the sufficiency of those contentions or moved to compel more detail. Meanwhile, fact discovery is set to close on July 2, 2026—less than two weeks away. It is pure gamesmanship for Sonos to argue this Interrogatory is premature or that Sonos should be permitted to "litigate by ambush" by saving its contentions until rebuttal reports (when it is too late for Google's experts to respond). *See Odyssey Wireless v. Apple*, No. 15-cv-1735-H-RBB, Dkt. 140 (S.D. Cal. Dec. 11, 2015).

The Interrogatory Is Not Unduly Burdensome or Overbroad. Sonos first argues it should not have to respond to this Interrogatory because it already responded to a different one (No. 6). JF at 43-44. However, Sonos itself admits that "Google's Interrogatory No. 7 goes a step further." Sonos's response to a different interrogatory does not moot the relevance of the requested discovery.

Second, Sonos argues the "request, as written" is overbroad. JF at 44. However, as Sonos concedes Google is not compelling the request "as written," but rather a narrower request, limited to the limitations Google disclosed in its contentions as lacking written description and/or enablement. *Id.* at 45. Sonos's proportionality and "scorched earth" discovery arguments (*id.* at 44-45) are irrelevant.[4]

---

[4] The § 282 presumption of validity governs Sonos's burden of proof at trial; it does not "dictate the scope of discovery," nor permit Sonos to withhold its factual positions

-4-

Third, Sonos argues that the request is not proportional because Google's invalidity contentions identify too many missing limitations and/or because Google has provided "zero analysis of any portion of the specifications and why it does or does not provide written description or an enabling disclosure[.]"  JF at 45-47.  However, Sonos has asserted 83 claims across 10 patents—and many of the independent claims have more than a dozen limitations.  Against all those limitations, Google identified 80 it contends lack written description support or enablement—averaging just 8 limitations per patent and fewer than one per asserted claim.  That number is reasonable given the complexity of the case and Sonos's extreme use of "daisy chain" continuations.  As for Sonos's so-called "analysis" argument, the crux of Google's § 112 defense is that the specifications are ***missing*** support for these limitations.  As other courts have recognized, Google and its experts should not be required in the first instance to "prove a negative"—it is the patentee that needs to identify specification support (if any) for the missing limitations.

Fourth, Sonos argues Google "doesn't seriously contend that Sonos's patent specifications fail to enable or provide written description support" for the limitations identified in Google's contentions.  JF at 46.  Not so.  Google moved for summary judgment as to one patent family based on lack of written description (Dkt. 214) and intends to present additional such contentions in its expert reports.[5]  Accordingly, Sonos should be compelled to provide a complete response to Interrogatory No. 7.

---

until Google has proven its case. *Apple Inc. v. Wi-LAN Inc.*, 2018 WL 733740, at *4 (S.D. Cal. Feb. 6, 2018); *see also Impact Engine, Inc. v. Google LLC*, 2020 WL 2745230, at *4 (S.D. Cal. May 26, 2020).

[5]  None of Sonos's cited cases compel a different outcome.  The discovery sought in *Friskit* and *Apple* was substantially more burdensome than what Google seeks.  *See Friskit, Inc. v. Real Networks, Inc.*, 2006 WL 1305218, at *1 (N.D. Cal. May 11, 2006); *Apple*, 2018 WL 733740, at *4.  Sonos's quoted language does not appear in *Finjan, Inc. v. ESET, LLC*, 2018 WL 5263243 (S.D. Cal. Oct. 23, 2018).  And *Impact* only addressed the format of the response but still required the patentee to "supplement its response" and provide the information sought.  *See Impact Engine*, 2020 WL 2745230, at *4.

-5-

DATED: June 23, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*/s/ James D. Judah*

James D. Judah

*Attorneys for Defendant-Counterclaimant Google LLC*

-6-