REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Melissa J. Baily (SBN 237649)
melissabaily@quinnemanuel.com
James D. Judah (SBN 257112)
jamesjudah@quinnemanuel.com
Ognjen Zivojnovic (SBN 307801)
ogizivojnovic@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

Lance Yang (Bar No. 260705)
lanceyang@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Tel: (213) 443-3000
Fax: (213) 443-3100

*Attorneys for Defendant-Counterclaimant Google LLC*

ORRICK HERRINGTON & SUTCLIFFE LLP
Clement S. Roberts (SBN 209203)
croberts@orrick.com
405 Howard Street
San Francisco, CA 94105
Tel: (415) 773-5700
Fax: (415) 773-5759

Alyssa Caridis (SBN 260103)
acaridis@orrick.com
355 S. Grand Ave., Suite 2700
Los Angeles, CA 90071
Tel: (213) 629-2020
Fax: (213) 612-2499

LEE SULLIVAN SHEA & SMITH LLP
George I. Lee (*pro hac vice*)
lee@ls3ip.com
Sean M. Sullivan (*pro hac vice*)
sullivan@ls3ip.com
Rory P. Shea (*pro hac vice*)
shea@ls3ip.com
J. Dan Smith (*pro hac vice*)
smith@ls3ip.com
656 W. Randolph St., Floor 5W
Chicago, IL 60661
Tel: (312) 754-0002

*Attorneys for Plaintiff-Counterclaim Defendant Sonos. Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>*Plaintiff-Counterclaim Defendant,*<br><br>vs.<br><br>GOOGLE LLC,<br><br>*Defendant-Counterclaimant.* | CASE NO. 2:20-cv-00169-JAK (DFMx)<br><br>**JOINT FILING REGARDING DISCOVERY DISPUTE**<br><br>Initial Complaint Filed: January 7, 2020<br>Discovery Cutoff: July 2, 2026<br>Final Pretrial Conference: TBD<br>Trial Date: TBD<br><br>Date: July 21, 2026<br>Time: 10:00 AM<br>Location: Courtroom 6B<br>Judge: Hon. Douglas F. McCormick |

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

   A.  Google's Position .........................................................................................1

   B.  Sonos's Position ..........................................................................................2

II.   ARGUMENT ........................................................................................................3

   A.  Core Technical Documents (BOMs, Specifications, and Source Code) ..........3

      1.  Discovery at Issue ................................................................................3

      2.  Google's Position .................................................................................4

      3.  Sonos's Position ..................................................................................7

   B.  Surveys and Market Research ......................................................................9

      1.  Discovery at Issue ...............................................................................10

      2.  Google's Position .................................................................................14

      3.  Sonos's Position ..................................................................................16

   C.  '615 Patent Deposition, Expert, and Hearing Materials from the 1330 Investigation........................................................................................................16

      1.  Discovery at Issue ...............................................................................16

      2.  Google's Position .................................................................................17

      3.  Sonos's Position ..................................................................................23

01980-00237/18379916.2

Defendant-Counterclaimant Google LLC ("Google") and Plaintiff-Counterclaim Defendant Sonos, Inc. ("Sonos") (together, the "Parties") hereby submit this joint discovery dispute filing pursuant to Local Rule 37-2. Pursuant to Local Rule 37-2.1, the Court's Scheduling Order is attached hereto as Exhibit 1.

# I.    INTRODUCTION

## A.    Google's Position

Google respectfully moves the Court for an order compelling Sonos to produce core discovery relevant to infringement and validity of Google's asserted patents, U.S. Patent No. 12,132,608 (the "'608 patent") and U.S. Patent No. 9,485,790 (the "'790 patent") (collectively, the "Google Asserted Patents"), which are directed to commissioning electronic devices onto wireless local area networks using a short-range signal transmission path, such as Bluetooth Low Energy ("BLE") (the "Accused Wireless Commissioning Functionalities").

First, Sonos should produce the core technical documents relevant to Sonos's infringement. These materials, which include Bills of Material ("BOMs"), specifications, and source code, are directly relevant to Google's infringement contentions for specific limitations of the Google Asserted Patents as to the accused Sonos products.

Second, Sonos should produce surveys and consumer research relevant to the Accused Wireless Commissioning Functionalities. These documents are relevant to both damages (i.e., the value of the claimed inventions) and validity (i.e., secondary considerations of non-obviousness for the claimed inventions).

Third, Sonos should produce infringement-related fact and expert witness transcripts and expert reports, including exhibits, from a prior International Trade Commission ("ITC") investigation between the Parties involving a family member of the Google Asserted Patents. These materials are relevant to infringement and particularly needed here because it appears that Sonos is withholding from production relevant and responsive documents that were produced in the ITC investigation.

## B.    Sonos's Position

Google's motion should be denied because there is no genuine discovery dispute for the Court to resolve.  Sonos has produced, or has committed to produce, the discoverable materials Google seeks, and Google's remaining demands either lack any basis in its own infringement contentions or seek a one-sided result that the discovery rules do not permit.  Sonos addresses each of Google's requests in turn.

First, as to core technical documents, there is no live dispute regarding bills of material.  Sonos has produced the bills of material Google is requesting.  As to source code, Sonos has no obligation to produce source code for the Sonos Ace because without a cognizable theory of infringement, that code is not relevant to any claims in this litigation.

Second, as to surveys and market research, there is likewise no dispute requiring the Court's intervention.  Sonos has produced the ITC documents that Google identified.  Sonos has produced additional documents relating to marketing, and there are no recent surveys concerning setup functionality.  Sonos is not withholding any non-privileged, responsive materials.

Third, as to materials from the 1330 Investigation, the dispute should be resolved on a single, evenhanded principle: the same discovery rules must apply to both parties.  Throughout the meet-and-confer process, Sonos has repeatedly requested discovery, including deposition transcripts, expert reports, hearing transcripts, and other documents from the parties' parallel N.D. Cal. Case concerning the same products and related functionalities that Sonos accuses in the present case.  Google has refused.  Whatever relevance and proportionality standard Google urges for the 1330 Investigation materials applies with equal force to the N.D. Cal. Case materials, and Google cannot demand Sonos's protected ITC materials while withholding its own.  Accordingly, Sonos asks the Court to apply one rule to both sides: either order both parties to produce their respective prior-proceeding materials, or determine that neither party need do so.

