QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
Melissa J. Baily (SBN 237649)
melissabaily@quinnemanuel.com
James D. Judah (SBN 257112)
jamesjudah@quinnemanuel.com
Ognjen Zivojnovic (SBN 307801)
ogizivojnovic@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

Lance Yang (Bar No. 260705)
lanceyang@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Tel: (213) 443-3000
Fax: (213) 443-3100

*Attorneys for Defendant-Counterclaimant Google LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>      *Plaintiff-Counterclaim Defendant,*<br><br>vs.<br><br>GOOGLE LLC,<br><br>      *Defendant-Counterclaimant.* | CASE NO. 2:20-cv-00169-JAK (DFMx)<br><br>**SUPPLEMENTAL MEMORANDUM OF GOOGLE LLC PURSUANT TO LOCAL RULE 37-2**<br><br>Initial Complaint Filed: January 7, 2020<br>Discovery Cutoff: July 2, 2026<br>Final Pretrial Conference: TBD<br>Trial Date: TBD<br><br>Date:  July 21, 2026<br>Time:  10:00 AM<br>Location:  Courtroom 6B<br>Judge:  Hon. Douglas F. McCormick |

<div style="color:red; text-align:center; font-weight:bold">

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

</div>

## I.    SURVEYS AND MARKET RESEARCH

Sonos does not dispute that its surveys, consumer research, and market analyses concerning the accused setup functionality are relevant to damages and to secondary considerations of non-obviousness. *See* Dkt. 230 (Joint Filing Regarding Discovery Dispute) ("JF") § II.B.3.  Sonos rests entirely on the representation that it has produced what exists, that "[t]here are no recent surveys concerning setup functionality," and that it "is not withholding any non-privileged, responsive materials." *Id.*  Sonos's own corporate witness has now refuted that representation.

On June 25, 2026, Sonos's Rule 30(b)(6) designee, Bill Shoesmith, testified at length about the very materials Sonos represents do not exist.  Sonos generates analysis, reports, and presentations on the ███████████████████ transmitted from the Sonos app that lets it ████████████████████ ██████████████████████ including the ███████████████ ██████████████████. Ex. 15 (Shoesmith Dep. Tr.) at 230:7-231:9.  Most importantly, Mr. Shoesmith confirmed that ████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████ *Id.* at 245:25-246:23.  Asked what documentation showed ██████████████████████████████ ████████████████████████████████████████████████████ ████████████ *Id.* at 248:9-15.  Mr. Shoesmith also testified that Sonos generates ███ ███████████████████████████████████████. *Id.* at 236:1-2, 236:24-237:18, 239:18-240:9, 241:21-24.  Thus, Mr. Shoesmith confirmed that Sonos maintains analysis, reports, presentations, and research that shows the benefits of Google's claimed setup method over alternatives (including alternative setup methods used by Sonos).  This analysis and research is responsive to Google's RFP No. 105

(benefits or improvements of the accused functionalities "over existing products"), RFP No. 107 (customer "use of the Sonos Accused Functionalities"), RFP No. 110 (studies relating to "adoption" and "customer satisfaction"), and RFP No. 111 ("internal or external analyses").  JF § II.B.1.

The withheld materials go to the heart of the disputed issues.  ███████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ (Ex. 15 at 245:25-246:23; 248:9-15), is direct evidence of a long-felt but unmet need that the claimed commissioning inventions solved and of the nexus between that need and the claimed functionality.  *See Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).  It is likewise direct evidence of the value Sonos itself placed on the accused functionality, which bears on damages.  Google also used precisely this category of Sonos survey evidence to establish secondary considerations in the 1330 Investigation.  JF § II.B.2.

Finally, the two documents Sonos points to as already produced prove the point rather than mooting it.  The ████████████████████████████ ████████████████████████████████████████████████████ ██████████████ draw on the ██████████████████████████ Shoesmith confirmed Sonos continuously maintains.  Ex. 15 at 230:7-231:9.  Yet Sonos has not produced the underlying ████████████████████████████ ██████████████████.  Producing two dated presentations while withholding the body of research they draw on is not a reasonable search.  The Court should order Sonos to produce its responsive surveys, reports, presentations, and market research concerning the accused setup functionality from November 1, 2016 to the present.

## II.   CORE TECHNICAL DOCUMENTS (BOMS AND SOURCE CODE)

Sonos does not dispute that bills of materials ("BOMs") and source code showing the wireless-radio hardware and setup operation of the accused products are relevant.  Its only responses are that the BOM dispute is "moot" and that the Sonos Ace source code is irrelevant.  JF § II.A.3.  Both responses fail.

-2-

Bills of Materials. Google's motion identified six accused products, of which Sonos had produced BOMs for three. But Sonos has not produced BOMs for the accused Sonos Roam 2, Ace, or Sub products. JF § II.A.2. Sonos's own Rule 30(b)(6) witness confirmed that deficiency. Shown the hardware chart Sonos produced (SONOS-SVG1-0145067), which he described as ███████████████████ ████████████████████████████████ Shoesmith testified that it ██████ ████████████████████████████ and could not confirm that any of the products Google identified appears on it, testifying for example that ████████████ ████████████████████████████████████████████████. Ex. 15 at 181:5-184:16, 185:1-8. The Court should order Sonos to produce BOMs sufficient to show those components for each of the accused products.

