Clement S. Roberts (SBN 209203)
croberts@orrick.com
ORRICK HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Tel: 415-773-5700 / Fax: 415-773-5759

Alyssa M. Caridis (SBN 260103)
acaridis@orrick.com
ORRICK HERRINGTON & SUTCLIFFE LLP
355 South Grand Ave., Suite 2700
Los Angeles, CA 90071
Tel: 213-629-2020 / Fax: 213-612-2499

George I. Lee (*Pro Hac Vice*)
lee@ls3ip.com
Sean M. Sullivan (*Pro Hac Vice*)
sullivan@ls3ip.com
Rory P. Shea (*Pro Hac Vice*)
shea@ls3ip.com
J. Dan Smith (*Pro Hac Vice*)
smith@ls3ip.com
Cole B. Richter (*Pro Hac Vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W. Randolph Street, Floor 5W
Chicago, IL 60661
Tel: 312-754-0002 / Fax: 312-754-0003

*Attorneys for Plaintiff, SONOS, INC.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONOS, INC., | CASE NO. 2:20-cv-00169-JAK (DFMx) |
| *Plaintiff-Counterclaim Defendant,* | **SONOS INC.'S OPPOSITION TO GOOGLE LLC's MOTION TO STAY** |
| vs. | |
| GOOGLE LLC, | |
| *Defendant-Counterclaimant.* | |

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

Case No. 2:20-cv-00169-JAK (DFMx)

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................... 1

II.    FACTUAL BACKGROUND ..................................................................... 2

III.   LEGAL STANDARD ................................................................................ 3

IV.    THE COURT SHOULD NOT STAY THIS CASE A SECOND TIME ......... 4

    A.    The Case Is in Its Later Stages ................................................................ 4

    B.    The Post-Grant Proceedings Will Not Simplify the Case .................... 7

        1.    Any Theoretical Simplification Is Limited................................. 7

        2.    The Potential Simplification Is Highly Speculative ................. 10

    C.    Another Stay Will Unduly Prejudice Sonos ........................................ 12

        1.    Another Stay Would Moot Sonos's Exclusivity Period............ 12

        2.    Another Stay Would Make It Harder to Remedy Google's Competitive Wrongs................................................................. 13

        3.    Another Stay Would Further Degrade Sonos's Ability to Present Its Claims and Defenses.............................................. 16

    D.    The Totality of the Circumstances Weighs Strongly Against a Stay.................................................................................................... 18

V.     CONCLUSION ...................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allergan Inc. v. Cayman Chem. Co.*,
No. SACV 07-01316-JVS, 2009 WL 8591844 (C.D. Cal. Apr. 9, 2009) ......................................................................................................... 4, 5

*Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*,
No. 10-CV-02863-EJD, 2011 WL 3267768 (N.D. Cal. July 28, 2011) ........................................................................................................ 14, 15

*Bio–Tech. Gen. Corp. v. Genentech, Inc.*,
80 F.3d 1553 (Fed. Cir. 1996) ................................................................. 14

*Biomet Biologies, LLC v. Bio Rich Medical, Inc.*,
No. SACV 10-1582 DOC (PJWx), 2011 WL 4448972 (C.D. Cal. Sept. 26, 2011) ..................................................................................... 12

*Carl Zeiss A.G. v. Nikon Corp.*,
No. 2:17-CV-07083-RGK-MRW, 2018 WL 5081479 (C.D. Cal. Oct. 16, 2018) ...................................................................................... 12

*Comcast Cable Commc'ns Corp. v. Finisar Corp.*,
C06-04206-WHA, 2007 WL 1052883 (N.D. Cal. Apr. 5, 2007) ....................... 1

*DMF, Inc. v. AMP Plus, Inc.*,
No. 2:18-cv-07090-CAS-GJSx, 2019 WL 9077477 (C.D. Cal. Dec. 13, 2019) .................................................................................................. 7

*Facet Techs., LLC v. Lifescan, Inc.*,
No. 2:22-cv-01717-MCS, 2023 WL 4203506 (C.D. Cal. May 1, 2023) ..................................................................................................... 5

*Facet Techs., LLC v. LifeScan, Inc.*,
No. 2:22-cv-01717-MCS, 2024 WL 308294 (C.D. Cal. Jan. 3, 2024) ................................................................................................... 16

*Ferrari v. Mercedes Benz USA, LLC*,
No. 17-cv-00018-YGR, 2018 WL 3399320 (N.D. Cal. Jan. 18, 2018) ................................................................................................... 12

*Fisher-Price, Inc. v. Kids II, Inc.*,
    No. 10-CV-00988A(F), 2011 WL 6409665 (W.D.N.Y. Dec. 21, 2011) ...................................................................................................... 11

*Int'l Test Sols., Inc. v. Mipox Int'l Corp.*,
    No. 16-CV-00791-RS, 2017 WL 1316549 (N.D. Cal. Apr. 10, 2017) ...................................................................................................... 13

*Interwoven, Inc. v. Vertical Comput. Sys., Inc.*,
    No. C 10-04645 RS, 2012 WL 761692 (N.D. Cal. Mar. 8, 2012) ................. 9, 17

*Invensas Corp. v. Samsung Elecs. Co. Ltd.*,
    No. 17-1363-MN-SRF, 2018 WL 4762957 (D. Del. Oct. 2, 2018) .................... 8

*Jiaxing Super Lighting Elec. Appliance Co. v. MaxLite, Inc.*,
    No. 19-4047 PSG, 2020 WL 5079051 (C.D. Cal. June 17, 2020) ............... 13, 18

