Clement S. Roberts (SBN 209203)
croberts@orrick.com
ORRICK HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Tel: 415-773-5700 / Fax: 415-773-5759

Alyssa M. Caridis (SBN 260103)
acaridis@orrick.com
ORRICK HERRINGTON & SUTCLIFFE LLP
355 South Grand Ave., Suite 2700
Los Angeles, CA 90071
Tel: 213-629-2020 / Fax: 213-612-2499

George I. Lee (*Pro Hac Vice*)
lee@ls3ip.com
Sean M. Sullivan (*Pro Hac Vice*)
sullivan@ls3ip.com
Rory P. Shea (*Pro Hac Vice*)
shea@ls3ip.com
J. Dan Smith (*Pro Hac Vice*)
smith@ls3ip.com
Cole B. Richter (*Pro Hac Vice*)
richter@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W. Randolph Street, Floor 5W
Chicago, IL 60661
Tel: 312-754-0002 / Fax: 312-754-0003

*Attorneys for Plaintiff, SONOS, INC.*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONOS, INC., | Case No. 2:20-cv-00169-JAK (DFMx) |
| *Plaintiff-Counterclaim Defendant,* | **SONOS INC.'S RESPONSE TO STATEMENT OF GENUINE DISPUTES RE GOOGLE LLC'S MOTION FOR SUMMARY JUDGMENT RE WRITTEN DESCRIPTION** |
| vs. | |
| GOOGLE LLC, | |
| *Defendant-Counterclaimant.* | |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Set forth below is Sonos, Inc.'s ("Sonos") response to Google LLC's ("Google") statement of uncontroverted facts in support of its motion for summary judgment motion for lack of written description.

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 1. Claim 1 of the U.S. Patent No. 10,439,896 ("'896 patent") claims: "A computing device comprising: a user interface; a network interface; at least one processor; a non-transitory computer-readable medium; and program instructions stored on the non-transitory computer-readable medium that, when executed by the at least one processor, cause the computing device to perform functions comprising: while operating on a secure wireless local area network (WLAN) that is defined by an access point, (a) receiving, via a graphical user interface (GUI) associated with an application for controlling one or more playback devices, user input indicating that a user wishes to set up a playback device to operate on the secure WLAN and (b) receiving a first message indicating that a given playback device is available for setup; | 1. Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| after receiving the user input and receiving the first message, transmitting a response to the first message that facilitates establishing an initial communication path with the given playback device, wherein the initial communication path with the given playback device does not traverse the access point; transmitting, to the given playback device via the initial communication path, at least a second message containing network configuration parameters, wherein the network configuration parameters comprise identifier of the secure WLAN and a security key for the secure WLAN; after transmitting at least the second message containing the network configuration parameters, detecting an indication that the given playback device has successfully received the network configuration parameters; and after detecting the indication, transitioning from communicating with the given playback device via the initial | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| communication path to communicating with the given playback device via the secure WLAN that is defined by the access point." <br><br> *Evidence*: Zivojnovic Decl., Ex. A at claim 1 | |
| 2.  Claim 2 of the '896 patent is a dependent claim to claim 1. <br><br> *Evidence*: Zivojnovic Decl., Ex. A at claim 2 | 2.  Undisputed. |
| 3.  Claim 3 of the '896 patent is a dependent claim to claim 1. <br><br> *Evidence*: Zivojnovic Decl., Ex. A at claim 3 | 3.  Undisputed. |
| 4.  Claim 4 of the '896 patent is a dependent claim to claim 1. <br><br> *Evidence*: Zivojnovic Decl., Ex. A at claim 4 | 4.  Undisputed. |
| 5.  Claim 5 of the '896 patent is a dependent claim to claim 1. <br><br> *Evidence*: Zivojnovic Decl., Ex. A at | 5.  Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| claim 5 | |
| 6.  Claim 6 of the '896 patent is a dependent claim to claim 5, which is a dependent claim to claim 1.<br><br>*Evidence*: Zivojnovic Decl., Ex. A at claim 6 | 6.  Undisputed. |
| 7.  Claim 7 of the '896 patent is a dependent claim to claim 1.<br><br>*Evidence*: Zivojnovic Decl., Ex. A at claim 7 | 7.  Undisputed. |
| 8.  Claim 8 of the '896 patent is a dependent claim to claim 1.<br><br>*Evidence*: Zivojnovic Decl., Ex. A at claim 8 | 8.  Undisputed. |
| 9.  Claim 9 of the '896 patent is a dependent claim to claim 8, which is a dependent claim to claim 1.<br><br>*Evidence*: Zivojnovic Decl., Ex. A at claim 9 | 9.  Undisputed. |
| 10.  Claim 10 of the '896 patent is a dependent claim to claim 1. | 10.  Undisputed. |

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Zivojnovic Decl., Ex. A at claim 10 | |
| 11. Claim 11 of the '896 patent is a dependent claim to claim 1. <br><br> *Evidence*: Zivojnovic Decl., Ex. A at claim 11 | 11. Undisputed. |
| 12. Claim 12 of the '896 patent is a dependent claim to claim 1. <br><br> *Evidence*: Zivojnovic Decl., Ex. A at claim 12 | 12. Undisputed. |
| 13. Claim 13 of the '896 patent claims: "A non-transitory, computer-readable medium, wherein the non-transitory computer-readable storage medium is provisioned with program instructions that are executable to cause a computing device to perform functions comprising: while operating on a secure wireless local area network (WLAN) that is defined by an access point, (a) receiving, via a graphical user interface (GUI) associated with an application for controlling one or more playback devices, user input | 13. Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| indicating that a user wishes to set up a playback device to operate on the secure WLAN and (b) receiving a first message indicating that a given playback device is available for setup; after receiving the user input and receiving the first message, transmitting a response to the first message that facilitates establishing an initial communication path with the given playback device, wherein the initial communication path with the given playback device does not traverse the access point; transmitting, to the given playback device via the initial communication path, at least a second message containing network configuration parameters, wherein the network configuration parameters comprise an identifier of the secure WLAN and a security key for the secure WLAN; after transmitting at least the second message containing the network configuration parameters, detecting an indication that the given playback device has successfully | |

