UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV20-00169 JAK (DFMx) | Date | August 26, 2026 |
| Title | Sonos, Inc. v. Google LLC | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| M. Lindaya | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE DEFENDANTS' MOTION TO AMEND ANSWER AND COUNTERCLAIMS (DKT. 132)**

## I. Introduction

On January 7, 2020, Sonos, Inc. ("Plaintiff" or "Sonos") brought this patent infringement action against Google LLC ("Defendant" or "Google"), alleging violations of five patents regarding multi-room audio technology: U.S. Patent Nos. 8,588,949 ("the '949 Patent"), 9,195,258 ("the '258 Patent"), 9,219,959 ("the '959 Patent"), 10,209,953 ("the '953 Patent"), and 10,439,896 ("the '896 Patent"). Dkt. 1. On February 18, 2020, Defendant filed an unopposed motion to stay the case pending proceedings before the United States International Trade Commission (the "ITC" or the "Commission"). Dkt. 26. That motion was granted on March 4, 2020, and the case was stayed. Dkt. 30.

On January 6, 2022, the ITC issued its opinion and final determination. It concluded that "certain originally-accused products infringed each of the asserted patents" and "certain non-infringing alternatives [ ] proposed by Google did not infringe any of the claims of the Sonos patents." *See Sonos, Inc. v. International Trade Commission*, Nos. 2022-1421, 2022-1573, 2024 WL 1507605, at *1 (Fed. Cir. Apr. 8, 2024). On January 27, 2022, Sonos filed an appeal of the ITC's findings of non-infringement by the non-infringing alternatives. *Sonos*, No. 2022-1421 (Dkt. 1). On March 24, 2022, Google cross-appealed the findings of infringement by the originally accused products. *Sonos*, No. 2022-1573 (Dkt. 1). On April 8, 2024, the Federal Circuit Opinion affirmed the findings of the ITC. *Sonos*, 2024 WL 1507605 at *1. On June 24, 2024, Google filed a petition for rehearing *en banc* challenging the Commission's finding of infringement based on lack of jurisdiction over two of the patents at issue. *Sonos*, No. 2022-1421 (Dkt. 98). On September 10, 2024, the Federal Circuit denied Google's petition. *Id.* (Dkt. 115).

Throughout the pendency of the foregoing proceedings, this action remained stayed. On August 15, 2024, Plaintiff filed a motion to lift the stay in part (the "Motion to Lift Stay"). Dkt. 56. On September 30, 2024, an Order issued granting Plaintiff leave to file an amended complaint and deferring a ruling on the Motion to Lift Stay. Dkt. 63. On October 15, 2024, Plaintiff filed a First

Amended Complaint (the "FAC"). Dkt. 64. The FAC alleges infringement of the five patents referenced in the Complaint, as well as U.S. Patent Nos. 7,571,014 ("the '014 Patent"), 10,031,715 ("the '715 Patent") and 11,080,001 ("the '001 Patent"). *Id.*

On November 18, 2024, the Parties submitted a joint motion to lift the stay and to amend the pretrial schedule. Dkt. 65. The same day, an Order issued that granted the joint motion, directed Plaintiff to file a Second Amended Complaint and set a schedule for hearing any motions on that complaint. Dkt. 66.

On November 26, 2024, Plaintiff filed a Second Amended Complaint, which is the operative one (the "SAC"). Dkt. 68. The SAC adds two additional claims of patent infringement as to U.S. Patent Nos. 10,966,025 ("the '025 Patent") and 10,541,883 ("the '883 Patent"). *Id.* On December 23, 2024, Defendant filed an answer to the SAC (the "Answer"). Dkt. 69.

On May 5, 2025, the last day to amend pleadings (Dkt. 77), Defendant filed a motion for leave to amend the Answer to add counterclaims. Dkt. 79. On July 15, 2025, that motion was granted. Dkt. 97. On July 25, 2025, Defendant filed its amended answer and counterclaims. Dkt. 101.