-2-

## II.    ARGUMENT

### A.    Core Technical Documents (BOMs, Specifications, and Source Code)

#### 1.    Discovery at Issue

**S.P.R. 2.6.1:**

Source code, specifications, schematics, flow charts, artwork, formulas or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant's S.P.R. 2.1.3 chart.

**Request For Production No. 94:**

All Documents and Things relating to Your Affirmative Defenses, and all Documents that You contend support any of Your Affirmative Defenses.

**Sonos's Response to Request for Production No. 94:**

Sonos objects that the Request is overbroad, unduly burdensome, and not proportional to the needs of the case, particularly to the extent that it purports to require "*All* Documents and things relating to Your Affirmative Defenses. . ."

Sonos objects to the Request to the extent that it calls for material protected from discovery by attorney-client privilege, the work product doctrine, or any other applicable privilege.

Subject to these Specific Objections and the foregoing General Objections, and insofar as this Request is understood, Sonos will produce relevant, nonprivileged, and responsive documents concerning any affirmative defenses with respect to the Google Asserted Patents to the extent that any exist, are in the possession, custody or control of Sonos, and can be located following a reasonable search.

Sonos reserves the right to revise, correct, add to, supplement, or clarify its response to this Request for Production as additional information is discovered and/or becomes available.

**Request For Production No. 95:**

All Documents and Things concerning, or supporting, the infringement or noninfringement of the Google Asserted Patents by Sonos.

**Sonos's Response to Request for Production No. 95:**

Sonos objects that the Request is overbroad, unduly burdensome, and not proportional to the needs of the case, particularly to the extent that it is not limited as to time and purports to require "*All* Documents

-3-

and Things concerning, or supporting, the infringement or noninfringement of the Google Asserted Patents by Sonos."

Sonos objects that the Request is vague and ambiguous, particularly as to what is meant by "*concerning, or supporting, the infringement,*" as Sonos does not contend (or agree) that Sonos has infringed any of the Google Asserted Patents.

Sonos objects to the Request to the extent that it calls for material protected from discovery by attorney-client privilege, the work product doctrine, or any other applicable privilege.

Sonos objects to the extent the Request purports to call for documents outside Sonos's possession, custody, or control, such as Sonos's law firms' document retention policies.

Subject to these Specific Objections and the foregoing General Objections, and insofar as this Request is understood, Sonos will produce relevant, nonprivileged, and responsive documents concerning non-infringement of the Google Asserted Patents to the extent that any exist, are in the possession, custody or control of Sonos, and can be located following a reasonable search.

Sonos reserves the right to revise, correct, add to, supplement, or clarify its response to this Request for Production as additional information is discovered and/or becomes available.

*See* Exhibit 2 (2025.11.10 Sonos's Responses and Objections to Google's Second Set of RFPs [92-129]) at 4–5.

### 2.    Google's Position

*Bills of Materials*

Google's infringement contentions tie specific claim limitations of the Google Asserted Patents to the wireless-radio hardware in the accused products. Accordingly, Google is requesting BOMs that will show the wireless-radio hardware in the accused products. The asserted claims of the '790 patent require both "a first wireless radio" and "a second wireless radio," and Google maps those limitations to the accused products' Bluetooth Low Energy (BLE) radio and Wi-Fi radio, respectively. *See* Exhibit 3 (May 5, 2025 Google Infringement Contentions) at Ex. A at 2–3. Claim 9 of the '790 Patent additionally requires a "transducer," which Google maps to the accused products' antenna and RF front end. *See id.* at Ex. A at 28–29. The asserted

-4-

claims of the '608 Patent likewise require "a wireless radio," which Google maps to the accused products' Wi-Fi radio. *See id.* at Ex. B at 1–5. Each of these limitations reads on the specific radio, chipset, and RF components incorporated into a given product—precisely the information disclosed in the BOMs. The BOMs – which are comprehensive lists of the raw materials, sub-assemblies, components, and quantities needed to manufacture a product – identify the BLE chipset, Wi-Fi chipset, processor, memory, and antenna/RF front end for each accused product. Thus, without the BOMs, Google cannot confirm on a product-by-product basis which components satisfy the "first wireless radio," "second wireless radio," "wireless radio," and "transducer" limitations.

Sonos has produced BOMs for many of the accused products, but its productions to date are deficient. Google compiled Sonos's produced BOMs in a new Appendix to its infringement claim charts. *See* Exhibit 4 (June 12, 2026 Google's Infringement Contention, Appendix I – BOMs of the Accused Products). For six accused products—Sonos Move 2, Sonos Roam 2, Sonos Arc Ultra, Sonos Ace, Sonos Sub, and Sonos Sub 4—Sonos has produced no BOMs at all. *Id.* That leaves Google unable to identify the BLE radio, Wi-Fi radio, and RF components in those products, and therefore unable to chart the corresponding limitations for Google's patents. This gap matters because Sonos refuses to stipulate to a representative product. Google has identified the Sonos Era 100 as representative, and explained its basis for doing so, but Sonos disputes representativeness. If Sonos's products differ in ways relevant to infringement, as Sonos contends, then Google needs product-specific BOMs for each and every accused product, and Sonos's failure to produce them for all accused products directly prejudices Google's ability to establish infringement across the full set of accused products.

Sonos asks the Court to compel Sonos to produce BOMs and other technical documents sufficient to show the BLE chipset, Wi-Fi chipset, processor, memory, and

-5-

antenna/RF front end for Sonos Move 2, Sonos Roam 2, Sonos Arc Ultra, Sonos Ace, Sonos Sub, and Sonos Sub 4.