Source Code. Sonos's refusal to produce Sonos Ace source code rests on a mischaracterization of Google's contentions and on *Technology Properties*, both misplaced. Google did not chart a bare "representative product" theory "on information and belief"; it charted the NetStart2 protocol that Sonos's own documents show the accused products use during setup, identified the Sonos Ace as an accused product, and expressly reserved as to the Ace "unless and until Sonos produces Sonos Ace source code that indicates otherwise." JF § II.A.3. That is the opposite of *Technology Properties*, where the patentee charted nothing product-specific and rested on an "information and belief" assertion. *Tech. Props. Ltd. LLC v. Samsung Elecs. Co., Ltd.*, 114 F. Supp. 3d 842, 849-50 (N.D. Cal. 2015). Sonos cannot have it both ways. Having refused, in response to Interrogatory No. 16, to stipulate that the Era 100 is representative (JF § II.A.2), and having thereby put the Ace's allegedly "different 'set up' process" at issue, Sonos cannot withhold the code that would let Google test that assertion. Sonos's reliance on Rule 30(b)(6) testimony that the Ace ████████████████████ (Ex. 15 at 250:7-11) only underscores the point. Shoesmith conceded that the Ace source code ███████████████████████████████ ██████████████████████████████████████████████████████

-3-

████████████████████████████████████████████████████████

████████████████████████████ *Id.* at 250:20-251:6, 252:6-13.  Sonos cannot rest on the untested say-so of a witness who has not examined the code while withholding the code itself.  The Court should compel the Ace source code.

**III.   '615 PATENT MATERIALS FROM THE 1330 INVESTIGATION**

Sonos does not dispute that the 1330 Investigation deposition transcripts, expert reports, and hearing testimony concerning the '615 Patent are relevant to infringement and validity, or that reproducing them imposes only a light burden.  *See* JF § II.C.3.  Nor does it dispute that these materials, which are responsive to RFP Nos. 92, 94, and 95, are directly probative of how the accused wireless commissioning functionalities operate, of the parties' claim-scope positions, and of Sonos's invalidity and inequitable-conduct defenses.  *Id.*; *see id.* § II.C.2.  That concession is dispositive: an unrebutted showing of relevance and proportionality under Rule 26(b)(1) requires production.  Sonos's sole response is to demand full cross-use of the entirely separate *Sonos, Inc. v. Google LLC*, No. 3:20-cv-06754 (N.D. Cal.) (the "N.D. Cal. Case").  That demand is both procedurally improper and substantively meritless.

Sonos's Cross-Use Demand Is Procedurally Improper.  Sonos seeks relief that it never requested—an order compelling *Google* to produce N.D. Cal. Case materials.  Sonos never served a L.R. 37-1 letter nor filed any motion of its own.  It cannot obtain that relief by grafting a demand onto its opposition to Google's motion.  *See* L.R. 37-1 & 37-2.  Sonos's belated invocation, for the first time in the Joint Filing, of a sprawling and undifferentiated list of requests (RFP Nos. 4-6, 8-23, 35, and 49) only confirms this point, as Sonos never identified which specific N.D. Cal. materials are responsive to which request and never teed up these categories for decision.  Google's targeted motion cannot be held hostage to a cross-motion Sonos has not made.

Sonos's Cross-Use Demand Is Substantively Meritless.  Sonos's "one rule [for] both sides" framing (JF § II.C.3) depends on a false equivalence.  Google's request is narrow and tethered to a related patent (the '615 Patent), which is a family member

-4-

of the asserted '608 and '790 Patents, shares the same specification, and recites identical and overlapping claim language.  Dkt. 80 at 2–3; JF § II.C.2.  Google seeks specifically identified materials (fact and expert depositions, expert reports, and hearing testimony) addressing the operation of the same accused wireless commissioning functionalities also at issue here.

Sonos's demand is the opposite.  It seeks wholesale cross-use of material from a separate N.D. Cal. litigation that lacks meaningful overlap with this case.  None of the patents asserted in the N.D. Cal. case relate to any patents asserted here.  Further, Sonos demands discovery on all issues related to all of those N.D. Cal. patents.  JF § II.C.3.  The very standard Sonos invokes defeats its demand.  *Kurin* and *Finjan* permit discovery of prior-proceeding materials that share "significant factual and legal overlap," *Kurin, Inc. v. ICU Med., Inc.*, 2024 WL 5717968, at *3 (C.D. Cal. Nov. 22, 2024) (citation omitted), and relate to "patents that are similar to the patents in the instant case," *Finjan, Inc. v. Zscaler, Inc.*, 2019 WL 1543514, at *3 (N.D. Cal. Apr. 9, 2019).  The '615 materials meet that standard precisely; the N.D. Cal. materials do not, because there is no patent overlap at all.  A shared accused product is not a shared patent, and *Finjan* keyed discovery to patent similarity, not overlapping products.

Sonos's insistence that any 1330 production be "mutual and comprehensive" (JF § II.C.3) is not a basis to deny the motion.  Google does not oppose a comprehensive production of the 1330 materials concerning the '615 Patent.  What Sonos may not do is condition production of concededly relevant '615 materials on unrelated N.D. Cal. cross-use it has never properly sought.  The Court should order Sonos to produce the 1330 Investigation deposition transcripts and exhibits, expert reports and exhibits, and hearing transcripts concerning the '615 Patent, as set forth in Google's motion.

-5-

DATED: July 7, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*/s/ James D. Judah*

James D. Judah

*Attorneys for Defendant-Counterclaimant Google LLC*

-6-