*Kirsh Rsch. & Dev., LLC v. Epilay, Inc.*,
    No. 2:20-cv-037730-RGK-JPR, 2021 WL 4732578 (C.D. Cal. May 7, 2021) ...................................................................................................... 18

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ........................................................................................ 4

*MR Techs. GMBH v. Toshiba Am. Elec. Components, Inc.*,
    No. 8:25-cv-00786-JVS-DFM, 2026 WL 638641 (C.D. Cal. Mar. 2, 2026) ...................................................................................................... 12

*NOCO Co. v. Winplus N. Am., Inc.*,
    No. 8:23-cv-00269-DOC-DFM, 2025 WL 2427984 (C.D. Cal. Apr. 18, 2025) ...................................................................................................... 16

*Packet Intel. LLC v. NetScout Sys., Inc.*,
    No. 2:16-CV-00230-JRG, 2023 WL 137424 (E.D. Tex. Jan. 7, 2023) ...................................................................................................... 18

*Parallax Grp. Int'l, LLC v. Incstores.com LLC*,
    No. SACV 16-00929-AG, 2017 WL 3000017 (C.D. Cal. Jan. 25, 2017) ................................................................................................... 14, 18

*Pinn, Inc. v. Apple, Inc.*,
    No. SACV 19-01805-DOC-JDE, 2020 WL 6064642 (C.D. Cal. Aug. 27, 2020) ...................................................................................................... 5

*Prime Focus Creative Servs. Canada Inc. v. Legend3D, Inc.*,
  No. CV-15-2340-MWF (PLA), 2015 WL 12746207 (C.D. Cal.
  Sept. 23, 2015)............................................................................................... 15

*Ravgen, Inc. v. Quest Diagnostics, Inc.*,
  No. 2:21-cv-09011-RGK-GJS, 2022 WL 2047615 (C.D. Cal. Feb.
  2, 2022)............................................................................................... 5, 13, 19

*Separation Design Grp. IP Holdings, LLC v. Inogen, Inc.*, JAK
  (JPRx), No. LACV 15-08323 JAK (JPRx), 2017 WL 11631525
  (C.D. Cal. July 11, 2017)...................................................................... 1, 3, 11

*Signal IP, Inc. v. Volkswagen Grp. Of Am., Inc.*,
  No. CV14-3113 JAK, 2015 WL 5764831 (C.D. Cal. May 26, 2015) . 7, 9, 11, 18

*Star Envirotech, Inc. v. Redline Detection*,
  LLC, No. SA CV 12-01861, 2013 WL 1716068 (C.D. Cal. Apr. 3,
  2013)................................................................................................................. 4

*SZ DJI Tech. Co. v. Yuneec Int'l Co.*,
  No. CV 16-0595-BRO, 2016 WL 9114148 (C.D. Cal. Dec. 1, 2016)................ 8

*Telesign Corp. v. Twilio, Inc.*,
  No. 15-3240 PSG, 2016 WL 6821111 (C.D. Cal. Mar. 9, 2016)...................... 11

*Tessera Advanced Techs., Inc. v. Samsung Elecs. Co. Ltd.*,
  No. 2:17-CV-00671-JRG, 2018 WL 3472700 (E.D. Tex. July 19,
  2018)................................................................................................................. 8

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
  943 F. Supp. 2d 1028 (C.D. Cal. 2013)....................................................... 5, 15

**Statutes**

28 U.S.C. § 1659(a) ................................................................................................ 15

35 U.S.C. § 315(b) ................................................................................................... 8

**Other Authorities**

Fed. R. Civ. Proc. 1................................................................................................ 18

## I.      **INTRODUCTION**

This Court may be experiencing déjà vu because this case was already stayed for nearly five years, but now Google seeks a second stay because it recently filed *ex parte* reexaminations (EPRs) challenging the validity of *some* of the asserted patents. As this Court recognized, if "litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts." *See Separation Design Grp. IP Holdings, LLC v. Inogen, Inc.*, No. LACV 15-08323 JAK (JPRx), 2017 WL 11631525, at \*2 (C.D. Cal. July 11, 2017) (quoting *Comcast Cable Commc'ns Corp. v. Finisar Corp.*, C06-04206-WHA, 2007 WL 1052883, at \*1 (N.D. Cal. Apr. 5, 2007)).  A second stay is particularly unwarranted here so that this case, from 2020, is not further delayed by Google's machinations.

A stay is also unwarranted because the three factors that courts traditionally consider in analyzing motions to stay weigh strongly against one here.  This case is soon approaching trial. A second stay is not likely to result in meaningful case simplification from a few EPRs because EPRs do not estop Google from asserting any invalidity grounds in this litigation.  The only thing ensured by a second stay would be substantial prejudice to Sonos, because another stay would run out the remaining exclusivity period of all Sonos's asserted patents.  Google has had notice of its infringement of the asserted patents for years but strategically waited to file invalidity challenges so that it could manufacture further delay of this case.  Google should not be permitted to escape an injunction and continue its wrongful competition with Sonos based purely on such procedural gamesmanship.

The first page of Google's motion to stay (Dkt. 256, the "Motion") reveals Google's real goal with its Motion—to "narrow the case to a number of patents and claims that can actually be tried to a jury."  Motion at 1.  Sonos agrees that some narrowing is appropriate, but Google's overly restrictive proposed narrowing

procedure[1] is not the right mechanism, nor is staying the entire case in the speculative hope that the USPTO narrows some patents years from now.

The Court should deny Google's Motion to stay. Instead, Sonos respectfully requests that the Court provide guidance regarding its preference for trial length and amenability to bifurcated trials, which the Court previously indicated might be appropriate.[2]  With the Court's guidance on trial procedure and timing, the parties would likely be able to reach agreement on a phased narrowing process that streamlines the case without having to wait many more years for the USPTO while Sonos's patents all expire.