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| received the network configuration parameters; and after detecting the indication, transitioning from communicating with the given playback device via the initial communication path to communicating with the given playback device via the secure WLAN that is defined by the access point." <br><br> *Evidence*: Zivojnovic Decl., Ex. A at claim 13 | |
| 14. Claim 14 of the '896 patent is a dependent claim to claim 13. <br><br> *Evidence*: Zivojnovic Decl., Ex. A at claim 14 | 14. Undisputed. |
| 15. Claim 15 of the '896 patent is a dependent claim to claim 13. <br><br> *Evidence*: Zivojnovic Decl., Ex. A at claim 15 | 15. Undisputed. |
| 16. Claim 16 of the '896 patent is a dependent claim to claim 13. <br><br> *Evidence*: Zivojnovic Decl., Ex. A at | 16. Undisputed. |

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| claim 16 | |
| 17.  Claim 17 of the '896 patent is a dependent claim to claim 13.  *Evidence*: Zivojnovic Decl., Ex. A at claim 17 | 17.  Undisputed. |
| 18.  Claim 18 of the '896 patent is a dependent claim to claim 17, which is a dependent claim to claim 13.  *Evidence*: Zivojnovic Decl., Ex. A at claim 18 | 18.  Undisputed. |
| 19.  Claim 19 of the '896 patent is a dependent claim to claim 13.  *Evidence*: Zivojnovic Decl., Ex. A at claim 19 | 19.  Undisputed. |
| 20.  Claim 20 of the '896 patent claims:  "A method comprising:  while operating on a secure wireless local area network (WLAN) that is defined by an access point, (a) receiving, via a graphical user interface (GUI) associated with an application for controlling one or more playback devices, user input indicating that a | 20.  Undisputed. |

-9-                    Case No. 2:20-cv-00169-JAK (DFMx)

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| user wishes to set up a playback device to operate on the secure WLAN and (b) receiving a first message indicating that a given playback device is available for setup; after receiving the user input and receiving the first message, transmitting a response to the first message that facilitates establishing an initial communication path with the given playback device, wherein the initial communication path with the given playback device does not traverse the access point; transmitting, to the given playback device via the initial communication path, at least a second message containing network configuration parameters, wherein the network configuration parameters comprise an identifier of the secure WLAN and a security key for the secure WLAN; after transmitting at least the second message containing the network configuration parameters, detecting an indication that the given playback device has successfully received the | |

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| network configuration parameters; and after detecting the indication, transitioning from communicating with the given playback device via the initial communication path to communicating with the given playback device via the secure WLAN that is defined by the access point." <br><br> *Evidence*: Zivojnovic Decl., Ex. A at claim 20 | |
| 21.  Claim 1 of the U.S. Patent No. 10,541,883 ("'883 patent") claims:  "A playback device comprising:  a network interface that is configured to provide an interconnection with at least one data network; at least one processor; a non-transitory computer-readable medium; and program instructions stored on the non-transitory computer-readable medium that, when executed by the at least one processor, cause the playback device to perform functions comprising: detecting a triggering event that causes the playback device to enter a setup | 21.  Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| mode in which the playback device transmits at least a first message indicating that the playback device is available for setup; while in the setup mode, receiving a response to the first message that facilitates establishing an initial communication path with a computing device that is installed with an application for controlling the playback device, wherein the computing device is operating on a secure wireless local area network (WLAN) that is defined by an access point, wherein the initial communication path with the computing device does not traverse the access point; receiving, from the computing device via the initial communication path, at least a second message containing network configuration parameters for the secure WLAN, wherein the network configuration parameters comprise an identifier of the secure WLAN and a security key for the secure WLAN; using the network configuration | |

Case No. 2:20-cv-00169-JAK (DFMx)

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| parameters to connect to the secure WLAN that is defined by the access point; and transitioning from communicating with the computing device via the initial communication path to communicating with the computing device via the secure WLAN that is defined by the access point." <br><br> *Evidence*: Zivojnovic Decl., Ex. B at claim 1 | |
| 22.  Claim 2 of the '883 patent is a dependent claim to claim 1. <br><br> *Evidence*: Zivojnovic Decl., Ex. B at claim 2 | 22.  Undisputed. |
| 23.  Claim 3 of the '883 patent is a dependent claim to claim 1. <br><br> *Evidence*: Zivojnovic Decl., Ex. B at claim 3 | 23.  Undisputed. |
| 24.  Claim 4 of the '883 patent is a dependent claim to claim 1. <br><br> *Evidence*: Zivojnovic Decl., Ex. B at | 24.  Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| claim 4 | |
| 25.  Claim 5 of the '883 patent is a dependent claim to claim 4, which is a dependent claim to claim 1.<br><br>*Evidence*: Zivojnovic Decl., Ex. B at claim 5 | 25.  Undisputed. |
| 26.  Claim 6 of the '883 patent is a dependent claim to claim 4, which is a dependent claim to claim 1.<br><br>*Evidence*: Zivojnovic Decl., Ex. B at claim 6 | 26.  Undisputed. |
| 27.  Claim 7 of the '883 patent is a dependent claim to claim 1.<br><br>*Evidence*: Zivojnovic Decl., Ex. B at claim 7 | 27.  Undisputed. |
| 28.  Claim 8 of the '883 patent is a dependent claim to claim 1.<br><br>*Evidence*: Zivojnovic Decl., Ex. B at claim 8 | 28.  Undisputed. |
| 29.  Claim 9 of the '883 patent is a dependent claim to claim 1. | 29.  Undisputed. |

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Zivojnovic Decl., Ex. B at claim 9 | |
| 30.  Claim 10 of the '883 patent is a dependent claim to claim 1.<br><br>*Evidence*: Zivojnovic Decl., Ex. B at claim 10 | 30.  Undisputed. |
| 31.  Claim 11 of the '883 patent is a dependent claim to claim 10, which is a dependent claim to claim 1.<br><br>*Evidence*: Zivojnovic Decl., Ex. B at claim 11 | 31.  Undisputed. |
| 32.  Claim 12 of the '883 patent is a dependent claim to claim 1.<br><br>*Evidence*: Zivojnovic Decl., Ex. B at claim 12 | 32.  Undisputed. |
| 33.  Claim 13 of the '883 patent is a dependent claim to claim 1.<br><br>*Evidence*: Zivojnovic Decl., Ex. B at claim 13 | 33.  Undisputed. |
| 34.  Claim 14 of the '883 patent claims:  "A non-transitory, computer-readable storage medium, wherein the | 34.  Undisputed. |