On October 13, 2025, Defendant filed a second motion for leave to amend, this time to add an affirmative defense of inequitable conduct (the "Motion"). Dkt. 132. On October 20, 2025, Plaintiff filed an opposition (the "Opposition"). Dkt. 133. On October 27, 2025, Defendant filed a reply (the "Reply"). Dkt. 134.

For the reasons stated in this Order, the Motion is **DENIED**.

## II. <u>Background</u>

### A. Parties

Plaintiff is a Delaware corporation whose principal place of business is in Goleta, California. Dkt. 68 ¶ 77. Defendant is a Delaware limited liability corporation whose principal place of business is in Mountain View, CA. *Id.* ¶ 78.

### B. Allegations in the SAC

The SAC alleges that Plaintiff "pioneered what is known as wireless multi-room audio" technology, bringing its first commercial products to market in 2005. *Id.* ¶ 2. The SAC alleges that Defendant has been aware of Plaintiff's products since "as early as 2011." *Id.* ¶ 5. The SAC alleges that Defendant began "willfully infringing" Plaintiff's patents when it launched its own wireless multi-room audio product. *Id.* ¶¶ 5, 23. It further alleges that Defendant's misappropriation of Plaintiff's patented technology has "proliferated" and Defendant has expanded its wireless multi-room audio system "to more than a dozen different infringing

products." *Id.* ¶ 5. The SAC alleges that Defendant infringes the following patents: the '949 Patent, the '258 Patent, the '959 Patent, the '953 Patent, the '896 Patent, the '014 Patent, the '715 Patent, the '001 Patent, the '025 Patent and the '883 Patent. *Id.* ¶¶ 1, 5. The SAC seeks an entry of judgment of willful infringement, an injunction precluding ongoing infringement, damages, and an award of attorney's fees, costs and expenses. *Id.* at 208.

C. Counterclaims

Defendant alleges that Plaintiff infringed two of Defendant's patents that allow for wireless set up of electronic devices: U.S. Patent Nos. 12,132,608 ("the '608 Patent") and 9,485,790 ("the '790 Patent") (collectively, the "Google Setup Patents"). Dkt. 101 at 66-74. Defendant alleges that the Google Setup Patents are infringed by several Sonos products, including Sonos One, Sonos One SL, Sonos Move, Sonos Move 2, Sonos Roam 2, Sonos Roam, Sonos Roam SL, Sonos Five, Sonos Arc, Sonos Beam, Sonos Ray, Sonos Era 100, Sonos Era 300, Sonos Ace, Sonos Arc Ultra, Sonos Sub 4, Sonos Sub Mini, Sonos Sub and Sonos Port products. *Id.* ¶¶ 17, 29.

## III. <u>Analysis</u>

A. Legal Standards

1. <u>Motion to Amend Answer</u>

A "party seeking to amend pleading after date specified in scheduling order must first show 'good cause' for amendment under [Fed. R. Civ. P.] 16(b), then, if 'good cause' be shown, the party must demonstrate that amendment was proper under [Fed. R. Civ. P.] 15." *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 608 (9th Cir. 1992) (quoting *Forstmann v. Culp,* 114 F.R.D. 83, 85 (M.D.N.C. 1987)). Different legal standards apply to these two inquiries because an evaluation of good cause under Rule 16(b) is not coextensive with the liberal amendment policy of Rule 15. *Johnson,* 975 F.2d at 608.

a) Fed. R. Civ. P. 16(b)

"Once [a] district court ha[s] filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which established a timetable for amending pleadings that rule's standards control[ ]." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). "A scheduling order may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Therefore, "when a party seeks to amend a pleading after the pretrial scheduling order's deadline for amending the pleadings has expired, the moving party must satisfy the 'good cause' standard of Federal Rule of Civil Procedure 16(b)(4) . . . rather than the liberal standard of Federal Rule of Civil Procedure 15(a)." *In re Western States Wholesale Nat'l* Gas *Antitrust Litig.,* 715 F.3d 716, 737 (9th Cir. 2013). "While a court may take into account any

prejudice to the party opposing modification of the scheduling order, 'the focus of the [Rule 16(b)] inquiry is upon the moving party's reasons for seeking modification.'" *Id.* (alterations in original) (quoting *Johnson,* 975 F.2d at 609). The "good cause" standard "primarily considers the diligence of the party seeking the amendment . . . . If that party was not diligent, the inquiry should end." *Johnson,* 975 F.2d at 609.