*Source Code*

Sonos also should be compelled to produce source code for the Sonos Ace. Google identified Sonos Ace as an accused product in Google's infringement contentions. *See* Exhibit 3 (May 5, 2025 Google Infringement Contentions) at 3. And S.P.R. 2.6.1 requires Sonos to produce source code "sufficient to show the operation of any aspects or elements of an **Accused Instrumentality** identified by [Google's] S.P.R. 2.1.3 chart [of infringement contentions]." *Supra* II.A.1 (emphasis added); Dkt. 13 (Standing Orders for Civil Cases Assigned to Judge John A. Kronstadt) at 28. Sonos therefore must produce the Sonos Ace code to comply with S.P.R. 2.6.1.

Sonos will not agree to the use of a representative product, which would eliminate the need to produce source code for all Accused products. Responding to Google's Interrogatory No. 16, Sonos asserted that there are differences between its accused products relevant for non-infringement, arguing that the Sonos Era 100 is not representative for the full time period. *See* Exhibit 5 (Sonos's First Supplemental Responses and Objections to Google's Second Set of Interrogatories) at 28–31. Sonos cannot have it both ways. If Sonos maintains that its products differ in ways relevant to infringement, then no product is representative and Sonos must produce source code for each accused product, including the Ace, to satisfy S.P.R. 2.6.1.

Sonos's own interrogatory response confirms the Ace source code must be separately produced. Sonos's response on representativeness cites the Ace public user manual, and asserts that the Ace operates differently from other products, claiming it uses "an entirely different 'set up' process than the Sonos Era 100 speakers." *See id.* at 30. But Sonos has never identified the Ace source code reflecting that purportedly "different 'set up' process," nor explained, by reference to the code, how the Ace's setup differs from the other accused products. Having put Ace's alleged distinct

operation at issue, Sonos cannot withhold the very code that would allow Google to test its assertions. Sonos's broad claims about functionality are inadequate alone.

Without the Ace source code, Google cannot confirm its infringement theory against an accused product. Google therefore asks the Court to order Sonos to produce Sonos's source code for the Sonos Ace.

### 3. Sonos's Position

*Bill of Materials*

There is no live dispute for the Court to resolve as to the bills of materials (BOMS). As Sonos has repeatedly told Google, Sonos has been producing responsive documents, including BOMs for the accused products. Sonos produced additional BOMs on June 25, 2026. Sonos is not withholding any non-privileged, responsive documents. Google's request to compel BOMs is therefore moot.

*Source Code*

This Court's S.P.R. 2.6.1 ties a party's source code production obligation to what the opposing party has actually charted in its infringement contentions under S.P.R. 2.1.3. By way of background, ███████████████████████████ ████████████████████████████████████   *See* Exhibit 11 (SONOS-ITC-00342527). Google's theory of infringement, as articulated in its final infringement contentions, depends on Sonos's ███████ protocol and the source code implementing it. Google does not attempt to map the asserted claims to the setup process of any individual Sonos product, aside from the Sonos Era 100. Instead, Google bases its infringement theory on ███████ and concludes that "All the Accused Sonos Player Products support the ███████ protocol." *See* Exhibit 12 (Google's Final Infringement Contentions for the '790 Patent) at 14; *see also* Exhibit 13 (Google's Final Infringement Contentions for the '608 Patent) at 15. While Google acknowledges that "Sonos alleges that the Sonos Ace uses a different setup process," Google simply "adopts the analysis on the ███████ protocol" for all

-7-

Accused Products, "including the Sonos Ace," "unless and until Sonos produces Sonos Ace source code that indicates otherwise." *See* Ex. 12 at 14:

That is not an infringement theory directed to the Sonos Ace. It is a placeholder that assumes the very thing Google must prove. Google may not use discovery to manufacture a theory it has never charted and demand the Sonos Ace source code in the hope of locating an infringement case it presently lacks.

Courts in this circuit have foreclosed Google's approach. In *Technology Properties Ltd. LLC v. Samsung Electronics Co.*, the court denied the patentee's motion to compel technical documents for allegedly "representative" products where patentee's infringement contentions failed to chart each accused product and instead relied on an unsupported representative-product theory. 114 F. Supp. 3d 842, 849-52 (N.D. Cal. 2015) ("Plaintiffs' 'representative product' approach is deficient. Plaintiffs simply state that the operation and implementation of the seven and eight processors is 'representative of the operation of the processors in each of the Accused Products' in Tables A.4 and A.6, 'on information and belief.'") (denying motion to compel technical production). The court further explained, "reliance on 'information and belief,' legal conclusions and cursory analysis rather than evidence to establish specific claim limitations and representativeness does not comport with Patent L.R. 3–1." *Id.* at 850.

Here, just as the *Technology Properties* plaintiffs deemed a handful of charted processors "representative" of every accused product "on information and belief,"

-8-

Google charts only the ███████ protocol and then "adopts the analysis on the ████████ protocol" for the Sonos Ace "unless and until Sonos produces Sonos Ace source code that indicates otherwise." *See* Google's Final Infringement Contentions for the '790 Patent at 14.  That is the same, conclusory representativeness assertion the *Technology Properties* court rejected.

And in case there was any doubt, Sonos's Rule 30(b)(6) corporate representative has now confirmed to Google ████████████████████████████ ████████████████████████████████████████ ██████████████████████████

████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████████████████

This leaves Google with no cognizable infringement theory as to the Sonos Ace.

Because Google has offered no cognizable theory that the Sonos Ace—which does not use the accused ███████ process—infringes any asserted claim, the Sonos Ace source code is irrelevant under Rule 26(b)(1).  Thus, Sonos has no obligation to produce the Sonos Ace source code.

**B.    Surveys and Market Research**

---

[1] The cited testimony is obtained from the rough transcript of the deposition of Mr. Shoesmith.  Sonos will provide the certified transcript when it becomes available.

-9-

Case No. 2:20-cv-00169-JAK
JOINT FILING REGARDING DISCOVERY DISPUTE

1. **Discovery at Issue**

**Request For Production No. 105:**
Documents and Things sufficient to show any benefits or improvements achieved by the Sonos Accused Functionalities over existing products.