## II.    FACTUAL BACKGROUND

The following table summarizes Google's post-grant validity challenges and highlights the many years of strategic delay between Google's awareness of the patents and infringement thereof, on the one hand, and Google's decision to challenge their validity, on the other:

---

[1] *See* Dkt. 256-2 (Motion Ex. A) at ECF Page 5-6 (Google asking Sonos to reduce asserted claims from 80 to 16—an 80% reduction—by two weeks before the close of fact discovery).

[2] *See* Ex. 1 (June 2, 2025 hearing transcript) at 5:12-15 (Court: "I also have the discretion as the matter proceeds to determine whether bifurcation of certain claims would be appropriate depending on how the matter proceeds.").

| Patent | Google's First Awareness of Patent[3] | Sonos Notifies Google of Infringement[4] | Filing Date of Google's Validity Challenge[5] | Status of Google's Validity Challenge |
|---|---|---|---|---|
| 7,571,014 | ■ | 2016 | EPR filed 2026 | Pending, not instituted |
| 8,588,949 | ■ | 2016 | EPR filed 2026 | Institution denied |
| 9,195,258 | ■ | 2016 | EPR filed 2026 | Pending, not instituted |
| 9,219,959 | ■ | 2016 | EPR filed 2026 | Pending, not instituted |
| 10,031,715 | ■ | 2019 | N/A | N/A |
| 10,209,953 | ■ | 2019 | N/A | N/A |
| 10,439,896 | ■ | 2020 | EPR filed 2025 | Instituted |
| 10,541,883 | ■ | 2021 | EPR filed 2026 | Instituted |
| 10,966,025 | ■ | 2021 | IPR filed 2025 | Instituted |
| 11,080,001 | ■ | 2021 | EPR filed 2026 | Pending, not instituted |

## III.   <u>LEGAL STANDARD</u>

Google as the moving party "must make out a ***clear*** case of hardship or inequity in being required to go forward…." *See Separation Design*, 2017 WL

---

[3] *See* Ex. 2 (Google's interrogatory response) at 12-13.   Although Google's interrogatory response states that ██████████ ████████████████████████ Google's witness admitted that ████████ ████████████████████████ *See* Ex. 3 (Kowalski Dep.) at 203:20-204:1.

[4] Sonos notified Google of infringement before filing suit.  *See* Dkt. 68, ¶¶ 42-44, 47, 49, 60.  Sonos then filed a complaint against Google alleging infringement of the '949, '258, '959, '953, and '896 Patents in 2020, and Sonos amended its complaint to additionally allege infringement of the '014, '715, '883, '025, and '001 Patents in 2024.  *See* Dkt. 1 at 1; Dkt. 64, ¶ 1; Dkt. 68, ¶ 1.

[5] *See* Motion at 6-7.

11631525, at *1 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).[6]

In analyzing whether to stay a patent case pending post-grant proceedings before the USPTO, courts traditionally consider three factors: "(1) the stage of the litigation; (2) whether a stay will simplify the issues; and (3) whether a stay would unduly prejudice the non-moving party." *See id.*, at *1 (quoting *Star Envirotech, Inc. v. Redline Detection*, LLC, No. SA CV 12-01861, 2013 WL 1716068, at *2 (C.D. Cal. Apr. 3, 2013)). But courts are not limited to considering these three factors and can analyze the totality of the circumstances more generally. *See Allergan Inc. v. Cayman Chem. Co.*, No. SACV 07-01316-JVS (RNBx), 2009 WL 8591844, at *2 (C.D. Cal. Apr. 9, 2009).

## IV.   THE COURT SHOULD NOT STAY THIS CASE A SECOND TIME

All three traditional factors, as well as the totality of the circumstances, weigh against a stay: (1) this case has already advanced to a relatively late stage; (2) the potential for simplification from Google's EPRs is highly speculative and limited because most EPRs do not end in fully cancelled patents and they do not preclude Google from raising any invalidity grounds in this Court; and (3) another lengthy delay will significantly prejudice Sonos as Google's direct competitor, particularly because it would moot any remaining exclusivity period of Sonos's patents. Additionally, given the long delay in this case from the first stay, the totality of the circumstances weigh strongly against a second stay.

### A.   The Case Is in Its Later Stages

The first factor, regarding stage of the case, weighs against a stay because the case has already progressed substantially and the parties have completed the bulk of their work. By the time Google filed its Motion, fact discovery had closed[7] and

---

[6] All emphasis added unless stated otherwise.

[7] *See* Dkt. 179 (scheduling order setting close of fact discovery) at 2.

the Court had issued its claim construction order.[8] Google admits that "[a]ll fact document productions are complete,"[9] and fact depositions were nearly complete except for a handful that were postponed primarily because Google asked at the last minute to reschedule those depositions for its own convenience.[10] At such an advanced stage of the case that is well past *Markman*, courts routinely hold that this factor weighs against a stay. *See, e.g.*, *Facet Techs., LLC v. Lifescan, Inc.*, No. 2:22-cv-01717-MCS (MARx), 2023 WL 4203506, at *2 (C.D. Cal. May 1, 2023) ("[D]iscovery was well underway and the Court had already issued its claim construction ruling at that time. The stage of the litigation disfavors a stay here."); *Ravgen, Inc. v. Quest Diagnostics, Inc.*, No. 2:21-cv-09011-RGK-GJS, 2022 WL 2047615, at *4 (C.D. Cal. Feb. 2, 2022) (holding this factor did not favor a stay even before a trial date was set and when fact discovery was still ongoing because the court had already issued its claim construction order); *Pinn, Inc. v. Apple, Inc.*, No. SACV 19-01805-DOC-JDE, 2020 WL 6064642, at *1-2 (C.D. Cal. Aug. 27, 2020) (holding this factor weighed against a stay when the motion was filed even though fact depositions had not even started because the Special Master had already presented recommended claim constructions); *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1031-32 (C.D. Cal. 2013) (holding this factor weighed against a stay even though "not much discovery has occurred" because the court had already issued its claim construction order); *Allergan*, 2009 WL 8591844, at *5 (holding this factor weighed against a stay even before a final claim construction order and before the close of fact discovery).