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| non-transitory computer-readable storage medium is provisioned with program instructions that are executable to cause a playback device to perform functions comprising: detecting a triggering event that causes the playback device to enter a setup mode in which the playback device transmits at least a first message indicating that the playback device is available for setup; while in the setup mode, receiving a response to the first message that facilitates establishing an initial communication path with a computing device that is installed with an application for controlling the playback device, wherein the computing device is operating on a secure wireless local area network (WLAN) that is defined by an access point, wherein the initial communication path with the computing device does not traverse the access point; receiving, from the computing device via the initial communication path, at least a second | |

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| message containing network configuration parameters for the secure WLAN, wherein the network configuration parameters comprise an identifier of the secure WLAN and a security key for the secure WLAN; using the network configuration parameters to connect to the secure WLAN that is defined by the access point; and transitioning from communicating with the computing device via the initial communication path to communicating with the computing device via the secure WLAN that is defined by the access point." *Evidence*: Zivojnovic Decl., Ex. B at claim 14 | |
| 35.  Claim 15 of the '883 patent is a dependent claim to claim 14. *Evidence*: Zivojnovic Decl., Ex. B at claim 15 | 35.  Undisputed. |
| 36.  Claim 16 of the '883 patent is a dependent claim to claim 14. | 36.  Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Zivojnovic Decl., Ex. B at claim 16 | |
| 37.  Claim 17 of the '883 patent is a dependent claim to claim 16, which is a dependent claim to claim 14.<br><br>*Evidence*: Zivojnovic Decl., Ex. B at claim 17 | 37.  Undisputed. |
| 38.  Claim 18 of the '883 patent is a dependent claim to claim 16, which is a dependent claim to claim 14.<br><br>*Evidence*: Zivojnovic Decl., Ex. B at claim 18 | 38.  Undisputed. |
| 39.  Claim 19 of the '883 patent is a dependent claim to claim 14.<br><br>*Evidence*: Zivojnovic Decl., Ex. B at claim 19 | 39.  Undisputed. |
| 40.  Claim 20 of the '883 patent claims:  "A method comprising: detecting a triggering event that causes the playback device to enter a setup mode in which the playback device transmits at least a first message | 40.  Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| indicating that the playback device is available for setup; while in the setup mode, receiving a response to the first message that facilitates establishing an initial communication path with a computing device that is installed with an application for controlling the playback device, wherein the computing device is operating on a secure wireless local area network (WLAN) that is defined by an access point, wherein the initial communication path with the computing device does not traverse the access point; receiving, from the computing device via the initial communication path, at least a second message containing network configuration parameters for the secure WLAN, wherein the network configuration parameters comprise an identifier of the secure WLAN and a security key for the secure WLAN; using the network configuration parameters to connect to the secure WLAN that is defined by the access | |

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| point; and transitioning from communicating with the computing device via the initial communication path to communicating with the computing device via the secure WLAN that is defined by the access point." *Evidence*: Zivojnovic Decl., Ex. B at claim 20 | |
| 41.  The '896 patent's "The Background of Related Art" states: "Consumer electronics devices that operate using wireless or wired Ethernet standards are often subject to the same complicated set-up process as a wireless computer network. Typically, the person who sets up the wireless network must have at least some knowledge about IP (Internet Protocol) networking and Ethernet (e.g., 802.3, 802.11), such as addressing, security, broadcast, unicast, etc.  Such a skill requirement is generally acceptable for computer-to-computer networks, which is | 41.  Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| typically done by an IT professional. However, it is impractical to require average consumers to have such knowledge to hook up consumer electronic devices, such as home entertainment products that use wireless/wired Ethernet connectivity. FIG. **5** shows an exemplary setting **500** for connecting a computer to a wireless network.  The setting **500** is typically displayed when a user is ready to connect the computer to a wireless network so that the user can enter relevant information in the setting **500**.  Although the setting **500** requires very little information to make the computer connected to the network, the information is relatively technical to the average consumers. First, the user has to know what type of network the computer is going to be connected to.  There are two choices **502**, Access Point (infrastructure) and Computer-to-computer (Ad Hoc).  The distinction between these two types of network is a common knowledge to | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| the IT professionals yet can be a difficult question to the average consumers.  Further even if the user knows the difference, there are more questions or options related to the security settings in **504**, which evidently requires some good understanding about the network security over the wireless network. For home entertainment products, there is a clear need to create simple methods of setting up and maintaining a secure wireless/wired in-home network with minimum human interventions."<br><br>*Evidence*: Zivojnovic Decl., Ex. A at "The Background of Related Art" | |
| 42.  The '883 patent's "The Background of Related Art" is identical to the "The Background of Related Art" for the '896 patent.<br><br>*Evidence*: Zivojnovic Decl., Ex. B at "The Background of Related Art" | 42.  Undisputed. |
| 43.  The '896 patent's "Summary of | 43.  Undisputed. |

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| the Invention" states: "This section is for the purpose of summarizing some aspects of the present invention and to briefly introduce some preferred embodiments. Simplifications or omissions in this section as well as in the abstract or the title of this description may be made to avoid obscuring the purpose of this section, the abstract and the title. Such simplifications or omissions are not intended to limit the scope of the present invention. In general, the present invention pertains to techniques for automatically configuring necessary parameters of a device to be coupled to a network. According to one aspect of the present invention, an Ad-hoc (wireless or wired) network is established to facilitate communications among a group of devices. When a new device is added to the network, a rudimentary communication path is initially established between one of the devices in the network ("first device") and the | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| new device ("second device") such that necessary parameters (e.g., SSID, WEP security, channel frequency) can be exchanged for the second device to function properly in the network. To ensure the parameters are exchanged in a secure fashion, an additional public security procedure can be used between the two devices. According to another aspect of the present invention, a first device that may be or may not be the device in the network broadcasts a message including probing datagrams in compliance with the standard IP broadcast. The rudimentary communication path may be established after the second device responds to the message from the first device. According to yet another aspect of the present invention, such an automatic configuration process is only started when a user is indeed ready to do so. In general, a mechanism is provided and accessible by the user to activate the process. As such, no incident or unwanted | |