"When the proposed modification is an amendment to the pleadings, the moving party may establish good cause by showing (1) that [he or she] was diligent in assisting the court in creating a workable Rule 16 order; (2) that [his or her] noncompliance with a rule 16 deadline occurred or will occur, notwithstanding [his or her] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that [he or she] was diligent in seeking amendment of the Rule 16 order, once it became apparent that [he or she] could not comply with the order." *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, No. 16-CV-339, 2017 WL 3477746, at *9 (C.D. Cal. May 12, 2017) (quoting *Hood v. Hartford Life & Acc. Ins. Co.*, 567 F. Supp. 2d 1221, 1224 (E.D. Cal. 2008)).

b) Fed. R. Civ. P. 15

Other than under the specific circumstances set forth in Rule 15(a)(1), "a party may amend its pleading only with the opposing party's written consent or the court's leave." Rule 15(a)(2). Under Rule 15, leave to amend should be granted unless there is a sufficient showing of one of the following: (i) prejudice to the opposing party; (ii) undue delay; (iii) bad faith; or (iv) futility. See *Foman v. Davis,* 371 U.S. 178, 182 (1962); *see also DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir. 1987). "Not all of the factors merit equal weight . . . [and] it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003) (emphasis in original) (citation omitted). When considering these issues, inferences are to be drawn in favor of the moving party. *See Griggs v. Pace* Am. *Grp., Inc.,* 170 F.3d 877, 880 (9th Cir. 1999). The non-moving party bears the burden of showing the presence of factors that weigh against granting leave to amend. *See DCD Programs,* 833 F.2d at 187.

B. Application

Defendant seeks to amend the Answer to add inequitable conduct to its defense of unenforceability. Dkt. 132 at 7. *First*, Defendant seeks to add allegations based on circumstances it alleged during the ITC Investigation, both against patents originally challenged during the ITC Investigation and against patents newly added by Plaintiff to this litigation. Dkt. 132 at 13. *Second*, Defendant seeks to add allegations based on confidential discovery from the ITC Investigation and based on the same theories that were presented during the ITC

Investigation, but for additional withheld prior art. *Id.*[1]

These amendments involve alleged patterns of misconduct by Plaintiff in withholding from the United States Patent and Trademark Office ("USPTO") material prior art related to existing products and systems. Dkt. 132 at 13–14. Defendant alleges that Plaintiff's conduct before the USPTO renders Plaintiff's patents unenforceable. Dkt. 132 at 7. Defendant contends that it could not have brought this motion to amend earlier, because it is based on information that was subject to a protective order in the ITC Investigation. *Id.* at 7–8. It also contends that Plaintiff was aware that Defendant had intended to bring a defense based on this information at least as early as April 24, 2025. *Id.* at 8.

1. <u>Diligence</u>

The deadline to amend pleadings was May 5, 2025. Dkt. 77. The Motion was filed on October 13, 2025. Dkt. 132. To satisfy the standard to amend under Rule 16(b)(4), Defendant must show that it was diligent in seeking to amend. *Johnson,* 975 F.2d at 609. Defendant has not met this burden.

Defendant contends that there is good cause to permit the amendments because they are based on confidential information from the ITC Investigation. Dkt. 132 at 17–20. It states that the ITC Protective Order allowed the parties to use confidential information "solely for the purposes of this investigation," Dkt. 132 at 17, which precluded its use in this action until the entry of the Stipulated Protective Order ("SPO") on August 15, 2025. Dkt. 132 at 19. Dkt. 132 at 17–20. On April 28, 2025, the parties had entered a Joint Discovery Stipulation (the "Joint Discovery Stipulation" (Dkt. 78)). The parties disagree as to whether the Joint Discovery Stipulation permitted, or prohibited, the use of ITC materials prior to the entry of the SPO.