**Sonos's Response to Request For Production No. 105:**
Sonos objects that the timeframe provided in this Request is overbroad and not relevant nor proportional to the scope of the case, inasmuch as the Request is not limited as to time.

Sonos objects to this Request as vague and ambiguous, particularly as to what is meant by "any benefits or improvements achieved by the Sonos Accused Functionalities over existing products."

Sonos objects to the Request to the extent that it calls for material protected from discovery by attorney-client privilege, the work product doctrine, or any other applicable privilege.

Sonos objects to the extent the Request purports to call for documents outside Sonos's possession, custody, or control, such as Sonos's law firms' document retention policies.

Subject to these Specific Objections and the foregoing General Objections, and insofar as this Request is understood, Sonos responds that it is willing to meet and confer with Google to understand what is sought by this request and how it is relevant to any issues in this case.

Sonos reserves the right to revise, correct, add to, supplement, or clarify its response to this Request for Production as additional information is discovered and/or becomes available.

**Request For Production No. 106:**
Documents and Things sufficient to show the results of any consumer preference studies or surveys related to the Sonos Accused Functionalities, including any report(s) reflecting the actual surveys or studies and results thereof.

**Sonos's Response to Request For Production No. 106:**
Sonos objects that the Request is overbroad, unduly burdensome, and not proportional to the needs of the case, particularly to the extent that it is not limited as to time and purports to require the results of "any consumer preference studies or surveys related to the Sonos Accused Functionalities. . ."

Sonos objects to this Request to the extent it seeks documents that involve third-party confidentiality interests and potential obligations of Sonos related to such third-party confidentiality interests.

-10-

Subject to these Specific Objections and the foregoing General Objections, and insofar as this Request is understood, Sonos will produce relevant, non-privileged, and responsive documents sufficient to show the results of any consumer preference studies or surveys related to the Sonos Accused Functionalities to the extent that any exist, are in the possession, custody or control of Sonos, and can be located following a reasonable search.

Sonos reserves the right to revise, correct, add to, supplement, or clarify its response to this Request for Production as additional information is discovered and/or becomes available.

**Request For Production No. 107:**

Documents and Things sufficient to demonstrate Sonos customers' use of the Sonos Accused Functionalities.

**Sonos's Response to Request For Production No. 107:**

Sonos objects that the Request is overbroad, unduly burdensome, and not proportional to the needs of the case, particularly to the extent that it is not limited as to time.

Sonos objects to this Request as vague and ambiguous, particularly as to what is meant by "Sonos customers' use of the Sonos Accused Functionalities."

Subject to these Specific Objections and the foregoing General Objections,

and insofar as this Request is understood, Sonos responds that it is willing to meet and confer with Google to understand what is sought by this request and how it is relevant to any issues in this case.

Sonos reserves the right to revise, correct, add to, supplement, or clarify its response to this Request for Production as additional information is discovered and/or becomes available.

**Request For Production No. 108:**

All analyst reports, industry documents, or trade articles that discuss or relate to the Sonos Accused Functionalities.

**Sonos's Response to Request For Production No. 108:**

Sonos objects that the Request is overbroad, unduly burdensome, and not proportional to the needs of the case, particularly to the extent that it is not limited as to time and purports to require "All analyst reports, industry documents, or trade articles that discuss or relate to the Sonos Accused Functionalities."

Sonos objects that the Request is vague and ambiguous, particularly as to what is meant by or what Google contends would

-11-

01980-00237/18379916.2

constitute a "report," an "industry document," or a "trade article," and how to determine whether any such document "relate[s]" to the Sonos Accused Functionalities.

Sonos objects to this Request to the extent it seeks documents that involve third-party confidentiality interests and potential obligations of Sonos related to such third-party confidentiality interests.

Subject to these Specific Objections and the foregoing General Objections, and insofar as this Request is understood, Sonos responds that it is willing to meet and confer with Google to understand what is sought by this request and how it is relevant to any issues in this case.

Sonos reserves the right to revise, correct, add to, supplement, or clarify its response to this Request for Production as additional information is discovered and/or becomes available.

**Request For Production No. 109:**

Presentation materials for trade conferences that relate to the Sonos Setup Functionalities.

**Sonos's Response to Request For Production No. 109:**

Sonos objects that the Request is overbroad, unduly burdensome, and not proportional to the needs of the case, particularly to the extent that it is not limited as to time.

Sonos objects that the Request is vague and ambiguous, particularly as to what is meant by "presentation materials" or "trade conferences."

Sonos objects to this Request to the extent it seeks documents that involve third-party confidentiality interests and potential obligations of Sonos related to such third-party confidentiality interests.

Subject to these Specific Objections and the foregoing General Objections, and insofar as this Request is understood, Sonos will produce relevant, non-privileged, and responsive presentations given at conferences relating to the Sonos Setup Functionalities to the extent that any exist, are in the possession, custody or control of Sonos, and can be located following a reasonable search.

Sonos reserves the right to revise, correct, add to, supplement, or clarify its response to this Request for Production as additional information is discovered and/or becomes available.

**Request For Production No. 110:**

Consumer surveys, studies, or reports that relate to the adoption of the Sonos Setup Functionalities, customer satisfaction regarding the Sonos Setup Functionalities, or the quality of the Sonos Setup

-12-

Functionalities in the Sonos Accused Products.

**Sonos's Response to Request For Production No. 110:**

Sonos objects that the Request is overbroad, unduly burdensome, and not proportional to the needs of the case, particularly to the extent that it is not limited as to time.

Sonos objects that the Request is vague and ambiguous, particularly as to what is meant by "*quality of the Sonos Setup Functionalities in the Sonos Accused Products.*"

Sonos objects to this Request to the extent it seeks documents that involve third-party confidentiality interests and potential obligations of Sonos related to such third-party confidentiality interests.

Subject to these Specific Objections and the foregoing General Objections, and insofar as this Request is understood, Sonos will produce relevant, non-privileged, and responsive documents that relate to the adoption of the Sonos Setup Functionalities or customer satisfaction regarding the Sonos Setup Functionalities to the extent that any exist, are in the possession, custody or control of Sonos, and can be located following a reasonable search.