---

[8] *See* Dkt. 200 (Order Regarding Claim Construction).

[9] *See* Motion at 9.

[10] *See, e.g.*, Ex. 4 (June 28 email from Google's counsel: "I've learned that we have conflicts on July 1 and July 2 for Mr. Mason and Mr. Shoafstall's depositions. Can you please provide alternative dates the week of July 5 (or July 12)?").

Taking a step back, this case was filed over six years ago, so it would have been done by now but for the fact that Google already requested, and this Court previously granted, a stay. *See* Dkt. 1 (original complaint filed January 2020); Dkt. 26 (Google's February 2020 motion to stay). That first stay was in place for nearly five years.[11] *See* Dkt. 63 at 1 (partially lifting stay in September 2024). After the stay was lifted, Sonos agreed to extend the case schedule an extra few months only because of the complexity introduced by Google's counter-assertion of its own patents[12] on the last day to amend pleadings over Sonos's objection.[13] In short, Google already manufactured years of delay in this case, belatedly added further complexity to it, and now tries to tout how little progress has been made in the case; Google should not be able to leverage its own actions to further prejudice Sonos.

Of course, by the time Google's Motion is heard on September 21, this case will be even closer to trial. If the parties' recent stipulation to extend deadlines in the scheduling order is granted, opening and rebuttal expert reports will have been served and only Sonos's rebuttal expert reports will be outstanding, and the close of expert discovery will be just a few weeks away. *See* Dkt. 265 (joint stipulation) at 3 (only rebuttal expert reports outstanding, due October 9; expert discovery closes October 30).[14] This factor weighs even more strongly against a stay at that very late stage of

---

[11] Sonos requested that the Court lift the stay earlier, but Google argued the stay should continue. *See* Dkt. 54 at 1-2 (Sonos's objection to maintaining the stay).

[12] *See* Dkt. 177 at 2 ("This case involves twelve asserted patents, ten by Sonos and two by Google…. Given these complexities, the parties agree that this case would benefit from a … modest extension to the overall schedule.").

[13] *See* Dkt. 80 (Sonos's opposition to Google's motion for leave to amend answer and counterclaims) at 11-12 ("Google's amendment also unduly prejudices Sonos because it would disrupt the pretrial schedule set by the Court. … Google waited until the last permissible day under the schedule to amend its answer….").

[14] Under the current scheduling order, by September 21 all expert reports will have been submitted and expert discovery will close a little over two weeks later. *See* Dkt. 179 at 2-3 (setting Sonos's rebuttal expert report deadline as September 18 and close of expert discovery as October 9).

the case.  *See, e.g.*, *DMF, Inc. v. AMP Plus, Inc.*, No. 2:18-cv-07090-CAS-GJSx, 2019 WL 9077477, at *4, *7 (C.D. Cal. Dec. 13, 2019) (holding "that the advanced stage of these proceedings weighs against a stay" where "expert discovery is scheduled to close in less than a month").

Google is adamant that the Court consider the stage-of-the-case factor as of the day the Motion was filed,[15] yet at the same time in the context of the simplification factor (discussed in the next section) Google asks the Court to credit unfiled and uninstituted EPRs as likely to simplify the case.  Google cannot have its cake and eat it too.  If the Court analyzes the Motion as of the day it was filed, then the simplification factor weighs more strongly against a stay for the reasons discussed in the following section (*e.g.*, only three of the 10 patents have instituted post-grant challenges pending against them), whereas if the Court analyzes the Motion in real time, then the stage-of-the-case factor weighs more strongly against a stay.  Either way, the two factors collectively weigh against a stay, regardless of which one individually contributes more.

### B. The Post-Grant Proceedings Will Not Simplify the Case

The second factor, regarding the potential for simplification of the issues, weighs against a stay because any potential simplification is limited and highly speculative.

### 1. Any Theoretical Simplification Is Limited

Only three of the 10 asserted patents were facing an instituted post-grant challenge when the Motion was filed.  *See* Motion at 6-7.  The USPTO's review of only a fraction of asserted patents puts a low bar on even the theoretical amount of simplification that could accrue because the instituted challenges do not address all asserted patents.  *See Signal IP, Inc. v. Volkswagen Grp. Of Am., Inc.*, No. CV14-3113 JAK (JEMx), 2015 WL 5764831, at *2 (C.D. Cal. May 26, 2015) ("[T]here is

---

[15] *See* Motion at 8.

no possibility that the reexaminations will eliminate the need for a trial because they do not address all of the asserted patents."). In situations such as this "where the PTO instituted review on only a portion of claims in suit," courts "have regularly denied motions to stay." *See SZ DJI Tech. Co. v. Yuneec Int'l Co.*, No. CV 16-0595-BRO (KKx), 2016 WL 9114148, at *3 (C.D. Cal. Dec. 1, 2016) (collecting cases).