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
| --- | --- |
| configuration process could be initiated without the approval of the user.  In one embodiment, the second device is equipped with two buttons that must be pressed simultaneously to activate the automatic configuration process.  The necessary parameters in the second device are subsequently configured in several exchanges of messages with the first device.  At least some of the messages are encrypted.  As a result, the second device is automatically configured to operate correctly in the network with a minimum of human intervention and technical ability.  In an exemplary application of the present invention for an audio system with a controller and multiple zone players, an Ad-hoc network is formed among the controller and the zone players, where the network may be wired or wireless or a mixture of both.  In one case, either a handheld controller or a zone player (referred to as an access device) is coupled to an access point of a | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| LAN. An Ad-hoc network can be thus formed based on the access device. The remaining (unconfigured) zone players may be coupled to the network whenever desired, all with minimum human intervention. As a result, any one of the zone players may communicate with each other to share or distribute audio sources available on the Internet and reproduce sounds together or separately. The present invention may be implemented in many forms including software, hardware or a combination of both as method, process, or system. According to one embodiment of the present invention, the present invention is a method for providing a first device and a second device for the network, activating the second device intentionally to automatically configure necessary parameters with the first device, establishing automatically a rudimentary communication path between the first device and the second device by | |

Case No. 2:20-cv-00169-JAK (DFMx)

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| scanning all available transmission channels allocated in accordance with a protocol; and exchanging messages between the first device and the second device over the rudimentary communication path till the second device is fully operating with the first device.  According to another embodiment of the present invention, the present invention is a system for establishing a network for a group of devices, the system comprises at least one of the devices provided to remotely control operations of one or more of the other devices, one of the devices (hereinafter "first device") configured to establish automatically respective rudimentary communication paths for probing communication, each of the rudimentary communication paths being with one of the other devices, wherein an automatic configuration process takes place only in one of the other devices after the user authorizes the one of the other devices to start the automatic | |

Case No. 2:20-cv-00169-JAK (DFMx)

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| configuration process, and wherein the automatic configuration process causes several messages to be exchanged between the first device and one of the other devices, some of the messages carry information pertaining to an appropriate transmission channel, an identifier of the network and a security key for subsequent communication, the some of the messages are encrypted. According to yet another embodiment of the present invention, the present invention is a system for establishing a network for a group of devices, the system comprises a plurality of zone players, each equipped with a mechanism that is once manually activated by a user, an automatic configuration process starts, wherein one of the zone players is coupled to a local area network as an access device; and at least a controller provided to remotely control operations of one or more of the zone players, wherein the access device establishes | |

Case No. 2:20-cv-00169-JAK (DFMx)

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| automatically respective rudimentary communication paths, each with the controller or one of the remaining zone players, the automatic configuration process takes places in the controller and each of the remaining zone players after the user manually activates the automatic configuration process respectively in the controller and each of the remaining z ne players, and wherein the automatic configuration process causes several messages to be exchanged between the access device and any one of the controller and the remaining zone players that have been activated for the automatic configuration process, some of the messages carry information pertaining to a transmission channel, an identifier of the network and a security key for subsequent communication, at least some of the messages are encrypted. According to still another embodiment of the present invention, the present invention is a software product to be executable in a device for establishing | |

Case No. 2:20-cv-00169-JAK (DFMx)

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| a network for a group of devices, the software product comprises program code for activating a second device, when requested, to automatically configure necessary parameters with a first device, program code for establishing automatically a rudimentary communication path with the first device by scanning all available transmission channels allocated in accordance with a protocol, and program code for exchanging messages between the first device and the second device over the rudimentary communication path till the second device is fully operating with the first device.  According to still another embodiment of the present invention, the present invention is a method for establishing a network for a group of devices, the method comprises providing a plurality of zone players, each equipped with a mechanism that once is manually activated by a user, an automatic configuration process starts, | |

Case No. 2:20-cv-00169-JAK (DFMx)

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| wherein at least a controller is provided to remotely control operations of one or more of the zone players; coupling one of the zone players to a local area network as an access device; establishing automatically respective rudimentary communication paths with the access device, each of paths being with the controller or one of the remaining zone players, wherein the automatic configuration process takes place in the controller and each of the remaining zone players after the user manually activates the automatic configuration process respectively in the controller and each of the remaining zone players, and exchanging several messages between the access device and any one of the controller and the remaining zone players that have been activated for the automatic configuration process, wherein some of the messages carry information pertaining to a transmission channel, an identifier of | |

-31-                    Case No. 2:20-cv-00169-JAK (DFMx)

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| the network and a security key for subsequent communication, and at least some of the messages are encrypted.  One of the objects, features, and advantages of the present invention is to provide techniques that facilitate automatic configuration of devices to be coupled to a network with minimum human intervention. Other objects, features, and advantages of the present invention will become apparent upon examining the following detailed description of an embodiment thereof, taken in conjunction with the attached drawings." *Evidence*: Zivojnovic Decl., Ex. A at "Summary of the Invention" | |
| 44.  The '883 patent's "Summary of the Invention" is identical to the "Summary of the Invention" for the '896 patent. *Evidence*: Zivojnovic Decl., Ex. B at "Summary of the Invention" | 44.  Undisputed. |