Defendant's position is that the Joint Discovery Stipulation only permitted the parties to use confidential information from the ITC "pursuant to" the "forthcoming Stipulated Protective Order." Dkt. 132 at 18. Defendant also contends that the August 15, 2025 SPO only permitted Defendant to use Plaintiff's confidential information from the ITC Investigation, and not information from the Investigation with respect to Defendant's proposed amendments about Plaintiff's investors. *Id.* at 19. Defendant argues that it was not until September 12, 2025, when Plaintiff agreed to permit "cross-use" of essential confidential third-party materials from the ITC investigation, that Defendant was able to access all of the confidential ITC materials it needed to amend its complaint. *Id.* Defendant also maintains that it served its proposed amendment on Plaintiff ten days later, and, after a meet-and-confer process regarding Plaintiff's opposition to

[1] Defendant initially sought a third category of amendment: allegations based on records compiled from Plaintiff's litigation with a third party, Implicit LLC. Dkt. 132 at 7. In the Reply, Defendant withdrew the portion of its motion and the proposed amendment related to the third category of allegations. Dkt. 134 at 4.

the amendment, filed the Motion. *Id.*

Plaintiff disagrees with Defendant's characterization of the Joint Discovery Stipulation. Dkt. 133 at 13–17. It argues that the Joint Discovery Stipulation expressly permitted the use of the ITC discovery materials "as if it had been produced in this case," thereby allowing Defendant to use them as of April 28, 2025. Dkt. 133 at 14. Plaintiff also contends that Defendant's discussion of the permissibility of third-party confidential material is "a red herring" because Defendant "does not rely on any material protected by the confidentiality interests of third parties" in its amended pleadings. *Id.* at 17.

Plaintiff's reading of the Joint Discovery Stipulation is more persuasive. The Joint Discovery Stipulation regarding "Cross-Use of Discovery Materials" provides:

> Each party may use any discovery, including any document, interrogatory response, response to request for admission, privilege log, or deposition transcript that was produced or offered by the other party in USITC Investigation No. 337-TA1191 ("ITC Investigation") as if the discovery had been provided in this lawsuit.
>
> Any document or information used in this action that was previously produced in the ITC Investigation shall be used and treated with the same level of confidentiality for purposes of this action (e.g., a document designated by a party to the ITC Investigation as "Confidential Business Information" shall be treated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to the terms of the Parties' forthcoming Stipulated Protective Order) as an initial matter, but may be re-designated pursuant to the terms of the Stipulated Protective Order. This stipulation shall constitute written permission of the Parties under the protective order entered in the ITC Investigation to allow the other party to this stipulation to retain, solely for potential use in this lawsuit, the Confidential Business Information supplied by each of the parties in the ITC Investigation, subject to treatment of such information as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" as provided in the preceding paragraph.
> Any confidential portions of the Record from the ITC Investigation transferred to the District Court pursuant to 28 USC § 1659 shall be used and treated by the Parties in this action as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to the terms of the Stipulated Protective Order.
>
> Any deposition used pursuant to the first paragraph of this section shall be useable in this case as if the deposition were originally noticed and taken in this case; however, such prior depositions shall not count against the time limits specified above.

> The re-use of any document or information from the ITC Investigation as stipulated above by either Party is for discovery purposes only and does not preclude any Party from challenging the admissibility, relevance, and responsiveness of the re-used document or information.

Dkt. 78 at 10–11.

The stipulation plainly permitted use of the ITC Investigation materials "as if the discovery had been provided in this lawsuit" and provided that such materials "be treated with the same level of confidentiality for the purposes of this action." *Id.* at 10. Defendant relies on the parenthetical providing that "a document designated by a party to the ITC Investigation as 'Confidential Business Information' shall be treated as 'HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY' *pursuant to the terms of the Parties' forthcoming Stipulated Protective Order*" as support for its interpretation that confidential materials produced during the ITC Investigation could not be used until the SPO was entered. Dkt. 132 at 18 (emphasis added). However, a more appropriate interpretation of this language is not that it limited the ability of the parties to begin using confidential information before the entry of the SPO, but that it provided for the treatment of this material in a manner that was consistent with the requirement of the forthcoming SPO, which could vary from those used during the ITC Investigation. Dkt. 78 at 10. This is consistent with the language surrounding the parenthetical, which states that the ITC Investigation Materials would be "treated with the same level of confidentiality for purposes of this action . . . as an initial matter, but may be redesignated pursuant to the terms of the Stipulated Protective Order." *Id.* If confidential material from the ITC Investigation could not be used in this action prior to the entry of the SPO, there would be no need to designate its confidentiality "as an initial matter" in the Joint Discovery Stipulation.