Sonos reserves the right to revise, correct, add to, supplement, or clarify its response to this Request for Production as additional information is discovered and/or becomes available.

**Request For Production No. 111:**

Any internal or external analyses or marketing materials regarding the Sonos Setup Functionalities.

**Sonos's Response to Request For Production No. 111:**

Sonos objects that the Request is overbroad, unduly burdensome, and not proportional to the needs of the case, particularly to the extent that the Request is not limited as to time and purports to require "Any internal or external analyses or marketing materials regarding the Sonos Setup Functionalities."

Sonos objects to this request to the extent it seeks documents that involve third-party confidentiality interests and potential obligations of Sonos related to such third-party confidentiality interests.

Subject to these Specific Objections and the foregoing General Objections, and insofar as this Request is understood, Sonos will produce relevant, non-privileged, and responsive documents relating to analyses and/or marketing materials regarding the Sonos Setup Functionalities to the extent that any exist, are in the possession, custody or control of Sonos, and can be located following a reasonable search.

-13-

01980-00237/18379916.2

Sonos reserves the right to revise, correct, add to, supplement, or clarify its response to this Request for Production as additional information is discovered and/or becomes available.

*See* Exhibit 2 (2025.11.10 Sonos's Responses and Objections to Google's Second Set of RFPs [92-129]) at 14–19.

### 2. Google's Position

Sonos's customer surveys and market research related to its products' setup functionality are relevant to Google's damages theories, as Google expects they will show that Sonos needed the inventions in Google's patents to improve its setup functionality. Google also expects the surveys will be relevant to secondary considerations of non-obviousness, because Sonos's products without Google's inventions did not meet the needs of their customers.

Sonos has already agreed to produce these materials in principle. In response to RFP Nos. 106, 109, 110, and 111, Sonos stated it "will produce relevant, non-privileged, and responsive documents"—consumer surveys, trade-conference presentations, adoption and customer-satisfaction studies, and internal and external marketing analyses regarding the setup functionality. *Supra* II.B.1. And following a meet and confer, Sonos has committed to making "rolling productions" in response to all of Google's requests. *See* Exhibit 6 (May 15, 2026 Richter Email to Larson) at 1. Sonos claims that it has already "produced many documents responsive to these requests," and provided a few examples that are purportedly responsive. *Id*. Sonos has also produced a handful of customer surveys, but they are mostly from 2014-2015 (e.g., SONOS-ITC-00261091, SONOS-ITC-00261570, SONOS-ITC-00272168, SONOS-ITC-00276956) and fall outside of the relevant time period Google requested: November 1, 2016 to the present. These documents are responsive, but incomplete. Sonos has not stated that there are no additional relevant documents from 2016 to present.

-14-

In addition to damages, Sonos's surveys, consumer research, and market analyses are relevant to the validity of the Google Asserted Patents as objective indicia of non-obviousness. Secondary considerations—including commercial success, industry praise, and long-felt but unmet need—bear directly on whether the claimed setup inventions would have been obvious, provided a nexus to the claimed invention is shown. *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966). Sonos's own surveys and market research concerning the accused setup functionality supply that nexus. They will show that Sonos itself understood that customers value the setup functionality in Google's claimed inventions.

This is not a hypothetical use for such materials. Google has already used Sonos's own surveys as evidence of non-obviousness in ITC Investigation No. 337-TA-1330 ("1330 Investigation"), in which Google asserted a family member of the Google Asserted Patents: U.S. Patent No. 11,050,615 ("'615 Patent"). Specifically, Google showed that Sonos faced a long-felt but unmet need to fix the setup problems later addressed by the claimed inventions, and that Sonos's prior efforts had failed to solve them, based on surveys related to the Accused Wireless Commissioning Functionalities. Two of those surveys – SD-Known Setup Experience Pain Points (SONOS-ITC1330-00009269) and JX-0298C Lumineers Information and Documentation (SONOS-ITC1330-00009290) – were admitted as Joint Exhibits for the evidentiary hearing. *See* Exhibit 7 (1330 Investigation Final Joint Exhibit List) at 18. In the Initial Determination, the Administrative Law Judge recounted Google's evidence that Sonos undertook efforts in 2017–2018 to modernize the setup experience and reduce setup time by switching from WiFi-based commissioning to BLE, "as reported through user surveys." *See* Exhibit 8 (1330 Investigation Initial Determination) at 179–80.

The 1330 Investigation record resolves Sonos's objections as to both relevance and burden. The surveys produced in that case – and that Sonos has still not produced in this one, despite repeated requests from Google – are directly probative of the

-15-

secondary-considerations issues here, and Sonos already collected, reviewed, and produced them once. The '615 Patent shares the same specification and overlapping limitations with the Google Asserted Patents. So the same categories of Sonos survey and market-research evidence are relevant now, and reproducing them is a light burden (as is conducting a reasonable search for any other or more recent surveys or market research).

The Court should compel Sonos to produce its responsive surveys and market research from November 1, 2016 to the present, including all of the documents referenced above, and similar subsequent responsive documents.

### 3. Sonos's Position

There is likewise no dispute requiring the Court's intervention as to surveys and market research. The two ITC documents Google highlights are either already produced or will be produced here. The document Google identifies as SD-Known Setup Experience Pain Points (SONOS-ITC1330-00009269) was already produced in this action as SONOS-SVG1-0145072. As to the document Google identifies as JX-0298C Lumineers Information and Documentation (SONOS-ITC1330-00009290), Sonos has also produced it as SONOS-SVG1-0146256. Sonos has produced additional documents relating to marketing. There are no recent surveys concerning setup functionality that were located after a reasonable search. Sonos is not withholding any non-privileged, responsive materials.

## C. '615 Patent Deposition, Expert, and Hearing Materials from the 1330 Investigation

### 1. Discovery at Issue

**Request For Production No. 92**

Documents referring or relating to the Google Asserted Patents and Google Related Patents and any claimed inventions disclosed therein.