Google attempted to juice its numbers by filing three EPRs the day before it filed its Motion, but courts do not credit uninstituted post-grant proceedings when analyzing simplification because institution is speculative. *See Invensas Corp. v. Samsung Elecs. Co. Ltd.*, No. 17-1363-MN-SRF, 2018 WL 4762957, at*3 (D. Del. Oct. 2, 2018) (Courts "have generally held that this factor weighs against a stay when the PTAB has not yet decided whether to institute…."); *Tessera Advanced Techs., Inc. v. Samsung Elecs. Co. Ltd.*, No. 2:17-CV-00671-JRG, 2018 WL 3472700, at *4 (E.D. Tex. July 19, 2018) ("It is now well established that this Court will not, barring exceptional circumstances, grant a stay of proceedings for the mere filing of an IPR."). Google also indicates that it "is in the process of preparing" an EPR[16] for two more patents and then filed another EPR after it filed its Motion,[17] but Google does not cite any precedent where a court gave any weight to mere intent to file a post-grant challenge in the future. *See* Motion at 6. In short, as of the date of the Motion, Google's instituted post-grant challenges address only a small fraction of the asserted patents, so even the maximum theoretical simplification is limited.

Critically, the potential for simplification from Google's post-grant challenges is almost entirely from the (speculative) potential for invalidation, because all but

---

[16] Google is statutorily barred from filing an IPR on the '258, '715, or '953 Patents because Google was served with a complaint for infringement of those patents more than one year ago, so the "patent challenge" Google indicates it is preparing for those three patents must be an EPR. *See* Motion at 6; 35 U.S.C. § 315(b) (requiring filing within one year of a complaint for infringement).

[17] On July 29, 2026, Google filed an EPR on the '258 patent.

one of Google's challenges are EPRs that do not trigger any estoppel with respect to the scope of validity challenges Google can raise in this Court. *See Signal IP*, 2015 WL 5764831, at \*3 ("[B]ecause Defendants chose to file ex parte reexaminations, which carry no preclusive effect as to the requestor, they will be able to renew any prior art arguments they raised or could have raised during reexamination."). When an IPR is instituted, some simplification is guaranteed, because even if the patent claims are not invalidated, the challenger is estopped from raising certain invalidity grounds. But nine of the 10 patents asserted in this case can now only be challenged in an EPR, not an IPR, so except for the unlikely event where Google succeeds in invalidating every single challenged claim, those patents will return to this Court and the parties will pick up right where they left off. *See Interwoven, Inc. v. Vertical Comput. Sys., Inc.*, No. C 10-04645 RS, 2012 WL 761692, at \*3 (N.D. Cal. Mar. 8, 2012) ("Consequently, the only way Interwoven's requested reexaminations will resolve invalidity issues is if the PTO cancels the claims in their entirety, of which there is only a 12% chance."). Google will be free to continue to assert all of the same invalidity grounds in this case, even ones that it could have or did raise in any unsuccessful EPRs.[18] That is a critical distinction between the present situation and the vast majority of cases that Google cites in its Motion regarding potential simplification, because overwhelmingly those cases were considering the simplification potential of IPRs that is generally inapplicable here.

Google posits two other theoretical sources of simplification, but neither is applicable here. One theoretical source of simplification posited by Google is the Court being able to leverage the USPTO's analysis of the scope of the claims, but this Court has already issued its claim construction Order and none of Google's post-

---

[18] Sonos asked Google if it would agree to be estopped as a result of its EPRs on Sonos's patents, but Google declined. Google's refusal confirms that Google is using these EPRs as a strategic second bite at the apple, not for potential simplification of this case.

grant challenges advocate to deviate from those constructions. *See, e.g.*, Dkt. 256-3 ('025 Patent IPR Petition) at 4 (Google: "No claim terms need construction to resolve unpatentability."); Dkt. 256-6 ('001 Patent EPR) at 8 (Google: "This [EPR] Request applies these agreed claim constructions from the related litigation."). Thus, this Court would not "receive the benefit of the PTAB's expertise and guidance on those claims," as Google contends. *See* Motion at 12. The other theoretical source of simplification posited by Google relates to receiving information somehow bearing on damages, but Google does not explain at all how that would play out in this case, let alone cite any evidence. *See* Motion at 13-14. Moreover, Google did not disclose such a damages theory in its interrogatory responses, so Google would not be permitted to advance this new theory in any event. *See* Ex. 3 (Google's interrogatory response) at 52-59 (Google not disclosing any damages theory based on comparison of invalidated claims to upheld claims).

In sum, most of the potential sources of simplification that courts analyze in favor of a potential stay are not applicable to this case, and the simplification from Google's challenges would not be meaningful even in the (unlikely) event that Google is successful in invalidating the handful of patents that are facing instituted post-grant challenges.

### 2.     The Potential Simplification Is Highly Speculative

Google's own evidence shows that its EPRs are not likely to be successful.[19] Google claims that the USPTO's statistics show "in only 22% [of instituted EPRs] do the original claims survive,"[20] but that is not right: the USPTO's statistics actually

---

[19] Indeed, the validity of these patents has been (unsuccessfully) challenged multiple times by Google in a prior ITC proceeding and/or before the Patent Trial and Appeal Board in *inter partes* review proceedings. There is nothing to indicate that these EPRs will succeed where Google's prior efforts to invalidate these patents have failed.

[20] *See* Motion at 5.