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 45.  The specifications of the '896 and '883 patents both disclose as Figure 3A the following:<br><br><br><br>*Evidence*: Zivojnovic Decl., Exs. A & B at Fig. 3A | 45.  Undisputed. |
| 46.  The specifications of the '896 and '883 patents both disclose as Figure 3B the following:<br><br><br><br>*Evidence*: Zivojnovic Decl., Exs. A & B at Fig. 3B | 46.  Undisputed. |
| 47.  The specifications of the '896 and '883 patents both disclose as Figure 5 the following: | 47.  Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| (Prior Art)  FIG. 5  *Evidence*: Zivojnovic Decl., Exs. A & B at Fig. 5 | |
| 48. The specifications of the '896 and '883 patents both state: "The present invention pertains to techniques for automatically configuring necessary parameters of a device to be coupled to a network with minimum human intervention."  *Evidence*: Zivojnovic Decl., Exs. A & B at 4:65-67. | 48. Undisputed. |
| 49. The specifications of the '896 and '883 patent both state: "According to one aspect of the present invention, a wired and/or wireless Ad-hoc network is established to facilitate communications among a | 49. Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| group of devices."<br><br>*Evidence*: Zivojnovic Decl., Exs. A & B at 5:1-3. | |
| 50. The specifications of the '896 and '883 patents both define a zone player: "Each of the audio devices may be installed or provided in one particular area or zone and hence referred to as a zone player herein."<br><br>*Evidence*: Zivojnovic Decl., Exs. A & B at 5:48-50. | 50. Disputed. Google's citation does not support that the specifications of the '896 and '883 patent both define a zone player. The citation identifies audio devices in a figure as exemplary "zone player[s]" but does not provide a definition for "zone player." *Id*. at 5:41-50.<br><br>*Evidence*: Zivojnovic Decl., Exs. A & B at 5:41-50. |
| 51. The specifications of the '896 and '883 patents both state: "In one embodiment, a zone player, referred to as an access zone player, including both of the interfaces **216** and **217** is coupled to an access point of an LAN and communicates with other zone players wirelessly."<br><br>*Evidence*: Zivojnovic Decl., Exs. A & B at 6:63-67. | 51. Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 52.  The specifications of the '896 and '883 patents both state:  "In one embodiment, the controller **240** is used to select an audio source for playback. In another embodiment, the controller **240** is used to manage (e.g., add, delete, move, save, or modify) a playlist."<br><br>*Evidence*: Zivojnovic Decl., Exs. A & B at 7:41-45. | 52.  Undisputed. |
| 53.  The specifications of the '896 and '883 patents both describe Figure 3A:  "FIG. **3A** shows that there are three zones players **302**, **304** and **306** and a controller **308** that form a network branch that is also referred to as an Ad-Hoc network **310**."<br><br>*Evidence*: Zivojnovic Decl., Exs. A & B at 9:1-3. | 53.  Undisputed.  The patents also provide additional detail on Figure 3A. |
| 54.  The specifications of the '896 and '883 patents both state:  "In general, an Ad-Hoc (or 'spontaneous') network is a local area network or other small network in which there is | 54.  Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| no one access point for all traffics. With an established Ad-Hoc network, the devices **302**, **304**, **306** and **308** can all communicate with each other in 'peer-to-peer' style of communication. Furthermore, any device may come/go from the network and the network will automatically reconfigure itself without needing the user to reconfigure the network." <br><br> *Evidence*: Zivojnovic Decl., Exs. A & B at 9:6-14. | |
| 55.  The specifications of the '896 and '883 patents both state: "Accordingly, the network **310** may be characterized by a unique HHID and a unique set of configuration variables or parameters, such as Channels (i.e., respective frequency bands), SSID (a sequence of alphanumeric characters as a name of a wireless network), and WEP keys (wired equivalent privacy, or simply security keys)." <br><br> *Evidence*: Zivojnovic Decl., Exs. A & | 55.  Undisputed. |

-37-          Case No. 2:20-cv-00169-JAK (DFMx)

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| B at 9:30-35. | |
| 56.  The specifications of the '896 and '883 patents both state:  "The zone player **306** in FIG. **3A** is shown to be connected to both networks, for example, the connectivity to network **312** is based on Ethernet while the connectivity to other devices **302**, **304** and **308** is based on Wireless." *Evidence*: Zivojnovic Decl., Exs. A & B at 10:4-8. | 56.  Undisputed. |
| 57.  The specifications of the '896 and '883 patents both state:  "Device Configuration.  The configuration is carried out by exchanging data between two devices that are not necessarily directly connected.  This procedure is carried over a rudimentary communication path as described previously.  The sequence of exchanging the data is initiated by the user or some other process, for example, activating a reset button, to trigger the 'activation' or configuration mode on the involved | 57.  Undisputed. |

Case No. 2:20-cv-00169-JAK (DFMx)

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
| --- | --- |
| devices. Each device executes this sequence, and then exits the activation mode. FIG. **3B** shows an embodiment that involves a process of five exchanges of data. Each of the data exchanges is referred to as a type of message: Alive, QueryNetParams, RespondNetParams, SetNetParams, and AckNetParams, each is explained as follows: Alive—a message indicating that a named ZP is available for configuration. The message includes at least a zpUU/O which is a globally unique identifier that identifies the ZP sending the message. Query NetParams—a request from the CP to the ZP to respond with the ZP's current network configuration information. The request includes at least a zpUUID, cpPK (the RSA public key of the CP) and tid (a unique transaction identifier). RespondNetParams—a response to the QueryNetParams. It includes the ZP's network configuration information (HHID, WEP key and RSA public | |

Case No. 2:20-cv-00169-JAK (DFMx)

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| key). For security reasons, the WEP key is encrypted using the CP's public key that is only readable by the CP. The response includes at least a zpUUID, netConfig(the ZP's current network configuration parameters), zpPK, and tid. It is should be noted that a new ZP, set to factory defaults, shall have well-known parameter values, allowing the CP to determine that it is unconfigured. SetNetParams—a command message from the CP to the ZP indicating that the ZP should reconfigure its network parameters. The WEP key is encrypted using the ZP's public key, and therefore only readable by the ZP. The command includes at least a zpUU/O, netConfig and tid. It should be noted that netConfig includes the new configuration parameters for the ZP, as determined by the CP. The ZP should save this value in its network configuration, in some cases, these parameters may match the ZP's existing configuration. | |