Plaintiff contends that Defendant was not diligent in seeking amendment because it could have used the ITC material as early as April 28, 2025, when the Joint Discovery Stipulation was entered. Dkt. 133 at 13. This was approximately five months prior to the September 12, 2025 date on which Defendant relies based on the aforementioned agreement entered then as to "cross-use" of materials of third parties in the ITC Investigation. Dkt. 132 at 19. Plaintiff's interpretation is more persuasive.

Plaintiff also contends that, even if Defendant would not have been not able to prepare and file its amended Answer until after the SPO was entered, Defendant has not provided a reasonable basis for why it did not timely seek to modify the scheduling order. Dkt. 133 at 17. Defendant contends that the delay between the entry of the Joint Discovery Stipulation and the entry of the SPO "could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference," because the parties were unable to resolve their disputes in the SPO before May 5, 2025, resulting in the need to have the Court conduct a hearing on the dispute on July 15, 2025. Dkt. 132 at 18–19. As Plaintiff contends, Defendant has known the alleged facts underlying its inequitable conduct theories since at least 2020. Dkt. 133 at 17 (citing Dkt. 132 at

1). Thus, Defendant knew that it would have to rely on the protected information, and could have sought a continuance of the deadline to file amended pleadings. Because it did not do so, it was not diligent. *See Panlilio v. Han*, No. 23-CV-689, 2023 WL 9689130, at *2 (C.D. Cal. Nov. 9, 2023) (diligence requires a showing that the party sought amendment of the scheduling order "once it became apparent it could not comply with the order").

Defendant argues that it was diligent because it put Plaintiff "on notice" of its intention to use the inequitable conduct defense at least as early as April 28, 2025, when it told Plaintiff that it would "raise all invalidity and unenforceability arguments based on those raised in [the ITC Investigation] also in this litigation, in addition to any new defenses . . . and thus incorporates its positions from [the ITC Investigation] by reference into these Contentions." Dkt. 132 at 18. In support of this position, Defendant cites *Diversey, Inc. v. Pops Techs.*, LLC, No. 18-CV-4210, 2019 WL 11003292 (N.D. Ga. Nov. 13, 2019) and *Oldcastle Precast, Inc. v. Jensen Enters., Inc.*, No. 16-cv-1844, 2017 WL 3438738 (E.D. Cal. Aug. 10, 2017). In both of these cases, the assessment of diligence considered the promptness of the party in notifying the other of its intention to amend. In *Diversey*, near the start of the litigation, the plaintiff stated its plan to amend its pleadings to include claims arising from an upcoming patent. Then, shortly after the patent was issued, the plaintiff sought leave to file an amended complaint. That was approximately four months after the deadline to amend pleadings. *Diversey*, 2019 WL 11003292 at *1. In *Oldcastle*, the defendant learned of the basis of the proposed amendment in December 2016, conducted a brief, corresponding investigation, informed Plaintiff that it intended to amend in February 2017, three days after the deadline to do so; and filed its motion for leave to amend in March 2017. *Oldcastle*, 2017 WL 3438738 at *3.

In both of these cases, the analysis was based on both when the intent to amend was disclosed, and all of the circumstances. *Diversey* noted that the plaintiff amended its pleadings within 13 days of issuance of the new patent, and that it could not have done so before that occurred. 2019 WL 11003292 at *4. *Oldcastle* concluded that the defendant "was diligent not only in discovering the basis for its new counterclaims and in presenting them to the court, but also in keeping Oldcastle apprised of its intentions." 2017 WL 3438738 at *2.