**Sonos's Response to Request For Production No. 92:**

-16-

Sonos objects that the Request is overbroad, unduly burdensome, and not proportional to the needs of the case, particularly to the extent that the Request is not limited as to time and purports to require "*All* Documents referring or relating to the Google Asserted Patents and Google Related Patents and any claimed inventions disclosed therein."

Sonos objects that the Request is vague and ambiguous, particularly as to what is meant by "any claimed inventions disclosed therein" and "Google Related Patents," as this term appears to encompass patents and applications "related" to Sonos Asserted Patents, which renders the request nonsensical, overly broad, unduly burdensome, and not proportional to the needs of the case, as it calls for documents and information concerning patents and applications not at issue in this case.

Sonos also objects to this Request as overbroad and as seeking irrelevant information to the extent that it seeks documents and information that are unrelated to the specific, narrow accused functionalities implicated by Google's patent claims and infringement contentions.

Sonos also objects to the Request to the extent that it calls for material protected from discovery by attorney-client privilege, the work product doctrine, or any other applicable privilege.

Subject to these Specific Objections and the foregoing General Objections, and insofar as this Request is understood, Sonos will produce relevant, nonprivileged, and responsive documents referring to the Google Asserted Patents to the extent that any exist, are in the possession, custody or control of Sonos, and can be located following a reasonable search.

Sonos reserves the right to revise, correct, add to, supplement, or clarify its response to this Request for Production as additional information is discovered and/or becomes available.

*See* Exhibit 2 (2025.11.10 Sonos's Responses and Objections to Google's Second Set of RFPs [92-129]) at 2–3.

2.    Google's Position

Google seeks relevant fact testimony and expert reports from the 1330 Investigation related to the '615 Patent. Specifically, Google requests the deposition and hearing testimony of the Sonos witnesses who described how the accused products set up and connect to a network. Nicholas Millington, Sonos's Chief

-17-

Innovation Officer and lead technical witness, testified at both deposition and hearing about how a Sonos app discovers the accused products and how those products exchange network credentials over BLE. *See* Exhibit 8 (1330 Investigation Initial Determination) at 126–27, 145–46. Kyle Hutchings (a Sonos Product Director) testified about the accused products' hardware—the CPU, WiFi radio, BLE radio, and the memory storing the commissioning logic. *Id.* at 126. Lawrence Stefani (a Sonos Principal Software Engineer) authored the Sonos setup documentation the parties used on the question of Sonos's knowledge of the Accused Wireless Commissioning Functionalities, which bears on induced infringement. *Id.* at 142. Each witness addressed how the Accused Wireless Commissioning Functionalities relevant to the '615 Patent actually operates, which is the core infringement question here for the related Asserted Google Patents.

Google also seeks the expert reports and testimony from the 1330 Investigation that addressed the '615 Patent. Google's expert, Dr. Paul Min, applied the '615 Patent claims to the accused products and explained how each setup element is met. *See id.* at 126, 137–39. Sonos's technical expert, Dr. Douglas Schmidt, opined on the scope of those same claims and on non-infringement, including what user action constitutes the claimed "request" that begins the commissioning process. *Id.* at 122, 147–48. Google seeks the opening and rebuttal reports of both experts, together with their deposition and hearing testimony. These materials show how each side characterized the claims and the Accused Wireless Commissioning Functionalities, and they will let Google hold Sonos to its prior positions in this case.

Sonos should be compelled to produce the materials related to the '615 Patent from the 1330 Investigation covered by Google's Request for Production Nos. 92, 94, and 95: deposition transcripts and exhibits, expert reports and exhibits, and hearing transcripts concerning the issues related to the '615 Patent. These materials were designated by Sonos as Highly Confidential – Attorneys' Eyes Only under the 1330 Investigation Protective Order and Google cannot unilaterally produce them under the

-18-

terms of that Protective Order.  The Court should order Sonos to produce these materials because they are responsive to Google's requests, producing them is consistent with the prior conduct of the parties, and the Federal Rules support it.

>                (a)    1330 Investigation '615 Patent Materials Are Responsive to Google's Requests

The '615 Patent related materials are responsive to Google's discovery requests. Google first requested these materials when it served its Second Set of Requests for Production on October 10, 2025.  Google's RFP No. 92 calls for "Documents … relating to the Google Asserted Patents *and Google Related Patents*."  *Supra* II.C.1. (emphasis added).  Google defined the Related Patents as "any United States or foreign patent or patent application related to the Asserted Patents," including family members.  *See* Exhibit 9 (Google's First Set of Requests for Production) at 3.  The '615 Patent in the 1330 Investigation is, by Sonos's admission, a family member of the Google Asserted Patents and "directed to the same subject matter."  Dkt. 80 (Sonos's Opposition to Google's Motion for Leave to Amend) at 2-3 (acknowledging '615 "is a family member of the patents that Google is seeking to add here, and its claims are directed to the same subject matter").  So, definitionally, the 1330 Investigation '615 Patent related materials are responsive to RFP No. 92 as materials "relating to … Google related patents."

These materials are also responsive to RFP No. 95 as "concerning, or supporting, the infringement or noninfringement of the Google Asserted Patents by Sonos."  *Supra* II.A.1.  Google is asserting the '608 patent and the '790 patent against Sonos.  Dkts. 101-1, 101-5.  Both Google Asserted Patents are methods for commissioning electronic devices onto wireless local area networks using a short-range signal transmission path.  *Id.*  The '615 patent shares the same title with the Google Asserted Patents "Apparatus and Method for Seamless Commissioning of Wireless Devices."  *Compare* Exhibit 10 ('615 Patent) at 1 *with* Dkts. 101-1 ('608 Patent) at 1 *and* 101-5 ('790 Patent) at 1.  The Google Asserted Patents and the '615

-19-

01980-00237/18379916.2

also share *identical* claim language, as well as substantially similar claim language. *Compare* Exhibit 10 ('615 Patent) at 16 *with* Dkt. 101-5 ('790 Patent) at 16 ("The method of claim 1, wherein the wireless device is selected from a group consisting of a smartphone and a tablet computer."). This claim language overlap is relevant to infringement.