-10-

indicate that in 22% of instituted EPRs *all* the original claims survive without any changes to the claims. *See* Dkt. 256-10 (Motion Ex. I) at 2. The USPTO's statistics show that another 63% of instituted EPRs are a mixed bag that include some changes to claims but could also include one or more original claims that survive. *See id.* In other words, upwards of 85% of instituted EPRs may have resulted in at least one original claim surviving. *See id.* Consequently, Google's own evidence shows that its post-grant challenges will most likely *not* moot any of the asserted patents in full, such that the potential for simplification is highly speculative at best. *See Signal IP*, 2015 WL 5764831, at \*2 ("[E]x parte reexamination frequently results not in cancellation, but instead in the amendment to, or the addition of, claims. … Given this data, it is not clear that the reexaminations will simplify the issues in this action."). And these statistics only apply to instituted EPRs, so the chances of complete invalidation of Sonos's patents is even lower than the numbers above would indicate because most of Google's EPRs haven't been instituted.

The relatively low complete invalidation rates in EPRs is also why Google's concern about a jury trial on patents that are subsequently invalidated by the USPTO is substantially overblown,[21] because patents are only fully invalidated in instituted EPRs less than 15% of the time. *See* Dkt. 256-10 (Motion Ex. I) at 2. Thus, the likelihood of "conflicting results in parallel proceedings before this court and the PTO is 'more apparent than real.'" *See Fisher-Price, Inc. v. Kids II, Inc.*, No. 10-

---

[21] Google's reasoning, if adopted, would perversely incentivize patent challengers to wait to file anything so that USPTO is more likely to resolve challenges after trial rather than before, since there is no risk of a jury analyzing cancelled claims if the USPTO challenge is resolved first. Google's argument should therefore be rejected as otherwise promoting precisely the gamesmanship courts try to stop. *See Separation Design*, 2017 WL 11631525, at \*1 ("Courts have critiqued the moving party [seeking a stay] when it waited until the last minute to file its IPR proceedings." (alteration in original) (quoting *Telesign Corp. v. Twilio, Inc.*, No. 15-3240 PSG (SSx), 2016 WL 6821111, at \*4 (C.D. Cal. Mar. 9, 2016))).

CV-00988A(F), 2011 WL 6409665, at *5 (W.D.N.Y. Dec. 21, 2011). The very speculative potential of inconsistent results therefore does not cause this factor to weigh in favor of a stay. *See MR Techs. GMBH v. Toshiba Am. Elec. Components, Inc.*, No. 8:25-cv-00786-JVS-DFM, 2026 WL 638641, at *4 (C.D. Cal. Mar. 2, 2026) ("Although the Court finds that continuing this case presents some risk of inconsistent rulings, that is not reason alone to grant a stay."); *Ferrari v. Mercedes Benz USA, LLC*, No. 17-cv-00018-YGR, 2018 WL 3399320, at *2 (N.D. Cal. Jan. 18, 2018) ("The mere potential for inconsistent results … standing alone, does not establish a sufficient basis for staying the claims in litigation.").

## C.    Another Stay Will Unduly Prejudice Sonos

As to the third factor, regarding prejudice to the non-moving party, another stay would unduly prejudice Sonos for at least three reasons: (1) it would moot Sonos's exclusivity period; (2) it would make it harder to remedy Google's competitive wrongs; and (3) it would further degrade Sonos's ability to present its claims and defenses.

### 1.    Another Stay Would Moot Sonos's Exclusivity Period

Another stay would unduly prejudice Sonos because it would procedurally moot Sonos's entire exclusivity period and reward Google's tactical maneuvering. Most of Sonos's asserted patents expired during the course of this lengthy litigation as a result of the first stay in this case that lasted nearly five years, so only four of Sonos's patents have any remaining term and they all expire in 2027. Granting Google's Motion to stay would guarantee that there is no remaining term on any of Sonos's patents, thereby mooting Sonos's exclusivity period based on purely procedural grounds. That is textbook undue prejudice and tactical disadvantage. *See Carl Zeiss A.G. v. Nikon Corp.*, No. 2:17-CV-07083-RGK-MRW, 2018 WL 5081479, at *4 (C.D. Cal. Oct. 16, 2018) ("Placing an asserted patent 'in limbo for the majority of its remaining life would create a clear tactical disadvantage for [p]laintiffs.'" (alteration in original) (quoting *Biomet Biologies, LLC v. Bio Rich*

-12-

*Medical, Inc.*, No. SACV 10-1582 DOC (PJWx), 2011 WL 4448972, at \*2 (C.D. Cal. Sept. 26, 2011))); *Ravgen*, 2022 WL 2047615, at \*4 (holding this factor weighed against a stay because staying the case through the PTAB's decision would leave only five months of remaining patent term).

Notably, Google waited *eight years* after Sonos first notified Google of infringement of four of the patents and *five years* after Google had received notice of its infringement of the most recently issued patents to file its EPRs. *See supra*, Section II. This delay weighs against a stay in its own right because "courts expect accused infringers to evaluate whether to file, and then to file, [] petitions *as soon as possible* after learning that a patent may be asserted against them." *See Jiaxing Super Lighting Elec. Appliance Co. v. MaxLite, Inc.*, No. 19-4047 PSG (MAAx), 2020 WL 5079051, at \*4 (C.D. Cal. June 17, 2020) (quoting *Int'l Test Sols., Inc. v. Mipox Int'l Corp.*, No. 16-CV-00791-RS, 2017 WL 1316549, at \*3 (N.D. Cal. Apr. 10, 2017))). But Google's delay is even more problematic in this situation because Google's delay in filing those challenges and seeking a stay is the reason why the remaining term of all of Sonos's patents would be mooted. Google should not be rewarded for its own improper and unjustifiable delay.