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| AckNetParams—a response to the SetNetParams messaging.  The response indicates that the SetNetParams message was received and that the network configuration contained therein has been successfully applied.  The response includes at least a zpUUID and a tid.  In operation, after a user activates the configuration process (on both ZP and CP) at **351** in FIG. **38**.  The CP enters a state where it is willing to accept an Alive message.  The CP only remains in this state for a limited (finite) period of time.  The ZP enters an activation state where it attempts rendezvous with a CP.  The ZP only remains in this state for a limited (finite) period of time.  The ZP will periodically transmit an Alive message until it either receives a QueryNetParams message, or exits the activation state.  At **352**, the CP receives an Alive message.  If the CP is in the configuration mode, it will generate a new tid, and send a QueryNetParams | |

-41-                                     Case No. 2:20-cv-00169-JAK (DFMx)

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| message and send to the ZP. It should be noted that the CP may or may not have been configured at this point. In either case, it sends the QueryNetParams. At **353**, if it is already in the activation state, the ZP responds to a QueryNetParams with its current network configuration. If the ZP is unconfigured (e.g., factory default settings), it will return an empty HHID and WEP key. If the ZP is previously configured, it will return its current configuration. The ZP also returns its public key such that the WEP key can be encrypted using the CP's public key. At 354, upon receiving the ZP's current configuration information, the CP decides on a course of action. Most, but not all, of these options result in a SetNetParams message being sent to the ZP." *Evidence*: Zivojnovic Decl., Exs. A & B at 12:63-13:67. | |
| 58. The specifications of the '896 | 58. Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| and '883 patents both disclose the following matrix as "[t]he matrix of possible situations": *Evidence*: Zivojnovic Decl., Exs. A & B at 13:67-14:14. | |
| The specifications of the '896 and '883 patents both state:  "At **355**, when the ZP receives a SetNetParams message, it reconfigures its own HHID and WEP key to match those contained in the network packet.  Accordingly, the GP determines that it generates new configuration parameters in accordance with the following:  HHID—this is provided by the user via the CP user interface or automatically generated by the CP.  SSID—this is automatically generated | 58A.[1]  Undisputed. |

[1] Throughout this document, where Google appears to have inadvertently included two separate facts as a single item, Sonos labels its response to the second fact as "XXA."

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| by the CP (e.g., set to the same value as the HHID).  WEP Key—this is automatically generated (e.g., using a pseudo-random number generator, seeded with entropy collected by the GP).  Channel—the GP probes the network looking for an acceptable channel (based on a variety of criteria, which may include traffic and interference from other sources). *Evidence*: Zivojnovic Decl., Exs. A & B at 14:15-31. | |
| 59.  The specifications of the '896 and '883 patents both state:  "There are numerous functions, benefits and advantages in the present invention. One of them is that the present invention provides techniques for automatically configuring parameters of a device to be coupled to an Ad-hoc network, where the Ad-hoc network forming by a group of devices can be wireless, wired or a combination of both.  By way of the present invention, a system including a set of zone | 59.  Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| players and one or more controllers operates correctly and does not interfere with any existing network. Other functions, benefits and advantages can be appreciated from the detailed description provided above." *Evidence*: Zivojnovic Decl., Exs. A & B at 17:39-49. | |
| 60.  Sonos attached to its Responsive Claim Construction Brief (ECF No. 148) a document entitled, "Encyclopedia of Computer Science and Technology" (ECF No. 148-6), which states, "Usually there is a network access point, a PC that contains a transceiver and serves as the network hub (it may also serve as a bridge between the wireless network and a wired LAN).  The hub computer can also be connected to a high-speed Internet service via DSL or cable.  It has an antenna allowing it to communicate with wireless PCs up to several hundred feet away, depending | 60.  Undisputed. |

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| on building configuration."<br><br>*Evidence*: ECF No. 148-6 at 4. | |
| 61.  Sonos attached to its Responsive Claim Construction Brief (ECF No. 148) a document entitled, "Wi-Fi Direct (peer-to-peer or P2P) overview" (ECF No. 148-7), which states, "Wi-Fi Direct (P2P) allows devices with the appropriate hardware to connect directly to each other via Wi-Fi without an intermediate access point."<br><br>*Evidence*: ECF No. 148-7 at 1. | 61.  Undisputed. |
| 62.  During the February 23, 2026 Claim Construction Hearing, Sonos stated, "ad hoc networks need not have access points."<br><br>*Evidence*: Zivojnovic Decl., Ex. C at 31:23-32:5. | 62.  Undisputed that during the February 23, 2026 Claim Construction Hearing, in discussing different patents asserted in this case, Sonos stated "Just one thing, Your Honor. Exhibit Z to our responsive brief has extrinsic evidence that explains that ad hoc networks need not have access points.  So if we're going to be all of a sudden reading in limitations based on not the word access point in the spec, but differentiating from the concept of |

Case No. 2:20-cv-00169-JAK (DFMx)

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | access of ad hoc networks generally, the evidence in the record shows that ad hoc networks do not need access points." <br><br> *Evidence*: Zivojnovic Decl., Ex. C at 31:23-32:5. |
| 63. On May 20, 2026, the Court issued an Order Regarding Claim Construction adopting Sonos's construction of the term "independently of the WLAN" / "independently of a/the communication network" ('790 Patent, Claims 1, 9, and 16; '608 Patent, Claims 1, 11, and 16). <br><br> *Evidence*: ECF No. 200 at 12-15. | 63. Undisputed. |
| 64. Both the '896 and '883 patents claim priority to U.S. application No. 60/577,284 (the "'284 provisional application"), filed on June 5, 2004. <br><br> *Evidence*: Zivojnovic Decl., Exs. A & B at 2. | 64. Undisputed. |
| 65. The '284 provisional application, | 65. Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| in relevant part, states: "Ultimately there are multiple problems that are solved by this invention: 1. Discovery of new devices, available for configuration/initialization into the ad hoc network 2. Establishing a rudimentary communication channel between Rincon devices, sufficient to allow for the exchange of configuration data 3. Establishment of an initial security context between devices, providing a means to securely exchange configuration information necessary for full and correct network operation 4. Automatically generating the necessary network configuration, including SSID, WEP keys and other information and configuring devices with this information." *Evidence*: Zivojnovic Decl., Ex. D at Appendix at 2. | |
| 66. The '284 provisional application refers to a "Rincon ad hoc network." | 66. Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Zivojnovic Decl., Ex. D at Appendix at 2. | |
| 67.  Sonos was founded as "Rincon Audio, Inc."<br><br>*Evidence*: Zivojnovic Decl., Ex. S at 9. | 67.  Undisputed that Sonos was incorporated as "Rincon Audio, Inc."<br>*Evidence*: Zivojnovic Decl., Ex. S at 9. |
| 68.  The '284 provisional application discloses as Figure 3 the following:<br><br><br><br>**FIG. 3**<br><br>*Evidence*: Zivojnovic Decl., Ex. D at Fig. 3. | 68.  Undisputed. |
| 69.  The '284 provisional application mentions "access points" once, in the context of "Channel Selection" and avoiding conflicting traffic.<br><br>*Evidence*: Zivojnovic Decl., Ex. D at Appendix at 4. | 69.  Undisputed that the '284 provisional application mentions "access points" in a "Channel Selection" discussion that addresses avoiding conflicting traffic.<br><br>*Evidence*: Zivojnovic Decl., Ex. D at Appendix at 4.. |
| 70.  Both the '896 and '883 patents | 70.  Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| claim priority to U.S. application No. 11/147,116 (the "'116 application"), filed on June 6, 2005.