Defendant knew of the basis of its proposed amendment as early as 2020 and could have accessed the ITC confidential materials pursuant to the Joint Discovery Stipulation as early as April 28, 2025. Nonetheless, it did not seek leave to amend until October 2025. This six-month delay raises sufficiently material issues of diligence such that "the inquiry should end." *Johnson,* 975 F.2d at 609. Nonetheless, the remaining Rule 15 factors are addressed for completeness.

2. <u>Prejudice</u>

Of the Rule 15 factors, "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV20-00169 JAK (DFMx) | Date | August 26, 2026 |
| Title | Sonos, Inc. v. Google LLC | | |

a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id.* "The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987) (emphasis in original).

Plaintiff contends that it would be prejudiced by the amendment because the "ever-growing expansion of this case" disrupts the litigation, increases the scope of discovery, and belies a strategy of increasing litigation costs. Dkt. 133 at 23-24. Defendant contends that Plaintiff would not suffer any prejudice if the amendment were permitted because the inequitable conduct defense was previously litigated in the ITC investigation, and Defendant disclosed its intent to rely on this defense in its invalidity contentions served on April 24, 2025. Dkt. 132 at 20-23. Thus, Defendant argues that Plaintiff has known about Defendant's allegations for years and their application here for months. *Id.*

"Prejudice results when an amendment would unnecessarily increase costs or would diminish the opposing party's ability to respond to the amended pleading." *Finestone v. Util. Telecom Grp., LLC*, No. 20-CV-230, 2022 WL 4387878, at *6 (E.D. Cal. Sept. 22, 2022) (citing *Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*, 980 F. Supp. 2d 1160, 1177 (E.D. Cal. 2013)). "Prejudice is generally mitigated where the case is still in the discovery stage, no trial date is pending[,] and no pretrial conference has occurred." *Finestone*, No. 20-CV-230, 2022 WL 4387878, at *6 (citing *Calderon v. Tulare Reg'l Med. Ctr.*, No. 17-CV-40, 2018 WL 4473626, at *5 (E.D. Cal. Sept. 17, 2018)). Plaintiff contends that the amendment would slow and expand discovery but acknowledges that discovery has not yet competed. Dkt. 133 at 23-24. This is not sufficient to show substantial prejudice. Accordingly, this factor does not weigh against allowing the amendments.

3. Undue Delay

Plaintiff contends that there was undue delay by Defendant in filing the Motion due to its lack of diligence given that Defendant knew about the basis for its proposed amendment before filing its initial answer. Dkt. 133 at 25-26. As Plaintiff contends, "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1159 (N.D. Cal. 2010). Defendant argues that there was no undue delay because the cross-use of third-party information was agreed to on September 12, 2025, the parties met and conferred on October 1, 2025, and Defendant filed the Motion on October 13, 2025. Dkt. 134 at 12-13. However, as discussed above, Defendant knew of the facts and theory for years and could have acted sooner, and prior to the deadline to amend pleadings. § III.B.1, *supra*. Accordingly, this factor weighs against granting the Motion.

/ / /

/ / /

4. Bad Faith

Plaintiff contends that Defendant acted in bad faith by suggesting that the inequitable conduct theories had already been presented in the Invalidity Contentions. Dkt. 133 at 24. Plaintiff also contends that the timing of Defendant's Motion "smacks of tit-for-tat tactics" and is retaliation for Plaintiff's timely inequitable conduct defense. *Id.* 25. These arguments are not supported by and direct evidence of bad faith as to this issue, or as to other matters that have arisen during the course of this litigation.. Accordingly, this factor does not weigh against granting the Motion.

5. Futility

Plaintiff does not argue that the amendment would be futile. Dkt. 133 at 22. Accordingly, this factor does not weigh against granting the Motion.

* * *

Because Defendant has not shown that it was sufficiently diligent in seeking amendment, the Motion is denied pursuant to Fed. R. Civ. P. 16.

## IV. Conclusion

For the reasons stated in this Order, the Motion is **DENIED**.

**IT IS SO ORDERED.**

______ : ______

Initials of Preparer LC1