Because the Google Asserted Patents and the '615 Patent share claim language and accused overlapping Sonos products, any evidence related to Sonos's infringement of the '615 Patent will be relevant to Sonos's infringement of the Google Asserted Patents. Specifically, deposition transcripts, expert reports, and hearing transcripts in the 1330 Investigation include technical characterizations from Sonos's own witnesses and experts on the scope of Google's claims, how Sonos's Accused Wireless Commissioning Functionalities operate, and whether the claims and processes overlap. Sonos's prior positions on these claims and their relationship to Sonos's accused products are therefore key evidence related to "the infringement or noninfringement of the Google Asserted Patents by Sonos." *Supra* II.A.1. (RFP No. 95).

In addition, the 1330 Investigation depositions, expert reports, and hearing transcripts are relevant to Sonos's affirmative defenses. The 1330 Investigation depositions, expert reports, and hearing transcripts present Sonos's invalidity positions regarding the '615 Patent. The Google Asserted Patents share the same file history as the '615 Patent and, therefore, will be subject to many of the same invalidity arguments as the '615 Patent. Sonos's noninfringement positions and invalidity positions related to the '615 Patent in the 1330 Investigation will therefore be relevant to Sonos's affirmative defense of invalidity in this case. Dkt. 124 (Sonos's Answer and Counterclaims) at 7 ("Second Defense – Invalidity"). Sonos is also alleging inequitable conduct in this case. *Id.* ("Third Defense – Unenforceability"). Sonos's inequitable conduct allegations overlap with the inequitable conduct allegations they asserted in the 1330 Investigation against the '615 Patent. As such, the 1330

-20-

Investigation materials are also relevant to Sonos's affirmative defense of inequitable conduct. And the 1330 Investigation materials are responsive to Google's RFP No. 94 calling for "[a]ll Documents and Things relating to [Sonos's] ***Affirmative Defenses***." *See supra* II.A.1 (emphasis added).

(b)    The Federal Rules Support Production of the '615 Patent Materials

Courts regularly compel alleged infringers to produce the documents Google requests. In *Finjan, Inc. v. Zscaler, Inc.*, the court compelled an alleged infringer to produce "deposition transcripts, expert reports, or declarations from its own witnesses" from a prior proceeding "that relate to the accused products' functionality, to the extent that functionality is related to ***patents that are similar to the patents*** in the instant case." 2019 WL 1543514, at *3 (N.D. Cal. Apr. 9, 2019) (emphasis added). That is precisely the situation here. Sonos's positions in the 1330 Investigation on the '615 Patent are directly tied to the deposition transcripts, expert reports, and hearing transcripts (and exhibits to each) from that proceeding. Google is entitled to discovery of that material to test Sonos's positions in this case.

Other courts agree. In *GlaxoSmithKline Biologicals SA v. Pfizer Inc.*, the court compelled production of prior-litigation materials concerning patents "in the ***same family of the Asserted Patents*** that contain the same or similar claim terms, or involve the same or similar technologies, features, or claimed subject matter as the Asserted Patents." No. 24-512, Dkt. 119 at 5 (D. Del. Oct. 20, 2025) (emphasis added). And in *TQ Delta, LLC v. DISH Network Corp.*, the court ordered production of unredacted expert reports, declarations, and testimony transcripts from prior litigations involving patents in the same family as the asserted patents, where the prior expert had "opined on the construction of the 'phase characteristic' term" that was "similarly recited" in the patents at issue. No. 15-614-RGA, Dkt. 393 at 5–6 (D. Del. Feb. 1, 2022). The court "***based on the resemblance of the patents at issue*** in the present action and the patents at issue in the Prior Actions" found that "the Prior Litigation Materials are

-21-

01980-00237/18379916.2

relevant to the claims and defenses in this action." *Id.* at 6  (emphasis added).  That is exactly the relationship here: Sonos's witnesses and experts addressed the '615 Patent's claims, specification, and accused setup functionality in the 1330 Investigation, and the Google Asserted Patents share overlapping claim language and the same specification.  The 1330 Investigation materials should be produced for the same reasons.

Rule 26(b)(1) also favors production.  The materials at issue are existing documents already in Sonos's possession, already collected and reviewed by Sonos's counsel for use in the ITC investigation, and already designated under that proceeding's protective order.  Re-production in this action requires no new review.  By contrast, the prejudice to Google of continued withholding is substantial: without these materials, Google would be forced to recreate, through duplicative depositions of the same Sonos witnesses on the same technology and through retained-expert analysis of the same products, the factual record Google and Sonos have already established.  Google will also be unable to impeach Sonos if Sonos changes its position on its interpretation of Google's patents or the function of its own products.  Forcing Google to recreate the same evidentiary record through duplicative discovery imposes substantial cost on the parties, the witnesses, and the Court's docket— particularly given that fact discovery in this action closes on July 2, 2026.

Accordingly, the Court should order Sonos to produce all documents responsive to Request for Production Nos. 92, 94, and 95 from the 1330 Investigation concerning the related '615 Patent, including without limitation the deposition transcripts and exhibits, expert reports and exhibits, and hearing transcripts and exhibits from that proceeding related to the '615 Patent: the depositions of Nicholas Millington, Lawrence Stefani, Kyle Hutchings, Dr. Douglas Schmidt, and Dr. Paul Min; the opening and rebuttal reports of Google's expert Dr. Paul Min and Sonos's expert Dr. Douglas Schmidt; and the hearing testimony of Nick Millington, Dr. Douglas Schmidt, and Dr. Paul Min.

-22-

01980-00237/18379916.2

### 3.     Sonos's Position

Google's request for the deposition transcripts, expert reports, and hearing transcripts from the 1330 Investigation should be resolved on a single, evenhanded principle: the same discovery rules must apply to both parties.