### 2. Another Stay Would Make It Harder to Remedy Google's Competitive Wrongs

Another stay would unduly prejudice Sonos because Google directly competes with Sonos,[22] so there is a presumption that a stay will prejudice Sonos and it is

---

[22] *See, e.g.*, Dkt. 56-6, Ex. E at 92 ("Google took an enormous leap into the hardware market, offering new products to compete with Sonos…."); Dkt. 56-9, Ex. H at 114 (comparing Sonos's and Google's speakers). Google's direct competition with Sonos also highlights why the procedural mooting of Sonos's remaining exclusivity period is so prejudicial, as discussed in the previous subsection. *See Intell. Ventures II*, 2014 WL 10919562, at \*3 (denying a stay because the accused infringer "would have the advantage of delay and continuing utilization of patented devices and systems that the law suit is intended to regulate").

Google's burden to rebut that presumption. *See Parallax Grp. Int'l, LLC v. Incstores.com LLC*, No. SACV 16-00929-AG (DFMx), 2017 WL 3000017, at *2 (C.D. Cal. Jan. 25, 2017). The reason there is a presumption of prejudice is because, "infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages." *Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10-CV-02863-EJD, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011). The industry in which Sonos and Google compete is a strong example of that policy concern because of the tendency for customers to be "locked into" one competitor's audio ecosystem with their first purchase, which "locks out" competitors far into the future in a way that is difficult to fully remedy or even quantify.[23] As a result, "even 'ordinary' competition can justify denial of a stay when that competition is based on alleged infringement and has effects that would be difficult to reverse after the fact." *See Avago Techs.*, 2011 WL 3267768, at *5.

A strong indication that money damages are indeed inadequate to repair the harm from Google's competitive wrongs is the fact that Sonos also asserted the five patents originally at issue in this litigation in the ITC. Sonos would not have undertaken the huge effort and expense of an ITC investigation if money damages were sufficient, since the ITC cannot even award money damages. *See Bio–Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1564 (Fed. Cir. 1996) ("[T]he ITC does not have the power to award damages for patent infringement."). Sonos's large investment in the ITC investigation is thus highly probative that Google's competitive wrongs cannot be readily remedied with money damages alone, which weighs strongly against permitting Google to continue its wrongs during another stay.

---

[23] *See, e.g.*, Dkt. 56-13, Ex. L at 163 ("[T]he more you buy into one system, the more you become locked out of others."); Dkt. 56-11, Ex. J at 148 (Google is "hoping to lock in customers and profit from later sales of goods and data about buying habits.").

Google tries to rebut the presumption of harm to Sonos from another stay in two ways.  First, Google argues that Sonos implicitly conceded that further delay is acceptable because Sonos did not seek a preliminary injunction (although Sonos has been seeking a permanent injunction since the outset of this case[24]).  It is of no moment though that Sonos did not seek a preliminary injunction,[25] because Sonos has "other reasons for deciding not to pursue injunctive relief at [the preliminary] stage…." *See Avago Techs.*, 2011 WL 3267768, at \*6.  Thus, the fact that Sonos "did not seek a preliminary injunction does not mean that it would not suffer prejudicial harm from its competitor's market activity during a lengthy delay in the case." *See Universal Elecs.*, 943 F. Supp. 2d at 1034.  Relatedly, Google insinuates that Sonos conceded it is not harmed by further delay because Sonos did not oppose Google's prior motion to stay.  But Sonos did not oppose Google's first motion to stay solely because Sonos ***could not*** oppose; Google was entitled to a stay as of right pursuant to 28 U.S.C. § 1659(a) if Google timely requested one, which it did.  *See* Dkt. 26 (Google's unopposed—but not joined—motion to stay) at 4; 28 U.S.C. § 1659(a).  Neither Sonos's prior non-opposition to Google's first motion to stay nor Sonos's decision not to pursue a preliminary injunction can be understood as an implied admission that further delay is not harmful to Sonos.  To the contrary, Google's continued competitive wrongs ***do*** irreparably harm Sonos in a way that can

---

[24] *See* Dkt. 1 at 94-95 (original complaint: "Sonos respectfully requests: … [a]n injunction enjoining Google….").

[25] Google's argument, if adopted, would also promote bad policy.  The Court should "not hold against [Sonos] its decision to spare the parties more litigation," lest the Court invite every patent owner to reflexively move for a preliminary injunction simply to protect against case schedule derailment.  *See Avago Techs.*, 2011 WL 3267768, at \*6; *Prime Focus Creative Servs. Canada Inc. v. Legend3D, Inc.*, No. CV-15-2340-MWF (PLA), 2015 WL 12746207, at \*6 (C.D. Cal. Sept. 23, 2015) ("This Court would not want Plaintiffs' counsel here, or any plaintiff's counsel, to seek an injunction solely to provide a basis for opposing a stay.").

-15-

only be fully remedied by additionally granting the permanent injunction Sonos has always sought in this case and the exclusion order Sonos sought in the ITC.

Second, Google argues that any claim of harm from another stay is diluted because there are multiple other competitors in the audio industry, but Sonos's competition with Google is not like the multi-competitor markets in Google's cited cases. Google "clone[d]" Sonos's patented technology in order to try to position itself specifically as a substitute for Sonos's products in particular,[26] such that there is a relatively heightened level of competition between the two among a broader set of competitors. *See Facet Techs., LLC v. LifeScan, Inc.*, No. 2:22-cv-01717-MCS (MARx), 2024 WL 308294, at *3 (C.D. Cal. Jan. 3, 2024) ("[W]hether other competitors exist or not, LifeScan and Facet are still competitors."). Thus, even if the broader market is not a classic duopoly, Google's copying of Sonos's technology in particular indicates that Google's ongoing wrongs would primarily harm Sonos in ways that are difficult to remedy with money damages alone, which weighs strongly against a stay. *See NOCO Co. v. Winplus N. Am., Inc.*, No. 8:23-cv-00269-DOC-DFM, 2025 WL 2427984, at *5 (C.D. Cal. Apr. 18, 2025) ("[S]taying this case for an additional five months (or potentially more) would likely cause significant prejudice to Plaintiff because the Parties are competitors in the marketplace, such that Plaintiff may lose market share and goodwill during a further stay, and the damage resulting from such harms might not all be compensable or might be difficult to calculate.").