*Evidence*: Zivojnovic Decl., Exs. A & B at 2. | |
| 71.  The '116 application matured into U.S. Pat. No. 8,326,951 (the "'951 patent"), entitled "Establishing a Secure Wireless Network with Minimum Human Intervention," which issued on December 4, 2012.

*Evidence*: Zivojnovic Decl., Ex. E | 71.  Undisputed. |
| 72.  None of the 37 claims in the '951 patent recites an "access point."

*Evidence*: Zivojnovic Decl., Ex. E at claims 1-37 | 72.  Undisputed that the "secure network" recited in the claims of the '951 patent is not limited to an access point network.

*Evidence*: Zivojnovic Decl., Ex. E at claim 1 |
| 73.  For example, claim 1 of the '951 patent claims:  "A method of connecting a device to a secure network for one or more playback devices, the method comprising: | 73.  Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| receiving a manual user action at a zone player that is unconfigured for a secure network, wherein the manual user action initiates an automatic establishment of a connection to the secure network by the zone player; transmitting, by the zone player responsive to the manual user action, a first message over an unsecure network to be received by a device configured for the secure network, wherein the first message indicates that the zone player is available to join the secure network; receiving, over the unsecure network by the zone player, a second message from the device, wherein the second message is generated responsive to receipt of the first message and wherein the second message includes a security parameter to be used by the zone player to join the secure network; and establishing a connection to the secure network by the zone player using the security parameter without further input by any user via either the zone player or the | |

-51-                    Case No. 2:20-cv-00169-JAK (DFMx)

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| device." | |
| *Evidence*: Zivojnovic Decl., Ex. E at claim 1. | |
| 74. Both the '896 and '883 patents claim priority to U.S. application No. 14/486,667 (the "'667 application"), filed on September 15, 2014.<br><br>*Evidence*: Zivojnovic Decl., Exs. A & B at 2. | 74. Undisputed. |
| 75. During the prosecution of the '667 application, on February 7, 2017, Sonos added a limitation specifying that the "wireless network" to which a playback device is added is "provided by a wireless access point."<br><br>*Evidence*: Zivojnovic Decl., ¶ 8, Ex. F at 1. | 75. Undisputed that during the prosecution of the '667 application, on February 7, 2017, Sonos added a limitation specifying that the wireless network to which the claimed playback device is added is "provided by a wireless access point."<br><br>*Evidence*: Zivojnovic Decl., ¶ 8, Ex. F at 1-2. |
| 76. The '667 application matured into U.S. Pat. No. 9,866,447 (the "'447 patent"), which issued on January 9, 2018. | 76. Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Zivojnovic Decl., Ex. G. | |
| 77. U.S. application No. 16/298,542 (the "'542 application"), filed on March 11, 2019, matured into the '896 patent.  *Evidence*: Zivojnovic Decl., Ex. A. | 77. Undisputed. |
| 78. U.S. application No. 16/298,515 (the "'515 application"), filed on March 11, 2019, matured into the '883 patent.  *Evidence*: Zivojnovic Decl., Ex. B. | 78. Undisputed. |
| 79. The original claims of the '542 and '515 applications did not recite an "access point" and were directed to a generic "secure wireless local area network (WLAN)."  *Evidence*: Zivojnovic Decl., ¶¶ 10-11, Exs. H & I. | 79. Undisputed that the "secure wireless local area network (WLAN)" recited in the original claims of the '542 and '515 applications was not limited to an access point network.  *Evidence*: Zivojnovic Decl., ¶¶ 10-11, Exs. H & I. |
| 80. For example, original claim 1 of the '542 application states: "A computing device comprising: a user interface; a network interface; at least one processor; a non-transitory | 80. Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| computer-readable medium; and program instructions stored on the non-transitory computer-readable medium that, when executed by the at least one processor, cause the computing device to perform functions comprising:  while operating on a secure wireless local area network (WLAN), (a) receiving user input indicating that a user wishes to set up a playback device to operate on the secure WLAN and (b) receiving a first message indicating that a given playback device is available for setup; after receiving the user input and receiving the first message, transmitting a response to the first message that facilitates establishing an initial communication path with the given playback device, wherein the initial communication path is outside of the secure WLAN; transmitting, to the given playback device via the initial communication path, at least a second message containing network configuration parameters, wherein the | |