As this Court is aware, the present action is not the only patent litigation between these two parties.  In addition to the ITC investigations between the parties, Sonos and Google also litigated, through trial, a dispute in the Northern District of California.  *Sonos, Inc. v. Google LLC*, No. 3:20-cv-06754 (N.D. Cal.) (referred to herein as the "N.D. Cal. Case").  In that case, Sonos accused the same Google products that are at issue here of infringing patents that have subject matter related to the Sonos asserted patents.

Even before Google added the Google Asserted Patents to this litigation, Sonos requested that Google agree that all material from the N.D. Cal. Case be available for cross use in the present litigation.  Google refused.

Despite this refusal, Google now asks for the same accommodation in *its* favor.  Specifically, it is seeking that material from *its* affirmative (and unsuccessful) case against Sonos be made available for use here.  Throughout the meet-and-confer process, Sonos urged equal treatment.  Sonos has requested, and continues to request, the deposition transcripts and exhibits, expert reports and exhibits, and hearing transcripts from the N.D. Cal. Case.  Exhibit 14 (Feb. 11, 2026 & Feb. 17, 2026 Correspondence between Google and Sonos).  The N.D. Cal. Case materials that Sonos requested are responsive to several of Sonos's pending requests, including Request for Production Nos. 4–6 and 8–23 (documents concerning the architecture, functionality, and development of the accused Google products, including Set Up, Speaker Groups, Speaker Pairs, Synchronous Media, and Group Volume), Request for Production No. 35 (documents concerning the Asserted Patents), and Request for Production No. 49 (documents supporting or refuting each defense pled in Google's Answer and Counterclaims).

-23-

(a)    The N.D. Cal. Case Materials Are Relevant and Discoverable Under the Same Standard Google Invokes

To the extent Google contends that a reciprocal production is unwarranted because different patents were at issue in the N.D. Cal. Case, that is a distinction without a difference. "Courts allow discovery of documents produced in prior litigations or investigations that have 'significant factual and legal overlap' with the present case." *Kurin, Inc. v. ICU Med., Inc.*, No. 8:24-CV-00564 FWS (ADSX), 2024 WL 5717968, at *3 (C.D. Cal. Nov. 22, 2024). The *Finjan* case cited by Google, in which the asserted patents from the prior proceeding were different from the asserted patents in the *Finjan v. Zscaler* proceeding, similarly supports Sonos's position. In *Finjan, Inc. v. Zscaler, Inc.*, the court compelled production of "deposition transcripts, expert reports, or declarations from its own witnesses" from a prior proceeding "that *relate to the accused products' functionality*, to the extent that functionality is related to patents that are *similar to the patents in the instant case*." 2019 WL 1543514, at *3 (N.D. Cal. Apr. 9, 2019) (emphasis added). Here, the grouping functionalities of the accused Google products, including group sync, group volume, and setup, were squarely at issue in the N.D. Cal. case, as they are in this case.

Thus, the expert reports and deposition testimony from the N.D. Cal. case addressing how those functionalities operate in the accused Google products bear directly on the same technical questions presented in this case. Likewise, the financial and damages-related materials sought from the N.D. Cal. Case bear directly on the damages issues presented here. Further, Google has placed the relevance of prior-proceeding materials squarely at issue, contending that the 1330 Investigation materials are relevant and responsive because they concern the same accused products and overlapping technology. Whatever relevance standard Google urges for the 1330 Investigation materials applies with equal force to the N.D. Cal. Case materials. Google cannot simultaneously demand Sonos's consent to the production of protected

-24-

materials from the ITC investigation while withholding its own consent to the production of materials from the N.D. Cal. Case.

(b)     Rule 26's Proportionality Analysis Applies Equally to Both Parties

Google's own arguments on the requirements of Rule 26(b)(1) confirm that the rule must run both ways.  Google contends that production of the 1330 Investigation materials imposes only a light burden because those materials are "already collected and reviewed" and their "[r]e-production in this action requires no new review," and that continued withholding forces the parties into "duplicative discovery" on the eve of the July 2, 2026 fact-discovery cutoff.  Each of those points applies with equal force to the N.D. Cal. Case materials, which are likewise existing documents already collected, reviewed, and produced in that action.  Without the N.D. Cal. Case materials, Sonos would be forced to recreate, through duplicative depositions of the same Google witnesses on the same grouping technology and through retained-expert analysis of the same accused products.

(c)     Any 1330 Production Must Go Both Ways

Finally, the scope of Google's request is unclear.  Google appears to be seeking a cherry-picking of 1330 material.  It wants *Sonos's* deposition transcripts, but says nothing of Google's.  And Google says nothing of the ITC's ultimate determination that found *no violation* and all claims of the '615 Patent *invalid*—including over confidential Sonos prior art.  If there is going to be a production of 1330 Investigation material related to the '615 Patent, it must be mutual and comprehensive—not just the specific material that Google thinks advances its interests.

*** 

Accordingly, Sonos asks the Court to apply one rule to both sides.  Sonos respectfully requests that the Court either (1) order both parties to produce their respective prior-proceeding materials, in which case Sonos will produce the 1330 Investigation materials Google seeks and Google will produce the N.D. Cal. Case

-25-

materials that Sonos seeks; or (2) determine that such materials need not be produced, in which case neither party need produce them.  Sonos is prepared to proceed under either approach.

-26-

01980-00237/18379916.2

DATED: June 29, 2026                QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                    /s/ James D. Judah
                                    James D. Judah

                                    *Attorneys for Defendant-Counterclaimant*
                                    *Google LLC*


DATED: June 29, 2026                ORRICK, HERRINGTON & SUTCLIFFE LLP
                                    *and*
                                    LEE SULLIVAN SHEA & SMITH LLP

                                    /s/ Alyssa Caridis
                                    Alyssa Caridis

                                    *Attorneys for Plaintiff-Counterclaim Defendant*
                                    *Sonos, Inc.*

-27-

## FILER'S ATTESTATION

I, James D. Judah, pursuant to Civil Local Rule 5-4.3.4(2)(i), attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED: June 29, 2026

/s/ *James D. Judah*
James D. Judah

01980-00237/18379916.2

Case No. 2:20-cv-00169-JAK
JOINT FILING REGARDING DISCOVERY DISPUTE