### 3. Another Stay Would Further Degrade Sonos's Ability to Present Its Claims and Defenses

Another stay would unduly prejudice Sonos because it would further degrade Sonos's ability to present its claims and defenses related to important events that

---

[26] *See, e.g.*, Dkt. 56-8, Ex. G at 112 (Google's products are a "Sonos Clone"); Dkt. 56-7, Ex. F at 103 (Google's products are "similar to how Sonos works").

-16-

occurred more than a decade ago.  Here are just three examples of key issues in dispute that hinge on events that happened many years back: (1) various secondary considerations of non-obviousness, such as long-felt-but-unmet need and skepticism by experts, depend on events that occurred around the time the asserted patents were conceived, primarily circa 2003-2006; (2); Google alleges that some of Sonos's patents are invalid due to an on-sale bar resulting from public disclosure by Sonos of embodying prototypes in 2009[27]; and (3) Google relies on third-party prior art systems from NetStreams that were originally offered for sale in 2002 and 2003.[28] With respect to all of these and other issues premised on very old events, "[e]vidence, witness availability, and memory concerning the pertinent timeframe will likely become more stale and difficult to retrieve as time passes."  *See Interwoven*, 2012 WL 761692, at *3.  Google notes that depositions in this case have been recorded, but trial testimony is not limited to the questions the parties chose to ask the witnesses during their depositions, so video recordings are not a sufficient substitute for live trial testimony.  Thus, a stay would further degrade Sonos's ability to litigate these key issues hinging on old events by making it that much harder for Sonos to marshal its supporting evidence.

And the additional delay that Google seeks in a second stay is significant, because three of its EPRs were filed the day before Google filed its Motion, one more EPR was filed after Google filed its Motion, and two more apparently forthcoming EPRs have not even been filed yet, so these very recent EPRs will likely delay the case at least two more years[29] and could delay the case another five years when

---

[27] *See* Ex. 5 (Google's Invalidity Contention Exhibit 959-06) at 1 and Ex. 6 (Google's Invalidity Contention Exhibit 025-06) at 1.

[28] *See, e.g.*, Ex. 7 (Google's Invalidity Contention Exhibit 001-09) at 1; Ex. 8 (Google's Invalidity Contention Exhibit 258-09) at 1.

[29] *See* Dkt. 256-10 (Motion Ex. I ) at 2.

accounting for appeal[30]. Another round of delay due to Google's belatedly filed challenges would therefore exacerbate the evidentiary problems. *See Jiaxing Super Lighting*, 2020 WL 5079051, at *4 ("Because Defendant initiated IPR proceedings relatively recently, granting a stay pending those proceedings would create a lengthy delay.").

**D.    The Totality of the Circumstances Weighs Strongly Against a Stay**

The totality of the circumstances indicates that the factors above collectively weigh even more strongly against a stay when those factors are contextualized in the background of this long-running case. This case has been outstanding for more than six-and-a-half years in large part due to the first stay that held up this case for roughly five years. Adding yet another lengthy delay is strongly "in tension with the Court's mandate to secure the 'just, *speedy*, and inexpensive determination of every action and proceeding.'" *See Parallax*, 2017 WL 3000017, at *2 (quoting Fed. R. Civ. P. 1). In furtherance of the core principle of speedy resolution set out in the Federal Rules of Civil Procedure, courts recognize that "litigation cannot be stayed every time a claim undergoes reexamination—federal court calendars should not be hijacked in this manner." *See Kirsh Rsch. & Dev., LLC v. Epilay, Inc.*, No. 2:20-cv-037730-RGK-JPR, 2021 WL 4732578, at *4 (C.D. Cal. May 7, 2021) (cleaned up). Accordingly, the Court should not grant another stay so that this case can be resolved in the speedy fashion contemplated by the Federal Rules. *See Packet Intel. LLC v. NetScout Sys., Inc.*, No. 2:16-CV-00230-JRG, 2023 WL 137424, at *4 (E.D. Tex. Jan. 7, 2023) ("The Court does not condone serial stays….").

Google's analysis of the totality of the circumstances is just a summary of its arguments regarding the three factors discussed above and therefore fails for the same

---

[30] *Signal IP*, 2015 WL 5764831, at *2 ("[A] resolution of the present reexaminations could take as long as five years.").

reasons. *See* Motion at 20. Google does not genuinely wrestle with the long pendency of this case resulting from the previous stay.

The totality of the circumstances therefore strongly weighs against a stay to prevent further unreasonable delay for another two or more years. *See Ravgen*, 2022 WL 2047615, at *4 ("[T]he PTAB's final decision … is not due until … more than two years after Plaintiff filed its Complaint. Under the totality of the circumstances, staying the case would cause unreasonable delay….").

## V.    CONCLUSION

Google's Motion for a second stay should be denied because none of the factors courts traditionally consider support a stay: The case is already in its late stages, any simplification is limited and highly speculative, and another stay is highly prejudicial to Sonos as Google's direct competitor. Efficient case management is more properly achieved through a bifurcated trial approach, and to that end Sonos respectfully requests that the Court provide guidance regarding its preferred trial procedure and timing.

Dated: July 31, 2026                Respectfully submitted,

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP


By: */s/ Alyssa Caridis*
    Alyssa Caridis
    *Attorneys for Plaintiff Sonos, Inc.*