-54-

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| network configuration parameters comprise an identifier of the secure WLAN and a security key for the secure WLAN; after transmitting at least the second message containing the network configuration parameters, detecting an indication that the given playback device has successfully received the network configuration parameters; and after detecting the indication, transitioning from communicating with the given playback device via the initial communication path to communicating with the given playback device via the secure WLAN." <br><br> *Evidence*: Zivojnovic Decl., Ex. H at claim 1. | |
| For example, original claim 1 of the '515 application states:  "A playback device comprising:  a network interface that is configured to provide an interconnection with at least one data network; at least one | 80A.  Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| processor; a non-transitory computer-readable medium; and program instructions stored on the non-transitory computer-readable medium that, when executed by the at least one processor, cause the playback device to perform functions comprising: detecting a triggering event that causes the playback device to enter a setup mode in which the playback device transmits at least a first message indicating that the playback device is available for setup; while in the setup mode, receiving a response to the first message that facilitates establishing an initial communication path with a computing device operating on a secure wireless local area network (WLAN), wherein the initial communication path is outside of the secure WLAN; receiving, from the computing device via the initial communication path, at least a second message containing network configuration parameters for the secure WLAN, wherein the network | |

Case No. 2:20-cv-00169-JAK (DFMx)

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| configuration parameters comprise an identifier of the secure WLAN and a security key for the secure WLAN; using the network configuration parameters to connect to the secure WLAN; and transitioning from communicating with the computing device via the initial communication path to communicating with the computing device via the secure WLAN." *Evidence*: Zivojnovic Decl., Ex. I at claim 1. | |
| 81.  On July 22, 2019, in response to a rejection by the United States Patent and Trademark Office, Sonos amended the claims of the pending '542 and '515 applications to add the language "that is defined by an access point." *Evidence*: Zivojnovic Decl., ¶¶ 12-13, Exs. J and K. | 81.  Undisputed. |
| 82.  Patrick Mannion, in an article entitled "Under The Hood:  DIGITAL | 82.  Disputed.  The Electronic Engineering Times article does not |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| HOME," published on June 23, 2008, in the Electronic Engineering Times, wrote, quoting Sonos's vice president of product development at the time, Andrew Schulert, "A second critical decision was to use a proprietary mesh network, SonosNet, rather than work with existing 802.11-based access points.  The downside to the mesh is that at least one unit must be wired to the home network (now mitigated with the ZoneBridge).  'But this is more than outweighed by the ease of setup, the increased range of the mesh and some other, more-minor changes that increase the robustness of the network,' Schulert said." <br><br> *Evidence*: Zivojnovic Decl., Ex. L (SONOS-ITC-00376817) at 376818. | quote Schulert as saying "A second critical decision was to use a proprietary mesh network, SonosNet, rather than work with existing 802.11-based access points.  The downside to the mesh is that at least one unit must be wired to the home network (now mitigated with the ZoneBridge)." <br><br> *Evidence*: Zivojnovic Decl., Ex. L (SONOS-ITC-00376817) at 376818. |
| Sonos, in a ███████ ███████ on May 23, 2006, discussed: ███████████ | 82A.  Undisputed. |

Case No. 2:20-cv-00169-JAK (DFMx)

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| ████████████ ████████████ ████████ *Evidence*: Zivojnovic Decl., Ex. M (SONOS-ITC-00243535) at 243535. | |
| 83.  The same ██████████ ████████ records that Nicholas ("Nick") Millington, the named inventor of the '896 and '883 patents, ████████ ██████████ ████████ *Evidence*: Zivojnovic Decl., Ex. M (SONOS-ITC-00243535) at 243535-36; *see* Exs. A & B. | 83.  Undisputed.  Sonos notes that Mr. Millington is a co-inventor of the '896 and '883 patents. *Evidence*: Zivojnovic Decl., Exs. A & B. |
| 84.  Nick Millington, the named inventor of the '896 and '883 patents, ████████████ ██████████ ██████ *Evidence*: Zivojnovic Decl., Ex. N (SONOS-ITC-00761062) at 00761062; *see* Exs. A & B. | 84.  Undisputed that Nick Millington, a named co-inventor of the '896 and '883 patents, authored a Sonos presentation entitled "SonosNet 'No First Wire,'" dated April 28, 2009.  *Id*. *Evidence*: Zivojnovic Decl., Exs. A & B. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 85.  In the same presentation, Nick Millington states,   *Evidence*: Zivojnovic Decl., Ex. (SONOS-ITC-00761062) at 761063. | 85.  Undisputed. |
| 86. *Evidence*: *See* Zivojnovic Decl., Ex. O (SONOS-ITC-00446713) at 446713. | 86.  Undisputed that Google's cited evidence supports that, by July 2013, Google released the Chromecast product. |
| 87.  On April 17, 2014, Sonos posted an article on the "SONOS BLOG" entitled, "Our Vision for Rock-Solid Wireless, Evolved," which announced, "We've found a way to deliver all the benefits of SonosNet without a | 87.  Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| product directly connected to your router.  This new software solution will make Sonos simpler than ever.  Start with a speaker and your smartphone, enter your WiFi password and Sonos takes care of the rest." <br><br> *Evidence*: Zivojnovic Decl., Ex. P | |
| 88.  A post entitled ██████ ████████████ ████████████ dated September 15, 2014, states: ███████████ ███████████ ██████████ ██████████ ██████████ ████████ █████████ █████████ █████████ ████████ █████████ █████████ ██████ | 88.  Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
|  *Evidence*: Zivojnovic Decl., Ex. Q (SONOS-ITC-00249039) at 249039. | |
| 89.  The same post describes the | 89.  Undisputed. |

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|



SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Zivojnovic Decl., Ex. Q (SONOS-ITC-00249039) at 249039. | |
| 90. *Evidence*: Zivojnovic Decl., Ex. R at 102. | 90.  Undisputed that, on September 2, 2014, Sonos publicly released its software version v5.1, which includes the setup functionality claimed in the '896 patent.  *Id*.  Disputed as to any suggestion that Sonos first introduced the functionality claimed in the '896 patent on September 2, 2014. Sonos' products, including its Digital Music System, have included the setup functionality claimed in the '896 patent since 2005.  *Evidence:*  Ex. A to Caridis Decl., (2026.06.25 Sonos Fourth Supp Objs and Resps to Google First Set of ROGs (Nos. 1-10)) at ROG No. 3 and |

SONOS'S RESPONSE TO GOOGLE'S STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | response at 46-59. |

Dated:  July 31, 2026

Respectfully submitted,

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP


By: */s/ Alyssa Caridis*
     Alyssa Caridis

     *Attorneys for Plaintiff Sonos, Inc.*